1

Laurence D. King (SBN 206423)
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email:  lking@kaplanfox.com

2

3

4

5

Robert N. Kaplan
Frederic S. Fox
Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
rkaplan@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com

6

7

8

9

10

Counsel for Lead Plaintiff Movant
The Virginia Retirement System

11

12

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

16

| | |
|---|---|
| ALLAN J. NICOLOW, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:12-cv-05980-CRB |
| Plaintiff, | **CLASS ACTION** |
| v. | **NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE VIRGINIA RETIREMENT SYSTEM'S ("VRS") MOTION TO: (1) CONSOLIDATE THE RELATED ACTIONS; (2) APPOINT VRS AS LEAD PLAINTIFF; AND (3) APPROVE VRS' CHOICE OF LEAD COUNSEL** |
| HEWLETT-PACKARD COMPANY, LEO APOTHEKER, MARGARET C. WHITMAN, CATHERINE A. LESJAK and JAMES T. MURRIN, | |
| Defendants. | Judge:        Honorable Charles R. Breyer<br>Courtroom:  6, 17th Floor<br>Date:         March 1, 2013<br>Time:         10:00 AM |

17

18

19

20

21

22

23

24

25

*[caption continues on next page]*

26

27

28

1  DAVIN POKOIK, Individually and on Behalf         Case No. 3:12-cv-06074-CRB
   of All Others Similarly Situated,
2
                    Plaintiff,
3
4           v.

5  HEWLETT-PACKARD COMPANY,
   AUTONOMY CORPORATION PLC,
6  DELOITTE LLP, LEO APOTHEKER,
   MARGARET C. WHITMAN, CATHERINE
7  A. LESJAK, JAMES T. MURRIN, MICHAEL
   R. LYNCH, and SUSHOVAN HUSSAIN,
8
                    Defendants.
9

10  PAUL NEUMANN, Individually and on Behalf         Case No. 3:13-cv-00284-EJD
    of All Others Similarly Situated,
11
                     Plaintiff,
12
13          v.

14  HEWLETT-PACKARD COMPANY,
    MARGARET C. WHITMAN, LEO
15  APOTHEKER, JAMES T. MURRIN,
    CATHERINE LESJAK, and MARK HURD,
16
                     Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

- i -

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ............................................................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

    I.     INTRODUCTION ............................................................................ 2

    II.     SUMMARY OF THE PENDING ACTIONS ...................................................... 4

        A.     Company Background.......................................................................... 5

        B.     Factual Allegations............................................................................. 5

            1.     *Nicolow* and *Pokoik* Actions............................................. 5

            2.     *Neumann* Action .................................................................. 7

    III.     ARGUMENT .............................................................................................. 8

        A.     This Court Should Consolidate the Related Actions for Purposes of Efficiency .................................................................................... 8

        B.     The Court Should Appoint VRS as Lead Plaintiff.................................... 9

            1.     VRS Is the "Most Adequate Plaintiff" Under the Exchange Act ................................................................................. 9

            2.     VRS Is Qualified Under Rule 23 ................................................. 11

                a.     The Claims of VRS Are Typical of the Claims of the Class ......................................................................... 11

                b.     VRS Will Fairly and Adequately Represent the Interests of the Class ......................................................... 12

                c.     This Court Should Approve VRS' Choice of Counsel......................................................................... 13

    IV.     CONCLUSION............................................................................................ 13

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

**CASES**

5

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ........................................................................................ 8

6

*Backe v. Novatel Wireless, Inc.*,
7    No. 08-CV-01689-H (RBB), 2008 WL 5214262 (S.D. Cal. Dec. 10, 2008)......................... 3, 12

8

*Bhojwani v. Pistiolis*,
   06 Civ.13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007) .............. 3

9

*Cohen v. United States Dist. Court for N. Dist. of Cal.*,
10    586 F.3d 703 (9th Cir. 2009)..................................................................................................... 13

11

*Eichenholtz v. Verifone Holdings*,
   No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................... 3

12

*Hanlon v. Chrysler Corp.*,
13    150 F.3d 1011 (9th Cir. 1998)................................................................................................... 12

14

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002).................................................................................................. 2, 13

15

*In re Century Aluminum Co. Sec. Litig.*,
16    No. C 09-1001 SI, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009)........................................... 8, 10

17

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   416 F. Supp. 161 (C.D. Cal. 1976) ............................................................................................. 8

18

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
19    No. C 08-0856 MMC, 2008 WL 2220601 (N.D. Cal. May 27, 2008) ................................... 4, 12

20

*In re Star Gas Sec. Litig.*,
   No. 3:04CV1766(JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005)........................................... 3

