1  Laurence D. King (SBN 206423)
   KAPLAN FOX & KILSHEIMER LLP
2  350 Sansome Street, Suite 400
   San Francisco, CA 94104
3  Telephone:  415-772-4700
   Facsimile:   415-772-4707
4  Email:  lking@kaplanfox.com

5  Robert N. Kaplan
   Frederic S. Fox
6  Donald R. Hall
   KAPLAN FOX & KILSHEIMER LLP
7  850 Third Avenue
   New York, NY 10022
8  Telephone:  212-687-1980
   Facsimile:   212-687-7714
9  rkaplan@kaplanfox.com
   ffox@kaplanfox.com
10 dhall@kaplanfox.com

11 Counsel for Lead Plaintiff Movant
   The Virginia Retirement System
12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16
   ALLAN J. NICOLOW, Individually and on        Case No. 3:12-cv-05980-CRB
17 Behalf of All Others Similarly Situated,
                                                **CLASS ACTION**
18                      Plaintiff,
                                                **MEMORANDUM OF POINTS AND**
19           v.                                 **AUTHORITIES       IN      FURTHER**
                                                **SUPPORT      OF     THE    VIRGINIA**
20 HEWLETT-PACKARD COMPANY, LEO                 **RETIREMENT SYSTEM'S ("VRS")**
   APOTHEKER, MARGARET C. WHITMAN,              **MOTION  TO:  (1)  CONSOLIDATE**
21 CATHERINE A. LESJAK and JAMES T.             **THE    RELATED    ACTIONS;    (2)**
   MURRIN,                                      **APPOINT VRS AS LEAD PLAINTIFF;**
22                                              **AND (3) APPROVE VRS' CHOICE OF**
                        Defendants.             **LEAD COUNSEL; AND OPPOSITION**
23                                              **TO ALL COMPETING MOTIONS**

24                                              Judge:       Honorable Charles R. Breyer
                                                Courtroom:   6, 17th Floor
25                                              Date:        March 1, 2013
                                                Time:        10:00 AM
26 *[caption continues on next page]*

27

28

1    DAVIN POKOIK, Individually and on Behalf    Case No. 3:12-cv-06074-CRB
     of All Others Similarly Situated,

2

3               Plaintiff,

4       v.

5    HEWLETT-PACKARD COMPANY,
     AUTONOMY CORPORATION PLC,

6    DELOITTE LLP, LEO APOTHEKER,
     MARGARET C. WHITMAN, CATHERINE

7    A. LESJAK, JAMES T. MURRIN, MICHAEL
     R. LYNCH, and SUSHOVAN HUSSAIN,

8               Defendants.

9

10    PAUL NEUMANN, Individually and on Behalf    Case No. 3:13-cv-00284-EJD
      of All Others Similarly Situated,

11

12               Plaintiff,

13       v.

14    HEWLETT-PACKARD COMPANY,
     MARGARET C. WHITMAN, LEO

15    APOTHEKER, JAMES T. MURRIN,
     CATHERINE LESJAK, and MARK HURD,

16               Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  SUMMARY ................................................................................................ 1

II. ARGUMENT ............................................................................................. 3

    A.  The PSLRA Process for Selecting a Lead Plaintiff .................................. 3

    B.  Under Any Measure, VRS Has the Largest Financial Stake in the
        Controversy and Therefore is Presumptively the Most Adequate Plaintiff ........... 4

        1. VRS Has the Largest Financial Interest Based on Net Shares
           Purchased...………………………………………………..………4

        2. VRS Has the Largest Financial Interest Applying the *Olsten-Lax*
           Factors…………………………………………...……….......5

        3. VRS Has a Larger Financial Interest than Any of the Members of the PGGM
           Group……………………………...…………………………7

    C.  The PGGM Group Does Not Satisfy the Typicality and Adequacy
        Requirements of Rule 23......................................................................... 8

    D.  VRS Satisfies the Typicality and Adequacy Requirements of Rule 23 ............... 10

III. CONCLUSION........................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boyd v. NovaStar Financial, Inc.*,
No. 07-0139-CV-W-ODS, 2007 U.S. Dist. LEXIS 49528 (W.D. Mo. July 9, 2007)............... 7

