KESSLER TOPAZ MELTZER
  & CHECK, LLP
RAMZI ABADOU (Bar No. 222567)
ELI R. GREENSTEIN (Bar No. 217945)
STACEY M. KAPLAN (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax:  (415) 400-3001
rabadou@ktmc.com
egreenstein@ktmc.com
skaplan@ktmc.com

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
NIKI L. MENDOZA (Bar No. 214646)
JONATHAN D. USLANER (Bar No. 256898)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:  (858) 793-0070
Fax:  (858) 793-0323
blairn@blbglaw.com
nikim@blbglaw.com
jonathanu@blbglaw.com

*Counsel for PGGM Vermogensbeheer B.V., the State of Oregon by
and through the Oregon State Treasurer on behalf of the Common
School Fund and, together with the Oregon Public Employees
Retirement Board, on behalf of the Oregon Public Employees
Retirement Fund and Oklahoma Teachers Retirement System and
Proposed Co-Lead Counsel for the Class*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLAN J. NICOLOW, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>HEWLETT-PACKARD COMPANY, LEO APOTHEKER, MARGARET C. WHITMAN, CATHERINE A. LESJAK, and JAMES T. MURRIN,<br><br>               Defendants. | Case No. CV-12-05980 CRB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF PGGM, OREGON AND OKLAHOMA FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO THE COMPETING MOTIONS**<br><br>Date:    March 1, 2013<br>Time:   10:00 a.m.<br>Room:  6 – 17th Floor<br>Judge:  Charles R. Breyer |

*(Additional caption on following page)*

| | |
|---|---|
| DAVIN POKOIK, Individually and on Behalf of All Others Similarly Situated, | Case No. CV-12-06074 CRB |
| Plaintiff, | |
| v. | |
| HEWLETT-PACKARD COMPANY, AUTONOMY CORPORATION PLC, DELOITTE LLP, LEO APOTHEKER, MARGARET C. WHITMAN, CATHERINE A. LESJAK, JAMES T. MURRIN, MICHAEL R. LYNCH, and SUSHOVAN HUSSAIN, | |
| Defendants. | |

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT .................................................................................1

II. ARGUMENT .................................................................................................4

    A.    PGGM, Oregon and Oklahoma Are the Most Adequate Plaintiff...................4

        1.    PGGM, Oregon and Oklahoma Have the Largest Financial Interest in the Relief Sought by the Class .............................................4

        2.    PGGM, Oregon and Oklahoma are Adequate ....................................5

    B.    VRS Does Not Possess the Largest Financial Interest ....................................6

        1.    PGGM, Oregon and Oklahoma Have the Largest Loss Under a Proper Application of the "Retained Shares" Methodology..........................................................................................7

        2.    Actual Losses Better Reflect the "Potential Recovery" Before this Court ..................................................................................9

    C.    VRS's "Net Seller" and "Net Gainer" Arguments Against PGGM Are Moot ......................................................................................11

    D.    The Pension Funds' Motion Should Be Denied .............................................14

III. CONCLUSION .................................................................................................14

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Carson v. Clarent Corp.*,
    2001 WL 1782712 (N.D. Cal. 2001)........................................................4, 7

*Cha v. Kinross Gold Corp.*,
    2012 WL 2025850 (S.D.N.Y. 2012).............................................................5

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    2012 WL 78780 (N.D. Cal. 2012)..................................................3, 4, 5, 14

*Cohen v. Escala Grp., Inc.*,
    No. 06-cv-03518-AKH (S.D.N.Y.) ..............................................................2

*Commercial Space Mgmt. Co. v. Boeing Co.*,
    193 F.3d 1074 (9th Cir. 1999)...............................................................3, 11

*DeAngelis v. Corzine*,
    No. 11-cv-07866-VM (S.D.N.Y.) ...............................................................7

*Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*,
    2012 WL 3192232 (7th Cir. 2012) ...........................................................11

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. 2008)........................................................7, 9

*Frank v. Dana Corp.*,
    237 F.R.D. 171 (N.D. Ohio 2006)...............................................................4

*Hodges v. Immersion Corp.*,
    2009 WL 5125917 (N.D. Cal. 2009).................................................4, 12, 13

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009)................................................................6

*In re Bausch & Lomb Inc. Sec. Litig.*,
    244 F.R.D. 169 (W.D.N.Y. 2007) .............................................................12

*In re Brocade Commc'ns, Sys., Inc. Sec. Litig.*,
    No. C 05-02042 CRB (N.D. Cal.) ......................................................passim

*In re Cable & Wireless, PLC Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003).........................................................11, 12

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................passim

*In re Clarent Corp. Sec. Litig.*,
   No. C 01-3361 CRB (N.D. Cal.) ...................................................................10

*In re Comdisco Sec. Litig.*,
   150 F. Supp. 2d 943 (N.D. Ill. 2001)..........................................................12

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008)....................................................................5

*In re JPMorgan Chase & Co. Sec. Litig.*,
   No. 12-cv-03852-GBD (S.D.N.Y.) ........................................................4, 12, 13

*In re Leadis Tech, Inc. Sec. Litig.*,
   No. C 05-0882 CRB (N.D. Cal.) ..............................................................5, 10

*In re Magma Design Automation, Inc., Sec. Litig.*,
   No. C 05-2394 CRB (N.D. Cal.) ...................................................................10

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999)........................................................9, 13

*In re MF Global Holdings, Ltd. Sec. Litig.*,
   No. 11 Civ. 07866 (S.D.N.Y.) .........................................................................6

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999)...........................................................9

*In re Providian Financial Corp. Sec. Litig.*,
   No. C 01-3952 CRB (N.D. Cal.) ...................................................................10

*In re Schering-Plough Corp. Sec. Litig.*,
   2003 WL 25547564 (D.N.J. 2003)...............................................................12

*In re ShoreTel, Inc. Sec. Litig.*,
   No. C 08-00271 CRB (N.D. Cal.) .................................................................10

