1  JENNIFER B. BONNEVILLE (State Bar No. 243686)
   jbonneville@steptoe.com
2  STEPTOE & JOHNSON LLP
   633 West Fifth Street, Suite 700
3  Los Angeles, California 90071
   Tel: (213) 439-9405
4  Fax: (213) 439-9599

5  JOHN D. LOVI (pro hac admission pending)
   jlovi@steptoe.com
6  LARA E. ROMANSIC (admitted pro hac vice)
   lromansic@steptoe.com
7  MICHELLE L. LEVIN (admitted pro hac vice)
   mlevin@steptoe.com
8  STEPTOE & JOHNSON LLP
   1114 Avenue of the Americas
9  New York, New York 10036
   Tel: (212) 506-3900
10 Fax: (212) 506-3950

11 JEFF E. BUTLER (pro hac admission pending)
   jeff.butler@cliffordchance.com
12 CHRISTOPHER J. MORVILLO (admitted pro hac vice)
   christopher.morvillo@cliffordchance.com
13 CLIFFORD CHANCE US LLP
   31 West 52nd Street
14 New York, New York 10019
   Tel: (212) 878-8000
15 Fax: (212) 878-8375

16 Attorneys for Defendant
   **MICHAEL LYNCH**

17

18                 UNITED STATES DISTRICT COURT

19    FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

20

21  IN RE HP SECURITIES LITIGATION        )  **CASE NO. C-12-5980 CRB**
    This Document Relates To: All Actions  )
22                                         )
                                           )
23                                         )  **DEFENDANT MICHAEL LYNCH'S**
                                           )  **NOTICE OF MOTION AND**
                                           )  **MOTION TO DISMISS THE**
24                                         )  **CONSOLIDATED COMPLAINT**
                                           )
25                                         )  Date: October 25, 2013
                                           )  Time: 10:00 a.m.
26                                         )  Dept: 6
                                           )  Judge: Hon. Charles R. Breyer
27                                         )
                                           )
28

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

3         **PLEASE TAKE NOTICE THAT** on October 25, 2013, at 10:00 a.m. before the

4    Honorable Charles Breyer, at 450 Golden Gate Avenue, Courtroom 6, San Francisco, California,

5    Defendant Michael Lynch will and hereby does move pursuant to Federal Rule of Civil

6    Procedure Rule 12(b)(6) to dismiss the Consolidated Complaint for Violation of the Federal

7    Securities Laws, filed May 3, 2013 ("Complaint" or "CC"). Dr. Lynch bases his motion to

8    dismiss Plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 (the

9    "Exchange Act") and Securities and Exchange Commission Rule 10b-5 on the grounds that it

10   fails to meet the stringent standards prescribed by Federal Rule of Civil Procedure 9(b), the

11   Private Securities Litigation Reform Act of 1995 ("PSLRA") and recent Supreme Court

12   jurisprudence because Plaintiffs fail to allege (i) that Dr. Lynch made any false or misleading

13   statement; (ii) that Plaintiffs relied on any statement or conduct of Dr. Lynch; or (iii) that Dr.

14   Lynch possessed the requisite state of mind. Dr. Lynch bases his motion to dismiss Plaintiffs'

15   claim under Section 20(a) of the Exchange Act on the grounds that (i) Plaintiffs fail to state a

16   claim for a primary violation of the Exchange Act; and (ii) Plaintiffs fail to allege facts sufficient

17   to show that Dr. Lynch exercised actual power or control over any primary violator.

18        This motion is based upon this Notice of Motion, the attached Memorandum of Points

19   and Authorities, the pleadings, files and records in this case and such further evidence and oral

20   argument as may be presented by Defendant Michael Lynch prior to or at the hearing on the

21   motion.

