PILLSBURY WINTHROP
  SHAW PITTMAN LLP
Bruce A. Ericson (Cal. Bar No. 76342)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

DEBEVOISE & PLIMPTON LLP
Bruce E. Yannett (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
beyannett@debevoise.com

Colby A. Smith (*pro hac vice*)
Ada Fernandez Johnson (*pro hac vice*)
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
casmith@debevoise.com
afjohnson@debevoise.com

*Attorneys for Defendant Léo Apotheker*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION, <br><br> This Document Relates to: All Actions | Master File No. C-12-5980 CRB <br><br> **CLASS ACTION** <br><br> **DEFENDANT LÉO APOTHEKER'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: November 8, 2013 <br> Time: 10:00 a.m. <br> Judge: Hon. Charles R. Breyer <br> Court: 6 |

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| NOTICE OF MOTION AND MOTION | 1 |
| ISSUES TO BE DECIDED | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| SUMMARY OF ARGUMENT | 2 |
| FACTUAL BACKGROUND | 3 |
| ARGUMENT | 5 |
| A. Plaintiff's Section 10(b) Claim Is Implausible and Must Fail | 5 |
|     1. The Complaint Fails To Raise A Strong Inference Of Scienter As To Mr. Apotheker | 6 |
|         a. Plaintiff's Scienter Allegations Related To Due Diligence Are Inadequate | 6 |
|         b. Plaintiff's Scienter Allegations Regarding Autonomy's Historical Performance And Future Prospects Are Insufficient | 8 |
|         c. Plaintiff's Scienter Allegations Related To The Price Paid For Autonomy Also Are Insufficient | 9 |
|     2. The Competing Inference Of Lack Of Scienter Is Much More Compelling | 10 |
|     3. The Alleged Misstatements Attributed To Mr. Apotheker Provide No Basis For The Claims Against Him | 11 |
| B. Plaintiff Fails to State a Section 20(a) Claim | 12 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**CASES**

*South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ..............................................6, 8, 9

*City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 12-Civ-1203,
   2013 WL 1174017 (S.D.N.Y. Mar. 22, 2013) .........................................................................7

*Coble v. Broadvision, Inc.*, No. C-01-01969-CRB, 2002 WL 31093589
   (N.D. Cal. Sept. 11, 2002) (Breyer, J.) .........................................................................5, 6, 11

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228 (3d Cir. 2004) ..................................7, 10

*In re Century Aluminum Co. Securities Litigation*, Nos. C 09-1001 SI, C 09-1103 SI,
   C 09-1162, C 09-1205 SI, 2011 WL 830174 (N.D. Cal. Mar. 3, 2011) (Illston, J.).................8

*In re Cisco Systems Inc. Securities Litigation*, No. C 11-1568 SBA,
   2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) (Armstrong, J.) ...............................................8

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d 869 (9th Cir. 2012).................11

*In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999) ........................6, 9

*In re Vantive Corp. Securities Litigation*, 283 F.3d 1079 (9th Cir. 2002).......................................9

*In re Yahoo! Inc. Securities Litigation*, No. C 11-02732 CRB, 2012 WL 3282819
   (N.D. Cal., Aug. 10, 2012) (Breyer, J.)..................................................................................12

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) ...........................11

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008).............10

*Murdeshwar v. Search Media Holdings Ltd.*, No. 11-Civ-20549, 2011 WL 7704347
   (S.D. Fla. Aug. 8, 2011)........................................................................................................7, 9

*Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) .............12

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001)............................................................................9

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009).....................................................12

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) .......................11

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) .........................5

*Tellabs v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007).........................................................10

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .....................................6, 8

**STATUTES**

15 U.S.C. §§ 78u-4–78u-5. ........................................................................................1, 6, 12

