| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | KEVIN P. MUCK (CSB No. 120918)<br>kmuck@fenwick.com<br>MARIE C. BAFUS (CSB No. 258417)<br>mbafus@fenwick.com<br>TAHIR I. GOLDEN (CSB No. 282948)<br>tgolden@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 875-2300<br>Facsimile: (415) 281-1350 |
| 7 | Attorneys for Defendant James T. Murrin |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION,<br><br>This Document Relates To: All Actions | Case No. 11-CV-05980 CRB<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT JAMES T. MURRIN'S MOTION TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: November 8, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 6<br>Judge: The Honorable Charles R. Breyer |

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................1

ISSUE TO BE DECIDED ...................................................................................................................1

POINTS AND AUTHORITIES ...........................................................................................................2

I. INTRODUCTION ..................................................................................................................2

II. STATEMENT OF FACTS .....................................................................................................3

III. APPLICABLE LEGAL STANDARDS .................................................................................4

IV. THE COMPLAINT DOES NOT STATE A CLAIM FOR CONTROL PERSON
 LIABILITY AGAINST MR. MURRIN ..................................................................................5

V. CONCLUSION .......................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cement Masons & Plasterers Joint Pension Fund v. Equinix, Inc.*,
    2013 WL 2931422 (N.D. Cal. June 13, 2013) .................................................................. 4

*Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ......................................................................... 7

*City of Westland Police and Fire Ret. Sys. v. Sonic Solutions*,
    2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ................................................................... 7

*Glenbrook Cap. Ltd. P'ship v. Kuo*,
    2009 WL 839289 (N.D. Cal. Mar. 30, 2009) ................................................................ 5

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ............................................................................. 4, 5, 6, 7

*Howard v. Hui*,
    2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) .............................................................. 5

*In re Atmel Corp. Deriv. Litig.*,
    2008 WL 2561957 (N.D. Cal. June 25, 2008) ............................................................... 5

*In re Downey Sec. Litig.*,
    2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................................................ 6, 8

*In re Gupta Corp. Sec Litig.*,
    900 F. Supp. 1217 (N.D. Cal. 1994) ............................................................................. 6

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. Oct. 16, 2007) ........................................................... 7

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) ........................................................................ 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................................... 6, 7

*In re Metawave Commc'ns Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003) .................................................................... 6

*In re Oak Tech. Sec. Litig.*,
    1997 WL 448168 (N.D. Cal. Aug. 1, 1997) .................................................................. 5

*In re Petco Animal Supplies Inc. Sec. Litig.*,
    2006 WL 6829623 (S.D. Cal. Aug. 1, 2006) ................................................................. 7

*In re Ramp Networks, Inc. Sec. Litig.*,
    201 F. Supp. 2d 1051 (N.D. Cal. 2002) ........................................................................ 5

*In re Silicon Storage Tech., Inc. Deriv. Litig.*,
    2009 WL 1974535 (N.D. Cal. July 7, 2009) ................................................................. 4

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ........................................................ 5, 7, 8

*In re Toyota Motor Corp. Sec. Litig.*,
    2011 WL 2675395 (C.D. Cal. Jul. 7, 2011) .................................................................. 7

*Madden v. Cowen & Co.*,
    576 F.3d 957 (9th Cir. 2009) ........................................................................................ 4

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
　527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................. 7, 8

*Paracor Fin., Inc. v. General Elec. Capital Corp.*,
　96 F.3d 1151 (9th Cir. 1996) ................................................................................. 6, 8

*Red River Resources, Inc. v. Mariner Sys., Inc.*,
　2012 WL 2507517 (D. Ariz. June 29, 2012) ............................................................. 6

*Zucco Partners, LLC v. Digimarc Corp.*,
　552 F.3d 981 (9th Cir. 2009) .................................................................................. 5, 7

**STATUTES**

Private Securities Litigation Reform Act of 1995
　15 U.S.C. § 78u-4(b)(1)-(2) ....................................................................................... 1

Securities Exchange Act of 1934
　Section 10(b), 15 U.S.C. § 78j(b) ..................................................................... *passim*
　Section 20(a), 15 U.S.C. § 78t(a) ..................................................................... *passim*

**RULES AND REGULATIONS**

17 C.F.R. § 230.405 ........................................................................................................ 5

Federal Rules of Civil Procedure
　Rule 9(b) ......................................................................................................... 1, 4, 5
　Rule 12(b)(6) ............................................................................................................ 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 8, 2013, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Charles R. Breyer, located at the United States District Court, 450 Golden Gate Avenue, San Francisco, California, defendant James T. Murrin will and hereby does move the Court for an order dismissing the Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl.") with prejudice.

