ALLEN S. RUBY (STATE BAR NO. 47109)
allen.ruby@skadden.com
TIMOTHY A. MILLER (STATE BAR NO. 154744)
timothy.miller@skadden.com
RICHARD S. HORVATH, JR. (STATE BAR NO. 254681)
richard.horvath@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

ERIC S. WAXMAN (STATE BAR NO. 106649)
eric.waxman@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendant
RAYMOND J. LANE

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| IN RE HP SECURITIES LITIGATION | MASTER DOCKET NO. **C-12-05980 CRB** |
|---|---|
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | **(1) NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS;** |

**(2) JOINDER IN THE MOTIONS TO DISMISS OF DEFENDANT HEWLETT-PACKARD AND CERTAIN INDIVIDUAL DEFENDANTS**

**(3) REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS (filed under separate cover); and**

**(4) [PROPOSED] ORDER (lodged under separate cover).**

Date: **November 8, 2013**
Time: **10:00 a.m.**
Judge: **Hon. Charles R. Breyer**
Ctrm.: **6, 17th Floor**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ v

JOINDER IN DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO
    DISMISS ...................................................................................................................... v

STATEMENT OF ISSUES ....................................................................................................... v

SUMMARY OF ARGUMENT ................................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

    I.      INTRODUCTION ............................................................................................ 1

    II.     BACKGROUND ............................................................................................. 2

          A.    HP's Acquisition Of Autonomy ............................................................ 2

          B.    Statements Allegedly Made By Mr. Lane .................................................. 3

          C.    Allegations Tellingly Absent From The Consolidated Complaint .............. 4

    III.    LEAD PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER
          SECTION 10(b) AND RULE 10b-5 AGAINST MR. LANE ................................. 5

          A.    Lead Plaintiff Fails To Allege With Particularity Facts Supporting Its
              Claim That Mr. Lane's Statement Of Opinion That HP Paid "Market
              Price" For Autonomy Was Subjectively False When Made. ..................... 5

          B.    Lead Plaintiff's Claim Based On HP's 2011 Form 10-K Fails Because
              The Consolidated Complaint Fails To Plead Particularized Facts
              Giving Rise To A Strong Inference That Mr. Lane Acted With
              Scienter. ................................................................................................... 9

    IV.    LEAD PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER
          SECTION 20(a) ................................................................................................ 13

    V.     CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alaska Electrical Pension Fund v. Adecco S.A.*,
371 F. Supp. 2d 1203 (S.D. Cal. 2005) ........................................................................ 10

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
679 F.3d 64 (2d Cir. 2012) ............................................................................................ 6

*Donohoe v. Consolidated Operating & Prod. Co.*,
30 F.3d 907 (7th Cir. 1994) ...................................................................................... 14, 15

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011) .......................................................................................... 6

*Garcia v. City of Santa Clara*,
No. C 10-2424 SI (PR), 2012 WL 506320 (N.D. Cal. Feb. 15, 2012) ........................ 14

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir.2007) ........................................................................................ 12

*Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*,
580 F.3d 755 (8th Cir. 2009) ....................................................................................... 12

*In re Accuray, Inc. S'holder Deriv. Litig.*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) ......................................................................... 13

*In re Alloy, Inc.*,
C.A. No. 5626-VCP, 2011 WL 4863716 (Del. Ch. Oct. 13, 2011) ............................ 12

*In re Apple REITs Litig.*,
No. 11-CV-2919 (KAM), 2013 WL 1386202 (E.D.N.Y Apr. 3, 2013) ....................... 6

*In re Glenfed, Inc. Sec. Litig.*,
60 F.3d 591 (9th Cir. 1995) .......................................................................................... 13

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ....................................................................... 14

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................................... 6, 7

*In re Salomon Analyst AT&T Litig.*,
350 F. Supp. 2d 455 (S.D.N.Y. 2004) ........................................................................... 6

*In re Silicon Graphics Inc. Securities Litig.*,
183 F.3d 970 (9th Cir. 1999) ................................................................................ 2, 7, 10

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
No. C-99-00109-SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ................. viii, 13

*In re Verisign, Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..................................................................viii, 9, 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ....................................................................................... 3

*MHC Mut. Conversion Fund, L.P. v. United W. Bancorp, Inc.*,
    Civil Action No. 11-cv-00624-WYD-MJW, 2012 WL 6645097 (D. Colo. Dec. 19, 2012) .......... 6

*Paracor Fin., Inc. v. GE Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ....................................................................................... 13

*Podany v. Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004) ............................................................................ 7

*Roth v. OfficeMax, Inc.*,
    527 F. Supp. 2d 791 (N.D. Ill. 2007) ........................................................................... 11

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ...................................................................................... 5

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ................................................................................... 9, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................... vi, 5, 8, 11

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)......................................................................................... vii, 1, 6

*WPP Luxembourg Gamma Three Sarl v. Sport Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ..................................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..................................................................viii, 8, 9, 10, 13

## STATUTES

15 U.S.C. § 78j(b) ...............................................................................................passim

15 U.S.C. § 78t(a) ...............................................................................................passim

15 U.S.C. § 78u-4 .......................................................................................... 5, 7, 3

8 Del. C. § 141(e) ..................................................................................................... 12

## RULES

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 5, 14

Federal Rule of Civil Procedure 8(a) ................................................................................ 5

Federal Rule of Civil Procedure 9(b) ................................................................................ 5

Securities and Exchange Commission Rule 10b-5(a)......................................................... 12

iii

Securities and Exchange Commission Rule 10b-5(c)...................................................................... 12

## **REGULATIONS**

17 C.F.R. § 230.405 .................................................................................................................... 13

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 8, 2013, at 10:00 a.m., or at the nearest available date at which counsel may be heard, in Courtroom 6 of the above-referenced court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Raymond J. Lane will and hereby does, present for hearing by the Court this Motion to Dismiss Consolidated Complaint for Violation of the Federal Securities Laws ("Motion").

