STEVEN M. SCHATZ, State Bar No. 118356
sschatz@wsgr.com
KATHERINE L. HENDERSON, State Bar No. 242676
khenderson@wsgr.com
BRYAN J. KETROSER, State Bar No. 239105
bketroser@wsgr.com
BRIAN DANITZ, State Bar No. 247403
bdanitz@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant
Catherine A. Lesjak

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION,<br><br>This Document Relates To: All Actions | Master File No. C-12-5980 CRB<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT CATHERINE A. LESJAK'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date: November 8, 2013<br>Time: 10:00 AM<br>Dept: Courtroom 6, 17th Floor<br>Before: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... iv

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3)) ................................................................... iv

SUMMARY OF ARGUMENT .................................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I. THE COMPLAINT FAILS TO RAISE A STRONG INFERENCE OF SCIENTER AS TO MS. LESJAK ............................................................................. 2

    A. The Complaint Fails Adequately To Allege That Ms. Lesjak Knew Of Accounting Improprieties At Autonomy ............................................................ 2

    B. The Complaint Fails Adequately To Allege That Ms. Lesjak Knew HP's Goodwill Was Impaired ...................................................................................... 4

    C. Ms. Lesjak Had No Motive To Commit Securities Fraud ................................. 5

    D. The Red Flag Allegations Do Not Create A Strong Inference Of Scienter ....... 6

II. THE COMPLAINT FAILS TO PLEAD FALSITY AS TO MS. LESJAK ..................... 9

III. THE COMPLAINT ALSO FAILS TO PLEAD A SECTION 20(a) CLAIM ................ 11

CONCLUSION ......................................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*,
   No. 11-01016 SC, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012)............................................5

*City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*,
   No. 2:09-cv-00659-EJL-CWD, 2011 WL 4584778
   (D. Idaho Sept. 12, 2011) ................................................................................................10

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
   679 F.3d 64, 68 (2d Cir. 2012)..........................................................................................5

*Coble v. Broadvision Inc.*, No.
   C 01-01969 CRB, 2002 WL 31093589 (N.D. Cal. Sept. 11, 2002)................................2, 5

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)..............................................................................................9

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008)............................................................................................4

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002).........................................................................................vi

*In re Acterna Corp. Sec. Litig.*,
   378 F. Supp. 2d 561 (D. Md. 2005)..................................................................................5

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010)..........................................................................12

*In re ChinaCast Educ. Corp. Sec. Litig.*,
   No. CV 12-4621-JFW 2012, WL 6136746 (C.D. Cal. Dec. 7, 2012).............................3, 5

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .........................................................................................3

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)..................12

*In re Int'l Rectifier Corp. Sec. Litig.*,
   No. CV 07-02544-JFW, 2008 WL 4555794 (C.D. Cal. May 23, 2008).....................2, 3, 4

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ..........................................................................10

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
   No. 01 Civ. 4388 (JBK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)..........................3, 5

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) ............................................................................9

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)........................................................................................vi, 2

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) .................................................................................... 3

*In re Yahoo! Inc. Sec. Litig.*,
    No. C 11-02732 CRB, 2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) ........................ 8, 11

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
    No. 08-C-797, 2010 WL 1287058 (E.D. Wis. Mar. 30, 2010) ........................................ 9

*Kane v. Madge Networks N.V.*,
    No. C-96-20652-RMW, 2000 WL 33208116 (N.D. Cal. May 26, 2000),
    *aff'd sub nom. Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002) ................................. 10

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    902 F. Supp. 2d 329 (S.D.N.Y. 2012) ........................................................................... 10

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) .................................................................................... 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................................... 5

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................. 11, 12

*Phelps v. Stomber*,
    883 F. Supp. 2d 188 (D.D.C. 2012) ............................................................................... 7

*Reiger v. PricewaterhouseCoopers LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd sub nom. DSAM Global Value
    Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ........................................ 7, 8

*Rudolph v. UTStarcom*,
    560 F. Supp. 2d 880 (N.D. Cal. 2008) ........................................................................... 2

*Saltz v. First Frontier, L.P.*,
    485 F. App'x 461 (2d Cir. 2012) .................................................................................... 7