21

*Investors Research Co. v. United States Dist. Court for Cent. Dist. of Cal.*,
22    877 F.2d 777 (9th Cir. 1989)....................................................................................................... 8

23

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...................................................................................................... 8

24

*Mohanty v. BigBand Networks*,
25    No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008)........................................ 8, 12

26

*Query v. Maxim Integrated Prods.*,
   558 F. Supp. 2d 969 (N.D. Cal. 2008) .................................................................................... 2, 10

27

*Richardson v. TVIA, Inc.*,
28    No. C 06 6304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)................................. 11, 12

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3  *Smajlaj v. Brocade Commc'ns Sys. Inc.*,
      No. 05-02042 CRB, 2006 U.S. Dist. LEXIS 97618 (N.D. Cal. Jan. 12, 2006) ............... 2, 10, 11

4

5  *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
      231 F.3d 1215 (9th Cir. 2000)......................................................................................... 10

6

**STATUTES**

7

8  15 U.S.C.
      § 78j(b) ............................................................................................................................... 2
      § 78t(a) ............................................................................................................................... 2
9    § 78u-4 ............................................................................................................................... 1
      § 78u-4(a)(1) ...................................................................................................................... 9
10   § 78u-4(a)(3)(A)(i) ..................................................................................................... 4, 10
      § 78u-4(a)(3)(B) .............................................................................................................. 10
11   § 78u-4(a)(3)(B)(i) ........................................................................................................ 3, 9
      § 78u-4(a)(3)(B)(iii)(I) .................................................................................................... 10
12   § 78u-4(a)(3)(B)(iii)(I)(cc) .............................................................................................. 11
      § 78u-4(a)(3)(B)(iii)(II)(aa) .............................................................................................. 2
13   § 78u-4(a)(3)(B)(v) ..................................................................................................... 2, 13

14 17 C.F.R.
      § 240.10b-5 ......................................................................................................................... 2

15

16 The Securities Exchange Act of 1934
      Section 21D(a)(3)(B)(i)....................................................................................................... 2
      Section 21D(a)(3)(B)(iii) .................................................................................................... 2
17   Section 21D(a)(3)(B)(iii)(I) ............................................................................................... 1

18

**RULES**

19

20 Federal Rules of Civil Procedure
      Rule 23 ........................................................................................................................ 1, 10
      Rule 23(a)................................................................................................................... 11, 12
21   Rule 42(a)..................................................................................................................... 1, 8, 9

22

23

24

25

26

27

28

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,                    12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 1, 2013 at 10:00 a.m. or as soon thereafter as set by the Honorable Charles R. Breyer in his courtroom, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, VRS will, and hereby does, respectfully move this Court, under the Federal Rules of Civil Procedure and Section 21D(a)(3)(B)(iii)(I) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, for entry of an order:  (1) to consolidate the above-captioned actions pursuant to Federal Rule of Civil Procedure 42(a); (2) to be appointed lead plaintiff for a class of purchasers of Hewlett-Packard Company ("Hewlett-Packard" or the "Company") securities during the Class Period ("Lead Plaintiff"); (3) for approval of its selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as lead counsel; and (4) to grant such other relief as the Court may deem just and proper.

This motion is made on the grounds that VRS believes that it is the most adequate plaintiff having suffered estimated losses of more than $53.4 million as a result of its purchases of Hewlett-Packard securities during the period February 20, 2008 through November 20, 2012 (the "Class Period").[1]  In addition, VRS meets the requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of class members' claims, and it will fairly and adequately represent the class.  Finally, VRS has selected and retained to serve as class counsel a law firm with substantial experience in prosecuting securities class actions.

The motion is based on this notice of motion, the supporting memorandum of points and authorities, the King Decl. in support thereof, the pleadings and other files and records in each of these actions, and upon such other written or oral argument as may be presented to the Court.

---

[1] The Certification of Robert P. Schultze, Director of VRS, dated January 25, 2013, and a chart of VRS' estimated losses in Hewlett-Packard securities during the Class Period are attached respectively as Exhibits A and B to the Declaration of Laurence D. King in Support of the VRS Motion to (1) Consolidate the Related Actions; (2) Appoint VRS as Lead Plaintiff; and (3) Approve VRS' Choice of Lead Counsel, dated January 25, 2013 ("King Decl.").