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ........................................................................................................... 1

*Eichenholtz v. Verifone Holdings, Inc.*,
No. 07-cv-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).......... 2, 4, 5

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) ........................................................................... 7

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007) ....................................................................................... 9

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) ......................................................................................... 9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002)........................................................................................... 1, 3

*In re Comdisco Sec. Litig.*,
150 F. Supp. 2d 943 (N.D. Ill. 2001) .................................................................................. 9

*In re Critical Path Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................................ 4, 7

*In re McKesson HBOC, Inc., Sec. Litig.*,
97 F. Supp. 2d 993 (N.D. Cal. 1999) ............................................................................. 3, 4, 9

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................... 2, 5, 6

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................... 2

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005)........................ 4

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ................................ 2

*Perlmutter v. Intuitive Surgical Inc.*,
No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ........ *passim*

*Ruland v. Infosonics Corp.*,
No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) .... 4, 6, 8

*Schonfield v. Dendreon Corp.*,
No. C07-800MJP, 2007 U.S. Dist. LEXIS 76816 (W.D. Wash. Oct. 4, 2007) .................... 3, 4

- iii -

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Schueneman v. Arena Pharms., Inc.*,
   No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011)..... *passim*

*Weisz v. Calpine Corp.*,
   No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ................. 3, 9

*Woburn Retirement Sys. v. Omnivision Techs., Inc.*,
   No. 5:11-cv-05372 LHK, 2012 U.S. Dist. LEXIS 2159 (N.D. Cal. Feb. 21, 2012) .......... 2, 4, 6

**STATUTES**

15 U.S.C.
   § 78u-4(a)(3)(B)(ii) ................................................................................................... 12
   § 78u-4(a)(3)(B)(v) .................................................................................................... 12
   § 78u-4(a)(3)(B) .......................................................................................................... 1

The Securities Exchange Act of 1934
   Section 21D(a)(3)(B) .................................................................................................... 1

**RULES**

Federal Rules of Civil Procedure
   Rule 23 ........................................................................................................... 1, 8, 10
   Rule 23(a) ........................................................................................................... 10
   Rule 42(a) ........................................................................................................... 10

MEM OF P&A IN FURTHER SUPP OF VRS' MTN TO CONSOLIDATE,
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL
AND OPP TO ALL COMPETING MTNS

12-cv-05980-CRB

## I.      SUMMARY

The Virginia Retirement System ("VRS") respectfully submits this memorandum in further support of its motion: (1) for consolidation of the Related Actions; (2) to be appointed as Lead Plaintiff in the securities action against Hewlett-Packard Company ("Hewlett-Packard" or the "Company"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) for approval of its selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel for the class; and in opposition to all competing motions.

Presently pending before this Court are four[1] motions for consolidation and appointment of lead plaintiff and approval of lead counsel under the PSLRA.[2]  The PSLRA provides that the movant with the largest financial interest in the relief sought by the class, who otherwise satisfies the "typicality" and "adequacy" requirements of Federal Rule of Civil Procedure 23 ("Rule 23"), is the "most adequate plaintiff" and shall be appointed lead plaintiff.

In determining the movant with the largest financial interest, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Courts in this Circuit have equated largest financial interest with "potential recovery," citing the Supreme Court's distinction between economic losses and recoverable damages in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). *See Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *12-14 (S.D. Cal. Aug. 8, 2011) (citation omitted). These courts reason that the movant with the most to gain from a lawsuit is the plaintiff with the largest amount of potentially recoverable damages rather than pure economic loss. Accordingly,

---

[1] Originally six motions were filed.  Two movants, David Wagner and the "Electrical Workers" group comprised of IBEW Local 640/Arizona NECA Pension Trust Fund and IBEW Local Union Nos. 570 and 518 and Southern Arizona NECA Pension Trust Fund, withdrew their motions, recognizing that other movants appear to have larger financial interests.