*In re Solectron Corp. Sec. Litig.*,
   No. C 03-0986 CRB (N.D. Cal.) ..............................................................5, 10

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
   No. 06-cv-01691 (D. Minn. 2006)................................................................12

*In re UTStarcom, Inc. Sec. Litig.*,
   2010 WL 1945737 (N.D. Cal. 2010)......................................................10, 12

*In re Zynga Inc. Sec. Litig.*,
   2013 WL 257161 (N.D. Cal. 2013)................................................................4

*Jaffe Pension Plan v. Household Int'l, Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010).............................................................10

*Neumann v. Hewlett-Packard Co.*,
 No. C 13-00284 EJD (N.D. Cal.) ................................................................*passim*

*Nicolow v. Hewlett-Packard Co.*,
 No. 12-cv-05980-CRB (N.D. Cal.) .................................................................. 1, 14

*Perlmutter v. Intuitive Surgical, Inc.*,
 2011 WL 566814 (N.D. Cal. 2011)................................................................*passim*

*Plichta v. SunPower Corp.*,
 No. 09-cv-05473-CRB (N.D. Cal.) ......................................................................5, 6

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*,
 2004 WL 5326262 (N.D. Cal. 2004) .....................................................................12

*Pokoik v. Hewlett-Packard Co.*,
 No. 12-cv-06074-CRB (N.D. Cal.) .........................................................................14

*Rafton v. Rydex Series Funds*,
 2010 WL 2629579 (N.D. Cal. 2010) ................................................................4, 5, 7

*Ret. Sys. v. Psychiatric Solutions, Inc.*,
 2012 WL 1071281 (M.D. Tenn. 2012) ...................................................................12

*Richardson v. TVIA, Inc.*,
 2007 WL 1129344 (N.D. Cal. 2007) ............................................................4, 12, 13

*Rojas-Vega v. Cejka*,
 2011 WL 720073 (S.D. Cal. 2011) .........................................................................11

*Ruland v. InfoSonics Corp.*,
 2006 WL 3746716 (S.D. Cal. 2006) .........................................................................9

*Sabbagh v. Cell Therapeutics, Inc.*,
 2010 WL 3064427 (W.D. Wash. 2010) .....................................................................6

*Schueneman v. Arena Pharm., Inc.*,
 2011 WL 3475380 (S.D. Cal. 2011) .......................................................................8, 9

*Smajlaj v. Brocade Commc'ns Sys., Inc.*,
 2006 U.S. Dist. LEXIS 97618 (N.D. Cal. 2006) ............................................3, 4, 7

*Watkins v. Shoretel Inc.*,
 No. C 08 00271-CRB (N.D. Cal.) .............................................................................5

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
 2006 WL 197036 (S.D.N.Y. 2006) ...........................................................9, 13, 14

*Weisz v. Calpine Corp.*,
 2002 WL 32818827 (N.D. Cal. 2002) .....................................................................11

1

**RULES & STATUTES**

Fed. R. Civ. P. 23 ................................................................................................. 13

Fed. R. Civ. P. 41(a)(1) ...................................................................................... 3, 11

Section 10(b) of the Securities Exchange Act of 1934 .......................................... 10

## I.        SUMMARY OF ARGUMENT

PGGM, Oregon and Oklahoma (the "Funds") respectfully submit this reply memorandum in further support of their motion for appointment as lead plaintiff, and in response to the lead plaintiff motions filed by Virginia Retirement System ("VRS") and the Pension Funds.[1] The opposition memoranda filed by VRS and the Pension Funds confirm that PGGM, Oregon and Oklahoma are the PSLRA's "most adequate plaintiff." Neither movant challenges PGGM, Oregon and Oklahoma's larger losses during the August 19, 2011 to November 20, 2012 Class Period,[2] whether calculated using FIFO or LIFO. *See* §II.A.1, *infra*. Nor do they challenge PGGM, Oregon and Oklahoma's adequacy as a group or ability to work cohesively to oversee this litigation on behalf of the class.

Given these uncontroverted facts, and the majority view in this Circuit that loss determines a proposed lead plaintiff's financial interest, PGGM, Oregon and Oklahoma should be deemed the PSLRA's "most adequate plaintiff." *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical.").[3] In addition, no "proof" has been offered to even suggest that PGGM, Oregon and Oklahoma are inadequate. *See id.*; *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Recognizing that *Cavanaugh* compels PGGM, Oregon and Oklahoma's lead plaintiff appointment, VRS has abandoned its initial reliance on losses to demonstrate its financial interest

---

[1]        Unless otherwise noted, references to "ECF No." are to filings in *Nicolow v. Hewlett-Packard Co.*, No. 12-cv-05980-CRB. Capitalized terms are defined in the opening and opposition briefs filed by PGGM, Oregon and Oklahoma. ECF Nos. 38, 74.

[2]        *Neumann v. Hewlett-Packard Co.*, No. C 13-00284 EJD (N.D. Cal. filed Jan. 18, 2013) expanded the Class Period by *three years* (beginning it on February 20, 2008) (the "Dismissed Class Period") and was filed one week before the lead plaintiff deadline by an individual investor who purchased *three shares* of HP stock. *Neumann* was voluntarily dismissed on February 13, 2013, approximately three weeks after it was filed. *See* Exhibit ("Ex.") A to the Declaration of Ramzi Abadou in Support of the Reply Memorandum of PGGM, Oregon and Oklahoma ("Abadou Decl."). Thus, the expanded period formerly asserted in the *Neumann* action is no longer before the Court.