22

23   DATED:  July 2, 2013

24                           STEPTOE & JOHNSON LLP

25

26

27                  By:   //s// Jennifer B. Bonneville_____

28                      Jennifer B. Bonneville
                   Attorneys for Defendant Michael Lynch

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................. i

SUMMARY OF ARGUMENT .............................................................. iv

PRELIMINARY STATEMENT ............................................................. 1

FACTUAL BACKGROUND ................................................................. 2

ARGUMENT ................................................................................. 3

    I.    Plaintiffs Have Failed to State a Claim against Dr. Lynch under Section 10(b) and Rule 10b-5(b) .................................................. 4

        A.  The Legal Standard. ........................................................ 4

        B.  Plaintiffs Fail to Allege that Dr. Lynch Made any False or Misleading Statement. ......................................... 6

        C.  Plaintiffs Are Not Entitled to Any Presumption of Reliance. ............. 7

        D.  Plaintiffs Fail to Properly Plead Scienter. ............................... 9

    II.    Plaintiffs Have Failed to State a Claim Against Dr. Lynch under Section 20(a) ................................................. 10

CONCLUSION ................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972)..........................................................................................iv, 7, 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................................3

*Bartesch v. Cook,*
    No. 11-1173-RGA, 2013 WL 1750455 (D. Del. Apr. 23, 2013)...............................7

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)....................................................................................................8

*Castaneda v. Saxon Mortg. Servs., Inc.,*
    687 F. Supp. 2d 1191 (E.D. Cal. 2009).....................................................................5

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994)....................................................................................................7

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions,*
    No. C 07-05111 CW, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009).........................10

*Desai v. Deutsche Bank Secs. Ltd.,*
    573 F.3d 931 (9th Cir. 2009) .....................................................................................8

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)....................................................................................................4

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (2000).....................................................................................iv, 10, 11

*In re Hansen Natural Corp. Sec. Litig.,*
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................10

*In re Int'l Rectifier Corp. Sec. Litig.,*
    No. CV 07-02544-JFW, 2008 WL 4555794 (C.D. Cal. May 23, 2008) ...............4, 8

*In re Yahoo! Inc. Sec. Litig.,*
    No. C 11-02732, 2012 WL 3282819 (N.D. Cal Aug. 10, 2012)......................3, 5, 9

*Janus Capital Group, Inc. v. First Derivative Traders,*
    131 S. Ct. 2296 (2011) ..................................................................................iv, 4, 7

*Matrixx Initiatives, Inc. v. Siracusano,*
    131 S. Ct. 1309 (2011)..................................................................................9

*Mir v. Little Co. of Mary Hosp.,*
    844 F.2d 646 (9th Cir. 1988) ........................................................................2

*Philco Invs., Ltd. v. Martin,*
    No. C 10-02785 CRB, 2011 WL 4595247 (N.D. Cal. Oct. 4, 2011)....................3, 9

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ........................................................................4

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,*
    482 F.3d 372 (5th Cir. 2007) ........................................................................8

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008).................................................................... iv, 4, 7, 8

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ........................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)....................................................................... iv, 5, 9

*Von Saher v Norton Simon Museum of Art at Pasadena,*
    592 F.3d 954 (9th Cir. 2010) ........................................................................2

**STATUTES**

15 U.S.C. § 78j (2006) ...........................................................................4

15 U.S.C. §78u-4 (2006)......................................................................5, 9

17 C.F.R. § 240.10b-5 (2012) ...............................................................4, 9

- iii –

## SUMMARY OF ARGUMENT

Plaintiffs' Section 10(b) and Rule 10b-5 claim against Defendant Michael Lynch fails for at least three independent reasons:

*First*, Plaintiffs fail to allege that Dr. Lynch made any false or misleading statements during his brief tenure at HP. This pleading requirement is mandated by the recent Supreme Court decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011). The failure of the complaint to allege a single allegedly false or misleading statement made by Dr. Lynch during the Class Period is reason enough to dismiss the securities claim against him.

*Second*, Plaintiffs have not sufficiently pleaded reliance under *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008). Plaintiffs cannot rely on the fraud-on-the-market presumption because plaintiffs have not alleged that Dr. Lynch made any public statements or engaged in a publicly disclosed deceptive act. Similarly, Plaintiffs cannot rely on the presumption established in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiffs do not allege that Dr. Lynch ever had a duty to disclose.

*Third*, Plaintiffs have not pleaded facts sufficient to give rise to the strong inference of scienter required under the PSLRA. Plaintiffs' conclusory allegations do not satisfy the pleading standard in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), which requires that an inference of scienter be at least as compelling as any opposing inference that could be drawn from the factual allegations in the complaint.