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on November 8, 2013, at 10:00 a.m., or as soon thereafter as |
| 4 | counsel may be heard, in Courtroom 6 of this Court, located at 450 Golden Gate Avenue, 17th Floor, |
| 5 | San Francisco, California, before the Honorable Charles R. Breyer, United States District Judge, |
| 6 | defendant Léo Apotheker will and hereby does move this Court to dismiss, with prejudice, all |
| 7 | purported claims asserted against him in the Consolidated Complaint for Violation of the Federal |
| 8 | Securities Laws filed by Lead Plaintiff PGGM Vermogensbeheer B.V. ("Plaintiff") on May 3, 2013 |
| 9 | (Doc. 100) ("Complaint"). |
| 10 | This motion is made under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil |
| 11 | Procedure, and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4–78u-5, |
| 12 | on the ground that the Complaint fails to state a claim upon which relief may be granted against Mr. |
| 13 | Apotheker. This motion is based on this notice of motion and motion, the memorandum of points |
| 14 | and authorities that follows, the Motion to Dismiss filed by Hewlett-Packard Company ("HP"), in |
| 15 | which Mr. Apotheker joins and incorporates by reference, the motions to dismiss filed by |
| 16 | Defendants Margaret C. Whitman, Catherine A. Lesjak, Raymond J. Lane, James T. Murrin, and |
| 17 | Shane V. Robison, the request for judicial notice filed herewith ("RJN"), the reply memoranda, the |
| 18 | pleadings and files in this action, and any such additional arguments and authorities that may be |
| 19 | presented at or in connection with the hearing in this action. |
| 20 | **ISSUES TO BE DECIDED** |
| 21 | 1. Whether the claim against Mr. Apotheker under Section 10(b) of the Securities |
| 22 | Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 should be dismissed as a matter of law |
| 23 | because the Complaint fails to allege facts giving rise to a strong inference of scienter, and fails to |
| 24 | establish falsity, as to the very few statements attributable to Mr. Apotheker during the Class Period. |
| 25 | 2. Whether the claim against Mr. Apotheker under Section 20(a) of the Exchange Act |
| 26 | should be dismissed as a matter of law because the Complaint fails to allege facts giving rise to a |
| 27 | primary violation of the Act or control by Mr. Apotheker over any other defendants to this action. |
| 28 | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

On August 18, 2011, Hewlett-Packard Company ("HP" or the "Company") announced that it would acquire the British software company Autonomy Corporation plc ("Autonomy"). At the time of the announcement, Léo Apotheker was HP's chief executive officer ("CEO"), although he was no longer at HP by the time the transaction closed on October 3, 2011. More than a year later, on November 20, 2012, HP announced that prior to the acquisition, Autonomy had "engaged in serious accounting improprieties, disclosure failures and downright misrepresentations," necessitating a write-down of a significant portion of Autonomy's goodwill. In short, HP, including its Board, its management and its shareholders, had been the victim of what appears to have been a well-orchestrated accounting fraud that deceived not only HP, but also the scores of institutions that previously had invested in Autonomy, the analysts that followed the company, the accountants from Deloitte who audited it, and the regulators in the UK that oversaw it.

Plaintiff claims that it and other similarly situated HP shareholders were the only real victims of this fraud and that HP and certain of its officers, directors and others should compensate them. Plaintiff, however, alleges no facts providing a plausible explanation why Mr. Apotheker and the others would have closed their eyes to such a fraud and pressed ahead anyway on an unlikely "suicide mission." Plaintiff's Complaint thus fails to create the required cogent and compelling inference of scienter:

*First*, Plaintiff's allegations of scienter against Mr. Apotheker are woefully insufficient. Although Plaintiff spends many paragraphs of the Complaint decrying HP's due diligence process, failure to detect the alleged fraud, and overvaluation of Autonomy, nowhere does the Complaint allege whether, let alone when or how, those issues supposedly came to Mr. Apotheker's attention. As a result, the Complaint provides no basis for concluding that any of the statements made by Mr. Apotheker during the five weeks between the announcement of the deal and his departure from HP were known by him to be false or misleading.

*Second*, the few statements alleged to have been made by Mr. Apotheker were not materially false.  These statements amount to nothing more than non-actionable puffery, opinion, forward-looking prognostications, or recapitulations of Autonomy's own statements about its business, as HP explained in detail in its own motion papers.

*Third*, when Plaintiff's theory of a vast failure by Mr. Apotheker and the other defendants to disclose a known fraud is weighed against the alternative possibility that the defendants were victimized by that fraud, the need to dismiss Plaintiff's claims becomes apparent.  There is simply no reason to credit Plaintiff's implausible theory as more cogent and compelling than the obvious — that Mr. Apotheker, like the other defendants in this case and the Plaintiff, was a victim of the same alleged fraud that HP later uncovered and announced on November 20, 2012.