Mr. Murrin asks the Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on the grounds that the Complaint does not contain facts sufficient to state a claim against him for violation of Section 20(a) of the Securities Exchange Act of 1934 ("1934 Act").[1] Mr. Murrin's motion is based upon: this Notice of Motion and Motion; the following Points and Authorities; the pleadings and records on file in this action; the motions to dismiss and supporting papers filed by other defendants; and on such further argument and materials as may be submitted to the Court.

In addition, Mr. Murrin hereby joins in the motion to dismiss filed separately by defendant Hewlett-Packard Company ("HP" or the "Company"), and incorporates the arguments and authorities set forth in HP's moving papers, as well as the additional papers filed by HP in support of its motion and the applicable arguments made by the other defendants in their moving papers.

**ISSUE TO BE DECIDED**

Whether the Complaint should be dismissed as to Mr. Murrin where:

a. Plaintiff does not suggest that Mr. Murrin himself engaged in any acts or conduct giving rise to a claim under Section 10(b), and instead only asserts a claim against him as a purported "control person" of HP under Section 20(a);

b. Plaintiff fails to allege, in conformity with the PSLRA, an underlying violation of Section 10(b) by HP (or, for that matter, any other defendant); and

c. In any event, plaintiff fails to allege particularized facts showing that Mr. Murrin possessed the power to control corporate actions, much less those actions alleged to constitute an underlying violation of the 1934 Act by HP.

---

[1] Unless otherwise specified, all statutory citations are to the 1934 Act.

# POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff spends nearly 100 pages purporting to set forth the basis for its claims. As to Mr. Murrin, however, the Complaint is most significant for what it fails to say. Plaintiff does not allege that Mr. Murrin made any false statements, acted with scienter, or otherwise violated Section 10(b). To the contrary, plaintiff disavows any such claim and stresses that Mr. Murrin is sued solely as an alleged control person of HP under Section 20(a). Compl. ¶ 116.

Even as to that narrow theory of liability, the Complaint does not come close to alleging the particularized facts necessary to state a claim. Not only is plaintiff unable to plead an underlying violation of Section 10(b) by HP – a defect that, by itself, mandates dismissal of the control person claim – there are no facts even arguably showing Mr. Murrin's control over the Company. Indeed, the Complaint contains virtually no reference to Mr. Murrin. Apart from being identified in passing as a defendant (Compl. ¶ 3), the Complaint mentions him in just two paragraphs. *Id*. ¶¶ 116, 179. The only "facts" alleged with respect to Mr. Murrin are that:

- He has worked at HP for 24 years, was Senior Vice President, Controller and Principal Accounting Officer from March 2007 to May 2012, and thereafter became Senior Vice President and General Manager within HP's Enterprise Services business (*id.* ¶ 116);

- He was "listed as one of HP's 15 top executives in [its] 2011 Annual Report," and was one of the persons who signed the Company's 2011 Form 10-K (*id*. ¶¶ 116, 179); and

- He "participated" – in some unspecified way – "in HP's March 21, 2012 HP Annual Meeting of Stockholders" (*id.* ¶ 116).

Nor does the Complaint aver that Mr. Murrin had any involvement in the events underlying plaintiff's Section 10(b) claim. There is no allegation that Mr. Murrin played any role in the negotiations leading up to HP's acquisition of Autonomy Corporation plc ("Autonomy"), was involved in the due diligence, was aware of improper accounting by Autonomy (either before or after the deal was completed), or had responsibility for HP's ultimate decision to write down assets acquired in connection with that transaction. In fact, the Complaint does not even purport to describe any of Mr. Murrin's duties, responsibilities or functions during the class period, resting instead on cursory references to his job titles. Compl. ¶ 116. And, perhaps most notably, plaintiff offers nothing to suggest that Mr. Murrin had the ability to control the statements allegedly giving

1  rise to HP's liability under Section 10(b) – which is hardly surprising, inasmuch as the Complaint
2  attributes those statements to HP executives who outranked him.