The Motion seeks dismissal for failure to state a claim upon which relief may be granted of all claims asserted against Defendant Raymond J. Lane in the Consolidated Complaint for Violation of the Federal Securities laws ("Consolidated Complaint" or "Compl.") brought by Lead Plaintiff PGGM Vermogensbeheer B.V. ("Lead Plaintiff"). Mr. Lane's Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and 15 U.S.C. § 78u-4, *et seq.*, and is based on the accompanying memorandum of points and authorities, the accompanying request for judicial notice, the motions to dismiss filed concurrently by Defendant Hewlett-Packard Company and certain of the individual defendants, as detailed in the joinder below, and request for judicial notice filed concurrently therewith, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

## JOINDER IN DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

Mr. Lane hereby joins in, adopts and fully incorporates herein defendant Hewlett-Packard Company's ("HP") Motion to Dismiss Consolidated Complaint, filed July 2, 2013, and the arguments made therein. Mr. Lane also joins in the motions to dismiss filed by defendants Margaret C. Whitman, Léo Apotheker, Catherine A. Lesjack, James T. Murrin, and Shane V. Robison on July 2, 2013.

## STATEMENT OF ISSUES

This Motion asks the Court to decide the following issues:

1. Should the Court dismiss claims asserted against Mr. Lane under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 for failure to plead with particularity facts supporting the claim that Mr. Lane made false statements of fact?

v

2.      Should the Court dismiss claims against Mr. Lane asserted under Section 10(b) and Rule 10b-5 for failure to plead particularized facts in great detail giving rise to a strong inference that Mr. Lane made any allegedly false statements of fact with scienter, *i.e.* with intent to deceive and knowledge of the falsity of such statements, or with deliberate recklessness as to the truth or falsity of such statements?

3.      Should the Court dismiss claims asserted against Mr. Lane under Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) for failure to plead a primary violation of the securities laws by a person allegedly controlled by Mr. Lane?

4.      Should the Court dismiss claims asserted against Mr. Lane under Section 20(a) of the Securities Exchange Act of 1934 for failure to plead that Mr. Lane had actual power or control over any Defendant or those responsible for the challenged statements?

## SUMMARY OF ARGUMENT

Lead Plaintiff's claims against Defendant Raymond J. Lane proceed from an implausible premise: Mr. Lane, a venture capitalist and Silicon Valley business leader for decades who had no financial stake in the consummation of the contemplated transaction, would support publicly the acquisition by HP of British software company Autonomy Corporation plc ("Autonomy") for more than $11 billion when he allegedly knew Autonomy was worth a fraction of that amount due to the existence of pervasive accounting fraud at Autonomy. Lead Plaintiff's allegations against Mr. Lane do nothing to establish a cogent or compelling reason why Mr. Lane would do such a thing. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) ("an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). To the contrary, the most cogent and compelling inference to be drawn from the facts alleged by Lead Plaintiff is that Mr. Lane and other members of HP's Board of Directors (the "Board") were deceived by misrepresentations made by Autonomy management in connection with the transaction. Lead Plaintiff's attempt to hold Mr. Lane liable under the federal securities laws for Autonomy's fraud fails.

Not a single class action complaint filed prior to the appointment of Lead Plaintiff named Mr. Lane as a defendant. The Consolidated Complaint named Mr. Lane as a defendant apparently

based on his position as Executive Chairman during the class period. The Consolidated Complaint does not allege what Mr. Lane's duties and responsibilities as Executive Chairman were. Lead Plaintiff alleges two bases for its claims against Mr. Lane: (i) a September 22, 2011, statement on an analyst call that HP paid "market price" for Autonomy; and (ii) Mr. Lane's signature as Executive Chairman on HP's 2011 Form 10-K, filed on December 14, 2011, three months after his appointment as Executive Chairman. Both fail to state a claim.

The Court should dismiss Lead Plaintiff's claim based on Mr. Lane's statement on September 22, 2011, that HP paid "market price" for Autonomy because Lead Plaintiff fails to explain how that statement of opinion was subjectively false when made, as required by the United States Supreme Court in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991). Indeed, the facts pled by Lead Plaintiff suggest the opposite. Lead Plaintiff admits that HP retained three world class expert advisors – Barclays Bank PLC ("Barclays"), Perella Weinberg Partners ("Perella Weinberg"), and KPMG LLC ("KPMG") – to assist HP's Board, including Mr. Lane, in its consideration of the Autonomy transaction. (Compl. ¶¶ 31, 36.) Lead Plaintiff nowhere alleges that any of these experts advised Mr. Lane that the merger consideration was not "market price." Indeed, the most plausible inference is that these expert advisors gave Mr. Lane and the Board green lights – not "red flags" – and Mr. Lane acted in reasonable reliance on that expert advice, including in forming the opinion that HP paid "market price" for Autonomy.

Lead Plaintiff's contention that Mr. Lane "knew" HP had not paid "market price" because he sought advice as to whether HP could withdraw from the transaction fails for two independent reasons: (i) Lead Plaintiff fails to plead these allegations with the particularity required by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4, *et seq.*) (the "PSLRA"), including for example the source of the allegation, when the purported communications took place, who was involved in the communications, and what was said; and (ii) even if such an inquiry occurred, Lead Plaintiff's claim is built on a *non sequitur*, *i.e.*, that Mr. Lane sought to withdraw from the transaction ***because*** he did not believe the merger consideration was "market price." There could have been many legitimate reasons to withdraw from the merger even if Mr. Lane sincerely held the opinion that HP paid "market price" for Autonomy including, as suggested by

Lead Plaintiff's allegations, the negative market reaction following the announcement of the deal. (Compl. ¶ 69.)