*Stephenson v. PricewaterhouseCoopers, LLP*,
    768 F. Supp. 2d 562 (S.D.N.Y. 2011), *aff'd*,
    482 F. App'x 618 (2d Cir. 2012) .................................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... vi, 4, 7, 8

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ....................................................................... 10

*Wozniak v. Align Tech., Inc.*,
    No. C-09-3671 MMC, 2011 WL 2269418 (N.D. Cal. June 8, 2011) ............................. 3

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................... 3, 4

**CODES**

15 U.S.C. § 78u-4(a) ............................................................................................................ iv

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 8, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at Courtroom 6, 17th Floor, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Catherine A. Lesjak shall, and hereby does, move the Court for an order dismissing the Consolidated Complaint filed May 3, 2013 (the "Complaint" or "CC").

Ms. Lesjak brings this Motion pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) *et seq.*, and Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, on the ground that Lead Plaintiff has failed to state a claim against Ms. Lesjak. This motion is based upon this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and supporting Declaration of Brian Danitz; the [Proposed] Order, the pleadings, records, and papers filed in this action; oral argument of counsel; and any other matters properly before the Court.

Ms. Lesjak hereby joins in and adopts the motions to dismiss filed by defendant Hewlett-Packard Company ("HP Motion") and, to the extent applicable, Ms. Whitman, and Messrs. Apotheker, Robison, Lane, and Murrin, and all papers filed in support of those motions and the arguments made therein.

## STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))

1. Should the claims asserted against Ms. Lesjak under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 be dismissed for failure to plead particularized factual allegations giving rise to a strong inference of scienter?

2. Should the claims asserted against Ms. Lesjak under Section 10(b) and Rule 10b-5 be dismissed for failure to plead sufficiently that she made an actionable false or misleading statement or omission?

3. Should the claims asserted against Ms. Lesjak under Section 20(a) of the Exchange Act be dismissed?

## SUMMARY OF ARGUMENT

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007), teaches that "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Indeed, the Ninth Circuit has recognized that Congress, through the PSLRA, significantly altered the pleading requirements in private securities fraud litigation to eliminate claims of "fraud by hindsight." *See, e.g.*, *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). Yet "fraud by hindsight" is all that Plaintiff pleads against Ms. Lesjak.

In essence, Plaintiff suggests that Ms. Lesjak was aware of Autonomy's fraud early on, participated in concealing the fraud, and intentionally neglected to write down impaired goodwill in a timely manner. Yet the Complaint emphasizes numerous facts suggesting quite the contrary: that Ms. Lesjak was "stripped" of her ability to scrutinize due diligence for the Autonomy deal; that Autonomy's own outside auditor missed the fraud; that the fraud was concealed such that HP was required to "look in every nook and cranny" to uncover it; and that HP had taken write downs in the past. Indeed, Plaintiff offers no reason why Ms. Lesjak, an "HP stalwart" of more than two decades, would have "knowingly" or with "deliberate recklessness" delayed a write down improperly in this instance. The more logical inference to be drawn from the allegations is that Ms. Lesjak – who Plaintiff alleges was "vehemently" opposed to the Autonomy deal (for business reasons) – would have disclosed the issues with Autonomy had she known of them.

Plaintiff's claim against Ms. Lesjak thus must be dismissed for failure adequately to plead particularized facts either raising a strong inference of scienter or demonstrating falsity.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

While the Complaint derides the Autonomy transaction, Plaintiff does not claim that Catherine A. Lesjak ("Ms. Lesjak"), Chief Financial Officer of Hewlett-Packard Company ("HP" or the "Company"), caused the Company to enter into the deal or even that she touted its merits. Indeed, Ms. Lesjak's "blunt" (¶ 33[1]), "strong" (¶ 34), and "vehement" (¶¶ 38, 42, 173) opposition to the transaction, for business reasons, is a cornerstone of the Complaint.

Rather, the essence of Plaintiff's claim against Ms. Lesjak is that she somehow knew of but concealed pre-existing accounting improprieties at Autonomy, as well as a resulting impairment of HP's goodwill. This claim fails because Plaintiffs cannot plead particularized facts showing that Ms. Lesjak suspected – let alone knew – that Autonomy's books were inaccurate until this was revealed through an extensive, months-long internal investigation.