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,             12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

**SUMMARY OF ARGUMENT**

VRS seeks an order for consolidation of the related actions (as defined below), appointment as lead plaintiff and approval of its selection of lead counsel. Under Sections 21D(a)(3)(B)(i) and (iii) of the Exchange Act, this Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that the "person or group of persons" with the largest financial interest in the relief sought by the class is the most adequate plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002); *Query v. Maxim Integrated Prods.*, 558 F. Supp. 2d 969, 973 (N.D. Cal. 2008); *Smajlaj v. Brocade Commc'ns Sys.*, No. C 05-02042 CRB, 2006 U.S. Dist. LEXIS 97618, at *7–8 (N.D. Cal. Jan. 12, 2006). Since VRS believes that it has the largest financial interest in the outcome of this litigation, it is presumptively entitled to be appointed lead plaintiff and its choice of counsel should be approved. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa) and 78u-4(a)(3)(B)(v).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Presently pending in this district are at least three related securities fraud class actions (the "Related Actions") brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Hewlett-Packard and other defendants for violations of the federal securities laws during the Class Period.[2] The Related Actions are as follows:

|   | Abbreviated Case Name | Case Number | Date Filed | Class Period Alleged |
|---|---|---|---|---|
| 1. | *Nicolow v. Hewlett-Packard Co, et al.* | 3:12-cv-05980-CRB | November 26, 2012 | August 19, 2011 – November 20, 2012 |
| 2. | *Pokoik v. Hewlett-Packard Co., et al.* | 3:12-cv-06074-CRB | November 30, 2012 | August 19, 2011 – November 20, 2012 |

[2] Also pending in this district are at least seven derivative actions against Hewlett-Packard's board of directors alleging, among other things, breaches of fiduciary duty under state law, as well as a number of actions brought under the Employee Retirement Income Security Act ("ERISA") against Hewlett-Packard and certain of its executives and directors. These actions allege different claims on behalf of different interests or classes than the Related Actions and VRS does not seek to consolidate the derivative or ERISA actions with the Related Actions.

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,          12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

| | Abbreviated Case Name | Case Number | Date Filed | Class Period Alleged |
|---|---|---|---|---|
| 3. | *Neumann v. Hewlett-Packard Co., et al.* | 3:13-cv-0284-EJD | January 18, 2013 | February 20, 2008 – November 20, 2012 |

Pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). As set forth in more detail below, VRS believes that it is the "most adequate plaintiff" under the PSLRA to serve as Lead Plaintiff in this action. VRS has a very significant financial interest in this matter with losses of approximately $53.4 million during the Class Period.[3] VRS also has a very significant financial interest in this matter with losses of more than $43.4 million for the shorter class period asserted in the *Nicolow* and *Pokoik* actions.

Moreover, VRS is a sophisticated institutional investor with extensive experience acting as a fiduciary and experience serving as a lead plaintiff in securities class actions under the PSLRA. *See e.g., In re MF Global Holdings Limited Sec. Litig.*, Case No. 11 Civ. 07866 (S.D.N.Y.) and *In re Escala Group Inc. Secs. Litig.*, 06 Civ. 03518 (S.D.N.Y.). Accordingly, VRS is precisely the type of lead plaintiff that Congress sought to summon and empower when it enacted the PSLRA. *See Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 WL 5214262, at *4 (S.D. Cal. Dec. 10, 2008) ("[T]he sort of lead plaintiff envisioned by

---

[3] For purposes of determining VRS' "financial interest" under the PSLRA, the Class Period herein has been defined as February 20, 2008 through November 20, 2012 because it is the longest possible class period for the Related Actions. *See Bhojwani v. Pistiolis*, 06 Civ. 13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 52139, at *14 (S.D.N.Y. June 26, 2007) (the court held that consolidating the ten proposed class actions based on the "more inclusive class period" was appropriate). The *Nicolow* and *Pokoik* actions assert class periods starting on August 19, 2011. However, the *Neumann* action asserts an expanded class period of February 20, 2008 through November 20, 2012 based on additional allegations. Ultimately, if the District Court consolidates all three actions, it will be up to the court appointed lead plaintiff to assert the appropriate class period after appointment as lead plaintiff. It is well settled that, after appointment, a lead plaintiff may determine when filing an amended complaint to modify a proposed class period from the class period defined in the original filed complaint(s). *See Eichenholtz v. Verifone Holdings*, No. C 07-06140 MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("The appointed lead plaintiffs can decide how to frame their amended complaint to allege an appropriate class period."); *In re Star Gas Sec. Litig.*, No. 3:04CV1766(JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) ("The appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment.").

1    Congress in the enactment of the PSLRA [is] a sophisticated institutional investor with a real

2    financial interest in the litigation."); *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856

3    MMC, 2008 WL 2220601, at *3 (N.D. Cal. May 27, 2008) ("[B]y enacting the PSLRA,

4    Congress sought to increase the participation of institutional investors in securities class

5    actions.").