[2] Only one of the four remaining movants, the "Central States Group," comprised of Central States, Southeast and Southwest Areas Pension Fund ("Central States") and Strathclyde Pension Fund ("Strathclyde"), has not sought to consolidate the actions.

because net shares purchased is a more accurate reflection of each movant's potential damage recovery than LIFO or FIFO—LIFO and FIFO having the potential to inflate damages by failing to account for shares sold at an artificially inflated price—courts have looked to net shares purchased in selecting the movant with the largest financial interest. *Id.* (appointing movant with most net shares, but with smaller LIFO losses, the court notes that "[c]ourts that focus on potential recovery place the greatest weight on the number of net shares purchased during the class period and disregard losses and gains"); *see also Perlmutter v. Intuitive Surgical Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *20-21 (N.D. Cal. Feb. 15, 2011) ("Courts that equate largest financial interest with potential recovery generally place the greatest weight on the number of net shares purchased during the class period."); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *10 (N.D. Cal. Aug. 22, 2008) ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *In re Network Assocs.*, *Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."). Under this analysis, VRS—with net shares purchased during the period of 2,588,4822—is the movant with the largest financial interest and therefore presumptively the most adequate lead plaintiff.[3]

   Courts in the Ninth Circuit have also used the *Olsten-Lax* factors to determine the movant with the largest financial interest. *See Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-cv-05372 LHK, 2012 U.S. Dist. LEXIS 21590, at *33-34 (N.D. Cal. Feb. 21, 2012) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997))); *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *24-25; *Schonfield v. Dendreon Corp.*,

---

[3] The next two movants with the highest net shares purchased are the PGGM Group, and the Central States Group with 537,181 and 1,883,667 net shares purchased, respectively. The "PGGM Group" is comprised of PGGM Vermogensbeheer B.V. ("PGGM"), the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund ("OCSF"), Oregon Public Employees Retirement Fund ("OPERF"), and Oklahoma Teachers Retirement System ("Oklahoma").

No. C07-800MJP, 2007 U.S. Dist. LEXIS 76816, at *9 (W.D. Wash. Oct. 4, 2007). Under this test, VRS clearly has a larger financial interest than the Central States Group as three of the four factors favor VRS. With respect to the PGGM Group, VRS prevails in two of the four factors, including the net shares purchased during the Class Period. Moreover, the PGGM Group includes a member (PGGM) who is **both** a net seller (PGGM sold a million shares more than it purchased during the Class Period) **and** net gainer (PGGM realized $26.7 million more from sales than purchases during the Class Period). Such a trading pattern hardly suggests the greatest financial interest and, not surprisingly, courts within this Circuit have uniformly refused to appoint as lead plaintiff net sellers who gained from the purchase and sale of shares of artificially inflated stock. *See Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *27-30; *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *27-28 (N.D. Cal. Aug. 19, 2002); *In re McKesson HBOC, Inc., Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999).

## II.     ARGUMENT

### A.     The PSLRA Process for Selecting a Lead Plaintiff

As recognized in the Ninth Circuit, the lead plaintiff appointment process requires the Court to (i) determine which movant "has the most to gain from the lawsuit," and then (ii) determine if Rule 23 is satisfied. *Cavanaugh*, 306 F.3d at 729.  Neither the PSLRA nor the Ninth Circuit has prescribed a particular method of calculating the largest financial interest in the relief sought by the Class. The *Cavanaugh* Court noted that the district court "may select accounting methods that are both rational and consistently applied," but did not dictate the appropriate method. *Id.* at 730 n.4. In situations where multiple movants have come forward, many courts in this Circuit have relied on methods that focus on net shares and/or approximate recovery based on net shares. *See, e.g., Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14-15 ("Courts that focus on potential recovery place the greatest weight on the number of net shares purchased during the class period and disregard losses and gains"); *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *19 ("Courts that equate largest financial interest with potential recovery generally place the greatest

weight on the number of net shares purchased during the class period"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *10 ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *21-22 (N.D. Cal. May 3, 2005) (Using the net shares approach, "the Court considers the 'number of net shares purchased during the class period' coupled with the 'losses suffered by selling shares during the class period.'") (citing *In re Critical Path Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("Under the [potential recovery] approach, the number of net shares purchased during the class period is determinative.")). Other courts have favored the *Olsten-Lax* factor test that considers the following: (1) the total number of shares purchased during the class period; (2) the net number of shares purchased during the class period; (3) the net funds expended, or gained, during the class period; and (4) the approximate losses suffered. *See, e.g.*, *Woburn Ret. Sys.*, 2012 U.S. Dist. LEXIS 21590, at *33-34 (citations omitted); *Ruland v. Infosonics Corp.*, No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *16 (S.D. Cal. Oct. 23, 2006); *Schonfield*, 2007 U.S. Dist. LEXIS 76816, at *9.