[3]        Unless otherwise noted, all emphasis is added and internal citations are omitted.

in favor of other metrics that complicate the PSLRA's "straightforward" process for selecting lead plaintiffs. *See Cavanaugh*, 306 F.3d at 729 (PSLRA is "neither overly complex nor ambiguous"). Specifically, VRS – for the first time in its opposition brief – now argues that the number of "net shares purchased" is the ***best*** approximation of interest, despite having repeatedly and exclusively relied on ***losses*** to support its assertion that it possessed the "largest financial interest." *See* ECF No. 75 ("VRS Opp.") at 1-2. VRS's new-found appreciation of "net shares" should be discounted given that its opening brief stated, no less than ***five separate times***, that VRS's ***losses*** alone equated to its "financial interest." VRS's opening papers do not contain a single reference to "net shares," or any other measure of financial interest besides loss. Even VRS's opposition brief recognizes that "largest financial interest" equates to losses (VRS Opp. at 10), which is entirely consistent with the position VRS has taken in other cases that a movant's ***loss*** is the *sine qua non* of its "financial interest." *See Cohen v. Escala Grp., Inc.*, No. 06-cv-03518-AKH, Lead Plaintiff Movant the Virginia Retirement System's Memorandum of Law in Further Support of Its Motion for (1) Consolidation; (2) Appointment as Lead Plaintiff; (3) Approval of Lead Plaintiff's Choice of Lead Counsel; and (4) in Opposition to All Other Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, ECF No. 42 at 2 (S.D.N.Y. July 2006) (Abadou Decl., Ex. B) ("VRS's losses [] are larger than those claimed by all other movants and therefore has the largest financial interest in the litigation").

Moreover, VRS misapplies the very test it now belatedly asks the Court to adopt. Specifically, the cases VRS relies upon to support what it describes as a "net shares" analysis apply a different analysis known as the "retained shares methodology." As Judge Koh explained, "the retained shares method, look[s] only to the number of shares purchased during the class period that are ***retained*** at the end of the class period" and then takes into account the purchase and sales/retained prices of those shares. *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *6 (N.D. Cal. 2011). When the "retained shares" methodology is accurately applied as set forth below, ***PGGM, Oregon and Oklahoma*** – ***not VRS*** – ***assert the largest potential recovery and financial interest*** in the litigation.

Even when properly applied, the retained share methodology reflects a minority approach. A clear majority of courts, including this Court, simply rely on claimed *losses* – not "net shares," "net funds" or "retained shares" – as the best measure of "financial interest." *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. 2012) ("greatest emphasis" placed on losses). This Court's previous lead plaintiff orders and plans of allocation in securities class actions also confirm that *losses* more accurately reflect potential recovery. *See* §II.B.2, *infra*. The Ninth Circuit in *Cavanaugh* similarly equates "financial interest" with losses. *See* 306 F.3d at 732. Ignoring PGGM's larger losses, VRS next argues that PGGM is a "net seller" and "net gainer" that purportedly profited from its transactions in HP stock. *See* VRS Opp. at 8-9. This argument is now moot because it was based entirely on the class period asserted in the *Neumann* action, which was ordered voluntarily dismissed on February 13, 2013. *See* Abadou Decl., Ex. A. *Neumann*'s dismissal therefore moots VRS's attacks against PGGM. *See Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999) (Rymer, Pregerson & Breyer, JJ.) (the effect of a dismissal under Fed. R. Civ. P. 41(a)(1) is to "leave[] the parties as though no action had been brought"). VRS does not and cannot now credibly argue that PGGM is either a "net seller" or a "net gainer" in the alleged August 19, 2011 to November 20, 2012 Class Period.

Although VRS's net seller/net gainer arguments are no longer viable – even were the Court to consider VRS's claims – this Court has previously appointed as a lead plaintiff, and later *certified* as a class representative, a movant accused of being a "net seller" and a "net gainer."[4] Other courts have similarly appointed so-called "net gainers" and "net sellers" as lead plaintiff where, as here, they suffered millions of dollars in losses, and were otherwise qualified to serve

---

[4] *See In re Brocade Commc'ns, Sys., Inc. Sec. Litig.*, No. C 05-02042 CRB, Civil Minutes, ECF No. 392 (N.D. Cal. Oct. 12, 2007) (Breyer, J.) (Abadou Decl., Ex. C) (certifying Arkansas Public Employees' Retirement System ("APERS") as class representative despite net gainer challenges); *Smajlaj v. Brocade Commc'ns Sys., Inc.*, 2006 U.S. Dist. LEXIS 97618, at *13 (N.D. Cal. 2006) (Breyer, J.) (appointing APERS as lead plaintiff despite net seller challenges) (Breyer, J.); *see also Brocade*, No. C 05-02042 CRB, ECF Nos. 97 & 319 (Abadou Decl., Exs. D & E) (lead plaintiff and class certification briefing accusing APERS of being a net seller and a net gainer). Notably, the lead plaintiff in *Brocade* was represented by Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), which represents VRS here.

as a lead plaintiff. *See, e.g.*, *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. 2007) (Whyte, J.) (appointing "net seller" who suffered a LIFO loss); *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2-3 (N.D. Cal. 2009) (Chesney, J.) (appointing "net seller" asserting FIFO and LIFO losses); *Frank v. Dana Corp.*, 237 F.R.D. 171, 173 (N.D. Ohio 2006). In fact, just recently, in a pending securities class action arising from JPMorgan Chase & Co.'s recent multi-billion dollar trading loss, the court appointed an institutional investor as lead plaintiff despite arguments that it was a "net gainer" who "profited" by approximately $100 million, because it asserted a viable loss under FIFO and LIFO. *See* Hearing Transcript at 81, *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-03852-GBD (S.D.N.Y. Aug. 21, 2012) (Abadou Decl., Ex. F) (accused "net gainer" "[met] the adequacy and typicality test"). Accordingly, PGGM, Oregon and Oklahoma should be appointed as lead plaintiff, and all other motions should be denied.