Plaintiffs' Section 20(a) "control person" claim against Dr. Lynch likewise fails because Plaintiffs allege no facts that, if true, would show that Dr. Lynch had actual power or control over HP or any other defendant claimed to be a primary violator of the Exchange Act. Plaintiffs' allegations, which consist merely of Dr. Lynch's title at HP and boilerplate assertions against all defendants as a group, are devoid of any facts that could support a Section 20(a) claim against Dr. Lynch specifically. Under the Ninth Circuit's decision in *Howard v. Everex Systems, Inc.*, 228 F.3d 1057 (2000), and its progeny, such bald and conclusory pleading is insufficient to survive a motion to dismiss.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Michael Lynch respectfully submits this memorandum of law in support of his motion to dismiss the Consolidated Complaint for Violation of the Federal Securities Laws, filed May 3, 2013 ("Complaint" or "CC") (Docket No. 100).

### PRELIMINARY STATEMENT

In their Complaint, Plaintiffs seek to tar Dr. Lynch, a British citizen and former CEO of Autonomy Corporation plc ("Autonomy"), with accusations of financial wrongdoing that are neither actionable under U.S. securities law nor, in any event, attributable to Dr. Lynch. At its heart, this lawsuit involves a dispute by shareholders of Hewlett-Packard Company ("HP") regarding the truthfulness of statements made by HP officers that allegedly affected the value of HP shares. Critically, Dr. Lynch is not alleged to have made any of these statements. Indeed, all of Dr. Lynch's supposed misdeeds are alleged to have occurred before HP even acquired Autonomy in October 2011.

Plaintiffs' securities claims fail due to their inability to plead facts that could support a finding of any wrongdoing by Dr. Lynch during his brief time at HP following the merger. Gone are the days when a securities class action plaintiff could sue everyone even tangentially related to a transaction. The overwhelming thrust of recent Supreme Court precedent and congressional action has been to drastically limit the reach of such claims and to put plaintiffs to a stern and demanding test for pleading them. The aim of this jurisprudence and legislation is precisely to spare defendants the impossible task that Plaintiffs seek to impose on Dr. Lynch in this case – namely, to defend his reputation and life's work in court against vague and unspecific allegations of fraud.

Plaintiffs' claims against Dr. Lynch should not stand.

///

///

///

Dr. Lynch is a British scientist and entrepreneur who founded Autonomy in Cambridge, England in 1996. (CC ¶ 15.) From its founding, Autonomy rapidly grew into the largest software company in the United Kingdom and one of the largest in Europe, with a reputation as a world-leading provider of infrastructure software for unstructured information and meaning-based technologies. (CC ¶¶ 15, 16.) Autonomy's Intelligent Data Operating Layer ("IDOL") software allows computers to analyze and understand raw information in various forms – including emails, voicemails, websites, phone conversations, and video – and to perform a host of different operations on that information to deliver relevant results to the user. (*See* CC ¶ 15.)

The IDOL technology is widely regarded as uniquely powerful and valuable. To this day, even HP's CEO, Meg Whitman, refers to IDOL as "almost magical technology."[2] Indeed, HP's website features a quote from THE GUARDIAN newspaper that states: "The success of Autonomy's business model has never been in doubt – its ability to retrieve information surpasses even Google in the complexity and variety of data it can make connections between."[3]

According to the Complaint, Dr. Lynch met with HP's then-CEO, Léo Apotheker, in April 2011 to discuss a possible acquisition of Autonomy by HP. (CC ¶ 31.) Dr. Lynch and Apotheker struck a deal in principle for the acquisition in July 2011, whereupon HP began its due diligence process. (CC ¶ 33.) On August 18, 2011, Autonomy and HP publicly announced that HP would acquire Autonomy for approximately $11 billion. (CC ¶ 44.) The deal closed on October 3, 2011. (CC ¶ 72.) As part of the acquisition, Dr. Lynch joined HP as Executive Vice

---

[1] For the purpose of this motion to dismiss only, facts alleged in the Complaint are presumed to be true. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

[2] Katherine Rushton, *HP boss Meg Whitman admits Autonomy row hit morale*, TELEGRAPH (Apr. 10, 2013), http://www.telegraph.co.uk/finance/newsbysector/mediatechnology andtelecoms/ electronics/9984271/HP-boss-Meg-Whitman-admits-Autonomy-row-hit-morale.html (Vol. 2, Tab 40). This Court can take judicial notice of this and other published statements cited in this motion. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

[3] *About Autonomy,* http://www.autonomy.com/content/Autonomy/introduction/index.en.html.