For all these reasons, the case against Mr. Apotheker should be dismissed.

## FACTUAL BACKGROUND

Léo Apotheker served as the CEO of HP from November 1, 2010 until September 22, 2011.  (¶ 112.[1])  His tenure as CEO covers only the first 35 days of the alleged Class Period.  (¶ 3.)

During his short tenure, Mr. Apotheker worked with HP's Board of Directors to develop a plan to broaden HP's strategic scope by levering its strong position in traditional hardware, such as server and printing technologies, into emerging software and cloud technologies.  The goal was to address HP's stagnant growth by deemphasizing low-margin products and expanding into higher margin and higher growth aspects of the technology business.  (¶¶ 27-28.)  In connection with this fully disclosed shift in strategy (¶ 27), Mr. Apotheker and HP began to explore a possible deal to acquire Autonomy, a software company in the United Kingdom whose shares traded on the London Stock Exchange.  (¶ 31.)  Mr. Apotheker allegedly met with the founder of Autonomy in April 2011 and received the permission of HP's Board to look into a possible transaction in May 2011.  (*Id.*)  Also in May 2011, HP hired two sets of financial advisors to evaluate a possible transaction.  (*Id.*)

HP's Board of Directors met in July 2011 to debate the merits of the proposed transaction.  After careful deliberation and a robust debate regarding the potential costs and benefits of the deal,

---
[1] "¶" references are to the Complaint.

the Board unanimously authorized management to continue to pursue the transaction. (¶¶ 32, 92, 101.) The due diligence process began on July 28, 2011 and lasted three weeks. (¶ 33.) HP hired KPMG to assist with the due diligence. (¶ 36.) Mr. Apotheker made clear that HP's diligence took into account that Autonomy's financial statements were "audited on very professional standards" by Deloitte and that "therefore, that's where we [HP] pick up the trail and do our due – that's the basis of our due diligence." (¶ 41.)

After further deliberation at a series of Board meetings in early August (¶¶ 32-33, 35), HP's Board unanimously approved the Autonomy transaction, which was publicly announced on August 18, 2011. (¶¶ 35, 44.) In connection with that announcement, Mr. Apotheker stated that Autonomy was "a highly profitable and globally respected software company" and repeated historical information previously published by Autonomy regarding its revenue growth and margins. (¶¶ 44, 164-70.) Mr. Apotheker's only other public statements about the Autonomy transaction came slightly less than a month later, during a Deutsche Bank Technology Conference ("DB Conference") on September 13, 2011. There, Mr. Apotheker offered his view that HP's due diligence regarding Autonomy was "rigorous," "conservative," and "very professional." (¶¶ 58, 171-76.) He also expressed the view that HP had followed its internal "DCF-based model" to value the acquisition and that HP had paid a "very fair price" for Autonomy. (*Id.*)[2] Thus, the claims against Mr. Apotheker rest on statements he made on only two occasions and on only three subjects: Autonomy's historical business and future prospects, HP's due diligence associated with the transaction and the fairness of the price HP paid for Autonomy

Nine days after the DB Conference, on September 22, Mr. Apotheker was replaced as CEO of HP. (¶ 3.) The Autonomy acquisition closed on October 3, 2011. (¶ 73.) All of the other alleged misstatements, and all of the allegedly misleading financial statements, 10-Qs and 10-Ks, post-dated Mr. Apotheker's departure from HP. (¶¶ 126-62, 177-78.)

---

[2] The complete text of Mr. Apotheker's statements upon the announcement of the Autonomy transaction and at the DB Conference is contained in Exhibits 1 and 2 appended to the RJN filed with this Motion and Memorandum.

On November 20, 2012, more than a year *after* Mr. Apotheker had left HP, the Company announced that it was taking a large write-down with respect to its carrying value for Autonomy. (¶ 84.) Meg Whitman, HP's current CEO, who was a member of the Board at the time of the acquisition, said that HP had learned after completing the acquisition that Autonomy had engaged in "serious accounting improprieties, disclosure failures and outright misrepresentations." (*Id.*)[3] This suit followed, in which Plaintiff has lodged claims against HP and seven of its current or former directors and officers.[4] With respect to Mr. Apotheker, Plaintiff alleges violations of Sections 10(b) and 20(a) of the Exchange Act.