3  Put simply, plaintiff does not begin to allege the elements of a control person claim against
4  Mr. Murrin. His motion to dismiss should therefore be granted.

## II.  STATEMENT OF FACTS

Lead Plaintiff PGGM Vermogensbeheer B.V. ("plaintiff") brings this action on behalf of persons who acquired HP's common stock between August 19, 2011 and November 20, 2012 (the "class period"). Plaintiff claims that that HP's stock price was inflated during the class period as a result of alleged misstatements relating to the Company's $11 billion acquisition of UK-based Autonomy, which was completed in October 2011. *See, e.g.*, Compl. ¶¶ 3, 4, 7, 90, 210-213. The crux of the Complaint is the theory that Autonomy overstated its financial results by violating governing accounting principles, HP should have discovered those issues during its due diligence, and certain of HP's financial results were rendered inaccurate as a result of Autonomy's alleged accounting improprieties. *See, e.g.*, *id*. ¶¶ 7-8. Plaintiff avers that the "truth" was "partially revealed" in August 2012, and then "fully" disclosed on November 20, 2012 when HP announced it would be recognizing a non-cash goodwill and intangible asset impairment charge of $8.8 billion relating to the Autonomy business. *Id*. ¶¶ 5, 214-218.

The relevant factual background pertaining to the Autonomy acquisition, HP's integration efforts, accounting issues and the ultimate write-down decision are discussed in HP's separate motion to dismiss ("HP Mot."). In the interest of efficiency and economy, Mr. Murrin refers the Court to HP's discussion (*see* HP Mot. at 1-4), which is incorporated by reference.

With respect to Mr. Murrin, the relevant factual allegations are both sparse and innocuous. The Complaint notes that Mr. Murrin has been employed by HP for 24 years and served in two jobs during the class period: Senior Vice President, Controller and Principal Accounting Officer (from March 2007 until May 1, 2012) and then Senior Vice President and General Manager within HP's Enterprise Services business. Compl. ¶ 116. Plaintiff further avers Mr. Murrin was "listed as one of HP's 15 top executives in [its] 2011 Annual Report," and was one of a number of persons who signed HP's 2011 Form 10-K. *Id*. ¶¶ 116, 179. Plaintiff also asserts Mr. Murrin "participated

in HP's March 21, 2012 HP Annual Meeting of Stockholders," but never explains what he did at that meeting or why that cryptic assertion has any relevance. *Id.* ¶ 116. That is the sum total of plaintiff's allegations regarding Mr. Murrin. The Complaint says nothing about his actual day-to-day duties and responsibilities during the class period, contains no allegations regarding his interaction with other defendants, and does not identify any statement attributed to him.

Plaintiff alleges that HP and six current or former officers and directors are liable under Section 10(b) for allegedly misleading statements made during the class period.[2] Mr. Murrin, however, is not alleged to have violated Section 10(b), and is "named solely as a control person" of HP under Section 20(a). Compl. ¶ 116. The other individual defendants are also alleged to have controlled HP within the meaning of Section 20(a). *Id.* ¶ 240.

### III.  APPLICABLE LEGAL STANDARDS

"Control person liability is secondary only and cannot exist in the absence of a primary violation." *In re Silicon Storage Tech., Inc. Deriv. Litig.*, 2009 WL 1974535, at *11 (N.D. Cal. July 7, 2009) (citations and quotations omitted). To plead a Section 20(a) claim, plaintiff must allege: (1) an underlying violation of Section 10(b) by the purportedly "controlled" entity; and (2) "that the defendant exercised actual power or control over the primary violator." *Id.* (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

With respect to the first of these elements – an underlying violation of Section 10(b) – plaintiff must comply not only with Fed. R. Civ. P. 9(b), but also with the stringent pleading requirements of the PSLRA. *Cement Masons & Plasterers Joint Pension Fund v. Equinix, Inc.*, 2013 WL 2931422, at *5 (N.D. Cal. June 13, 2013). As discussed more fully in HP's motion (HP Mot. §§ I, II), the PSLRA contains numerous pleading requirements and other provisions designed to "limit[] the potential liability of defendants" and "requir[e] plaintiffs . . . to surmount a number of procedural hurdles." *Madden v. Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009).