With respect to HP's 2011 Form 10-K, the fact that Mr. Lane signed that document as HP's Executive Chairman does nothing to support Lead Plaintiff's bald assertion that Mr. Lane knowingly made false statements in that document. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1003-04 (9th Cir. 2009) (signing boilerplate Sarbanes-Oxley certification of a Form 10-K not sufficient to establish scienter). Although the Consolidated Complaint attempts to plead a series of purported "red flags," Lead Plaintiff does not allege that Mr. Lane was aware of those "red flags." Indeed, the Consolidated Complaint is completely devoid of any allegations as to "what [Mr. Lane] knew, when he[] knew it, or how he[] acquired that knowledge." *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007). These threadbare allegations fail to satisfy the stringent pleading requirements of the PSLRA.

Finally, Lead Plaintiff alleges that Mr. Lane was a "control person" under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), but fails to allege a single particularized fact to support that conclusory assertion. *See, e.g.*, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000) (plaintiff "must plead the circumstances of the control relationship with particularity").

The Court should dismiss Lead Plaintiff's claims against Mr. Lane in their entirety.

DATED: July 2, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____/s/ Timothy A. Miller_____
TIMOTHY A. MILLER
Attorneys for Defendant
RAYMOND J. LANE

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Raymond J. Lane respectfully submits this memorandum of points and authorities in support of his motion to dismiss the Consolidated Complaint.

## I. INTRODUCTION

Among other things, Mr. Lane has served as Managing Partner of the venture capital investment firm Kleiner Perkins Caufield & Byers and as President, Chief Operating Officer, and Director of Oracle. (Compl. ¶¶ 6, 115. ) In November 2010, Mr. Lane joined HP's Board as its independent, non-executive Chairman, and served in that role until September 2011. (*Id.* ¶ 115.) Mr. Lane was an independent Board member when the Board unanimously approved HP's acquisition of Autonomy in August 2011. (*Id.* ¶¶ 115, 163.) In September 2011, in the midst of the transition from former HP CEO Léo Apotheker to current CEO Meg Whitman and just prior to the closing of the Autonomy acquisition, Mr. Lane became the Executive Chairman of the Board. (*Id.* ¶¶ 110, 115, 167.)

The claims against Mr. Lane arise from HP's 2011 acquisition of Autonomy. Lead Plaintiff claims that, prior to the closing of the transaction, Mr. Lane opined that HP paid "market price" for Autonomy, and that his statement was false and misleading because he had inquired of HP's advisors whether HP could extract itself from the merger. Lead Plaintiff also attempts to hold Mr. Lane liable for alleged misstatements in HP's post-merger 2011 Form 10-K based on Mr. Lane's signature on that document as HP's Executive Chairman. Both claims fail.

Mr. Lane's statement that HP paid "market price" for Autonomy is an inherently subjective opinion upon which reasonable minds can differ. Accordingly, under the Supreme Court's decision in *Virginia Bankshares*, Lead Plaintiff must plead specific facts demonstrating the objective and subjective falsity of the statement. "The teaching of *Virginia Bankshares* is that an opinion is only false if the speaker does not in fact hold that opinion." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000). Lead Plaintiff fails to meet this standard.

Lead Plaintiff's attempt to hold Mr. Lane liable for alleged misstatements in HP's 2011 Form 10-K fails because Lead Plaintiff makes no attempt to plead facts giving rise to a strong inference that Mr. Lane signed the statement with deliberate recklessness. In paragraph 181, Lead

1

1  Plaintiff cross-references several other paragraphs of the Consolidated Complaint, claiming that

2  they support a strong inference of scienter against Mr. Lane. But those paragraphs discuss other

3  defendants, not Mr. Lane, and merely repeat Lead Plaintiff's defective opinion allegations against

4  Mr. Lane. The Consolidated Complaint falls far short of the Ninth Circuit's requirement that the

5  facts supporting a claim of scienter be pled in "great detail." *In re Silicon Graphics, Inc. Sec. Litig.*,

6  183 F.3d 970, 974 (9th Cir. 1999).

7       Finally, Lead Plaintiff fails to allege any facts to support its bald assertion that Mr. Lane

8  was, during the relevant period, a "control person" under Section 20(a) of the Exchange Act.

9       The Court should grant Mr. Lane's motion to dismiss.

10 ## II.  BACKGROUND

11 ### A.  HP's Acquisition Of Autonomy

12      Lead Plaintiff alleges that in April 2011 Mr. Lane attended a meeting between HP's then

13 CEO, Léo Apotheker, and Autonomy's CEO, Michael Lynch, during which Lynch described

14 Autonomy's "meaning based computing." (Compl. ¶ 31.) After the meeting, Apotheker allegedly

15 told Mr. Lane that he wanted HP to acquire Autonomy. (*Id.* ¶ 31.) A month later, the Board,

16 including Mr. Lane, approved a proposal to "look deeper" into acquiring Autonomy and hired

17 Barclays Bank PLC and Perella Weinberg Partners to evaluate a possible transaction. (*See id.* ¶ 31.)

18 In addition to other services that are alluded to, but not described, in the Consolidated Complaint,

19 those advisors "weighed different strategic possibilities of a transaction with Autonomy" for the

20 Board during a meeting in July 2011. (*See id.* ¶¶ 2, 7, 31-32, 72.)

21      Prior to the acquisition, Autonomy's stock traded on the London Stock Exchange. (Compl.

22 ¶¶ 2, 15.) As a British company, it was subject to International Financial Reporting Standards, not

23 the Generally Accepted Accounting Procedures ("GAAP") promulgated by the Financial

24 Accounting Standards Board that publicly traded U.S. companies follow. (*Id.* ¶¶ 126, 135.)

25 Deloitte LLP (misidentified in the Consolidated Complaint as Deloitte Touche Tohmatsu Limited)

26 ("Deloitte") served as Autonomy's independent auditor. (*Id.* ¶ 36; *see also* Horvath Decl. Ex. B at

27 44.) As of August 2011, Deloitte had issued unqualified audit opinions that Autonomy's financial

28 statements gave "a true and fair view" of Autonomy's affairs and of its profit earned during each

fiscal year ending as early as December 31, 2004 and continuing through December 31, 2010. (*See* Horvath Decl. Exs. B at 44, C at 35, D at 24-25, E at 21-22, F at 20-21, G at 20-21, H at 14-15.) In connection with the merger, HP hired KPMG to assist with due diligence, including an examination of Autonomy's audited financial statements. (*See* Compl. ¶ 36.)