The Complaint does not cite to a single confidential witness, internal report, or meeting suggesting that Ms. Lesjak knew of Autonomy's improper accounting. In fact, the allegations support a competing inference, in that the Complaint is punctuated with references to the fact that HP's reporting structure "stripped [her] of her ability to scrutinize" due diligence. ¶ 38. Indeed, Autonomy's own auditor (Deloitte) did not discover the fraud, nor did KPMG.

As an initial matter, and as demonstrated in HP's Motion, Plaintiff fails to show that HP's goodwill was, in fact, impaired prior to the write down. HP's contemporaneous filings explained, and case law recognizes, that goodwill calculations require estimating the fair value of a business, which inherently involves predictions about the future and, as such, is dependent upon judgment calls. But even assuming, *arguendo*, that HP's goodwill was overstated during the putative Class Period, Plaintiff's failure to plead specific facts demonstrating Ms. Lesjak's knowledge of Autonomy's fraudulent accounting is tantamount to a failure to demonstrate her knowledge that goodwill was impaired prior to the decision that a write down was warranted.

---

[1] "¶" references are to the Complaint.

Shorn of conclusory allegations and allegations inapplicable to Ms. Lesjak, Plaintiff is left with the bald claims that: i) because HP's months-long internal investigation ultimately revealed questionable accounting practices at Autonomy, Ms. Lesjak must have known about (and should have disclosed) such practices before the investigation concluded; and ii) because HP wrote off goodwill – a moving target whose calculation involves the substantial application of judgment – in a given quarter, Ms. Lesjak must have known it was overstated in prior quarters. Both are improper attempts to plead "fraud by hindsight," and conflict with common sense to boot; Ms. Lesjak sold no stock during the putative Class Period and is not otherwise alleged to have had a motive to commit fraud. In sum, the Complaint offers no reason why Ms. Lesjak would have participated in the alleged scheme.

Because the Complaint does not come close to pleading a Section 10(b) claim against Ms. Lesjak, and because Plaintiff alleges no basis for holding her liable as a control person, the claims against her should be dismissed in their entirety.

## ARGUMENT

### I. THE COMPLAINT FAILS TO RAISE A STRONG INFERENCE OF SCIENTER AS TO MS. LESJAK

#### A. The Complaint Fails Adequately To Allege That Ms. Lesjak Knew Of Accounting Improprieties At Autonomy

To plead scienter with respect to allegedly inaccurate financial statements, a plaintiff must plead particularized factual allegations "'showing that . . . the defendants knew specific facts at the time that rendered their accounting determinations fraudulent.'" *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 889 (N.D. Cal. 2008) (citations omitted). "[I]n the absence of such specifics, [the Court] cannot determine whether there is any basis for alleging that the officers knew that their statements were false at the time they were made." *Coble v. Broadvision Inc.*, No. C 01-01969 CRB, 2002 WL 31093589, at *10 (N.D. Cal. Sept. 11, 2002) (Breyer, J.) (alterations in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999)). A CFO's scienter is not assumed simply because accounting allegations are involved. *See, e.g., In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *21

(C.D. Cal. May 23, 2008) (allegations "insufficient to link [CFO] to the fraudulent practices at the Japan subsidiary or other accounting errors").

The Complaint fails to provide the requisite facts with respect to Ms. Lesjak. Although Plaintiff alleges repeatedly that Ms. Lesjak opposed the Autonomy transaction for *business reasons*, such objections do not mean that she knew or even suspected that there were any *accounting issues* at Autonomy. *See, e.g.*, ¶¶ 32, 69.[2] Indeed, no witness claims to have met or communicated with, or heard or read anything by, Ms. Lesjak on the latter subject.[3]

Plaintiff alleges that Ms. Lesjak attended one "quarterly meeting with HP/Autonomy's executives to examine HP/Autonomy's financial results" in 1Q-12 (¶ 183), but fails to allege what information was conveyed therein or how it would have alerted Ms. Lesjak to accounting improprieties. Plaintiff simply asserts that, as a result of this meeting, Ms. Lesjak "knew, or [was] deliberately reckless in not knowing, that HP's goodwill and intangible assets were materially overstated." *Id.* Courts routinely reject such conclusory allegations. *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 994, 998 (9th Cir. 2009) (allegation CFO attended meetings and "had to have known what was going on with respect to . . . accounting manipulation" insufficient).[4]

---

[2] Plaintiff asserts that the fact that Ms. Lesjak did not appear at a road show soon after the acquisition was announced was "suspicious[]." ¶ 47. However, Ms. Lesjak's absence from the road show hardly is surprising given her opposition to the Autonomy transaction.