6         VRS is a pension fund based in Richmond, Virginia.  As of June 30, 2012, VRS had

7    approximately $53.3 billion in assets under management, serving the needs of approximately

8    600,000 current and retired public employees within the Commonwealth of Virginia. *See* VRS

9    2012 Comprehensive Annual Financial Report, pp. 13 and 16, http://www.varetire.org/pdf/

10   publications/2012-annual-report.pdf.  VRS administers a variety of retirement and benefit plans

11   and programs, including defined-benefit retirement plans, optional defined-contribution

12   retirement plans, Commonwealth of Virginia 457 deferred-compensation and cash-match plans,

13   group life-insurance programs, retiree health-insurance credit programs, sickness and disability

14   and long-term care plans and voluntary group long-term-care insurance programs. *Id.* VRS has

15   the requisite experience and expertise to vigorously represent the class in this action.  Further,

16   VRS believes that it has the largest financial interest of any movant and VRS otherwise meets

17   the requirements to be Lead Plaintiff.  Therefore, VRS respectfully requests consolidation of the

18   Related Actions, appointment as Lead Plaintiff, and appointment of the law firm of Kaplan Fox

19   as lead counsel, which, as explained below, is a national law firm with offices in San Francisco

20   and Los Angeles, and extensive experience in securities and class action litigation.

21   **II.    SUMMARY OF THE PENDING ACTIONS**

22         On November 26, 2012, a securities class action was filed and notice was published to

23   class members on *Business Wire*, as required by 15 U.S.C. § 78u-4(a)(3)(A)(i) of the Exchange

24   Act (the "Notice"). *See* King Decl., Ex. C.  The Notice advised purchasers of Hewlett-Packard

25   securities of the existence of a lawsuit against the defendants and the nature of the defendants'

26   statements, omissions and conduct that allegedly artificially inflated the price of Hewlett-

27   Packard securities.  The Notice further advised class members of their right to move the Court to

28   be appointed Lead Plaintiff within 60 days.  VRS now moves this Court to be appointed as Lead

1    Plaintiff for the Related Actions.[4]

2         **A.    Company Background**

3         Hewlett-Packard was founded in 1939.  The Company's principal executive offices are

4    in Palo Alto, California.  Hewlett-Packard purports to be a leading provider of products,

5    technologies, software, solutions and services to individual consumers, small- and medium-sized

6    businesses and large enterprises, including customers in the government, health and education

7    sectors.  The Company's operations are organized into seven business segments:  (1) Personal

8    Systems Group; (2) Services; (3) Imaging and Printing; (4) Enterprise Servers, Storage and

9    Networking ("ESSN"); (5) HP Software; (6) HP Financial Services; and (7) Corporate

10   Investments.

11        **B.    Factual Allegations**

12             **1.    *Nicolow* and *Pokoik* Actions**

13        On August 18, 2011, Hewlett-Packard announced its intention to acquire Autonomy

14   Corporation plc ("Autonomy") in a $10.2 billion transaction.[5]  In the press release announcing

15   the transaction, Hewlett-Packard's then President and Chief Executive Officer, Leo Apotheker

16   ("Apotheker") stated "Autonomy is a highly profitable and globally respected software

17   company. . . . " *See Nicolow* Compl. ¶ 27.

18        On or about September 14, 2011, HP filed a prospectus on Form 424B5 with the

19   Securities and Exchange Commission ("SEC") for the offer and sale of $4.6 billion in fixed- and

20   floating-rate notes.  The prospectus, among other things, informed investors that the proceeds of

21   the $4.6 billion offering would "be used to facilitate the funding of [Hewlett-Packard's]

22   proposed acquisition of Autonomy. . . ." *See Pokoik* Compl. ¶ 30.

23        On September 13, 2011 during a Deutsche Bank Technology Conference, Apotheker

24   _____

     [4] On January 18, 2013 Plaintiff in the *Neumann* action filed his complaint and issued a notice that
25   alleged a class period of February 20, 2008 to November 20, 2012.  *See* King Decl. Ex. D.