###### B.    Under Any Measure, VRS Has the Largest Financial Stake in the Controversy and Therefore is Presumptively the Most Adequate Plaintiff

With multiple movants seeking lead plaintiff status in these actions, VRS herein analyzes its financial interest based on all of the metrics relied upon by courts in the Ninth Circuit. A thorough analysis of all of these factors demonstrates that VRS has the largest financial interest and, therefore, is presumptively the most adequate lead plaintiff.

###### 1.    VRS Has the Largest Financial Interest Based on Net Shares Purchased

Courts in this Circuit have favored the "net shares" and approximate recovery methods for identifying the candidate with the largest financial interest in the relief sought. Under this methodology the court calculates each movant's "net shares" by "subtract[ing] the number of shares sold by a candidate from those purchased during the class period." *Network Assocs.*, 76 F.

1    Supp. 2d at 1027. The result provides net shares purchased—a metric that has been found to be a

2    good approximation of which movant "will normally have the largest potential damage recovery."

3    *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14; *see also Perlmutter*, 2011 U.S. Dist. LEXIS

4    16813, at *19 (using a retained shares methodology relying on net shares to determine financial

5    interest); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *10-12 (same). As shown below, VRS

6    has by far, the greatest financial interest based on the greatest number of net shares purchased

7    during the Class Period.

8

9
| Lead Plaintiff Movant | Net Shares Purchased[4] |
|---|---|
| VRS | 2,588,482 |
| The PGGM Group | 537,181 |
| The Central States Group | 1,883,667 |
| The Smiley Group[5] | 42,000 |

10

11

12       Under this analysis, it is indisputable that VRS—which has more net shares purchased

13    than all of the other movants combined—is presumptively the most adequate plaintiff.

14            **2.     VRS Has the Largest Financial Interest Applying the *Olsten-Lax***
             **Factors**

15

16       Courts have also used the *Olsten-Lax* factors (one of which is net shares) to determine

17    which movant has the greatest financial interest. Based on this analysis, the only movants

18    arguably in contention as the presumptive lead plaintiff are VRS and the PGGM Group.

19

20

21

22

23

24    _____
      [4] *See* Exhibits A-D to the Declaration of  Laurence D. King in Further Support of the Virginia

25    Retirement System's ("VRS") Motion to: (1) Consolidate the Related Actions and Opposition to
      All Competing Motions; (2) Appoint VRS as Lead Plaintiff; and (3) Approve VRS' Choice of

26    Lead Counsel; and Opposition to All Competing Motions, dated February 8, 2013 ("February 8
      King Decl.").

27    [5] The Smiley Group consists of three individuals – Lloyd G. Smiley, Peter Cheng Wang, and
      Galen A. Etemad.

28

| Lead Plaintiff Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Total Estimated Loss (LIFO)[6] |
|---|---|---|---|---|
| VRS[7] | 7,713,277 | 2,588,482 | $37,213,759 | $39,988,719 |
| The PGGM Group[8] | 19,794,820 | 537,181 | $17,471,340 | $85,256,418 |
| The Central States Group[9] | 4,175,728 | 1,883,667 | $47.5 million | $34.9 million |
| The Smiley Group[10] | 60,955 | 42,000 | $1,036,452 | $458,737 |

As between VRS and the PGGM Group, each movant prevails on two of the four *Olsten-Lax* factors. VRS purchased 4-5 times as many net shares and expended more than twice as many net dollars as the PGGM Group during the Class Period. By contrast, the PGGM Group claims to have purchased the greatest number of shares during the Class Period and claims to have a higher estimated LIFO loss than VRS. Of the four factors, net shares purchased (the factor that favors VRS) has been cited as a determining factor as it is the most accurate reflection of "potential recovery." *See, e.g.*, *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14; *Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16 (citing *Network Assocs.*, 76 F. Supp. 2d at 1027); *Critical Path*, 156 F.