## II. ARGUMENT

### A. PGGM, Oregon and Oklahoma Are the Most Adequate Plaintiff

The process for identifying the "most adequate plaintiff" in this Circuit is simple – "[s]o long as the plaintiff with the ***largest losses*** satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status." *Cavanaugh*, 306 F.3d at 732. Here, PGGM, Oregon and Oklahoma are entitled to lead plaintiff status because they suffered the largest losses. *See id.*

#### 1. PGGM, Oregon and Oklahoma Have the Largest Financial Interest in the Relief Sought by the Class

Courts in this Circuit have historically relied upon movants' ***losses*** as the sole criteria for determining "financial interest" under the PSLRA. *See, e.g.*, *Rafton v. Rydex Series Funds*, 2010 WL 2629579, at *5 (N.D. Cal. 2010) (Breyer, J.) (considering "***losses*** allegedly suffered by the various plaintiffs"); *Brocade*, 2006 U.S. Dist. LEXIS 97618, at *9, *12-13 (utilizing loss to determine financial interest); *Carson v. Clarent Corp.*, 2001 WL 1782712, at *2 (N.D. Cal. 2001) (Breyer, J.) (movant "with a $3.1 million interest[,] is thus presumptively the most adequate plaintiff"); *accord In re Zynga Inc. Sec. Litig.*, 2013 WL 257161, at *2 (N.D. Cal. 2013) (appointing movant with largest loss); *Juniper*, 2012 WL 78780, at *4 ("[courts] generally place the greatest emphasis on [losses]"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y.

2008) (same); *Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *2 (S.D.N.Y. 2012) ("courts have **consistently held** that the…magnitude of the loss suffered, is the most significant") (collecting cases). Here, it remains undisputed that PGGM, Oregon and Oklahoma assert the largest loss in either the Class Period or the Dismissed Class Period, and under either FIFO or LIFO:[5]

| Movant | Loss in the Class Period | | Loss in the Dismissed Class Period | |
|---|---|---|---|---|
| | **FIFO** | **LIFO** | **FIFO** | **LIFO** |
| **PGGM, Oregon and Oklahoma** | **$60.2 million** | **$51.1 million** | **$118.8 million** | **$85.2 million** |
| **VRS** | $43.4 million∗ | $33.1 million∗ | $53.3 million | $39.9 million |
| **Pension Funds** | $11 million | $9.9 million | $46.7 million | $34.9 million |

Accordingly, it is indisputable that PGGM, Oregon and Oklahoma assert the largest loss of any movant before the Court. *See Juniper*, 2012 WL 78780, at *4.[6]

### 2. PGGM, Oregon and Oklahoma are Adequate

In addition to conceding that PGGM, Oregon and Oklahoma claim the largest loss, no "proof" has been offered to challenge the Funds' ability to jointly lead this action or function as a cohesive group.[7] Indeed, the Joint Declaration (ECF No. 40-3) submitted with PGGM, Oregon and Oklahoma's opening papers evidences, *inter alia*, the Funds':

- Acceptance of the duties and obligations attendant with serving as lead plaintiff under the PSLRA. *See* ECF No. 40-3, ¶¶2-7.

---

[5] The "∗" notation indicates losses calculated by the Funds where figures were not provided by the movants. Although the period plead in *Neumann* is no longer relevant for the lead plaintiff analysis, PGGM, Oregon and Oklahoma, in an abundance of caution, provide their losses for the Class Period and Dismissed Class Period previously asserted in *Neumann*.

[6] Although losses are clearly the most important factor for assessing financial interest, PGGM, Oregon and Oklahoma also purchased the most total shares of any movant in the Class Period and Dismissed Class Period.

[7] *See Plichta v. SunPower Corp.*, No. 09-cv-05473-CRB, ECF No. 70 (N.D. Cal. Mar. 5, 2010) (Breyer, J.) (appointing group of institutional investors; approving Kessler Topaz, Bernstein Litowitz and Kaplan Fox as co-lead counsel); *see also Rydex*, 2010 WL 2629579, at *5 (appointing group); *Watkins v. Shoretel Inc.*, No. C 08 00271-CRB, ECF No. 27 (N.D. Cal. Apr. 25, 2008); *In re Leadis Tech, Inc. Sec. Litig.*, No. C 05-0882-CRB, ECF No. 19 (N.D. Cal. June 10, 2005); *In re Solectron Corp. Sec. Litig.*, No. C 03-0986-CRB, ECF No. 53 (N.D. Cal. June 2, 2003).

---

- Prior experience serving as a member of a lead plaintiff group directing complex securities class actions. *Id.*
- Commitment to vigorously prosecute the action against, and recover the maximum amount possible from, all potentially culpable defendants. *Id.* ¶8.
- Independent determination to jointly seek appointment as lead plaintiff for the benefit of the class and details concerning the extensive discussions between and among one another prior to the filing of their motion. *Id.* ¶¶9-11.
- Enactment of measures to oversee and prosecute the action, including directing counsel to enter into a Joint Prosecution Agreement, in the best interests of all class members. *Id.* ¶¶14-18.

The Joint Declaration "address[es] every concern raised by courts who have questioned the ability of previously-unrelated group members to cohesively, proactively represent their class." *See Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427, at *6 (W.D. Wash. 2010); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing PGGM's group and noting "declarations demonstrating cooperative efforts among" the group's members). VRS and its counsel recognize the leadership that groups like PGGM, Oregon and Oklahoma provide as VRS is currently serving in a lead plaintiff group in *In re MF Global Holdings, Ltd. Sec. Litig.*, No. 11 Civ. 07866 (S.D.N.Y.). Additionally, VRS's proposed lead counsel has worked under the direction of a group, including PGGM, in *Bank of America* (which preliminary settled for $2.4 billion and significant governance reforms), and was also approved as co-lead counsel by this Court in *SunPower*. Indeed, small, cohesive groups of institutional investors working together as lead plaintiff have been responsible for many of the largest recoveries achieved since the enactment of the PSLRA. *See* Abadou Decl., Ex. G.