1   President of Information Management. (CC ¶ 8.) The Complaint alleges that Dr. Lynch held

2   that position until his employment was terminated in April 2012. (CC ¶ 80.)

3         On November 20, 2012, just over a year after acquiring Autonomy, HP announced that it

4   was writing down Autonomy's value by $8.8 billion. (CC ¶ 84.) The following week, HP

5   shareholders filed an avalanche of securities fraud lawsuits. Those cases were consolidated into

6   the instant action, and a lead plaintiff and lead counsel appointed, by order dated March 4, 2013.

7   (*See* Case No. 3:12-6003 (CRB), Docket No. 65.) The Complaint that is the subject of this

8   motion was subsequently filed on May 3, 2013.

9         The Complaint asserts claims against Dr. Lynch for violation of Section 10(b) of the

10   Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange

11   Commission Rule 10b-5(b) ("Rule 10b-5") and for control person liability under Section 20(a) of

12   the Exchange Act. The Complaint alleges that, between August 19, 2011 and November 20,

13   2012 (the "Class Period"), HP and certain of its executives, including Dr. Lynch, made

14   misrepresentations and omissions concerning the value of Autonomy through HP's financial

15   statements and certain other public statements. (CC ¶¶ 3, 4.) These misrepresentations and

16   omissions are alleged to have been made both prior to and following HP's acquisition of

17   Autonomy. (CC ¶¶ 7, 163-218.)

18                                  **ARGUMENT**

19         To survive a motion to dismiss, "[a] complaint must plead 'enough facts to state a claim

20   to relief that is plausible on its face.'" *Philco Invs., Ltd. v. Martin*, No. C 10-02785 CRB, 2011

21   WL 4595247, at *1 (N.D. Cal. Oct. 4, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

22   (2009)). Facial plausibility requires the pleading of facts upon which a court could draw a

23   "reasonable inference" of liability. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, dismissal is

24   appropriate where a complaint lacks either "a cognizable legal theory" or "sufficient facts

25   alleged under a cognizable legal theory." *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732, 2012

26   WL 3282819, at *6 (N.D. Cal. Aug. 10, 2012) (internal citations omitted). A recital of the

27   elements of a claim, supported by "mere conclusory statements," is insufficient to survive a

28   motion to dismiss. *Iqbal*, 556 U.S. at 678.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## Plaintiffs Have Failed to State a Claim against
## Dr. Lynch under Section 10(b) and Rule 10b-5(b)

### A.    The Legal Standard.

Section 10(b) makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance" in contravention of SEC rules.  15 U.S.C. § 78j(b) (2006).  SEC Rule 10b-5(b) provides that it is "unlawful for any person, directly or indirectly . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of securities.  17 C.F.R. § 240.10b-5(b) (2012).

Section 10(b) does not expressly create a private right of action, but the Supreme Court has recognized an implied right of action.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Because the cause of action is judicially created, however, the Supreme Court has repeatedly "caution[ed] against its expansion." *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).

To state a cause of action for violation of Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation (or omission), (2) made with scienter, (3) on which plaintiff relied, (4) that proximately caused (5) economic loss, (6) in connection with the purchase or sale of a security." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 685 (9th Cir. 2011) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

Claims under Section 10(b) and Rule 10b-5 also must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). *See Id.* at 690.  Rule 9(b)'s heightened pleading requirements are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *8 (C.D. Cal. May 23, 2008) (internal quotation marks and citation omitted).