## ARGUMENT

### A. Plaintiff's Section 10(b) Claim Is Implausible and Must Fail

The central theme of Plaintiff's Complaint is that Mr. Apotheker, among others, knew or recklessly disregarded a vast fraud at Autonomy and pressed forward with HP's acquisition in order to realize his goal of "transforming" HP's business. (¶ 28.) Although the Complaint is long on adjectives, it is short on particularized facts detailing Mr. Apotheker's purported knowledge or recklessness, or his motive. *See Coble v. Broadvision, Inc.*, No. C-01-01969-CRB, 2002 WL 31093589, at *4 (N.D. Cal. Sept. 11, 2002) (Breyer, J.). In particular, Plaintiff never explains how an alleged desire to "transform" HP could possibly have prompted Mr. Apotheker (or anyone else) to pursue the purchase of an allegedly fraudulent enterprise. Plaintiff's theory is superficial and implausible, and it cannot survive.[5]

---

[3] While Mr. Apotheker to this day has no first-hand knowledge of these alleged improprieties, he accepts the Complaint's allegations of Autonomy's fraud as true for purposes of this motion.

[4] Any reference to "defendants" in this Motion and Memorandum excludes Michael R. Lynch, who was the former CEO of Autonomy and who, until he was terminated in April 2012, served as the Executive Vice President of Information Management at HP. (¶ 109.)

[5] To state a Section 10(b) claim, a plaintiff must plead (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).

### 1. The Complaint Fails To Raise A Strong Inference Of Scienter As To Mr. Apotheker

Plaintiff's claims against Mr. Apotheker should be dismissed because the Complaint fails to plead specific facts giving rise to a *strong inference* that Mr. Apotheker acted with an intent to deceive, manipulate, or defraud HP shareholders. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991-92 (9th Cir. 2009). To survive a motion to dismiss, a Complaint must plead "in great detail[] facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Id.* (internal citations and quotations omitted); *see also* 15 U.S.C. § 78u-4(b)(2); *Coble,* 2002 WL 31093589, at *2.[6] The Complaint's scant references to Mr. Apotheker's state of mind amount to nothing more than conclusory assertions that he "knew, or was at least severely reckless in not knowing," that HP's due diligence process was limited, that Autonomy's historical statements about its financial performance and business capabilities were false and, as a result, that Autonomy had been overvalued. (*See, e.g.*, ¶ 58.) Plaintiff's scienter allegations, however, contain none of the kind of particularized facts required to meet the exacting standards of the PSLRA.

#### a. Plaintiff's Scienter Allegations Related To Due Diligence Are Inadequate

The Complaint is devoid of specific facts giving rise to any inference — much less a strong inference — that Mr. Apotheker misrepresented the extent or quality of HP's due diligence process. Although the Complaint repeatedly disparages HP's due diligence process, Plaintiff fails to allege facts establishing that HP's due diligence actually fell below the level customary under similar circumstances, much less that Mr. Apotheker knew or had any reason to believe that HP's diligence team had done less work than was customary under similar circumstances or that the process was otherwise flawed. "As a general matter, defendants' failure to discover irregularities in due

---

[6] While deliberate recklessness also can be "a form of intentional or knowing misconduct," *Zucco Partners*, 552 F.3d at 991, it must be evidenced by "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent," *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999), *abrogated in part on other grounds by S. Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). No such specific facts are alleged here. Indeed, Plaintiff's allegations give no more than lip service to the requirement that it allege specific facts creating a strong inference not only of recklessness, or that it was "severe," but also that such recklessness was "deliberate or conscious." *See id.*

diligence does not, by itself, reflect an extreme departure from the standards of ordinary care." *Murdeshwar v. Search Media Holdings, Ltd.*, No. 11-Civ-20549, 2011 WL 7704347, at *17 (S.D. Fla. Aug. 8, 2011); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 244 (3d Cir. 2004) (allegations of insufficient due diligence failed to give rise to strong inference of scienter); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 12-Civ-1203, 2013 WL 1174017, at *19 (S.D.N.Y. Mar. 22, 2013) (failure to plead scienter where there were no allegations that defendant knew that it had done "materially less homework than was customary" in terms of due diligence). In addition, although Plaintiff claims that Autonomy engaged in "evasive conduct" that "actively limited" HP's due diligence (¶ 34), there are no particularized allegations showing that Mr. Apotheker had any knowledge that Autonomy may not have cooperated fully in the due diligence process or that any important information had not been made available to HP or those working for it in the due diligence process.