The second element of a Section 20(a) claim – defendant's exercise of "actual power or

---

[2] Those individuals are: Leo Apotheker (HP's former CEO); Margaret C. Whitman (HP's current CEO); Catherine A. Lesjak (HP's CFO); Raymond J. Lane (a director and former Executive Chairman of the Board); Shane V. Robison (former Executive Vice President and Chief Strategy and Technology Officer); and Michael Lynch (Autonomy's founder who served as HP's Executive Vice President of Information Management following the acquisition). Compl. ¶¶ 109-117.

control over the primary violator" – is similarly subject to heightened pleading standards. As this Court has held, plaintiff must "plead the circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)." *Howard v. Hui*, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) (Breyer, J.). *See also Glenbrook Cap. Ltd. P'ship v. Kuo*, 2009 WL 839289, at *18 (N.D. Cal. Mar. 30, 2009) ("Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the pleading requirements for both violations are the same"); *In re Atmel Corp. Deriv. Litig.*, 2008 WL 2561957, at *11 (N.D. Cal. June 25, 2008) (under the PSLRA, plaintiffs are required to "plead the circumstances of the control relationship with particularity").[3]

## IV. THE COMPLAINT DOES NOT STATE A CLAIM FOR CONTROL PERSON LIABILITY AGAINST MR. MURRIN

As discussed in HP's motion, plaintiff does not allege any violation of Section 10(b) by the Company. *See* HP Mot. §§ I, II. For that reason alone, there can be no Section 20(a) claim against Mr. Murrin. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

In addition, the Complaint fails to allege that Mr. Murrin "controlled" the Company with respect to any statement that is even arguably actionable. For purposes of Section 20(a), the Ninth Circuit has adopted the SEC's definition of "control," which requires "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." *Howard*, 228 F.3d at 1065 n.9 (quoting 17 C.F.R. § 230.405). Under that definition, an individual's status as a control person involves "scrutiny of [his] participation in the day-to-day affairs of the corporation and [his] power to control corporate actions." *Howard*, 228 F.3d at 1065.

Plaintiff's factual allegations regarding Mr. Murrin's supposed control over HP are found entirely in paragraph 116 of the Complaint, and consist of the following:

- **His corporate status**: "James T. Murrin was Senior Vice President, Controller and Principal Accounting Officer at HP from March 2007 to May 2012. On March 22, 2012, Murrin resigned his position … effective May 1, 2012, and accepted the position of Senior Vice President and General Manager within HP's Enterprise Services business. Murrin, a 24-year veteran of HP, was listed as one of HP's 15 top

---

[3] *See also In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000); *In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *14-15 (N.D. Cal. Aug. 1, 1997).

executives in the Company's 2011 Annual Report."

- **His signature on one document**: "During the class period, Murrin signed and had ultimate control and authority over HP's 2011 Annual Report on Form 10-K."

- **His attendance at one meeting**: "Murrin also participated in HP's March 21, 2012 Annual Meeting of Stockholders."

These conclusory allegations do nothing to establish Mr. Murrin's "participation in the day-to-day affairs of the corporation" or his "power to control corporate actions." *Howard*, 228 F.3d at 1065.

Plaintiff's averments regarding Mr. Murrin's status as an executive of HP are insufficient to support a control person claim. *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996) (fact that a person is a high-ranking officer – even the CEO – does not create a presumption that he or she is a "controlling person"). *See also In re Gupta Corp. Sec Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) ("[s]tatus alone is ordinarily insufficient to establish control person liability"); *Red River Resources, Inc. v. Mariner Sys., Inc.*, 2012 WL 2507517, at *9 (D. Ariz. June 29, 2012) (dismissing Section 20(a) claim where plaintiff's allegations of control person liability consisted almost entirely of conclusory assertions regarding defendants' executive positions); *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) ("Liang's titles of President of World Trade and Vice President for Worldwide operations do not establish that Liang had control"). What is required – but what is missing from the Complaint – are particularized facts showing that, in his various positions during the class period, Mr. Murrin exercised actual control over HP and the alleged misstatements at issue. *See In re Downey Sec. Litig.*, 2009 WL 2767670, at *15 (C.D. Cal. Aug. 21, 2009) (dismissing Section 20(a) claim in absence of particularized allegations showing defendants' exercise of control); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008) (plaintiffs failed to allege, "with particularity, that each Defendant possessed 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations'") (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000)).