On August 18, 2011, HP announced that it was acquiring Autonomy—a decision unanimously supported by the HP Board. (*See* Compl. ¶¶ 31-32, 42-44, 101.) Lead Plaintiff alleges that the market reacted negatively to the announcement. (*Id.* ¶ 58.) It also alleges that, sometime after August 18, 2011, Mr. Lane asked Barclays and Perella whether HP could withdraw its offer to purchase Autonomy, but was told that U.K. law made doing so impossible. (*Id.* ¶ 73.) The Consolidated Complaint further alleges the Board did not attempt to withdraw its offer to avoid "engag[ing] in embarrassing failed foreign litigation" and instead "reluctantly allowed the Autonomy Acquisition to close, and resolved to try to quietly clean up the HP/Autonomy debacle internally." (*Id.* ¶ 73.) The Consolidated Complaint does not identify the source of these allegations regarding the alleged inquiry as to whether HP could withdraw from the transaction. The Consolidated Complaint does not allege that HP actually attempted to withdraw its offer or that any of its advisors counseled it to withdraw its offer.

### B. Statements Allegedly Made By Mr. Lane

Lead Plaintiff attempts to hold Mr. Lane liable for two allegedly false statements.[1]

***First***, on September 22, 2011, a journalist at *AllThingsD* asked Mr. Lane, "You don't think HP paid too much for Autonomy?" (*See* Horvath Decl. Ex. I.) Mr. Lane replied, "We wish we could have bought it for cheaper, but it was the market price." (*Id.* Compl. ¶ 178; *see also* Horvath Decl. Ex. I.) Lead Plaintiff contends that statement was materially false and misleading when

---

[1]    In addition to the statements discussed below, Lead Plaintiff attributes two other statements to Mr. Lane: (i) a statement allegedly made on September 11, 2011, ***before*** Mr. Lane became Executive Chairman, in which he allegedly said that "Autonomy was the only answer" (Compl. ¶ 67); and (ii) a September 22, 2011, statement that the word "transforming" had "been stricken from our language, that we're transforming HP." (*Id.* ¶¶ 68, 177). ***The Consolidated Complaint does not allege that either of these statements was false or misleading.*** Accordingly, those statements are not addressed in this motion. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (PSLRA requires private securities actions to "specify *each* statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" (emphasis added, quoting 15 U.S.C. § 78u-4(b)(1)(B))).

made because, when he made it, Mr. Lane had, along with Meg Whitman, allegedly directed HP and its advisors to try to withdraw HP's offer to purchase Autonomy. (*See* Compl. ¶ 178.) Lead Plaintiff's allegations on this point are internally inconsistent. Elsewhere in the Consolidated Complaint, Lead Plaintiff alleges that Mr. Lane "asked HP's financial advisers . . . *whether* HP *could* back out of the deal before it closed" (*Id.* ¶ 73 (emphasis added)), which is far different from "directing" those advisors to "try to withdraw" from the transaction. Lead Plaintiff fails with respect to both formulations to allege the source of its allegations, or to plead any particularized facts supporting its conclusory assertion (such as when this communication occurred, with whom, which advisors were involved, etc.).

*Second,* Lead Plaintiff seeks to hold Mr. Lane liable for allegedly false and misleading statements contained in HP's 2011 Form 10-K (filed December 14, 2011), alleging that Mr. Lane signed and "had ultimate control and authority" over that document. (Compl. ¶ 115.)[2] Lead Plaintiff does not allege what, if any, role Mr. Lane had in the drafting or preparation of the contents of HP's Form 10-K filing. Lead Plaintiff contends that HP's 2011 Form 10-K was materially false and misleading because "the value of the goodwill and the purchased intangible assets associated with HP's Autonomy integration were materially inflated." (*Id.* ¶¶ 179, 181.) Lead Plaintiff does not explain how or when Mr. Lane allegedly became aware of these facts.

### C. Allegations Tellingly Absent From The Consolidated Complaint

The Consolidated Complaint is notable for that which it does not allege as to Mr. Lane. Lead Plaintiff does not allege that Mr. Lane knew of Autonomy's fraud before he voted to approve the merger, or that any of the world class advisors that HP hired advised him, or anyone at HP, against the transaction. The Consolidated Complaint does not allege that the outside experts that HP hired to review Autonomy's financials after the deal, Ernst & Young LLP ("E&Y") and KPMG, advised Mr. Lane of accounting problems at Autonomy. (*See* Compl. ¶ 75.) In fact, the Consolidated Complaint does not allege when or how Mr. Lane learned of Autonomy's accounting

---

[2]    Lead Plaintiff also alleges that Mr. Lane signed and had control and authority over HP's 2012 Form 10-K, but does not allege that document contained any false or misleading statements. (*See* Compl. ¶ 8.) Therefore, we do not address the statements contained in that document here.

4

imp7rieties.  It alleges virtually nothing about his conduct or knowledge after the merger closed on October 3, 2011, other than he signed HP's 2011 Form 10-K and stepped down as Executive Chairman in 2013.  (*See id.* ¶¶ 179, 181, 221.)

## III.   LEAD PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 AGAINST MR. LANE

HP's brief sets forth the heightened burdens that Federal Rules of Civil Procedure and the PSLRA impose on plaintiffs pleading securities fraud, and Mr. Lane joins that part of HP's brief in its entirety.  Key to the Court's assessment of the allegations against Mr. Lane is the directive of the United States Supreme Court in *Tellabs* that "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  Lead Plaintiff starts with the patently absurd notion that Mr. Lane, a successful Silicon Valley businessman would, without any apparent motivation, approve the acquisition of a company for more than $11 billion when he knew that the company was engaged in accounting improprieties that dramatically impacted the value upon which the purchase price was based.  The notion is not only implausible, it is preposterous because Mr. Lane stood to gain nothing from acquiring Autonomy while concealing its fraud, particularly where, as here, he did not stand to gain financially from the transaction and Mr. Lane would have known that the accounting improprieties inevitably would have been discovered after the merger.