[3] *See, e.g.*, *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01 Civ. 4388 (JBK), 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) (dismissing where no allegations of "any internal reports that suggested that the failure to take an impairment charge earlier was an incorrect application of accounting principles, much less an error so grievous that it exceeded differences over accounting principles and rose to the level of fraud."); *In re ChinaCast Educ. Corp. Sec. Litig.*, No. CV 12-4621-JFW (PLAx), 2012 WL 6136746, at *6 (C.D. Cal. Dec. 7, 2012) ("It is telling that Plaintiffs do not rely on confidential witnesses or specific internal reports to demonstrate what, if anything, the Individual Defendants knew or when they may have acquired that knowledge.").

[4] *See also In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) ("[g]eneral allegations of defendants' . . . attendance at meetings . . . are insufficient"); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (allegations that defendants attended management meetings and received weekly reports from finance department insufficient to establish scienter); *Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (allegations regarding financial reviews and other corporate meetings insufficient to plead scienter because they lacked any "hard numbers or other specific information" presented to defendant).

Moreover, Ms. Lesjak is the CFO of one of the largest technology companies in the world. HP has more than 330,000 employees and over $120 billion in annual revenue; Autonomy is one of two reporting units comprising one of HP's seven business segments (the Software segment). ¶ 9; Ex. A at 3, 17, 38, 45. Ms. Lesjak cannot be expected to know the accounting details of each sub-unit of this global business, particularly where a sub-unit is located thousands of miles away. *See, e.g.*, *Zucco*, 552 F.3d at 1000-01 (allegations of "access to the purportedly manipulated quarterly accounting numbers . . . do not support the inference that management was in a position to know that such data was being manipulated"); *Int'l Rectifier*, 2008 WL 4555794, at *21 (failure to plead CFO's scienter as to fraud at Japanese subsidiary).[5]

The more compelling inference raised by the foregoing facts is that Ms. Lesjak was unaware of the accounting improprieties at Autonomy until it was revealed through the Company's extensive, post-acquisition investigation. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007) ("an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

**B. The Complaint Fails Adequately To Allege That Ms. Lesjak Knew HP's Goodwill Was Impaired**

Plaintiff's failure to plead particularized facts showing Ms. Lesjak's knowledge of Autonomy's pre-existing accounting problems is fatal to its claim that she knew HP's goodwill was overstated. "GAAP establishes that goodwill must be tested for impairment on an annual basis, and between annual tests . . . when events occur or circumstances change that would . . . ***more likely than not*** reduce the fair value of a reporting unit below its carrying amount." ¶ 131. During its annual test, HP concluded that Autonomy's fair value was below its carrying value after considering "lower projected revenue growth rates and profitability levels" – reflecting,

---

[5] That Ms. Lesjak signed Sarbanes-Oxley ("SOX") certifications (¶¶ 127, 179-80, 187) similarly is insufficient to support a strong inference of scienter. In *Zucco*, the Ninth Circuit squarely held that SOX certifications "are not enough to create a strong inference of scienter and do not make [Plaintiff]'s otherwise insufficient allegations more compelling by their presence in the same complaint." 552 F.3d at 1004; *see also Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008) (same).