     [5] The factual allegations set forth herein are based on the allegations in the *Nicolow* action (No.
26   3:12-cv-05980-CRB) (Dkt. No. 1), the *Pokoik* action (No. 3:12-cv-06074-CRB) (Dkt. No. 1), and
     the *Neumann* action (No. 3:13-cv-0284-EJD) (Dkt. No. 1).  "*Nicolow* Compl. ¶__", "*Pokoik*
27   Compl. ¶__" and "*Neumann* Compl. ¶__"  shall hereafter refer to paragraphs in the complaints
     filed in these actions.
28

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,                    12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

1    discussed the Autonomy acquisition and stated in relevant part as follows:

2
3
4

> We have a pretty rigorous process inside HP that we follow for all
> of our acquisitions, which is a DCF-based model, and we try to take
> a very conservative view of this.  Just to make sure everybody
> understands, Autonomy will be, on day one, accretive to HP.  For
> FY 2012, Autonomy, once we integrate it, is accretive to HP.

5    *See Pokoik* Compl. ¶ 31.

6          On September 22, 2011, Hewlett-Packard terminated Apotheker as its CEO and

7    announced that Margaret C. Whitman ("Whitman") would be the Company's new President and

8    CEO.  *See Pokoik* Compl. ¶ 32.

9          On October 3, 2011, Hewlett-Packard issued a press release announcing that it had

10   acquired control of Autonomy.  Among other things, the October 3 press release states that "all

11   conditions relating to the offer have now been satisfied, allowing HP to acquire control of

12   Autonomy." *See Pokoik* Compl. ¶ 34.

13         Thereafter, in connection with reporting the Company's financial results for the fiscal

14   year ended October 31, 2011, Hewlett-Packard held a conference call during which Catherine

15   Lesjak, the Company's CFO ("Lesjak") represented with respect to the Autonomy acquisition

16   that "[t]he integration is going well thus far . . . ." *Pokoik* Compl. ¶ 37.

17         On December 7, 2011, the Company filed a prospectus on Form 424B5 with the SEC for

18   the offer and sale of $3.0 billion in fixed-rate notes for proceeds of $3.0 billion.  *Pokoik* Compl.

19   ¶ 38.

20         On December 14, 2011, Hewlett-Packard filed an annual report for the fiscal year ended

21   October 31, 2011 on Form 10-K with the SEC stating, among other things, that "HP recorded

22   approximately $6.6 billion of goodwill and amortizable purchased intangible assets of $4.6

23   billion" in connection with the acquisition of Autonomy.  *Nicolow* Compl. ¶ 34.

24         On August 8, 2012, Hewlett-Packard announced that it expected to record an $8.0 billion

25   goodwill impairment charge within its Services segment.  *Nicolow* Compl. ¶ 41.  On August 22,

26   2012, the Company issued a press release announcing financial results for the third fiscal quarter

27   ended July 31, 2012.  The Company's financial results included a goodwill impairment charge

28   of $8 billion associated with the Services segment.  *Pokoik* Compl. ¶ 51.  Following this news,

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,          12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

1   Hewlett-Packard's stock price declined by $1.57 per share, more than 8%, to close at $17.64 per

2   share on August 23, 2012.  *Pokoik* Compl. ¶ 54.

3          Then, on October 3, 2012, during the Company's October 3, 2012 Security Analyst

4   Meeting, Hewlett-Packard gave a presentation in which the Company, "for the first time,"

5   disclosed a collapse in profitability of the Enterprise Services business within the Services'

6   segment.  The presentation showed that by August 2011, Enterprise Services' operating margin

7   had already decreased nearly 500 basis points – from 10% to 5% -- on $6.0 billion in quarterly

8   revenue.  The Company further revealed that by October 2012, Enterprise Services' operating

9   margin had deteriorated by another 40%, or to 3% on $6.0 billion in quarterly revenue.  *Nicolow*

10   Compl. ¶ 46.  In response to these disclosures, the Company's stock price dropped $2.22 per

11   share, or 13%, on October 3, 2012.  *Nicolow* Compl. ¶ 47.

12          Then, on November 20, 2012, Hewlett-Packard disclosed it had taken an $8.8 billion

13   charge related to its acquisition of Autonomy due to serious accounting improprieties.

14   According to the Company, over $5.0 billion of the write-off was necessary due to the fact that

15   Autonomy's financial results were the product of accounting fraud.  *Nicolow* Compl. ¶ 51.  Also

16   on November 20, 2012, *The Wall Street Journal* ("WSJ") published an article entitled "H-P Says

17   It was Duped, Takes $8.8 Billion Charge."  *Pokoik* Compl. ¶ 64.  As alleged in the complaint,

18   the WSJ article stated that members of Hewlett-Packard's due diligence team noted potential

19   accounting irregularities at the time Autonomy was acquired, and even considered scuttling the

20   Autonomy deal as a result.  *Pokoik* Compl. ¶ 64.   Following the November 20, 2012 news,

21   Hewlett-Packard's stock declined by $1.59 per share or nearly 12%, to close at $11.74 per share

22   on November 20, 2012.  *Pokoik* Compl. ¶ 63.