---

[6] The weight of authority in this district is that LIFO, not FIFO, is a better measure of estimated loss when analyzing the *Olsten-Lax* factors. *See Woburn Ret. Sys.*, 2012 U.S. Dist. LEXIS 21590, at *33-34 (noting that LIFO is a better measure of estimated loss); *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *32-33 (same).

[7] Charts calculating VRS' shares purchased, net shares purchased, net funds expended and estimated LIFO loss during the Class Period are attached as Exhibit A to the February 8 King Decl.

[8] The estimated LIFO loss of the PGGM Group comes from the PGGM Group's moving papers. Charts calculating the PGGM Group's shares purchased, net shares purchased and net funds expended during the Class Period are attached as Exhibit B to the February 8 King Decl.

[9] The estimated LIFO loss and net funds expended for the Central States Group comes from the Central States Group's Memorandum of Law in Opposition to Competing Motions for Appointment of Lead Plaintiff filed February 8, 2013 (ECF No. 71). Charts calculating the Central States Group's shares purchased and net shares purchased are attached as Exhibit C to the February 8 King Decl.

[10] The estimated LIFO loss of the Smiley Group comes from the Smiley Group's moving papers. Charts calculating the Smiley Group's shares purchased, net shares purchased and net funds expended during the Class Period are attached as Exhibit D to the February 8 King Decl.

MEM OF P&A IN FURTHER SUPP OF VRS' MTN TO CONSOLIDATE, APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL AND OPP TO ALL COMPETING MTNS

12-cv-05980-CRB

Supp. 2d at 1108.[11]  In addition, PGGM, the member that accounts for almost half of the PGGM

Group's LIFO loss, is a net seller and net gainer receiving over $26.7 million from the net sales

during the Class Period. As a net seller and net gainer, PGGM arguably profited from the fraud,

and this alone disqualifies the PGGM Group as lead plaintiff. *See Perlmutter*, 2011 U.S. Dist.

LEXIS 16813, at *30.

### 3. VRS Has a Larger Financial Interest than Any of the Members of the PGGM Group

Indeed, if the court compares VRS's financial interest to each of the members of the

PGGM Group,[12] without question, VRS is the single movant with the largest financial interest.

VRS has the largest net shares purchased, net funds expended and LIFO loss.

| Lead Plaintiff Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Total Estimated Loss (LIFO) |
|---|---|---|---|---|
| VRS | 7,713,277 | 2,588,482 | $37,213,759 | $39,988,719 |
| PGGM | 12,165,825 | (1,003,263) | ($26,750,863) | $36,956,129 |
| OPERF | 5,385,225 | 716,654 | $17,473,039 | $29,461,355 |
| OCSF | 160,770 | 8,089 | $274,495 | $156,411 |
| Oklahoma | 2,083,000 | 815,701 | $26,474,668 | $18,682,522 |

Although courts have aggregated losses of individual members of a group to determine the

greatest financial interest, some courts have refused to do so.  *See Frias v. Dendreon Corp.*, 835

F. Supp. 2d 1067, 1074 (W.D. Wash. 2011) (refusing to aggregate a group of investors where no

---

[11] Courts consider total shares purchased (which favors the PGGM Group) to be the least important factor. *See, e.g.*, *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *36 (the fact that a movant purchased, by far, the most stock during the class period was less important than movant's sale of more shares of stock than purchased (net shares purchased) and receipt of more funds than expended (net expenditures) during the class period), *Boyd v. NovaStar Financial, Inc.*, No. 07-0139-CV-W-ODS, 2007 U.S. Dist. LEXIS 49528, at *13 (W.D. Mo. July 9, 2007) ("[T]he number of shares purchased during the class period is less relevant than the *net* number of shares purchased during the class period, as the latter figure will represent the number of shares purchased after the fraud and held when the fraud was revealed.").  Accordingly, the PGGM Group's LIFO loss can be the only grounds for the group to claim the largest financial interest. However, although some courts have described the fourth factor (loss) as the most important, *see, e.g.*, *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *31, the PGGM Group's LIFO loss should be afforded less weight here because PGGM, the member that accounts for almost half of the group's LIFO loss, is a net seller who profited from its Class Period sales.