**B.    VRS Does Not Possess the Largest Financial Interest**

Consistent with the courts' strong preference for assessing financial interest based on losses, VRS's opening brief – ***no less than five times*** – claimed that it should be appointed due solely to the size of its "losses." *See* ECF No. 57 at 1 ("having suffered estimated losses"); *id.* at 3 (detailing "losses" in the Class Period and Dismissed Class Period); *id.* at 10 ("With ***losses*** of…VRS believes it has the largest financial interest."); *id.* at 12 ("Having suffered substantial ***losses***, VRS will be a zealous advocate."); *see also* ECF No. 59-2 (providing VRS's FIFO losses as the ***sole*** support for its financial interest). In its opposition brief, VRS again argued that it should be appointed because of the "substantial ***losses***" it incurred (VRS Opp. at 10) which is

entirely consistent with the lead plaintiff motions VRS has previously filed in other cases. *See*, *e.g.*, Abadou Decl., Ex. B ("VRS's losses [] are larger than those claimed by all other movants and therefore has the largest financial interest in the litigation."); *DeAngelis v. Corzine*, No. 11-cv-07866-VM, Memorandum of Law in Support of the Motion of the Virginia Retirement System and Her Majesty the Queen in Right of Alberta for Appointment as Lead Plaintiff and Approval of Their Selection of Co-Lead Counsel, ECF No. 40 at 8 (S.D.N.Y. Jan. 3, 2012) (Abadou Decl., Ex. H) (largest financial interest arising out of "total losses of over $19 million"). However, after reviewing PGGM, Oregon and Oklahoma's motion, and realizing that the Funds possessed larger losses, VRS abandoned its reliance on losses in favor of "net shares" as a "better measure" of "financial interest." *See* VRS Opp. at 4-5. That argument, while convenient, is wrong on both the law and facts. First, VRS conflates case law discussing losses under the "retained shares" method with the "net shares" figures it asks the Court to credit. Second, proper application of the "retained shares" methodology further supports the appointment of PGGM, Oregon and Oklahoma – not VRS.

### 1. PGGM, Oregon and Oklahoma Have the Largest Loss Under a Proper Application of the "Retained Shares" Methodology

Courts in this Circuit generally employ two models to assess financial interest at the lead plaintiff stage: (1) the "actual economic loss model" which assesses financial interest based on movants' losses under FIFO/LIFO; or (2) the "retained shares" model. *See*, *e.g.*, *Perlmutter*, 2011 WL 566814, at *6 (describing two models).[8] As explained in *Eichenholtz*, "the retained share methodology…primarily looks to shares bought during the class period that are retained at the end of the class period." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *3 (N.D. Cal. 2008); *see also Perlmutter*, 2011 WL 566814, at *6 ("the retained shares method, look[s] only to the number of shares purchased during the class period that are retained at the end

---

[8] As noted above, this Court appears to ascribe to the actual economic loss model. *See*, *e.g.*, *Rydex*, 2010 WL 2629579, at *5; *Brocade*, 2006 U.S. Dist. LEXIS 97618, at *9, *12-13; *Carson*, 2001 WL 1782712, at *2. VRS and the Pension Funds have conceded that PGGM, Oregon and Oklahoma have the largest loss under the "actual economic loss model" (FIFO and LIFO).

---

of the class period"); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *4 (S.D. Cal. 2011) ("the retained share methodology, which looks to the number of retained shares at the end of the class period"). Once the retained shares are indentified, courts apply an equation to determine losses based on the retained shares. As explained by Judge Koh in *Perlmutter*:

> Once a court identifies these retained shares, the court...calculate[es] damages by subtracting the purchase price for these retained shares from either (1) the average of the daily closing price of the stock during the 90 day period beginning at the end of the class period (if the share was not sold during the 90 day period) or (2) the higher of the actual sale price or an average of the daily closing price from the end of the class period to the date of sale (if a share was sold within the 90 day period).

2011 WL 566814, at *7.

A proper application of this "retained shares" analysis does not favor VRS because PGGM, Oregon and Oklahoma assert a greater financial interest than VRS under either a FIFO or LIFO "retained shares" analysis, in either class period:

| Movant | Losses Under "Retained Shares" Model in the Class Period | | Losses Under "Retained Shares" Model in the Dismissed Class Period | |
|---|---|---|---|---|
| | **FIFO** | **LIFO** | **FIFO** | **LIFO** |
| **PGGM, Oregon and Oklahoma** | **$46,629,845** | **$38,558,666** | **$60,252,026** | **$64,829,734** |
| **VRS** | $41,999,758 | $32,938,805 | $41,999,758 | $38,876,258 |
| **Pension Funds** | $10,839,414 | $10,839,414 | $44,644,306 | $30,094,528 |

*See* Abadou Decl., Ex. I (analyzing losses under the retained shares methodology).

VRS's Opposition makes no effort to follow the actual "retained shares methodology." Rather, VRS presents a "net shares" analysis that takes just one of the four factors discussed in *Lax* and represents that "net shares" analysis as the "retained shares" analysis discussed in cases citied in VRS's Opposition. But as VRS must recognize from the very authorities it cites, unlike the retained shares methodology, a simple calculation of net shares is not a measure of potential damages or losses because it does not take into account the cost-basis of any purchases or the proceeds of any sales during the putative Class Period. By contrast, the retained shares

methodology takes into account the purchase price of the retained shares as well as the sales prices (or the retained price) in order to estimate potential recoverable damages in the litigation.

Here, the unsuitability of the "net shares" analysis is highlighted by the fact that there are multiple partial disclosures alleged throughout the Class Period. *See* ECF No. 57 at 6-8 (VRS acknowledging *multiple* partial corrective disclosures). As explained by the court in *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *4 (S.D.N.Y. 2006), "the fact that [a movant] has prevailed here on the second *Lax* factor (net shares purchased) *diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a periodic basis*." Multiple partial disclosures which result in a varying fraud premium over a class period undermine the basis for courts relying on a simplistic net shares analysis to assess financial interest. *See id.*

VRS's cited authorities confirm this point. *See* VRS Opp. at 2-3, 6 (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999) (finding "*little evidence* of partial corrective disclosures reaching investors"); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (net shares analysis "gets into trouble only if the amount of the 'fraud premium' varied over the course of the class period"); *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *5 (S.D. Cal. 2006) ("[T]here does not appear to be any allegation that the truth began to leak out before [the end of the class period]....Accordingly, it makes sense for the Court to assume that the 'fraud premium'-the amount by which the stock price was inflated because of the alleged misrepresentations-stayed constant during the four-week class period.")).