- 4 -

1    Rule 9(b) requires a plaintiff to plead "the time, place, and specific content of the false

2    representations as well as the identities of the parties to the misrepresentations." *In re Yahoo!*,

3    2012 WL 3282819, at *6 (internal quotation marks and citations omitted).  Moreover, "[w]here

4    multiple defendants are asked to respond to allegations of fraud, the complaint must inform each

5    defendant of his alleged participation in the fraud." *Castaneda v. Saxon Mortg. Servs., Inc.*, 687

6    F. Supp. 2d 1191, 1199 (E.D. Cal. 2009) (internal citations and quotation marks omitted).  "Rule

7    9(b) does not allow a complaint merely to lump multiple defendants together but require[s]

8    plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

9    each defendant separately of the allegations surrounding his alleged participation in the fraud."

10   *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal citation omitted).

11       In addition to Rule 9(b), Plaintiffs also must comply with the "exacting pleading

12   requirements" of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which

13   was enacted "[a]s a check against abusive litigation by private parties" in order to "curb

14   perceived abuses of the § 10(b) private action – nuisance filings, targeting of deep-pocket

15   defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs,*

16   *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 (2007) (internal quotation marks and

17   citations omitted).  The PSLRA requires that a complaint alleging securities fraud both

18   (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the

19   statement is misleading" and (ii) "state with particularity facts giving rise to a strong inference

20   that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)-(2) (2006).

21       As shown below, Plaintiffs' claim against Dr. Lynch fails to meet the stringent standards

22   prescribed by Rule 9(b), the PSLRA and recent Supreme Court jurisprudence for a Section 10(b)

23   claim.  Plaintiffs' claim fails because the Complaint fails to allege (i) that Dr. Lynch made any

24   misleading statement; (ii) that Plaintiffs relied on any statement or conduct of Dr. Lynch; or

25   (iii) that Dr. Lynch possessed the requisite state of mind.

26   ///

27   ///

28   ///

**B.** **Plaintiffs Fail to Allege that Dr. Lynch Made any False or Misleading Statement.**

Plaintiffs' claim fails because Plaintiffs do not allege that Dr. Lynch made any of the allegedly false or misleading statements identified in the Complaint. Indeed, the 100 page Complaint alleges virtually ***no conduct or activity of any sort by Dr. Lynch*** during his six-month tenure at HP. Only four paragraphs of the Complaint concern Dr. Lynch's time at HP:

- Dr. Lynch served as HP's Executive Vice President of Information Management, controlling the Information Management division and reporting directly to Whitman, and was described in HP's 2011 Annual Report as one of its top 15 executive officers. (CC ¶¶ 45, 109.)

- He was "quietly removed" from that position in late April 2012, and Whitman subsequently stated in a May 23, 2012 earnings call that he had been terminated due to "disappointing" revenue, which Plaintiffs allege was "the result of HP's aggressive internal efforts to unwind Autonomy's improper accounting practices." (CC ¶ 45.)

- Whitman stated in a June 5, 2012, interview that "'***for many entrepreneurs*** [*i.e.*, Lynch], ***processes and discipline are dirty words***,'" and that "she wanted to 'make sure that [Autonomy] gets integrated into the rest of HP ***in a good way***.'" (CC ¶ 81 (brackets and emphases in original).)

- "By virtue of [Dr. Lynch's] high level position at HP, the fraudulent conduct HP accused him of engaging in during the Class Period is imputed to HP by operation of law."[4] (CC ¶ 109.)

Taken together, these allegations amount to little more than a recitation of the dates of Dr. Lynch's employment at HP, his title, and whom he reported to. For the rest, Plaintiffs rely on boilerplate allegations reciting the elements of a Section 10(b) claim in which they simply group Dr. Lynch with all of the other "Insider Defendants" and hold him responsible for statements made before and well after he worked for HP. (*See* CC ¶¶ 119-23.)

---

[4] Plaintiffs never identify the alleged "fraudulent conduct HP accused him of engaging in during the Class Period." (CC ¶ 109.)

1     As the Supreme Court recently announced in *Janus Capital*, a defendant cannot be held

2 liable under Section 10(b) for a false or misleading statement that he did not make.  131 S. Ct. at

3 2302.  "[T]he maker of a statement is the person or entity with ultimate authority over the

4 statement, including its content and whether and how to communicate it." *Id.*  To hold

5 otherwise, the Court explained, would impermissibly expand the reach of Section 10(b) by

6 turning aiders and abettors into primary violators in violation of the Court's prior holding in

7 *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).