Plaintiff tries to bolster these claims by pointing to purported "red flags" it claims should have alerted Mr. Apotheker to concerns about HP's due diligence and Autonomy's bona fides. Here again, the Complaint is devoid of any particularized facts showing that those red flags came to his attention. For example, Plaintiff asserts that Deloitte's audits of Autonomy were "*prima facie* unreliable" because of the close business ties between Deloitte and Autonomy. (¶ 40; *see also* ¶ 86.) But the Complaint fails to provide any specifics as to how or why Mr. Apotheker should have known about those purported business ties or questioned Deloitte's independence or prior audit work, particularly given that Deloitte is a well-regarded Big Four accounting firm. The fact that Deloitte may have audited a soccer team that Autonomy sponsored, without detailed facts as to why that was improper or how Mr. Apotheker would have known about it, similarly fails to raise any inference of scienter. Plaintiff also points to HP's failure to "independently investigate" Deloitte's alleged disclosure during the diligence process of certain allegations made by "Whistleblower No. 1." (¶ 176.) Again, however, there are no allegations showing that Mr. Apotheker had any knowledge of

Whistleblower No. 1's claims. Moreover, the Complaint fails to explain why HP should not have relied on Deloitte's conclusion that Whistleblower No. 1's allegations were unsubstantiated.[7]

### b. Plaintiff's Scienter Allegations Regarding Autonomy's Historical Performance And Future Prospects Are Insufficient

Plaintiff pleads that Mr. Apotheker "knew, or was severely reckless in not knowing," that Autonomy's reported financials were inflated, that Autonomy's core technology, known as IDOL, "was far less profitable and ubiquitous than Lynch had represented," and that Autonomy's "'successful[]' shift to a SaaS [software as a service]-based model was materially false and misleading." (¶¶ 58, 175.) But nowhere does Plaintiff describe the time or content of a single report or communication received by Mr. Apotheker that would have alerted him to these alleged facts. Rather, the Complaint relies on boilerplate allegations that Mr. Apotheker "must have known" of accounting improprieties at Autonomy based on his "high-level position" at HP (¶ 119); that he was allegedly "privy to confidential information" (*id.*); and that he "had access to" negative information about Autonomy that raised questions about its accounting practices and governance. (¶ 42.) Courts have routinely rejected such allegations where, as here, there are no facts detailing what confidential information Mr. Apotheker was allegedly "privy" to that would have led him to know that Autonomy had misrepresented its business. *See Zucco Partners, LLC*, 552 F.3d at 1003-04 (boilerplate allegations that defendant had access to purportedly misleading financial information insufficient to plead scienter); *S. Ferry LP #2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008) (allegations of management's role in a company relevant under the PSLRA only when accompanied by detailed and specific factual allegations); *In re Century Aluminum Co. Sec. Litig.*, Nos. C 09-1001 SI, C 09-1103 SI, C 09-1162, C 09-1205 SI, 2011 WL 830174, at *3 (N.D. Cal. Mar. 3, 2011)

---

[7] The allegations relating to "Whistleblower Nos. 2-4" (¶¶ 47, 67, 80), should likewise be disregarded for purposes of Mr. Apotheker's scienter. There are no facts alleging that any of these alleged witnesses had direct contact with Mr. Apotheker, or that Mr. Apotheker was aware of any of the purported allegations being made by these persons. *See In re Cisco Sys. Inc. Sec. Litig.*, No. C 11-1568 SBA, 2013 WL 1402788, at *11 (N.D. Cal. Mar. 29, 2013) (Armstrong, J.) (failure to plead scienter based on confidential witness statements where witnesses had no direct contact with defendants).