Plaintiff's boilerplate assertions that the "Insider Defendants" were able "to control the contents" of HP documents in unidentified ways, were "involved in HP's day-to-day operations … at the highest levels, and somehow had "access" to unspecified information (Compl. ¶ 119), do

nothing to satisfy plaintiff's pleading burden. Such generic and undifferentiated allegations are insufficient to allege that Mr. Murrin is a control person with respect to any alleged misstatements. *City of Westland Police and Fire Ret. Sys. v. Sonic Solutions*, 2009 WL 942182, at *11 (N.D. Cal. Apr. 6, 2009) (dismissing Section 20(a) claims where they consisted solely of "bare legal conclusions . . . devoid of any factual underpinnings); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. Oct. 16, 2007) (rejecting similar boilerplate allegations as insufficient to establish control person liability); *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *31 (S.D. Cal. Aug. 1, 2006) (dismissing Section 20(a) claims where " boilerplate allegations of control … lack[ed] sufficient facts to apply the theory" to certain defendants).

Underscoring plaintiff's pleading failure is the fact that the claim against HP is premised on statements allegedly made by individuals with positions higher than Mr. Murrin's. Compl. ¶¶ 109-117. It defies logic to suggest Mr. Murrin had the ability to "control" his superiors. *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) ("it is difficult for the Court to determine how, as a Vice President, Garn was able to exercise control over the other 10b–5 Defendants when the other 10b–5 Defendants held positions of Vice President or higher"); *In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395, at *5 (C.D. Cal. Jul. 7, 2011) (dismissing Section 20(a) claims where there was nothing in the complaint suggesting any actual supervisory role over the individual defendants alleged to be speakers).[4]

Equally fruitless is the perfunctory assertion that Mr. Murrin signed HP's Form 10-K for fiscal 2011. Compl. ¶ 116. At the outset, plaintiff is unable to plead that any statement in the 10-K is actionable (*see* HP Mot. §§ I, II), which dooms a Section 20(a) claim. *Zucco*, 552 F.3d at 990. Apart from that, the Complaint offers no factual allegations regarding Mr. Murrin's actual control over the 10-K. While courts have held an officer's signature on a document may be suggestive of his ability to control the contents,[5] plaintiff makes no allegations regarding Mr. Murrin's role in the

---

[4] *See also McKesson*, 126 F. Supp. 2d at 1277 (complaint failed to identify how defendants controlled those who allegedly violated Section 10(b); the court also noted that certain defendants, including the Chief Operating Officer, appeared to be too low-ranking to be control persons).

[5] *See, e.g., Howard*, 228 F.3d at 1066; *Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1208 (N.D. Cal. 2012); *Splash*, 2000 WL 1727405, at *16.

preparation of the 10-K or his ability to dictate what was actually said in that filing. *See Splash,* 2000 WL 1727405, at *16 (while director's signature on registration statement and prospectus "suggests the possibility of control," the absence of specific factual allegations as to that defendant meant that plaintiffs did not plead control adequately). Indeed, the absence of such allegations is highlighted by the fact that plaintiff does not contend any statement in the 10-K supports a Section 10(b) claim against Mr. Murrin. And, in any event, a signature on the 10-K would do nothing to demonstrate control over other alleged misstatements. *See Paracor*, 96 F.3d at 1163; *Downey*, 2009 WL 2767670, at *15.

Finally, the allegation that Mr. Murrin "participated" in HP's March 21, 2012 shareholder meeting (Compl. ¶ 116) is unavailing. Plaintiff furnishes no explanation regarding the nature or significance of such "participat[ion]." Moreover, the Complaint identifies just one comment (by Ms. Whitman) made at that meeting. Compl. ¶ 189. Not only does plaintiff fail to plead that the comment was false or made with scienter, there is no hint that Mr. Murrin exercised control over HP's CEO – and any such suggestion would be illogical. *See, e.g., Quest*, 527 F. Supp. 2d at 1194.

## V.  CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to Mr. Murrin.

Dated: July 2, 2013                FENWICK & WEST LLP

By    /s/ *Kevin P. Muck*
         Kevin P. Muck
Attorneys for Defendant James T. Murrin