The claims against Mr. Lane simply do not hold water.

### A.   Lead Plaintiff Fails To Allege With Particularity Facts Supporting Its Claim That Mr. Lane's Statement Of Opinion That HP Paid "Market Price" For Autonomy Was Subjectively False When Made.

Lead Plaintiff's claim against Mr. Lane is based in part on an alleged September 22, 2011, statement by Mr. Lane that "[w]e wish we could have bought [Autonomy] for cheaper, but it was the market price."  (*See* Horvath Decl. Ex. I; Compl. ¶¶ 73, 178.)  This was a classic statement of opinion because determining the "market price" for a multi-billion dollar software company like Autonomy is an inherently subjective and uncertain task, and reasonable minds can differ as to the result; "market price" is not an objective fact.  Courts routinely recognize that statements about the result of such complex valuation processes are matters of opinion.  *See, e.g.*, *Rubke v. Capitol*

Bancorp Ltd., 551 F.3d 1156, 1162, 1165 (9th Cir. 2009) (applying *Virginia Bankshares* to affirm dismissal of claims under Section 11 of the Securities Act of 1933 and Section 10(b) of the Exchange Act based on defendant's incorporation into a registration statement of two opinions by investment advisors that the transaction was "financially fair"); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) ("Estimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact.").[3]

Accordingly, the Court should analyze Mr. Lane's statement of opinion under the test established by the Supreme Court in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991). *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67-68 (2d Cir. 2012) (holding that the *Virginia Bankshares* framework applies to Section 10(b) claims). To make that showing, a plaintiff "must 'allege with particularity' 'provable facts' to demonstrate that the statement of opinion is both ***objectively and subjectively*** false." *In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 465-466 (S.D.N.Y. 2004) (emphasis added, citation omitted).

Liability for an opinion under Section 10(b) requires a plaintiff to prove "not merely that [the] proffered opinion was incorrect or doubtful, but that the speaker ***deliberately misrepresented*** his actual opinion." *Salomon Analyst*, 350 F. Supp. 2d at 465-466 (emphasis added). To survive a motion to dismiss, "[i]t is not sufficient [for a complaint] to allege that an opinion was unreasonable, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held." *Id.* at 466. The requirements that plaintiff allege falsity and scienter are "essentially identical . . . since [a] statement [of opinion] (unlike a statement

---

[3]      *See also In re Apple REITs Litig.*, No. 11-CV-2919 (KAM), 2013 WL 1386202, at *14 (E.D.N.Y Apr. 3, 2013) ("[The] realities and inherent difficulties in ascertaining the value of REIT shares necessarily means that investment valuations 'can only fairly be characterized as subjective opinions.'" (citation omitted)); *MHC Mut. Conversion Fund, L.P. v. United W. Bancorp, Inc.*, Civil Action No. 11-cv-00624-WYD-MJW, 2012 WL 6645097, at *9 (D. Colo. Dec. 19, 2012) ("A statement regarding OTTI [other-than-temporary impairment] is an opinion; it is not a matter of objective fact."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1264-65 (N.D. Cal. 2000) (applying *Virginia Bankshares* to dismiss Section 14(a) claim against financial advisor based on its opinion that merger was "fair, from a financial point of view" to the acquirer's shareholders).

of fact) cannot be false at all unless the speaker is knowingly misstating his truly held opinion."
*Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004); *see also McKesson*, 126 F. Supp. 2d at 1265 ("Statements of opinion are false only if the opinion was not sincerely held.").

Setting aside Lead Plaintiff's complete failure to allege that Mr. Lane's opinion was objectively false, the Court should dismiss this claim because the Consolidated Complaint fails to allege particularized facts giving rise to a strong inference that Mr. Lane's statement was **subjectively** false, *i.e.*, that he "did not sincerely believe the opinion [he] purported to hold." *Podany*, 318 F. Supp. 2d at 154. Lead Plaintiff argues in its Consolidated Complaint that Mr. Lane did not sincerely hold his opinion because he had "already directed HP and its advisors to try to withdraw HP's offer to purchase Autonomy on August 18, 2011, but were unable to do so under the City Code as alleged in ¶¶ 69-73." (Compl. ¶ 178.) Elsewhere in the Consolidated Complaint Lead Plaintiff alleges that Mr. Lane inquired as to whether HP could withdraw from the transaction. (*Id.* ¶ 73.) Lead Plaintiff's contention fails for two independent reasons.

First, Lead Plaintiff fails to allege the facts and circumstances surrounding this alleged directive by Mr. Lane to HP's financial advisors with particularity, *see Silicon Graphics*, 183 F.3d at 998 (explaining that the PSLRA requires the plaintiff to "'state with particularity all facts on which [her] belief is formed,'" including "the who, what, when, where, and how with respect to the facts underlying her claim" (citations omitted)), for the following reasons:

- ***Internal Inconsistency.*** The Consolidated Complaint alleges that Mr. Lane and others inquired as to whether HP could withdraw its offer to purchase Autonomy. (Compl. ¶ 73.) Later, the Consolidated Complaint alleges that Whitman and Mr. Lane "directed HP and its advisors to try to withdraw HP's offer to purchase Autonomy . . . ." (*Id.* ¶ 178.) Which is it? Did Mr. Lane inquire into withdrawing HP's offer, or "direct" HP's advisors to withdraw?

- ***Specific Communications Not Identified.*** Lead Plaintiff alleges communications between and among Mr. Lane and HP's financial advisors, but provides no details regarding those communications. Lead Plaintiff does not identify with whom at Barclays or Perella Mr. Lane spoke, what they discussed, or when he made the query. (*See* Compl. ¶ 73.) Likewise, it does not allege who told Mr. Lane that U.K. takeover rules made withdrawing HP's offer "impossible," when he was told that, what exactly he was told, or by what means this advice was conveyed to him. (*See id.* ¶ 73.)