*inter alia*, "changes in assumptions related to organic revenue growth rates, market trends, business mix, cost structure, [and] expected deal synergies" – as well as "recent trading values of HP stock." ¶ 220 (emphasis omitted). Plaintiff fails "plausibly [to] demonstrate that [Ms. Lesjak] knew, nor even had reason to know, at any specific time [prior to the investigation and annual impairment process] that it was more likely than not that interim impairment testing would reveal that the goodwill of any specific reporting unit was overvalued." *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012).[6]

### C. Ms. Lesjak Had No Motive To Commit Securities Fraud

A failure to show motive "may significantly undermine a plaintiff's theory of fraud." *Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*, No. 11-01016 SC, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012). Here, Plaintiff does not allege that Ms. Lesjak sold any shares at inflated prices or that she otherwise had any motive to commit fraud.[7] To the contrary, Plaintiff alleges that Ms. Lesjak "vehemently opposed the acquisition" for business reasons. ¶ 42; *see also* ¶ 173. Thus, the more cogent inference is that, had Ms. Lesjak known of the accounting improprieties at Autonomy, she would have disclosed them. Moreover, Plaintiff admits that HP historically has taken write-downs (including the $8 billion EDS write-down in August 2011) (*see* ¶ 27 n.13), and alleges no facts to show that Ms. Lesjak had any reason to delay one in this instance.

---

[6] *See also In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 574 (D. Md. 2005) (failure to allege "facts as to what the individual Defendants knew [about the goodwill overstatement] and when"); *Loral*, 2004 WL 376442, at *17.

[7] *See, e.g., Coble*, 2002 WL 31093589, at *4 (inference of scienter "particularly not strong" where "[p]laintiffs did not proffer any theory as to why defendants would make these false statements if they did not personally profit from them"); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (affirming dismissal where President and COO sold no stock; it was apparent "there was no insider information from which to benefit"); *ChinaCast*, 2012 WL 6136746, at *8 ("a strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal").

### D. The Red Flag Allegations Do Not Create A Strong Inference Of Scienter

Lacking particularized facts directly demonstrating Ms. Lesjak's purported knowledge of the Autonomy fraud, Plaintiff asserts a series of "red flags." However, Plaintiff alleges no facts indicating that these supposed red flags were known to Ms. Lesjak during the putative Class Period.

**Pre-acquisition "red flag" allegations**. Plaintiff alleges that "HP's Autonomy due diligence team reported directly to [HP's Chief Strategy and Technology Officer]," which "stripped CFO Lesjak of her ability to scrutinize" the transaction. ¶ 38. As a result, Ms. Lesjak was not privy to the details of the due diligence process or any information obtained therein.[8] Indeed, Plaintiff concedes as much by alleging that *others* "disregarded Autonomy's evasive conduct and the red flags raised about its impairments" prior to closing (¶ 34), without mentioning Ms. Lesjak.[9]

Nor is there any reason to assume that Ms. Lesjak was aware of the three pre-closing "whistleblowers." "Whistleblower No. 1" left Autonomy a year and a half before due diligence began, and Deloitte represented in diligence that "a subsequent review had failed to discover any material improprieties." ¶ 39. "Whistleblower No. 2" is alleged to have communicated anonymously with a U.K. analyst, not HP or Ms. Lesjak. ¶ 47. "Whistleblower No. 3" emailed HP's Investor Relations department to "'tell[] them they were making a big mistake'" (¶¶ 17, 67 (emphasis omitted)), but Plaintiff does not even identify the "mistake" much less provide any link to Ms. Lesjak. Plaintiff similarly fails to allege that Ms. Lesjak reviewed, either before or after the acquisition, any of its cherry-picked analyst or news reports from the U.K. ¶¶ 17-25.

---

[8] For these same reasons, to the extent Plaintiff alleges that defendants should have disclosed more specifics about HP's due diligence, that claim is inapplicable to Ms. Lesjak because Plaintiff admits that she was excluded from that process.

[9] In any event, if neither Deloitte (which audited Autonomy) nor KPMG (which HP hired to conduct its own review) discovered the accounting improprieties (¶ 36), how could Ms. Lesjak have been expected to know about them?

In sum, plaintiff's pre-acquisition red flag allegations are insufficient because the Complaint makes no factual allegations showing that Ms. Lesjak was aware of them.[10]

**Post-acquisition "red flag" allegations**. Plaintiff acknowledges that "[p]rior to the Autonomy Acquisition, Autonomy was subject to the accounting principles known as International Financial Reporting Standards ('IFRS')." ¶ 135. "Beginning on October 3, 2011, HP's Autonomy unit began reporting as part of HP's Information Management division's Software Segment . . . ." ¶ 73. As such, adjustments needed to be made to Autonomy's accounting because "IFRS . . . differs from the [GAAP] used in the United States." *Phelps v. Stomber*, 883 F. Supp. 2d 188, 198 n.4 (D.D.C. 2012); *see also* Ex. B at 39 ("The Consolidated Financial Statements of HP are prepared in accordance with [GAAP] . . . .").