23                    **2.      *Neumann* Action**

24          In addition to factual allegations relating to the Company's acquisition and disclosures

25   concerning Autonomy, the *Neumann* action asserts that certain defendants misled investors with

26   respect to the Company's "Integrity" line of servers, which is alleged to have historically

27   accounted for a large percentage of Hewlett-Packard's profits.   *Neumann* Compl. ¶ 6.

28   Specifically, the *Neumann* action alleges that throughout the Class Period, Hewlett-Packard

- 7 -

1   "publicly touted the growth aspects of Integrity, even though it had knowledge that Intel had

2   wanted to cease making the Itanium chips, and that the Integrity line of servers would soon

3   become obsolete." *Id.* ¶ 7. Further, according to the *Neumann* action, "in order to keep up the

4   ruse that Intel was actually committed to continuing Itanium chip development, [Hewlett-

5   Packard] and Intel worked out an agreement that Intel would create an illusory roadmap "to

6   create market perception of long term viability" and "each subsequent Itanium chip released by

7   Intel contained few, if any, technological improvements over the prior generations." *Id.*. ¶ 114.

8          Due to the defendants' manipulative actions and violation of securities laws as alleged in

9   the Related Actions, VRS and other similarly situated purchasers of Hewlett-Packard securities

10  suffered tremendous losses on their investments.

11  **III.    ARGUMENT**

12         **A.    This Court Should Consolidate the Related Actions for Purposes of Efficiency**

13         Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure

14  ("Rule 42(a)") is proper when actions involve common questions of law or fact. *See* Fed. R.

15  Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Mohanty v.*

16  *BigBand Networks*, No. C 07-5101 SBA, 2008 WL 426250, at *3 (N.D. Cal. Feb. 14, 2008)

17  (citing *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999)). This

18  Court has broad discretion under this Rule to consolidate cases pending within this district.

19  *Investors Research Co. v. United States Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777 (9th

20  Cir. 1989). Courts have recognized that class action shareholder suits are particularly suited to

21  consolidation because their unification conserves judicial resources, expedites pretrial

22  proceedings, and reduces case duplication, thereby minimizing the time and money spent by

23  everyone involved. *See In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL

24  2905962, at *2 (N.D. Cal. Sept. 8, 2009); *Mohanty*, 2008 WL 426250, at *3 (citing *In re Equity*

25  *Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)). Consolidation also

26  reduces the confusion and delay that may result from prosecuting related class action cases

27  separately. *Mohanty*, 2008 WL 426250, at *3.

28

1          Aside from the additional allegations in the *Neumann* action, the Related Actions assert

2    similar class claims brought on behalf of purchasers of Hewlett-Packard securities for alleged

3    violations of the Exchange Act during the Class Period.  The Related Actions name essentially

4    the same defendants[6] and raise substantially overlapping and interrelated factual and legal issues

5    concerning the following facts that are alleged to have been known by the defendants, but

6    concealed from the investing public during the Class Period:  (1) at the time of the acquisition,

7    Autonomy's operating results and historic growth were the product of accounting improprieties,

8    including the mischaracterization of sales of low-margin hardware as software and the improper

9    recognition of revenue on transactions with Autonomy business partners, (2) at the time

10   Hewlett-Packard agreed to acquire Autonomy the defendants were looking to unwind the deal in

11   light of the accounting irregularities that plagued Autonomy's financial statements; and

12   (3) Enterprise Services' operating margin had collapsed from 10% in 2010 to approximately 6%

13   as of April 30, 2011, 4% as of October 31, 2011, and 3% as of April 30, 2012.[7]  Because the

14   core of the Related Actions arise from the same facts and circumstances and involve the same

15   subject matter, the same discovery and similar class certification issues will be relevant to all of

16   the Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate.  As noted

17   above, the appointed lead plaintiff can decide how to frame their amended complaint.

18              **B.       The Court Should Appoint VRS as Lead Plaintiff**

19                    **1.       VRS Is the "Most Adequate Plaintiff" Under the Exchange Act**

20          The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private

21   action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the

22   Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) and 15 U.S.C. § 78u-4(a)(3)(B)(i).