[12] The estimated LIFO losses for each of the members of the PGGM Group come from the PGGM Group's moving papers. The shares purchased, net shares purchased and net funds expended for each of the members of the PGGM Group are calculated as shown in Exhibit B to the February 8 King Decl. based entirely on transactional data provided by the PGGM Group in its moving papers.

MEM OF P&A IN FURTHER SUPP OF VRS' MTN TO CONSOLIDATE,
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL
AND OPP TO ALL COMPETING MTNS

12-cv-05980-CRB

one member of the group could claim the largest financial interest in the litigation); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at *10-11 (finding that the "tie that binds the members of each group is representation by the same lawyers," the court looked "at each movant individually when evaluating who should be appointed lead plaintiff"). In circumstances such as here, where the issue of selecting the movant with the largest financial interest is highly contested, disaggregating the losses of a group to compare the financial interests of movants on an individual basis is fitting.

### C.   The PGGM Group Does Not Satisfy the Typicality and Adequacy Requirements of Rule 23

As demonstrated above, VRS has the largest financial interest in this litigation as measured by the two main methods utilized by courts in this District—the net shares method and the *Olsten-Lax* factors. VRS indisputably purchased the most net shares, more than all of the other movants combined. Applying the *Olsten-Lax* factors, VRS prevails because it has a greater financial interest based on the *Olsten-Lax* factor identified by courts as being the most reliable measure of "potential recovery"—net shares purchased. In addition, VRS has the most net shares purchased and highest LIFO losses compared to any individual member of the PGGM Group. Nonetheless, even if the Court were to determine that the PGGM Group is the movant with the largest financial interest, the Court should appoint VRS as lead plaintiff because the PGGM Group is subject to unique defenses, making the PGGM Group atypical and inadequate under Rule 23.

Specifically, the PGGM Group includes as one its members, PGGM, a net seller and net gainer from its transactions in Hewlett-Packard common stock. PGGM sold more than one million more shares of HP common stock than it purchased during the Class Period and received more than $26.7 million from those sales than it spent on the purchases. As such, PGGM is subject to an argument from defendants that it has no actual damages and thus no claim. *See Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *30 (a net seller and net gainer "may be subject to unique defenses if he were to be the class representative"). In similar situations, courts have uniformly rejected a motion for appointment as lead plaintiff where the proposed lead plaintiff is

a net seller who has ***profited*** from the purchase and sale of a defendant's shares during the class period. *Weisz*, 2002 U.S. Dist. LEXIS 27831, at *27-28 (removing a movant from consideration as lead plaintiff where the movant had sold twice as many shares during the class period as it had purchased and may have actually profited as a result of the artificial inflation of the stock); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (noting that because the movant "received more proceeds from the sales of Bausch & Lomb securities than it expended during the Class Period (the third *Olsten* factor)," movant was "a 'net gainer,' as well as being a 'net seller' (the second *Olsten* factor). Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices."); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003) (rejecting a movant who received more in proceeds from selling shares than it paid to purchase shares during the class period); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (the court held that a movant was "totally out of the running" where the movant had a seemingly large $2.4 million FIFO loss, but derived a "net gain" of $300,000 by netting its purchases and sales during the class period). Further, aside from potentially having no damages or claim, a net seller who profited from the fraud may have a reduced incentive to litigate. *McKesson HBOC*, 97 F. Supp. 2d at 996-97 (the court found the "net funds inquiry" to be helpful and stated that a net seller who arguably profited from the fraud with greater receipts than cash outlays possibly had a reduced incentive to litigate).

Indeed, as demonstrated by the PGGM Group filings, while PGGM bought over 12 million shares of Hewlett-Packard stock during the Class Period, PGGM also sold over 13 million shares during the same time frame gaining over $26.7 million from its net sales of Hewlett-Packard shares. Therefore, the Court should reject PGGM's motion for appointment. *Comdisco*, 150 F. Supp. 2d at 945-46 (finding that plaintiff which sold more shares than it purchased during the class period was "totally out of the running for designation as lead plaintiff"); *Weisz*, 2002 U.S. Dist. LEXIS 27831, at *27-28 (same).