### 2. Actual Losses Better Reflect the "Potential Recovery" Before this Court

Assuming *arguendo* that VRS's "net shares" analysis is consistent with *Eichenholtz*, *Perlmutter* and *Schueneman* – which it is not – the basic premise underlying VRS's retreat from its claimed FIFO losses to an alternative calculation is undermined by this Court's previously approved settlement plans of allocation and VRS's own opening brief. As explained in §II.A.1, *supra*, losses are used by the court not only at the beginning of a case to determine the

presumptive most adequate plaintiff, but also at the end of a case to reflect any recovery in a plan of allocation.

Nevertheless, according to VRS, "net shares purchased…has been cited as a determining factor as it is the most accurate reflection of 'potential recovery.'" VRS Opp. at 6. However, a review of post-PSLRA settlement plans of allocation approved by this Court shows that a FIFO or LIFO analysis – not a "net shares" analysis – would more accurately reflect potential recovery here. For example, the plan of allocation approved by the Court in *Brocade* states, "For Class Members who held Brocade common stock before the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ('FIFO') method will be applied to such holdings." Abadou Decl., Ex. J. Actual losses were also endorsed by the Court in plans of allocation for: *In re Clarent Corp. Sec. Litig.*, No. C 01-3361 CRB (N.D. Cal.) (Abadou Decl., Ex. K) ("the first-in, first-out ('FIFO') method will be applied"); *In re Leadis Tech, Inc. Sec. Litig.*, No. C 05-0882 CRB (N.D. Cal.) (Abadou Decl., Ex. L) (using FIFO to calculate recognized loss); *In re Magma Design Automation, Inc., Sec. Litig.*, No. C 05-2394 CRB (N.D. Cal.) (Abadou Decl., Ex. M) (same); *In re Providian Financial Corp. Sec. Litig.*, No. C 01-3952 CRB (N.D. Cal.) (Abadou Decl., Ex. N) (same); *In re ShoreTel, Inc. Sec. Litig.*, No. C 08-00271 CRB (N.D. Cal.) (Abadou Decl., Ex. O) (same); and *In re Solectron Corp. Sec. Litig.*, No. C 03-0986 CRB (N.D. Cal.) (Abadou Decl., Ex. P) (same).

This Court's endorsement of actual losses in settlements is also supported by one of the more recent PSLRA cases to consider calculating damages after jury trial. *See Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 937-38 (N.D. Ill. 2010). In *Jaffe Pension*, Judge Guzman analyzed the appropriate method for calculating class members' claims after a jury found the defendants liable for violating Section 10(b) of the Exchange Act. *Id.* at 935. *Jaffe Pension* considered assessing claims under either FIFO or LIFO – not the "net shares" calculation advanced by VRS. *See id.* at 936-38 ("FIFO is the appropriate method for matching purchases and sales"); *see also In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *6 (N.D. Cal. 2010) (Ware, J.) ("The Court has accepted calculations of harm under FIFO at the class certification stage and in appointing lead plaintiffs.") (collecting cases).

**C.     VRS's "Net Seller" and "Net Gainer" Arguments Against PGGM Are Moot**

VRS claims that PGGM is not typical and adequate because it is a "net seller" and "net gainer" during the Dismissed Class Period.  *See* VRS Opp. at 8-9.[9]  VRS does not argue, nor can it, that PGGM is subject to any defenses in the Class Period such that the dismissal of the *Neumann* action moots VRS's challenges to PGGM.  *See Commercial Space Mgmt.*, 193 F.3d at 1077-78; *Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*, 2012 WL 3192232, at *3 (7th Cir. 2012) ("Voluntary dismissal under Rule 41(a)(1) generally means the suit is treated as if it was never filed in the first place."), *cf. Rojas-Vega v. Cejka*, 2011 WL 720073, at *1 (S.D. Cal. 2011) ("this Court is limited to the allegations of Plaintiff's [operative complaint] and may only consider the [operative complaint], without reference to his previously dismissed Complaint, because a pleading must be complete in itself").

Even if the Court remains inclined to consider VRS's arguments, they are nevertheless without merit.  VRS does not contest that PGGM suffered losses of $57.5 million (FIFO) and $36.9 million (LIFO) in the Dismissed Class Period.  These losses distinguish this case from VRS's cited authorities.  *See* VRS Opp. at 8-9 (citing *Perlmutter*, 2011 WL 566814, at *11 (rejecting movant with questionable LIFO losses); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. 2002) (rejecting movant where the court "ha[d] serious concerns regarding the accuracy of [movant's FIFO] figure"); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003) (rejecting group that lacked the largest loss and contained group member that sold all of its shares before any corrective disclosure)).

Moreover, this Court previously rejected similar challenges in *Brocade* – first appointing APERS as lead plaintiff and then later certifying it as class representative in both cases over arguments that APERS was a "net seller" and a "net gainer."  *See Brocade*, No. C 05-02042 CRB, ECF No. 157 (appointing APERS as lead plaintiff despite "net seller" challenges); *see id.*, ECF No. 392 (Abadou Decl., Ex. C) (certifying APERS as class representative despite "net

---

[9]     As used herein and in VRS's Opposition, "net seller" refers to a movant that sells more shares than it purchases during the class period and "net gainer" refers to a movant that receives more proceeds than it expends during the class period.  *See* VRS Opp. at 8.  As a group, PGGM, Oregon and Oklahoma are neither a "net seller" nor a "net gainer."

gainer" challenges).[10]   Consistent with the Court's rulings in *Brocade*, numerous courts throughout the country, including this District, have appointed "net sellers" and "net gainers" as lead plaintiffs where they claim the largest loss (as the Funds do here) and certified such plaintiffs as class representatives.  *See*, *e.g.*, *UTStarcom*, 2010 WL 1945737, at *6 (rejecting "net gainer" and "net seller" arguments at class certification); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, 2004 WL 5326262, at *3 (N.D. Cal. 2004) (Ware, J.) (rejecting "net seller" argument at class certification); *Hodges*, 2009 WL 5125917, at *2-3 (appointing movant that received more proceeds than it expended during the class period and asserted "higher alleged loss" than the competing movant); *Richardson*, 2007 WL 1129344, at *4 (appointing movant that received more proceeds than it expended during the class period and asserted the largest loss); *In re Schering-Plough Corp. Sec. Litig.*, 2003 WL 25547564, at *9 (D.N.J. 2003) (rejecting defendants' argument that plaintiffs' "status as a 'net seller' of…stock during the Class Period renders its interests antagonistic to other putative class members"); *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, 2012 WL 1071281, at *36 (M.D. Tenn. 2012) ("even if [plaintiff] were a 'net seller', such a fact ***does not*** preclude proof of loss so as to [dis]qualify a plaintiff as a lead plaintiff").