8 *Janus Capital*, 131 S. Ct. at 2302 (citing *Central Bank*, 511 U.S. 164).  For that reason, the *Janus*

9 Court specifically rejected a definition of "make" that "would permit private plaintiffs to sue a

10 person who 'provides the false or misleading information that another person then puts into the

11 statement.'" *Id.* at 2303.

12     Here, none of the alleged misrepresentations or omissions was made by, authored by, or

13 attributed to Dr. Lynch.  (*See* CC ¶¶ 163-209.)  None of HP's financial statements was signed by

14 Dr. Lynch, nor do Plaintiffs allege that Dr. Lynch ever participated in preparing either the

15 financial statements or any of the public statements made by HP.  Moreover, it is undisputed that

16 Dr. Lynch was an HP employee for only six months of the Class Period, and an officer of HP for

17 less time than that.  (CC ¶¶ 109.)  Dr. Lynch cannot be held liable under Section 10(b) for

18 statements made when he was not an officer of HP.  *See, e.g., Bartesch v. Cook*, No. 11-1173-

19 RGA, 2013 WL 1750455, at *7 (D. Del. Apr. 23, 2013) (citing *Janus Capital*, 131 S. Ct. at

20 2302).  Because Plaintiffs have not alleged any actionable statement by Dr. Lynch, their claim

21 under Section 10(b) and Rule 10b-5 must be dismissed.

22 **C.**    **Plaintiffs Are Not Entitled to Any Presumption of Reliance.**

23     Plaintiffs' claim also fails because they do not plead reliance.  "Reliance by the plaintiff

24 upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of

25 action." *Stoneridge*, 552 U.S. at 159.  Plaintiffs attempt to satisfy this requirement by invoking

26 two rebuttable presumptions of reliance: (i) fraud-on-the-market and (ii) the presumption

27 established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S.

28 128 (1972).  (*See* CC ¶¶ 223-24.)  Plaintiffs are not entitled to rely on either of these

presumptions because they fail to allege that Dr. Lynch made any false or misleading statement or that Dr. Lynch had a duty to disclose.

The fraud-on-the-market presumption of reliance, approved by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), is available only "when the statements at issue become public." *Stoneridge*, 552 U.S. at 159. Upon publication, the "information is reflected in the market price of the security," and only then can it "be assumed that an investor who buys or sells stock at the market price relies upon the statement." *Id.* Thus, where a defendant made no public statement, the presumption of reliance does not apply. *See, e.g., Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 397 (5th Cir. 2007) ("the fraud-on-the-market presumption requires that there be a public misrepresentation upon which the market can rely").

The same is true where a plaintiff alleges reliance on a deceptive act by the defendant. If the alleged acts were never publicly disclosed, the market cannot have relied on them. *See Stoneridge*, 552 U.S. at 165, 167 (noting that its holding "is consistent with the narrow dimensions we must give to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law").

As discussed above, Plaintiffs fail to allege any public statement by Dr. Lynch. Moreover, they cannot invoke the fraud-on-the-market presumption merely by alleging some unspecified "fraudulent conduct" that they say "HP accused [Dr. Lynch] of engaging in during the Class Period." (CC ¶ 109.) *See, e.g., In re Int'l Rectifier Corp.*, 2008 WL 4555794, at *11 (fraud-on-the-market presumption not available where individual defendants made no misrepresentation or omission and alleged fraudulent accounting practices were not communicated to the public) (citing *Stoneridge*, 552 U.S. at 158-59).

The *Affiliated Ute* presumption of reliance is similarly unavailable to Plaintiffs. That presumption is available only where "there is an omission of a material fact by one with a duty to disclose." *Stoneridge*, 552 U.S. at 159 (citing *Affiliated Ute*, 406 U.S. at 153-54). Neither Section 10(b) nor Rule 10b-5(b) creates an affirmative duty to disclose. Rather, disclosure is required only when necessary "to make . . . statements [previously] made, in the light of the

- 8 -

circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321-22 (2011) (citing 17 C.F.R. § 240.10b-5(b)); *see also Philco*, 2011 WL 4595247, at *7 n.11 (same); *In re Yahoo!*, 2012 WL 3282819, at *7 (same).