(Illston, J.) (same). Absent any particularized facts as to *what* Mr. Apotheker allegedly knew or was deliberately reckless in not knowing about Autonomy's past financial performance and purported issues with Autonomy's IDOL platform, the Complaint fails to meet the rigorous pleading standards of the PSLRA. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), *abrogated in part on other grounds by S. Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). In addition, the Complaint is silent as to how, in his position as CEO of HP, Mr. Apotheker would have had the kind of access to confidential information about Autonomy, a target company in a proposed acquisition, that might suffice to raise an inference of scienter. *See, e.g.*, *Murdeshwar*, 2011 WL 7704347, at *18 (rejecting inference of scienter against directors of acquiring business where no allegations that defendants had knowledge of alleged irregularities at target company).

### c. Plaintiff's Scienter Allegations Related To The Price Paid For Autonomy Also Are Insufficient

The allegations related to Mr. Apotheker's statement that HP paid "a very fair price" for Autonomy (¶¶ 58, 172), as well as the allegations that Mr. Apotheker knew but failed to disclose that HP "overpaid" for Autonomy (¶¶ 45, 68) are inappropriately based on 20/20 hindsight. These allegations show nothing about Mr. Apotheker's knowledge of the truth or falsity of the alleged statements *at the time* they were made, and therefore add nothing to the scienter equation. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086-88 (9th Cir. 2002), *abrogated in part on other grounds by S. Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). Indeed, they amount to little more than an after-the-fact disagreement with Mr. Apotheker's business judgment and that of the whole of HP's Board in deciding to acquire Autonomy. It is well-established, however, that merely "[c]alling executives bad managers, or bad forecasters, does not plead fraud." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).

Plaintiff's remaining allegations fare no better. *First*, plaintiff points to the alleged fact that defendant Catherine Lesjak, HP's CFO, "vehemently opposed the acquisition" (¶ 42), to support an inference of scienter as to Mr. Apotheker. However, this allegation establishes nothing other than the fact that there was a robust debate and discussion among management and the Board regarding

- 9 -   Apotheker's Motion to Dismiss Complaint
Case No. C-12-5980 CRB

the Autonomy acquisition. There is no allegation that Ms. Lesjak opposed the acquisition because she thought Autonomy was a fraud. If anything, Ms. Lesjak's alleged opposition to the deal undermines a strong inference of scienter, because it shows that Mr. Apotheker and others did not suppress questions about the merits of the transaction. *Second*, the Complaint asserts in conclusory fashion that Mr. Apotheker "circumvented the Finance Committee" (¶¶ 38, 176) when seeking Board approval of the deal. This allegation also fails. There are no facts explaining how Mr. Apotheker is alleged to have "circumvented" the Finance Committee and what information he is alleged to have kept from the Committee. Moreover, as Plaintiff itself concedes, the Autonomy acquisition was unanimously approved by the full Board. (¶ 92.) Given that the Finance Committee is a committee of the Board, it is hard to see how Mr. Apotheker failed to permit the Finance Committee to do its work during the acquisition process.

   **2.     The Competing Inference Of Lack Of Scienter Is Much More Compelling**

Viewed holistically, the Complaint fails to support a cogent and compelling inference of scienter. The inference Plaintiff would have the court draw — that Mr. Apotheker along with HP's Board of Directors willingly purchased a sham company and deliberately embroiled themselves in an accounting scandal — is neither cogent nor compelling, much less "as compelling as any opposing inference" of nonfraudulent intent. *Tellabs v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324 (2007); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008). Indeed, there is simply no reasonable basis to infer or suggest that Mr. Apotheker deliberately led HP on a "suicide mission" in its acquisition of Autonomy. *See GSC Partners*, 368 F.3d at 244 (rejecting theory that defendants recklessly disregarded target company's obstruction of due diligence where nothing suggests acquirer "was on a suicide mission in this acquisition").

Ultimately, the more "compelling" and "cogent" inference to be drawn from the allegations of the Complaint is that Mr. Apotheker and others at HP (including the Board) relied upon objective indicators that Autonomy was what it represented itself to be — a thriving software business, with fully-audited financial statements, an existing public investor base on the London Stock Exchange, a

product that real customers were interested in and buying, and a strong partner for the future. Unfortunately, they appear to have been misled by Autonomy.