- ***Lack of Sources.*** The Consolidated Complaint does not allege the source of the information Lead Plaintiff relied upon for these allegations. It does not allege that Lead Plaintiff has first-hand knowledge of the alleged communications. Nor does it identify

witnesses or documents that support the allegations. And though it alleges what Mr. Lane was "***reportedly*** told" that withdrawal was impossible, it does not identify the report, who authored it, or why it was authored, or allege any facts that would support the conclusion that such a report exists. (*See* Compl. ¶ 73 (emphasis added).)

- ***Conflict with U.K. Takeover Code and Purchase Agreement***. The Consolidated Complaint alleges that Barclays and Perella advised Mr. Lane that United Kingdom City Code on Takeovers and Mergers (the "Takeover Code") prevented HP from extracting itself from the transaction and that Mr. Lane decided not to attempt a withdrawal because he did not want to "engage in embarrassing failed foreign litigation with Autonomy . . . ." (Compl. ¶ 73.) But Lead Plaintiff misconstrues the Takeover Code, which allows withdrawal of an offer if the changed circumstances are "of material significance," (Horvath Decl. Ex. K at Rule 13.4), and the agreement between HP and Autonomy, which allowed cancellation if HP discovered a "misrepresentation of fact" or a failure to disclose "a fact necessary to make the information" provided by Autonomy not misleading, (Horvath Decl. Ex. J at Ex. 99.1, Appendix 1, Part A.i.i.).

Second, Lead Plaintiff's contention is a *non sequitur* because even if Mr. Lane considered the option of withdrawing from the transaction, it does not necessarily follow that he did not believe the merger consideration was "market price." Lead Plaintiff fails to allege any particularized facts to suggest that Mr. Lane's alleged inquiry as to a potential withdrawal from the transaction was based on his belief that HP was not paying "market price," or an awareness of accounting fraud at Autonomy. One can infer a myriad of "opposing innocent inference[s]" from these allegations. *Zucco*, 552 F.2d at 991 (citing *Tellabs*). For example, as suggested by the Consolidated Complaint, it would have been perfectly appropriate for Mr. Lane to assess HP's options in the wake of negative market reaction to the transaction. (*See* Compl. ¶ 45.)

Moreover, there is a far more cogent and compelling inference to be drawn from Lead Plaintiff's own allegations. Lead Plaintiff concedes that HP consulted two financial advisors in connection with the transaction. The most logical and compelling inference is that those experts agreed that the merger consideration was within the range of "market price," thus leading to Mr. Lane's opinion. The Consolidated Complaint alleges no facts that would contradict this logical inference of innocent conduct. Lead Plaintiff does not allege that those advisors told Mr. Lane, or anyone on the HP Board, that HP either was paying too much or should not proceed with the transaction.

**B.   Lead Plaintiff's Claim Based On HP's 2011 Form 10-K Fails Because The Consolidated Complaint Fails To Plead Particularized Facts Giving Rise To A Strong Inference That Mr. Lane Acted With Scienter.**

Lead Plaintiff's claims based on allegedly false statements contained in HP's 2011 Form 10-K (filed by HP with the SEC on December 14, 2011) fail for several independent reasons detailed in HP's motion to dismiss, in which Mr. Lane joins. This motion will focus on Lead Plaintiff's failure to plead with particularity facts giving rise to a strong inference that Mr. Lane acted with scienter in signing HP's 2011 Form 10-K.

At the outset we emphasize that Lead Plaintiff fails to explain why Mr. Lane would publicly support the acquisition of Autonomy by HP for $11 billion knowing that Autonomy's financial statements had been compromised by accounting improprieties. The Consolidated Complaint does not allege that Mr. Lane stood to gain financially from the consummation of the merger or his alleged misstatements. While allegations of motive are not essential to establish a claim, the particularized facts supporting a strong inference of scienter must be correspondingly greater where a plaintiff does not allege motive. *See, e.g.*, *Slayton v. Am. Express Co.*, 604 F.3d 758, 776 (2d Cir. 2010) (explaining that "where the plaintiffs do not allege facts supporting a motive . . . the[] circumstantial evidence of actual knowledge must be correspondingly greater"). The complete lack of motive here further undermines Lead Plaintiff's claim that Mr. Lane acted with scienter.

The fact that Mr. Lane, as HP's Executive Chairman, <u>signed</u> HP's 2011 Form 10-K adds absolutely nothing to the Court's scienter analysis. (Compl. ¶ 179.) *See Zucco*, 552 F.3d at 1003-04 (ruling that signing and filing a boilerplate Sarbanes-Oxley section 302(a) certifications with a Form 10-K containing false information is not sufficient to establish scienter). And although Lead Plaintiff at various times alleges that Mr. Lane "knew" or was "severely reckless" in not knowing about the alleged falsehoods contained therein, Lead Plaintiff makes no serious attempt to allege that Mr. Lane actually knew that HP's 2011 Form 10-K was false when he signed it. The Consolidated Complaint contains "not a single fact showing what [Mr. Lane] knew, when he[] knew it, or how he[] acquired that knowledge." *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) (dismissing Section 10(b) claim against directors for allegedly

signing Forms 10-K containing misstatements about the company's stock option backdating practices).