Plaintiff points to these necessary and proper adjustments as if they somehow demonstrate scienter. *See* ¶ 74. They do not. Specifically, Plaintiff alleges that: (1) in October 2011 "HP's Worldwide Director of Software Revenue Recognition, Paul Curtis, began to undertake detailed studies of Autonomy's software revenue recognition practices"; (2) in November 2011, Ernst & Young LLP ("E&Y") "started reviewing Deloitte's Autonomy audit work papers in connection with its year-end audit for HP"; and (3) in December 2011, "E&Y and KPMG undertook 'detailed studies of Autonomy's software revenue recognition with a view to optimising for US GAAP.'" ¶ 75. But Plaintiff does not allege that any accounting improprieties were uncovered by Curtis, E&Y or KPMG, let alone what, *if anything*, was communicated to Ms. Lesjak regarding these reviews. Plaintiff's silence on these points is telling. *Tellabs*, 551 U.S. at 326 ("omissions and ambiguities count against inferring scienter").

---

[10] *See, e.g., Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 573 (S.D.N.Y. 2011) ("an unseen red flag cannot be heeded"), *aff'd*, 482 F. App'x 618 (2d Cir. 2012); *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1012 (S.D. Cal. 2000) ("Plaintiffs cannot identify any facts suggesting actual awareness of . . . revenue improprieties"), *aff'd sub nom. DSAM Global Valur Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002); *Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 465 (2d Cir. 2012) ("[T]hese red flags are insufficient to plead the required strong inference, in part because Saltz makes no allegation supporting the conclusion that First Frontier was aware of them.").

***Briody* matter**. Plaintiff also relies on an administrative proceeding filed by a former Autonomy salesperson, Virginia Briody. ¶¶ 62-67. But Plaintiff, again, does not allege what, if anything, Ms. Lesjak was told of this proceeding. It is not reasonable to assume that the CFO of a company that took in $120 billion in revenue in 2012 was informed of the details of all employee wage claims, especially where, as here: the claim involved less than $98,000, the events at issue took place a year prior to the acquisition, and HP was not named as a party.[11]

**Alleged "Whistleblower."** Finally, the Complaint alleges that in May 2012, a "senior member of Autonomy's leadership team[] raised serious accounting improprieties at HP/Autonomy" with HP's General Counsel John Schultz. ¶ 80 (internal quotation marks omitted). HP's counsel promptly engaged PricewaterhouseCoopers to investigate. *Id*. The Complaint acknowledges that the fraud was difficult to uncover because "'critical documents were missing from the obvious places, and it required that [HP] look in every nook and cranny.'" ¶ 87. These facts hardly evidence Ms. Lesjak's or HP's scienter in failing to take an earlier write-down. On the contrary, HP ultimately determined to make an $8.8 billion no-cash impairment charge based in part on the discoveries made during the internal investigation following the "whistleblower's" disclosures. ¶ 84. The Complaint does not allege any facts to undermine the prudence of conducting an internal investigation based on the whistleblower's charges or of allowing the investigation to proceed to conclusion. As this Court has recognized, "taking time to investigate a situation prior to disclosing the situation to the investing public is not fraudulent." *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *22 (N.D. Cal. Aug. 10, 2012) (Breyer, J.). The more compelling inference here is that Ms. Lesjak was unaware of any accounting improprieties at Autonomy until they were discovered, scrutinized and confirmed through the Company's extensive, post-acquisition investigation. *See, e.g., Tellabs*, 51 U.S. at 309 ("an inference

---

[11] The fact that Autonomy VP of Finance Steve Chamberlain, who submitted a declaration in the *Briody* matter, was "a subsequent direct report" to Ms. Lesjak (¶ 65) does not mean he reported the details of every claim in which he was involved, and there are no allegations here that Mr. Chamberlain reported the details of the *Briody* matter to Ms. Lesjak. *See, e.g., Reiger*, 117 F. Supp. 2d at 1011 ("The [PSLRA] does not permit district courts to speculate as to the existence of unpled and unidentified facts that could raise a strong inference of scienter.").