23   Specifically, within 20 days after the date on which a class action is filed, the plaintiff or

24   _____

25   [6] The *Nicolow* and *Pokoik* actions name Hewlett-Packard, Apotheker, Whitman, Lesjack and
     James T. Murrin as defendants.   The *Pokoik* action also names Autonomy, Deloitte LLP,
     Michael R. Lynch and Sushovan Hussain as defendants. The *Neumann* action also names Mark

26   Hurd, Hewlett-Packard's CEO from January 2005 through August 6, 2010, as a defendant.

27   [7] The *Neumann* action also makes allegations that the defendants made false and misleading
     statements with respect to the "Integrity" line of servers starting on February 20, 2008, but also
     encompasses the factual and legal issues raised in the *Nicolow* and *Pokoik* actions.

28

1   plaintiffs shall cause to be published, in a widely circulated national business-oriented

2   publication or wire service, a notice advising members of the purported plaintiff class –

3           (I)      of the pendency of the action, the claims asserted therein,
            and the purported class period; and

4

5           (II)     that, not later than 60 days after the date on which the notice
            is published, any member of the purported class may move the
            court to serve as lead plaintiff of the purported class.

6

7   15 U.S.C. § 78u-4(a)(3)(A)(i).

8           Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported

9   class members to serve as lead plaintiff in response to any such notice within 90 days after the

10  date of publication of the notice, *or* as soon as practicable after the Court decides any pending

11  motion to consolidate any actions asserting substantially the same claim or claims.  15 U.S.C.

12  § 78u-4(a)(3)(B).

13          Under this section of the Exchange Act, the court "shall" appoint the "most adequate

14  plaintiff," and is to *presume* that plaintiff is the person which:

15          (aa)    has either filed the complaint or made a motion in response
            to a notice . . .;

16

17          (bb)    in the determination of the court, has the largest financial
            interest in the relief sought by the class; and

18          (cc)    otherwise satisfies the requirements of Rule 23 of the
            Federal Rules of Civil Procedure.

19

20  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

21          Under the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the

22  largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23

23  of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the

24  action.  15 U.S.C. § 78u-4(a)(3)(B); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231

25  F.3d 1215, 1217 (9th Cir. 2000); *In re Century Aluminum*, 2009 WL 2905962 at *3; *Query*, 558

26  F. Supp. 2d at 973; *Smajlaj*, 2006 U.S. Dist. LEXIS 97618 at *8.  With losses of approximately

27  $53.4 million, VRS believes it has the largest financial interest of any lead plaintiff movant

28  before the Court.  *See* King Decl. Ex. B.   Moreover, VRS has duly signed and filed a

1    certification stating that it is willing to serve as a representative party on behalf of the class. *See*

2    King Decl. Ex. A. Further, VRS has extensive experience acting as a fiduciary and serving as a

3    lead plaintiff in securities class actions, and is the prototypical lead plaintiff, as envisioned by

4    the PSLRA. Therefore, VRS should be appointed Lead Plaintiff.

5                              **2.      VRS Is Qualified Under Rule 23**

6            The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the

7    requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

8    4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if

9    the following four requirements are satisfied:

10                     (1)    the class is so numerous that joinder of all members is
                             impracticable;
11

12                     (2)    there are questions of law or fact common to the class;

13                     (3)    the claims or defenses of the representative parties are
                             typical of the claims or defenses of the class; and

14                     (4)    the representative parties will fairly and adequately protect
                             the interests of the class.
15

16   Fed. R. Civ. P. 23(a).

17           Of the four prerequisites to class certification, only two – typicality and adequacy –

18   directly address the personal characteristics of the class representatives. Consequently, in

19   deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality

20   and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

21   the lead plaintiff moves for class certification. *See Smajlaj*, 2006 U.S. Dist. LEXIS 97618 at *9;

22   *Richardson v. TVIA, Inc.*, No. C 06 6304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16,

23   2007). As detailed below, VRS satisfies the typicality and adequacy requirements of Rule 23(a),

24   thereby justifying its appointment as Lead Plaintiff for the Related Actions.

25                              **a.      The Claims of VRS Are Typical of the Claims of the Class**

26           The typicality requirement of Rule 23(a) is satisfied when "(1) the claims of the

27   proposed lead plaintiff arise from the same course of conduct that gives rise to the other

28   purported class members' claims, (2) the claims are based on the same legal theory, and (3) the

1   purported class members and proposed lead plaintiff were injured by the same conduct."

2   *Mohanty*, 2008 WL 426250 at *5; *see also Backe*, 2008 WL 5214262 at *4; *Hanlon v. Chrysler*

3   *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[R]epresentative claims are 'typical' if they are

4   reasonably co-extensive with those of absent class members; they need not be substantially

5   identical.").