MEM OF P&A IN FURTHER SUPP OF VRS' MTN TO CONSOLIDATE,
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL
AND OPP TO ALL COMPETING MTNS

12-cv-05980-CRB

1

### D.   VRS Satisfies the Typicality and Adequacy Requirements of Rule 23

2

In addition to possessing the largest financial interest in the relief sought by the class,

3

VRS otherwise satisfies the requirements of Rule 23. The claims asserted by VRS, a large

4

sophisticated public pension fund with prior experience as lead plaintiff, are based on the same

5

legal theory and arise out of the same course of events as the other purported class members'

6

claims. VRS purchased Hewlett-Packard securities, as did each member of the proposed class, at

7

prices artificially inflated by the defendants' misrepresentations and omissions and was damaged

8

thereby.   Thus, VRS satisfies the typicality requirement of Rule 23(a). VRS also satisfies the

9

adequacy requirement of Rule 23(a) because there are no conflicts between the representative and

10

class interests. Having suffered substantial losses, VRS will be a zealous advocate on behalf of

11

the class. Currently, VRS is lead plaintiff in only one other securities case, *In re MF Global*

12

*Holdings Limited Sec. Litig.*, No. 11 Civ. 07866 (S.D.N.Y.), with ample resources to handle

13

appointment as lead plaintiff in this case. In addition, VRS has selected Kaplan Fox—counsel

14

highly experience in prosecuting securities class actions—to represent them. As a single entity

15

represented by a single law firm, there is no question that VRS will operate efficiently and

16

effectively as the lead plaintiff in the instant case.

17

### III.   CONCLUSION

18

For the reasons set forth in VRS' opening brief and supporting papers and for the reasons

19

set forth above, the Court should consolidate the Related Actions pursuant to the PSLRA and Fed.

20

R. Civ. P. 42(a). Because VRS has the largest financial interest in this litigation and satisfies the

21

other requirements of Rule 23, and therefore is the Most Adequate Plaintiff, the Court should

22

appoint VRS as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Finally, because the PSLRA

23

vests authority in the Lead Plaintiff to select and retain counsel to represent the class, subject to

24

the Court's approval, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), and because counsel for the VRS clearly

25

///

26

///

27

///

28

1    has the aptitude, skills, and resources to prosecute these class actions, the Court should approve

2    and appoint VRS' choice of Lead Counsel.

3

4    DATED: February 8, 2013                    KAPLAN FOX & KILSHEIMER LLP

5                                        By:   /s/ Laurence D. King

6                                              Laurence D. King (SBN 206423)
                                               KAPLAN FOX & KILSHEIMER LLP
                                               350 Sansome Street, Suite 400
7                                              San Francisco, CA 94104
                                               Telephone:  415-772-4700
8                                              Facsimile:  415-772-4707
                                               lking@kaplanfox.com
9
                                               Robert N. Kaplan
10                                             Frederic S. Fox
                                               Donald R. Hall
11                                             KAPLAN FOX & KILSHEIMER LLP
                                               850 Third Avenue
12                                             New York, NY 10022
                                               Telephone:  212-687-1980
13                                             Facsimile:  212-687-7714
                                               rkaplan@kaplanfox.com
14                                             ffox@kaplanfox.com
                                               dhall@kaplanfox.com
15
                                               Counsel for Lead Plaintiff Movant
16                                             The Virginia Retirement System

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, Laurence D. King, hereby certify that on February 8, 2013, I caused the foregoing to be filed with the Court using the CM/ECF system, which will send electronic notices of the filing to all counsel of record.

/s/ Laurence D. King
Laurence D. King

MEM OF P&A IN FURTHER SUPP OF VRS' MTN TO CONSOLIDATE,
APPT LEAD PLTF & APPROVE LEAD PLTF'S CHOICE OF COUNSEL
AND OPP TO ALL COMPETING MTNS

12-cv-05980-CRB