A net seller or net gainer asserting a loss is fully capable of successfully representing a class of investors.  *See id.*  For example, in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-01691, ECF No. 93 (D. Minn. Sept. 14, 2006), the court-appointed lead plaintiff, California Public Employees' Retirement System, achieved a recovery of $925.5 million despite being attacked as a net gainer at the lead plaintiff stage.  In another recent example, in *JPMorgan*, Judge Daniels appointed a group including movants challenged for being "net sellers" and "net gainers" and who purportedly had a net gain of nearly $100 million.  *See JPMorgan*, No. 12-cv-

---

[10]     Notably, the unsuccessful attacks against APERS relied upon a number of cases cited by VRS here.  *Compare* VRS Opposition, *with Brocade*, No. C 05-02042 CRB, ECF No. 97 at 5 (Abadou Decl., Ex. D); *id.*, ECF No. 319 at 9-10 (Abadou Decl., Ex. E) (citing *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169 (W.D.N.Y. 2007)); *Cable & Wireless*, 217 F.R.D. 372; *Weisz*, 2002 WL 32818827; *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943 (N.D. Ill. 2001). Kaplan Fox, VRS's counsel here, served as liaison counsel for the class in *Brocade* and appeared on briefs successfully repelling arguments now raised by VRS here.

03852-GBD (S.D.N.Y.), ECF No. 22 at 15 (Abadou Decl., Ex. Q). The accused net gainer in *JPMorgan*, like PGGM here, asserted losses under FIFO and LIFO, and was found to have met the adequacy and typicality requirements of Fed. R. Civ. P. 23. *See* Abadou Decl., Ex. F at 81 (finding accused "net gainer" "[met] the adequacy and typicality test").

VRS's arguments against PGGM are predicated on the incorrect assumption that PGGM "*profited* from the purchase and sale of a defendant's shares during [the Dismissed Class Period]." VRS Opp. at 8-9 (emphasis original). That assertion, however, ignores the significant *losses* that VRS concedes PGGM suffered in either period, as well as the weight losses are afforded in determining financial interest. *See, e.g., Weiss*, 2006 WL 197036, at *3 (no authority provided showing "where a plaintiff who did not have the greatest actual loss was found to have the greatest financial interest based on the remaining *Lax* factors").

Moreover, the "net gainer" analysis is not independently dispositive as it is only one of four factors sometimes employed by courts to assess financial interest and, as discussed *supra*, is secondary to the losses claimed by each movant. *See id.* For example, in both *Hodges* and *Richardson*, this District appointed "net gainers" because each movant asserted larger losses than the challenging movants. *See Hodges*, 2009 WL 5125917, at *2 ("[the challenged movant] has a higher alleged loss, whether the LIFO or FIFO method is employed, and, consequently, has a greater financial interest in the relief sought"); *Richardson*, 2007 WL 1129344, at *4 ("[t]he weight of the [four] factors…favors [movant with]…the largest financial loss"). Similarly, in two Northern District of California cases cited by VRS, the courts rejected "net gainers" ***only after conducting a full four-factor analysis*** and concluding that the rejected movants ***did not claim the largest losses*** – the most important financial interest factor. *See Perlmutter*, 2011 WL 566814, at *11 (appointing movant with largest claimed loss); *McKesson*, 97 F. Supp. 2d at 999-1000 (same; noting that a "net gain" or "profits may not bar recovery," but "are one relevant factor in identifying the plaintiff with the greatest financial interest"). Indeed, Judge Whyte's appointment of one "net gainer" in *Richardson*, and rejection of another in *McKesson* clearly highlights the importance that a movant's asserted loss plays in the selection of the lead plaintiff with the "largest financial interest" – a metric that clearly favors PGGM, Oregon, and Oklahoma.

**D.     The Pension Funds' Motion Should Be Denied**

The Pension Funds concede that PGGM, Oregon and Oklahoma have the largest losses under LIFO or FIFO, in either class periods.  *See* ECF No. 71 at 2.  Since the Pension Funds have not offered any "proof" of PGGM, Oregon and Oklahoma' inadequacy (individually or as a group), the Pension Funds have no basis to be appointed under the sequential process required by *Cavanaugh*.  *See* 306 F.3d at 729-32; *Weiss*, 2006 WL 197036, at *3; *Juniper*, 2012 WL 78780, at *4 (losses are most important factor).  Accordingly, the Pension Funds' motion should be denied.

## III.     CONCLUSION

For the foregoing reasons, PGGM, Oregon and Oklahoma respectfully request that the Court: (1) appoint PGGM, Oregon and Oklahoma as Lead Plaintiff; (2) approve their selection of Kessler Topaz and Bernstein Litowitz as Co-Lead Counsel for the class; (3) consolidate all related actions; and (4) deny all other motions.[11]

Dated:  February 15, 2013

Respectfully submitted,

KESSLER TOPAZ MELTZER                    BERNSTEIN LITOWITZ BERGER
  & CHECK, LLP                                            & GROSSMANN LLP

/s/ Ramzi Abadou                                   /s/ Blair A. Nicholas
RAMZI ABADOU (Bar No. 222567)          BLAIR A. NICHOLAS (Bar No. 178428)
ELI R. GREENSTEIN (Bar No. 217945)     NIKI L. MENDOZA (Bar No. 214646)
STACEY M. KAPLAN (Bar No. 241989)     JONATHAN D. USLANER (Bar No. 256898)
One Sansome Street, Suite 1850              12481 High Bluff Drive, Suite 300
San Francisco, CA 94104                          San Diego, CA 92130
Tel:    (415) 400-3000                               Tel:    (858) 793-0070
Fax:    (415) 400-3001                              Fax:    (858) 793-0323
rabadou@ktmc.com                                   blairn@blbglaw.com
egreenstein@ktmc.com                             nikim@blbglaw.com
skaplan@ktmc.com                                   jonathanu@blbglaw.com

---

[11]     PGGM, Oregon and Oklahoma's motion originally sought consolidation of all three actions filed in this litigation: *Nicolow v. Hewlett-Packard Co.*, No. 12-cv-05980-CRB, *Pokoik v. Hewlett-Packard Co.*, No. 12-cv-06074-CRB, and *Neumann*.  *See* ECF No. 38 at 7.  Following the voluntary dismissal of *Neumann*, PGGM, Oregon and Oklahoma respectfully request consolidation of the two remaining actions: *Nicolow* and *Pokoik*.

-and-                                          -and-

DARREN J. CHECK                    GERALD H. SILK
280 King of Prussia Road           AVI JOSEFSON
Radnor, PA 19087                   1285 Avenue of the Americas, 38th Floor
Tel:    (610) 667-7706             New York, NY 10019
Fax:    (610) 667-7056             Tel:    (212) 554-1400
dcheck@ktmc.com                    Fax:    (212) 554-1444
                                   jerry@blbglaw.com
                                   avi@blbglaw.com

*Counsel for PGGM Vermogensbeheer B.V., the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employees Retirement Board, on behalf of the Oregon Public Employees Retirement Fund and Oklahoma Teachers Retirement System and Proposed Co-Lead Counsel for the Class*


STOLL STOLL BERNE LOKTING
    & SHLACHTER P.C.
KEITH S. DUBANEVICH
SCOTT SHORR
209 Southwest Oak Street
Portland, OR 97204
Tel:    (503) 227-1600
Fax:    (503) 227-6840

*Special Assistant Attorneys General and Counsel for Proposed Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employees Retirement Board, on behalf of the Oregon Public Employees Retirement Fund*

## ATTESTATION UNDER CIVIL LOCAL RULE 5-1(i)

I, Ramzi Abadou, am the ECF User whose ID and password are being used to file this Reply Memorandum of Points and Authorities in Further Support of the Motion of PGGM, Oregon and Oklahoma for Appointment as Lead Plaintiff and in Opposition to the Competing Motions. In compliance with Civil Local Rule 5-1(i), I attest that Blair A. Nicholas has concurred in this filing.

Dated: February 15, 2013

_/s/ Ramzi Abadou_
RAMZI ABADOU

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 15, 2013.

KESSLER TOPAZ MELTZER
& CHECK, LLP

*/s/ Ramzi Abadou*
RAMZI ABADOU

## MAIL NOTICE LIST

Jeremy A Lieberman
POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS LLP
600 Third Avenue, 20th Floor
New York, NY 10016

Jon Charles Furgison
LAW OFFICES OF JON C. FURGISON
444 Longfellow Avenue
Hermosa Beach, CA 90254

# Mailing Information for a Case 3:12-cv-05980-CRB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

- **Marie Caroline Bafus**
  mbafus@fenwick.com,cprocida@fenwick.com

- **Andrea Bascheri**
  sammirati@bottinilaw.com

- **Stephen R. Basser**
  sbasser@barrack.com,lnapoleon@barrack.com,cfessia@barrack.com

- **Francis A. Bottini , Jr**
  fbottini@bottinilaw.com,sammirati@bottinilaw.com

- **Brian Danitz**
  bdanitz@wsgr.com,pbaird@wsgr.com

- **John C. Dwyer**
  dwyerjc@cooley.com,jkaban@cooley.com,giovannonib@cooley.com,sjoiner@cooley.com

- **Matthew Kendall Edling**
  medling@cpmlegal.com,jhamilton@cpmlegal.com,obacigalupi@cpmlegal.com

- **Joseph Edward Floren**
  jfloren@morganlewis.com,rluke@morganlewis.com

- **Frederic S. Fox**
  ffox@kaplanfox.com

- **Tahir Ikeem Golden**
  tgolden@fenwick.com,vpieretti@fenwick.com

- **Katherine Leigh Henderson**
  khenderson@wsgr.com,abaranski@wsgr.com

- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,lalmanza@cooley.com

- **Kimberly Alexander Kane**
  kkane@morganlewis.com,rluke@morganlewis.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Bryan Jacob Ketroser**
  bketroser@wsgr.com

- **Laurence D. King**
  lking@kaplanfox.com,wgomes@kaplanfox.com,amcandrew@kaplanfox.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Kevin Peter Muck**
  kmuck@fenwick.com,cprocida@fenwick.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Stephen Cassidy Neal**
  nealsc@cooley.com,wilsonla@cooley.com

- **Blair Allen Nicholas**
  blairn@blbglaw.com,denab@blbglaw.com,amyn@blbglaw.com,kayem@blbglaw.com,jessica.cuccurullo@blbglaw.com,nikim@blbglaw.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com,ptoovey@bramsonplutzik.com

- **Karen A. Pieslak Pohlmann**
  kpohlmann@morganlewis.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Steven Mark Schatz**
  sschatz@wsgr.com,cfoung@wsgr.com

- **Marc J. Sonnenfeld**
  msonnenfeld@morganlewis.com

- **Avraham Noam Wagner**
  avi@thewagnerfirm.com

- **Jeffrey Michael Walker**
  jwalker@cooley.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Samuel M. Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Matthew S. Weiler**
  mweiler@morganlewis.com,eyemoto@morganlewis.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,erinj@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)