As discussed above, Plaintiffs do not allege that Dr. Lynch made any statements, misleading or otherwise. As a result, there is no basis on which the Court could conclude that Dr. Lynch had a duty to disclose that could support the *Affiliated Ute* presumption of reliance.

**D. Plaintiffs Fail to Properly Plead Scienter.**

Finally, Plaintiffs' conclusory allegations of scienter are insufficient to support a claim for securities fraud. Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 (internal citation omitted). The PSLRA requires Plaintiffs to allege "with particularity" facts "giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). To qualify as "strong," an inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged," after considering the allegations of a complaint as a whole. *Tellabs*, 551 U.S. at 310.

Here, Plaintiffs allege no facts specific to Dr. Lynch but instead group him together with all of the other defendants in one conclusory allegation:

> HP and the Insider Defendants had actual knowledge of the
> misrepresentations and omissions of material fact set forth herein,
> or recklessly disregarded the true facts that were available to them.
> Defendants' misconduct was engaged in knowingly or with
> reckless disregard for the truth, and for the purpose and effect of
> concealing HP's true financial condition from the investing public
> and supporting the artificially inflated price of HP's common
> stock.

(CC ¶ 236.)

This bald and unsupported statement in the Complaint does not come close to meeting the strict pleading requirements for scienter. *See Philco*, 2011 WL 4595247, at *8 ("Conclusory allegations about a defendant's state of mind, without specific facts, are not enough.") (citing 15 U.S.C. § 78u-4(b)(3)). For this additional reason, Plaintiffs' claim against Dr. Lynch under Section 10(b) and Rule 10b-5 must be dismissed.

- 9 -

## II.

### Plaintiffs Have Failed to State a Claim
### Against Dr. Lynch under Section 20(a)

To state a claim for control person liability under Section 20(a), a plaintiff must allege (i) a primary violation of the Exchange Act; and (ii) that the defendant "exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Here, even assuming that Plaintiffs could establish a primary violation by HP or some other defendant, the Complaint fails to allege facts sufficient to establish the requisite control by Dr. Lynch over any such primary violator.

The Complaint merely alleges Dr. Lynch's title at HP (CC ¶ 109) and the following boilerplate allegation of control (asserted against all of the "Insider Defendants"):

> During the Class Period, the Insider Defendants acted as controlling persons of HP within the meaning of § 20(a) of the Exchange Act. By reason of their high-level positions with the Company, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, the Insider Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the materially false and misleading statements alleged herein.

(CC ¶ 240.) These allegations are not sufficient to state a claim for Section 20(a) liability.

Courts have repeatedly held that allegations of a defendant's title, coupled with boilerplate allegations consisting of "bare legal conclusions . . . devoid of any factual underpinnings," are insufficient to support a Section 20(a) claim. *City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-05111 CW, 2009 WL 942182, at *11 (N.D. Cal. Apr. 6, 2009); *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (dismissing Section 20(a) claim based on a nearly identical "boilerplate allegation" that "[b]y virtue of their high-level positions . . . participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements . . . the Individual

- 10 -

Defendants had the power to influence and control . . . the decision making of the Company");
*Howard*, 228 F.3d at 1067 (dismissing § 20(a) claim where "Plaintiff simply point[ed] to [the director's] general level of control but provide[d] no specific indication that [he] supervised or had any responsibility for the preparation of the financial statements").

Here, the only allegations of control are boilerplate assertions, applicable to all "Insider Defendants" and not specific to Dr. Lynch. Such assertions are patently insufficient to establish that Dr. Lynch exercised actual power or control over HP (or anyone else). Accordingly, the Section 20(a) claim against him must be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant Michael Lynch respectfully requests that this Court dismiss the Consolidated Complaint as against him with prejudice.

DATED:  July 2, 2012

STEPTOE & JOHNSON LLP

By:  ___//s// Jennifer B. Bonneville_____
Jennifer B. Bonneville
Attorneys for Defendant Michael Lynch

///
///
///
///
///
///
///
///
///
///

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2013, a true and correct copy of the foregoing instrument was forwarded to all known counsel of record by operation of the Court's electronic filing system.

 

 

 

 

                                   _____ //s// Jennifer B. Bonneville

                                         Jennifer Bonneville