Further bolstering the inference of non-fraudulent intent is the fact that Mr. Apotheker had no credible motive to mislead HP shareholders. Mr. Apotheker is not alleged to have sold HP stock during the Class Period, nor is he alleged to have benefitted in any concrete or personal way from the alleged fraud. *See Coble*, 2002 WL 31093589, at *4 (finding the inference of scienter "particularly not strong" where the "[p]laintiffs did not proffer any theory as to why defendants would make these false statements if they did not personally profit from them"). Rather, the only allegation of purported motive Plaintiff can muster as to Mr. Apotheker is that he wanted to "deliver on his promise to 'transform' HP." (¶ 28.) But that allegation makes no sense: if Mr. Apotheker had known or suspected that Autonomy was a fraud, acquiring it would assure only that his purported desire to transform HP would never be realized. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (desire to do a good job and "enhance business prospects" for the company do not raise strong inference of scienter). Far from being cogent and compelling, Plaintiff's overarching conception of Mr. Apotheker's motivation renders its claim nonsensical.

### 3. The Alleged Misstatements Attributed To Mr. Apotheker Provide No Basis For The Claims Against Him

This Court also should dismiss the Section 10(b) claims as to Mr. Apotheker, because none of the statements attributed to him were false under the securities laws:

- **Autonomy's historical financial performance and prospects.** Mr. Apotheker's reference to, and repeating of, certain financial figures from Autonomy's audited financial statements (¶¶ 44, 163-64, 168-69, 171) are not actionable as to Mr. Apotheker because he was not the person with "ultimate authority" over those financial statements, *see Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011), and there are no facts alleged that Mr. Apotheker knew or had reason to believe that Autonomy's financials were false when made. *See S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 111-13 (2d Cir. 2009) (repeating of another company's allegedly false financial statements insufficient to establish scienter).

- **Due diligence.** Mr. Apotheker's statements regarding HP's "rigorous," "extremely tight" and "professional" due diligence (¶¶ 58, 172, 176) are nothing more than non-actionable puffery or statements of opinion. *See In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *17 (N.D. Cal., Aug. 10, 2012) (Breyer, J.).

- **Fairness of the price paid.** Mr. Apotheker's statements that HP had paid a "fair price" based on its internal DCF-based model for valuing the transaction, and would benefit from certain synergies from the Autonomy acquisitions (¶¶ 171-72) are non-actionable statements of opinion or forward-looking statements protected by the PSLRA's safe harbor. *See* 15 U.S.C. § 78u-5(c)(1); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009).

As HP has argued in further detail in its motion papers, none of these statements attributed to Mr. Apotheker provide a basis for Plaintiff's claims. *See* Section II.A of HP's Motion. On this basis as well, the claims against Mr. Apotheker should be dismissed.

## B. Plaintiff Fails to State a Section 20(a) Claim

Plaintiff's Section 20(a) claim against Mr. Apotheker fails because Plaintiff has not pled a primary violation of Section 10(b) by HP for any of the challenged statements made prior to September 22, 2011 — the date on which Mr. Apotheker left HP. The control-person claim should also be dismissed because Plaintiff does not allege facts showing that Mr. Apotheker exercised actual power or control over any of the other defendants or the vast majority of challenged Class Period statements that relate to the pre-acquisition time period. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996) (no control on the part of the CEO where there was "no evidence that [the CEO] exercised direct or indirect control over" the transaction at issue).

# CONCLUSION

For these reasons, as well as the reasons set forth in HP's motion seeking dismissal, the motions of the other defendants and all relevant supporting documentation, the claims against Mr. Apotheker should be dismissed for failure to state a cognizable claim.

Respectfully submitted,

PILLSBURY WINTHROP
  SHAW PITTMAN LLP

By: /s/ Bruce A. Ericson
Bruce A. Ericson (Cal. Bar No. 76342)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

DEBEVOISE & PLIMPTON LLP
Bruce E. Yannett (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
beyannett@debevoise.com

Colby A. Smith (*pro hac vice*)
Ada Fernandez Johnson (*pro hac vice*)
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
casmith@debevoise.com
afjohnson@debevoise.com

*Attorneys for Defendant Léo Apotheker*