What Lead Plaintiff appears to allege is that Mr. Lane was "severely reckless" in not knowing of the falsehoods allegedly contained in HP's 2011 Form 10-K. In the Ninth Circuit, a naked allegation of "severe recklessness" is insufficient as a matter of law to establish scienter. Rather, Lead Plaintiff must plead specific facts in "great detail," *Silicon Graphics*, 183 F.3d at 974, establishing a "strong inference of deliberate recklessness," which is "'a form of intentional or knowing misconduct.'" *Zucco*, 552 F.3d at 991 (quoting *Silicon Graphics*, 183 F.3d at 977). To establish such a strong inference, the plaintiff must plead "'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* (quoting *Silicon Graphics*, 183 F.3d at 976). But again, the Consolidated Complaint utterly fails to allege what Mr. Lane knew, when he knew it, or how he acquired that knowledge, much less how any such knowledge made him "deliberately reckless" in signing the 2011 Form 10-K.[4]

The Consolidated Complaint alleges that Mr. Lane was "severely reckless in not knowing that, *inter alia*, Autonomy's financial results for at least two years prior to the acquisition were materially inflated for the reasons set forth . . . in ¶¶ 165-167, 169, 175-176, 178." (Compl. ¶ 181.) Not a single one of the cross-referenced paragraphs alleges that Mr. Lane knew any of the alleged facts contained therein, or how he would have any way of knowing them:

- Paragraphs 165 through 167 describe various accounting improprieties at Autonomy, but do not allege that Mr. Lane knew of those accounting improprieties when he signed HP's 2011 Form 10-K.

---

[4] To the extent Lead Plaintiff attempts to plead scienter against the defendants (including Mr. Lane) collectively (*see, e.g.*, Compl. ¶¶ 4, 136), it is well established that "[i]t is not sufficient under the PSLRA to allege scienter against defendants as a group." *Verisign*, 531 F. Supp. 2d at 1206-07 (this Court dismissed section 10(b) claims against officers and directors based on the alleged non-disclosure of stock-option-backdating practices where complaint failed to make allegations pertaining to each individual defendant); *see also Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1218 (S.D. Cal. 2005) (district court rejected plaintiffs' attempt to "group[] all individual Defendants together," faulting the complaint for failing to make "any allegations as to how and when the Defendants learned of [accounting] improprieties").

- Paragraphs 169 and 175 through 176 refer to other defendants, but make no reference to Mr. Lane, with one exception. Lead Plaintiff alleges that Mr. Lane "circumvented the Finance Committee," but does not explain when he did that, how he did that, or how it establishes his scienter with respect to HP's 2011 Form 10-K. Moreover, the Consolidated Complaint establishes that the whole HP Board, which includes the members of the Finance Committee, met multiple times to consider the acquisition. (*See*, *e.g.*, Compl. ¶¶ 31, 32, 33, 35.) That the entire HP Board considered the Autonomy acquisition suggests the opposite of recklessness.

- Paragraph 178 repeats Lead Plaintiff's allegations regarding Mr. Lane's statement of opinion that HP paid "market price" for Autonomy which, for the reasons stated *supra* at Section III.A., is not actionable.

Lead Plaintiff completely fails to allege particularized facts supporting any inference, much less a strong inference, that Mr. Lane was deliberately reckless when he signed HP's 2011 Form 10-K.

Lead Plaintiff points to a number of "red flags" (*see* Compl. ¶¶ 15-25, 62-67), but nowhere alleges that Mr. Lane knew about these purported "red flags." Thus, even if these "red flags" had significance here (and Mr. Lane does not concede that they did), these allegations do not support Lead Plaintiff's claim that Mr. Lane was deliberately reckless in signing HP's 2011 Form 10-K. For example, in *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791 (N.D. Ill. 2007), the district court rejected the plaintiffs' argument that "red flags" of accounting problems established the officer defendants' scienter because the plaintiffs did "not allege that the individual defendants actually knew about the[] red flag," but instead improperly relied upon suppositions that the defendants "must have known" of the problems because of their management style. *See id.* at 798-99.

Far from establishing a strong inference of scienter, Lead Plaintiff's allegations support a compelling inference of nonfraudulent intent on the part of Mr. Lane. *See Tellabs*, 551 U.S. at 314 (holding that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). Lead Plaintiff concedes, as it must, that Mr. Lane and the HP Board consulted world class experts before and after the merger. Before the transaction, Mr. Lane and the HP Board relied on financial advisors Barclays and Perella, and accounting experts at KPMG. (*See* Compl. ¶¶ 31, 36.) The Consolidated Complaint does not allege that any of these experts advised Mr. Lane, or anyone on the Board, against the deal generally or about Autonomy's accounting problems specifically. After the deal, HP undertook a detailed study of Autonomy's software recognition practices, and hired

1  E&Y and KPMG to review Autonomy's records as part of the integration process and

2  implementation of GAAP accounting principles going forward.  (*See id.* ¶ 75.)  This is the mark of

3  prudence and care, not deliberate recklessness.[5]

4       Moreover, when issues were raised about Autonomy's accounting, HP investigated, further

5  undermining an inference of scienter.  When an Autonomy official accused Autonomy

6  management of accounting improprieties – which happened months after Mr. Lane signed HP's

7  2011 10-K on December 14, 2011 – HP immediately launched an investigation and PwC was

8  engaged to perform an extensive forensic review.  (*See* Compl. ¶ 80.)  After the investigation

9  revealed the truth, HP disclosed Autonomy's revenue recognition problems.  (*See id.* ¶ 87.)  Those

10  actions further support an inference of nonfraudulent intent.  *See Horizon Asset Mgmt. Inc. v. H &*

11  *R Block, Inc.*, 580 F.3d 755, 763 (8th Cir. 2009) (defendants' decision to initiate an investigation

12  into accounting errors and consult with independent auditors before announcing a restatement of

13  financial results "weakens rather than strengthens an inference of scienter").[6]

14       Thus, to the extent the Consolidated Complaint alleges facts sufficient to support any

15  inference at all, those facts support the inference that Mr. Lane relied upon the advice of

16  professionals and experts (as he is entitled to do), and was the victim of fraud.[7]

17

---

18  [5]  Indeed, under Delaware law, Mr. Lane and other HP Board members were entitled to rely on those professionals and experts in assessing the Autonomy transaction.  *See* 8 Del. C. § 141(e)

19  (permitting board members to rely upon professionals and experts).  Lead Plaintiff's shop-worn allegation that HP's advisors were compensated for their services fails to call into doubt the good faith reliance by the HP Board and Mr. Lane on the received advice.  *See In re Alloy, Inc. S'holder*

20  *Litig.*, C.A. No. 5626-VCP, 2011 WL 4863716, at *11 (Del. Ch. Oct. 13, 2011) ("I cannot conclude that a broad salvo against such a common practice [of paying financial advisors a contingent fee for a fairness opinion], standing alone, supports a reasonable inference that the fairness opinion

21  rendered in this case is so flawed that the Alloy directors could not have relied upon it in good faith.").

22

23  [6] *See also Slayton*, 604 F.3d at 777 (citing *Horizon* for the proposition that investigating an accounting problem upon learning of it weakens rather than strengthens an inference of scienter);

24  *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful.  Managers cannot tell lies but are entitled to investigate

25  for a reasonable time, until they have a full story to reveal."), *cert. denied*, 132 S. Ct. 2713 (2012).

26  [7]  The Consolidated Complaint contains one paragraph alleging that Mr. Lane is liable for scheme liability under SEC Rules 10b-5(a) & (c).  (*See* Compl. ¶ 238.)  If Lead Plaintiff intends to rely

27  upon its Section 10(b) allegations to support its claim of scheme liability, such claim should fail because, as the Ninth Circuit has held, scheme liability must be based on conduct beyond alleged

28  misrepresentations and omissions.  *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057-58 (9th Cir. 2011) (affirming dismissal of scheme liability claim where

*(cont'd)*

# IV. LEAD PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 20(a)

Section 20(a) of the Exchange Act allows recovery against persons who exercise control over primary violators of Section 10(b). *See Zucco*, 552 F.3d at 990. Lead Plaintiff has failed to plead a primary violation of Section 10(b), so its Section 20(a) claim must fail. *See In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 933-34 (N.D. Cal. 2010) ("Because Plaintiffs failed to plead a primary securities violation, Plaintiffs have also failed to plead a violation of Section 20(a).").

Even if Lead Plaintiff successfully alleged a primary violation (and it has not), the Consolidated Complaint fails to establish that Mr. Lane exercised actual power or control over HP or the challenged statements during the Class Period. *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161, 1163-64 (9th Cir. 1996) (finding no control on the part of CEO where plaintiffs introduced "no evidence that [the CEO] exercised direct or indirect control over" the transaction at issue "in any way"). "Control" is defined as "'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person.'" *Id.* at 1162 (quoting 17 C.F.R. § 230.405). A plaintiff "must plead the circumstances of the control relationship with particularity." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000). For an outside director to be potentially liable as a "control person" under Section 20(a), a complaint "must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995).

Lead Plaintiff completely fails to make the particularized allegations required to support a claim for "control person" liability. Mr. Lane served as an outside director of HP through September 2011, when he was appointed Executive Chairman of the Board, a position he had held for less than three months when he signed HP's 2011 Form 10-K on December 14, 2011. (*See*

_____

*(cont'd from previous page)*
plaintiffs did "not allege any facts that [were] separate from those already alleged in their Rule 10b–5(b) omission claims").

Compl. ¶ 115; Horvath Decl. Ex. A at 164.)  Lead Plaintiff pleads no facts as to what Mr. Lane's duties or responsibilities were in either his capacity as a Board member or as Executive Chairman of the Board.  Lead Plaintiff does not allege with particularity any involvement in the day-to-day operations of HP with respect to Autonomy, or that he had any involvement in the drafting or determination of the content of the 2011 Form 10-K.  Indeed, Mr. Lane did not sign the 10-K as a "principal" officer of HP, but instead his signature appears in alphabetical order among the signatures of other directors.  (*See id.* at 163-64.)

"Boilerplate allegations" that defendants exercise the requisite control by virtue of, among other things, their "high-level positions" and "awareness of the Company's operations" fail to state a Section 20(a) claim.  *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) ("[E]ven a CEO is not automatically a 'controlling person' under Section 20(a)." (citation and internal quotation marks omitted)).  Those are the exact boilerplate allegations that the Consolidated Complaint makes against the "Insider Defendants" collectively, alleging their "high-level positions with the Company, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance" establish.  (*See* Compl. ¶ 240.)  Thus, in addition to failing to allege a primary violation, the Court should dismiss Lead Plaintiff's Section 20(a) claim for failure to plead control with the requisite particularity.

The Court should dismiss Lead Plaintiff's Section 20(a) claim against Mr. Lane for a third reason:  the allegations in the Consolidated Complaint establish that Mr. Lane acted in good faith, an affirmative defense to a Section 20(a) claim.  *See Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 912 (7th Cir. 1994) ("[G]ood faith is a defense to control person liability" under Section 20(a)); 15 U.S.C. § 78t(a) (a controlling person is not liable under Section 20(a) where the person "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action").  Here, Lead Plaintiff has affirmatively pled that Mr. Lane relied on the advice of HP's advisors.[8]  Because that reliance appears on the face of the Consolidated

---

[8]  A Rule 12(b)(6) motion may raise an affirmative defense "when the complaint contains allegations showing a complete defense or bar to recovery."  *Garcia v. City of Santa Clara*, No. C

*(cont'd)*

Complaint, Lead Plaintiff was required to and failed to plead this reliance was not in good faith. *See Donohoe*, 30 F.3d at 912 (Section 20(a) claim failed where, among other factors, defendants had to rely on the superior technical expertise of the party who committed fraud and the record failed to show defendants had any reason to believe that party was unreliable). The Court should dismiss the Consolidated Complaint's Section 20(a) claim against Mr. Lane for this independent reason as well.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, and the reasons provided in HP's motion to dismiss, Defendant Raymond Lane respectfully requests that this Court dismiss the Consolidated Complaint.

DATED:  July 2, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____/s/ Timothy A. Miller_____
TIMOTHY A. MILLER
Attorneys for Defendant
RAYMOND J. LANE

_____
*(cont'd from previous page)*
10-2424 SI (PR), 2012 WL 506320, at *2 (N.D. Cal. Feb. 15, 2012).