1  of scienter must be more than merely plausible or reasonable – it must be cogent and at least as
2  compelling as any opposing inference of nonfraudulent intent").

## II. THE COMPLAINT FAILS TO PLEAD FALSITY AS TO MS. LESJAK

The Complaint should be dismissed as to Ms. Lesjak for the additional reason that Plaintiff fails to plead that she made a false or misleading statement.

Plaintiff divides its allegations into "quantitative" statements and "qualitative" statements. The challenged "quantitative" statements boil down to representations regarding the Company's goodwill in its quarterly and annual reports. Plaintiff's goodwill claims fail to get off the ground because, as discussed more fully in HP's brief, goodwill estimates necessarily involve the exercise of accounting judgment and opinion, and Plaintiff cannot show such estimates in this instance were false when made. HP Motion § II.B.2. "When an acquisition occurs, GAAP requires that any excess of the purchase price over the fair value of the assets acquired and the liabilities assumed be reported as goodwill or 'excess purchase price.'" *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). While Autonomy's purchase price was an objective fact, "the 'fair value' of the assets acquired and liabilities assumed [were] not matters of objective fact," but rather, were subjective determinations. *Id.*[12] Plaintiff alleges nothing about HP's projections for Autonomy, its assumptions about synergies with other business units, or any of the other myriad assumptions underlying the goodwill analysis.[13]

---

[12] *See also In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1214 (S.D. Cal. 2010) (goodwill reflects "amorphous concepts like the 'synergy' created by merging two companies"); *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08-C-797, 2010 WL 1287058, at *14 (E.D. Wis. Mar. 30, 2010) (recognition of goodwill impairment "involves an accounting judgment about the future"); Ex. B at 42 (determining fair value of reporting unit "judgmental in nature and involves the use of significant estimates and assumptions" including "revenue growth rates," "risk-adjusted discount rates," and "future economic and market conditions"; assumptions believed to be reasonable but "unpredictable and inherently uncertain").

[13] The Complaint also alleges, in conclusory form, that HP continued Autonomy's pre-acquisition practice of improperly recognizing revenue from software licensing transactions, and that it misrepresented revenue recognition policies and known trends in the Software segment. ¶¶ 134-135. As HP demonstrates, these allegations are without merit. HP Motion § II.B.1.

Plaintiff fares no better with respect to Ms. Lesjak's "qualitative" statements.[14] First, Ms. Lesjak's statements of November 21, 2011 and February 22, 2012 that "'[t]he integration is going well[,] thus far'" (¶ 76 (emphasis omitted)) and "we are pleased with the Autonomy acquisition" (¶ 185) are "vague pronouncements of corporate optimism" that are immaterial as a matter of law. *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 341-42 (S.D.N.Y. 2012) ("'[i]ntegration of RBS is progressing well'" and "'integration of ABN AMRO is off to a promising start'" not actionable (alteration in original) (citation omitted)); *see also Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("'we are very pleased with our progress to date'" not actionable (citation omitted)).[15]

Second, Plaintiff alleges no facts contradicting Ms. Lesjak's statements of May 23 and August 22, 2012, that: "'[s]ales execution was a challenge, and big deals are taking longer to close'" (¶ 191); HP had "'a lot of work to do over the next several quarters to improve Autonomy performance'" (¶ 200); HP "'expect[s] to see well below normal seasonality when you go from Q3 to Q4 in revenue,'" in part "'due to . . . our challenge in getting our Software license growth where it needs to be'" (¶ 202 (alteration in original)); and HP would conduct its "'annual review of the carrying value of goodwill during the fourth quarter of each fiscal year,'" with the "'largest

---

[14] It is unclear whether Plaintiff even contends that each of these statements was false, since the majority are not presented in bold and italics. *See* Complaint at 72 n.39 ("All **bold and italics** in this section refer to Defendants false and/or misleading statements.").

[15] *See also In re Leapfrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) ("'We are pleased with our progress'" not actionable (citation omitted)); *City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*, No. 2:09-cv-00659-EJL-CWD, 2011 WL 4584778, at *7 (D. Idaho Sept. 12, 2011) (statements that company was "'starting to see the benefits' of the integration" and "integration efforts were 'in their very early stages but . . . proceeding very well'" held immaterial (alteration in original)).

In any case, Plaintiff points to no facts to contradict these statements or show that Ms. Lesjak did not believe them to be true at the time. *See, e.g.*, *Kane v. Madge Networks N.V.*, No. C-96-20652-RMW, 2000 WL 33208116, at *8 (N.D. Cal. May 26, 2000) (dismissing complaint, pleadings "inadequate in addressing the degree to which the speaker did not in fact believe those opinions"), *aff'd sub nom. Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002); *Lighthouse Fin.*, 902 F. Supp. 2d at 342 (allegations insufficient where Plaintiff did not "point to any evidence that . . . Defendant had actual knowledge that the integration was not going smoothly at the time these statements were made.").

balance for goodwill [being] in the Software segment'" (¶ 201). The pendency of an internal investigation did not render false any of these statements, nor did it otherwise need to be disclosed. *See* HP Motion § II.B.3; *Yahoo!*, 2012 WL 3282819, at *22 (no obligation to disclose ongoing investigation).

Finally, Plaintiff's attempt to paint Ms. Lesjak's disclosures regarding "accounting adjustments" (¶¶ 79, 191), "deferred revenue write-downs" (¶¶ 79, 145, 156, 188, 191, 205) and "acquisition-related integration costs" (¶¶ 156, 184, 191, 197) with a sinister brush is baseless. Plaintiff does not allege that HP did not incur integration costs and/or make proper accounting adjustments related to the integration, or that, as a result, operating profit was negatively impacted during this period. Rather, Plaintiff alleges that the statements were false and misleading because these charges were due to HP's purported "surreptitious efforts to unwind" Autonomy's fraudulent accounting for license revenue. Of course, Plaintiff alleges no facts in support of this purported scheme because there was no such scheme. *See* HP Motion § II.B.4. To the contrary, HP was required to convert Autonomy's accounting from IFRS to GAAP (*see* § I.D, *supra*), and the cited costs and adjustments are a routine part of purchase accounting.[16] Plaintiff alleges *nothing* to show these charges improperly were taken or that HP secretly was "unwinding" fraudulent transactions. Plaintiff's repetition of these conclusory assertions does not substitute for particularized facts.

### III. THE COMPLAINT ALSO FAILS TO PLEAD A SECTION 20(a) CLAIM

Plaintiff cannot state a Section 20(a) claim against Ms. Lesjak because there has been no primary violation of the federal securities laws. *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).

Furthermore, the Complaint makes no serious claim that Ms. Lesjak exercised actual control over any of the other individual defendants. *See, e.g.*, *Middlesex Ret. Sys. v. Quest*

---

[16] *See, e.g.*, ¶ 156 (citing "'deferred revenue write-downs associated with [HP's] fiscal 2010 acquisitions'"); Ex. C at 2 (disclosing "purchase accounting adjustments related to deferred revenue write downs" for HP's acquisition of Mercury Interactive Corp. in 2006); Ex. D at 57 (disclosing HP's higher acquisition-related costs for 2010).

DEF. LESJAK'S MOTION TO DISMISS -11-
MASTER FILE NO.: C-12-5980 CRB

*Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing § 20(a) due to failure to allege how defendant controlled those with same or higher position); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 730 (W.D. Tex. 2010) (similar).[17]

## CONCLUSION

For the forgoing reasons, the Complaint should be dismissed as to Ms. Lesjak.

DATED: July 2, 2013                Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
STEVEN M. SCHATZ
KATHERINE L. HENDERSON
BRYAN KETROSER
BRIAN DANITZ

                                            s/
STEVEN M. SCHATZ

650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

*Attorneys for Defendant*
*Catherine A. Lesjak*

---

[17] The concept of control in the context of a recently-acquired, foreign subsidiary comprising a minor portion of the Company's overall revenue makes little sense.  It certainly requires more than the mere recitation of a title accompanied by boilerplate language. *See, e.g.*, *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *15 (C.D. Cal. Aug. 21, 2009).