6          The claims asserted by VRS are based on the same legal theory and arise out of the same

7   course of events as the other purported class members' claims.  VRS purchased Hewlett-Packard

8   securities, as did each member of the proposed class, at prices artificially inflated by the

9   defendants' misrepresentations and omissions and was damaged thereby.  Thus, VRS satisfies

10  the typicality requirement of Rule 23(a).

11                      **b.     VRS Will Fairly and Adequately Represent the Interests of the
                                 Class**
12
            The adequacy requirement of Rule 23(a) is met when the prospective lead plaintiff has
13
    selected qualified, experienced counsel and "there are no conflicts between the representative
14
    and class interests."  *Richardson*, 2007 WL 1129344 at *4; *see In re SiRF*, 2008 WL 2220601 at
15
    *2.  Here, VRS' interests are clearly aligned with the members of the proposed class, and there
16
    is no evidence of any antagonism between VRS' interests and those of the class.  As detailed
17
    above, VRS' claims raise similar questions of law and fact as claims of the members of the
18
    class, and VRS' claims are typical of the members of the class.
19
            Further, VRS has amply demonstrated its adequacy and willingness to serve as and
20
    assume the responsibilities of a lead plaintiff.  *See* King Decl., Exs. A-B.  Having suffered
21
    substantial losses, VRS will be a zealous advocate on behalf of the class.  In addition, VRS has
22
    selected Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to
23
    represent them.  *See* King Decl., Ex. E.  Thus, the close alignment of interests between VRS and
24
    other class members, and its strong desire to prosecute these actions on behalf of the class,
25
    provide ample reason to grant VRS' motion for appointment as Lead Plaintiff in the Related
26
    Actions.    Accordingly, VRS satisfies the prerequisites for appointment as Lead Plaintiff
27
    pursuant to the Exchange Act.
28

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,                    12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

1

   **c.    This Court Should Approve VRS' Choice of Counsel**

2

   The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel,

3

   subject only to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cavanaugh*, 306 F.3d at

4

   732–3 n.11.  Thus, "if the lead plaintiff has made a reasonable choice of counsel, the district

5

   court should generally defer to that choice."  *Cohen v. United States Dist. Court for N. Dist. of*

6

   *Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).  VRS has retained Kaplan Fox to serve as lead counsel

7

   to pursue this litigation on behalf of itself and the class.  Kaplan Fox possesses extensive

8

   experience in the area of securities litigation and has successfully prosecuted numerous

9

   securities class actions on behalf of injured investors.  *See* King Decl., Ex. E.  For example,

10

   Kaplan Fox is co-lead counsel in *In re Bank of America Corp. Sec., ERISA & Der. Litig.*, No.

11

   09-MDL-2058 (S.D.N.Y.), in which a settlement of $2.425 billion was recently announced

12

   pending court approval, and Kaplan Fox settled *In re Merrill Lynch & Co., Inc. Securities,*

13

   *Derivative & ERISA Litigation*, No. 07-cv-9633 (S.D.N.Y.), for $475 million.  Accordingly, the

14

   Court may be assured that, in the event the instant motion is granted, the members of the class

15

   will receive the highest caliber of legal representation available.

16

   **IV.    CONCLUSION**

17

   For all of the foregoing reasons, VRS respectfully requests that the Court:  (1) consolidate

18

   the Related Actions; (2) appoint VRS as Lead Plaintiff in the Related Actions; (3) approve its

19

   choice of Kaplan Fox as lead counsel; and (4) grant such other relief as the Court may deem just

20

   and proper.

21

   DATED:        January 25, 2013              KAPLAN FOX & KILSHEIMER LLP

22

                                        By:    /s/ Laurence D. King

23

                                               Laurence D. King (SBN 206423)
24                                             KAPLAN FOX & KILSHEIMER LLP
                                               350 Sansome Street, Suite 400
25                                             San Francisco, CA 94104
                                               Telephone:  415-772-4700
26                                             Facsimile:  415-772-4707
                                               lking@kaplanfox.com

27

28

NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,            12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert N. Kaplan
Frederic S. Fox
Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
rkaplan@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com

Counsel for Lead Plaintiff Movant The Virginia
Retirement System

- 14 -

1

**CERTIFICATE OF SERVICE**

2

3          I, Laurence D. King, hereby certify that on January 25, 2013, I caused the foregoing to be

4     filed with the Court using the CM/ECF system, which will send electronic notices of the filing to

5     all counsel of record.

6

7                                        /s/ Laurence D. King
                                        Laurence D. King

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -
NOT OF MTN, MTN & MEM OF P&A IN SUPP OF MTN TO CONSOLIDATE,          12-cv-05980-CRB
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL