1 | COOLEY LLP
STEPHEN C. NEAL (170085) (nealsc@cooley.com)
2 | JOHN C. DWYER (136533) (dwyerjc@cooley.com)
JEFFREY M. KABAN (235743) (jkaban@cooley.com)
3 | ADAM C. TRIGG (261498) (atrigg@cooley.com)
JEFFREY M. WALKER (280505) (jwalker@cooley.com)
4 | Five Palo Alto Square
3000 El Camino Real
5 | Palo Alto, CA  94306-2155
Telephone:    (650) 843-5000
6 | Facsimile:    (650) 849-7400

7 | Attorneys for Defendant
MARGARET C. WHITMAN

8 |

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SAN FRANCISCO DIVISION

12 |

13 | IN RE HP SECURITIES LITIGATION,

14 | This Document Relates To: All Actions

Case No.  C-12-5980 CRB

**CLASS ACTION**

**DEFENDANT MARGARET C. WHITMAN'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing:     November 8, 2013
Time:         10:00 a.m.
Courtroom:  6
Judge:       Hon. Charles R. Breyer

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................................. 2

    A.  HP Acquires Autonomy ....................................................................................... 2

    B.  HP Writes Down Autonomy-related Goodwill..................................................... 2

    C.  Plaintiff's Allegations Against Ms. Whitman ...................................................... 3

III.  ARGUMENT .................................................................................................................. 3

    A.  Plaintiff Fails to Allege Facts to Support a Strong Inference that Ms.
          Whitman Acted with Scienter ............................................................................... 3

          1.  Plaintiff Fails to Adequately Allege that Ms. Whitman Acted with
               Scienter ...................................................................................................... 4

          2.  Numerous Allegations in the Complaint Negate Any Inference of
               Scienter...................................................................................................... 8

          3.  Plaintiff's Allegations Are Far More Consistent with an Inference
               that Ms. Whitman Acted in Good Faith .................................................... 9

    B.  Plaintiff Fails to Plead with Particularity that Ms. Whitman Made Any
          Actionable Statements that Were False or Misleading When Made.................... 10

          1.  The Majority of Ms. Whitman's Statements Are Inactionable ................. 11

          2.  Plaintiff Fails to Allege Particularized Facts to Support that Ms.
               Whitman's Alleged Misstatements Were False or Misleading When
               Made........................................................................................................ 12

          3.  HP's Financial Statements Were Not False and Misleading When
               Made........................................................................................................ 14

    C.  Plaintiff Fails to Adequately Plead a Rule 10b-5(a) or (c) Claim........................ 14

    D.  Plaintiff Fails to State a Claim that Ms. Whitman Violated Section 20(a) .......... 15

IV.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Anderson v. McGrath,*
    2013 U.S. Dist. LEXIS 42575 (D. Ariz. Mar. 26, 2013) ...................................................... 15

*Brody v. Transitional Hosps. Corp.,*
    280 F.3d 997 (9th Cir. 2002)........................................................................................... 11, 13

*In re ChinaCast Educ. Corp. Sec. Litig.,*
    2012 WL 6136746 (C.D. Cal. Dec. 7, 2012) ...................................................................... 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,*
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................................ 12

*Coble v. Broadvision, Inc.,*
    2002 WL 31093589 (N.D. Cal. Sept. 11, 2002) ................................................................. 5

*In re Coinstar, Sec. Litig.,*
    2011 U.S. Dist. LEXIS 115794 (W.D. Wash. Oct. 6, 2011) .............................................. 14

*In re Cutera Sec. Litig.,*
    610 F.3d 1103 (9th Cir. 2010)......................................................................................... 12

*In re Cybershop.com Sec. Litig.,*
    189 F. Supp. 2d 214 (D.N.J. 2002) .................................................................................. 11

*In re Daou Sys., Inc., Sec. Litig.,*
    411 F.3d 1006 (9th Cir. 2005).......................................................................................... 4, 5

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976) ........................................................................................................... 4

*In re Foundry Networks, Inc. Sec. Litig.,*
    2003 WL 22077729 (N.D. Cal. Aug. 29, 2003)................................................................ 11

*Glazer Capital Mgmt., LP v. Magistri,*
    549 F.3d 736 (9th Cir. 2008)............................................................................................. 7

*In re GlenFed, Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994)........................................................................................... 10

*Higginbotham v. Baxter Int'l, Inc.,*
    495 F.3d 753 (7th Cir. 2007)...................................................................................... *passim*

*Horizon Asset Mgmt. v. H&R Block, Inc.,*
    580 F.3d 755 (8th Cir. 2009)............................................................................................. 9

**Cases**                                                               **Page(s)**

*In re ICN Pharm. Inc. Sec. Litig.*,
299 F. Supp. 2d. 1055 (C.D. Cal. 2004) .................................................... 5

*In re Impac Mort. Holdings, Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................... 4

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
2010 WL 1287058 (E.D. Wis. Mar. 30, 2010) ............................... 5, 6, 9

*Janus Capital Group, Inc. v. First Derivative Traders*,
--- U.S. ---, 131 S. Ct. 2296 (2011) ...................................................... 3

*Kane v. Madge Networks N.V.*,
2000 WL 33208116 (N.D. Cal. May 26, 2000) ..................................... 11

*In re LeapFrog Enters., Inc. Sec. Lit.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................... 12

*In re NVIDIA Corp. Sec. Litig.*,
2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ........................................ 7

*Red River Res., Inc. v. Mariner Sys.*,
2012 WL 2507517 (D. Ariz. June 29, 2012) ......................................... 15

*In re Remec Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................. 9

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ................................................................ 13

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ..................................................... vi, 6, 10

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) .............................................................. 15

*In re Silicon Graphics Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ................................................................. 4

*South Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ............................................................... 10

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2nd Cir. 2010) ............................................................. 4,9

*In re Splash Tech. Hold, Inc., Sec. Litig.*,
2000 U.S. Dist. LEXIS 15370 (N.D. Cal. Sept. 29, 2000) .................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEFENDANT WHITMAN'S MOTION TO DISMISS
C-12-5980 CRB

**Cases**                                                      **Page(s)**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................ .v, 4

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ......................................... 10

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................... vi, 11

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)................... vi, 4, 8, 11

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994)............................................ 9

*Wozniak v. Align Tech., Inc.*,
   2011 WL 2269418 (N.D. Cal. June 8, 2011) ...................... 12

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011).................................... vi, 14

*In re Yahoo! Inc. Sec. Litig.*,
   2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) ...................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)..................................... vi, 4

**STATUTES**

15 U.S.C. § 78u-4................................................. v, 4, 10

15 U.S.C. § 78u-5........................................................ 12

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b–5 ................................................ 14

Federal Rule of Civil Procedure 9(b) ........................... v, 11

Federal Rule of Civil Procedure 12(b)(6) ........................ v

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**DEFENDANT WHITMAN'S MOTION TO DISMISS**
**C-12-5980 CRB**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS MATTER:**

PLEASE TAKE NOTICE that on November 8, 2013, at 10:00 a.m. or as soon thereafter as this motion may be heard, defendant Margaret C. Whitman will and hereby does move to dismiss with prejudice all claims against her in Plaintiff's Consolidated Complaint For Violation Of The Federal Securities Laws ("Complaint"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and Section 21D(b) ("PSLRA") of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. § 78u-4(b). This motion is based on the pleadings; the accompanying Memorandum of Points and Authorities and Appendix attached hereto; Request for Judicial Notice; the Declaration of Jeffrey M. Kaban ("Dec.") and exhibits ("Ex.") thereto; and other matters as may be presented in connection with the hearing on the motion.

## STATEMENT OF ISSUES TO BE DECIDED

A.   Whether Plaintiff fails to adequately plead that Ms. Whitman violated section 10(b) of the Exchange Act where Plaintiff fails to plead with particularity facts that raise a strong inference of scienter, fails to plead with particularity that Ms. Whitman made any actionable statements during the class period that were false or misleading at the time they were made, and fails to allege any conduct that would constitute a scheme or device to defraud.

B.   Whether Plaintiff fails to adequately plead that Ms. Whitman is liable as a control person under Section 20(a) of the Exchange Act when Plaintiff fails to plead a violation of Section 10(b) in the first instance and fails to allege facts showing Ms. Whitman exercised "actual power or control" over any of the other defendants.

## SUMMARY OF ARGUMENT

Under the PSLRA, Plaintiff must plead particularized facts demonstrating (i) a strong inference of scienter, that is, an intent to deceive investors, and (ii) that Ms. Whitman's statements were false or misleading at the time they were made. 15 U.S.C. § 78u-4(b)(1)-(2). Plaintiff's Complaint fails to do either.

To plead scienter, the Complaint must allege facts that support an inference of scienter that is both "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). A

court must "take into account plausible opposing inferences" and "compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). The Complaint does not plead facts to support an inference of scienter that is cogent, let alone compelling. The Complaint fails to allege that Ms. Whitman benefitted in any way from the alleged fraud, and "the lack of *any* tangible, personal benefit . . . weighs against . . . scienter." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177–78 (C.D. Cal. 2007). Moreover, the Complaint acknowledges that HP voluntarily initiated an investigation into Autonomy's financial reporting and then publicly disclosed the results of that investigation. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 755, 758 (7th Cir. 2007). The more compelling inference from the facts alleged is that Ms. Whitman acted in good faith and without any malicious intent.

The Complaint also fails to allege with the required particularity that any of the statements attributed to Ms. Whitman were false or misleading. To allege falsity, it must be clear from the complaint what statements Plaintiff alleges were false and why they were false. *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). "Vague statements of opinion are not actionable under the federal securities laws because they are considered immaterial and discounted by the market as mere 'puffing.'" *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) (citation omitted). The majority of the statements attributed to Ms. Whitman are inactionable statements of corporate optimism or forward-looking statements protected by the PSLRA's safe harbor provision. As to the other statements attributed to Ms. Whitman, Plaintiff fails to allege particularized facts to show that the statements were false or misleading when made.

The Complaint also fails to allege claims for violation of Rule 10b-5(a) or (c) because there are no allegations of conduct beyond alleged misrepresentations or omissions. *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011).

Because Plaintiff fails to allege a primary violation of the federal securities laws and fails to plead sufficient facts to show that Ms. Whitman controlled any primary violators, Plaintiff's Section 20(a) claim should also be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

DEFENDANT WHITMAN'S MOTION TO DISMISS
C-12-5980 CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There is little doubt that the Autonomy acquisition has not worked out the way Hewlett-Packard Company ("HP" or "Company"), its officers, directors or shareholders originally anticipated. However, neither that fact nor any of the allegations contained in Plaintiff's 100-page Consolidated Complaint ("Complaint") support a claim for securities fraud against Ms. Whitman or any of the other defendants. As a result, Ms. Whitman respectfully requests that the Court dismiss the claims asserted against her with prejudice.

Plaintiff does not dispute that, as HP has publicly stated, Autonomy's financial records fraudulently misrepresented the financial condition of that company at the time HP acquired it in October 2011. Rather, the Complaint appears to be premised on the bizarre and counterintuitive theory that Ms. Whitman and the other defendants were aware of Autonomy's fraud at the time of the acquisition and hid it from the market for several quarters for no particular reason. They then voluntarily disclosed the very facts that the Complaint alleges they worked so hard to conceal. This theory makes no sense and, thus, lacks plausibility.

Further, the Complaint fails to satisfy the pleading standards of the Private Securities Litigation Reform Act ("PSLRA") with regard to either scienter or falsity. First, it is devoid of any particularized allegations supporting a cogent and compelling inference that Ms. Whitman acted with the requisite state of mind. Indeed, the only cogent inference to be drawn from the allegations is that Ms. Whitman and the other defendants acted in the utmost good faith. Importantly, the Complaint fails to allege that Ms. Whitman personally benefitted in any way from the alleged fraud (through the sale of HP stock or otherwise) and acknowledges that HP, under Ms. Whitman's stewardship, voluntarily initiated an investigation into Autonomy's financial reporting and then publicly disclosed the results of that investigation. Second, the Complaint fails to allege with the required particularity that any of the statements attributed to Ms. Whitman were false or misleading. The majority of those statements are inactionable statements of corporate optimism or forward-looking statements protected by the PSLRA's safe harbor provision. With regard to the other statements attributed to Ms. Whitman, Plaintiff fails to

allege particularized facts to show that they were false or misleading when made.

Accordingly, Plaintiff's claims against Ms. Whitman should be dismissed.

## II.    STATEMENT OF FACTS[1]

### A.    HP Acquires Autonomy

Ms. Whitman joined HP's Board of Directors in January 2011, almost three months after Leo Apotheker began his tenure as HP's CEO. (¶¶ 26, 110, 112.)[2]  In April 2011, Mr. Apotheker met Autonomy's founder and CEO, Michael Lynch, for the first time and, shortly thereafter, "reportedly told Defendant Lane that he wanted to buy Autonomy." (¶ 31.)  Four months later, in August 2011, HP entered into an agreement to acquire that company. (¶ 44.)  On October 3, 2011, the Autonomy deal closed, and the Autonomy business began reporting as part of HP's Information Management Division's Software Segment. (¶¶ 69, 73.)  Mr. Lynch was appointed to lead the Information Management Division. (¶ 45.)

Less than two weeks before the Autonomy deal closed, the HP Board appointed Ms. Whitman to replace Mr. Apotheker as CEO of the Company. (¶ 110.)

### B.    HP Writes Down Autonomy-related Goodwill

Mr. Lynch's first full quarter leading Software, Q1 FY2012, ended with mixed results. (¶¶ 184, 185.)  While the operating profit for the Software Segment was $163 million, the gross margin was down and licensing revenue was lower than anticipated. (¶ 79.)  In the second quarter, Mr. Lynch again failed to meet license revenue projections for Autonomy. (¶¶ 191, 192.) After two straight quarters of disappointing license revenue growth, HP management announced that Mr. Lynch would be replaced as head of the Software Segment. (¶ 80.)

After the departure of Mr. Lynch on May 23, 2012, a "senior member of Autonomy's leadership team came forward" alleging that there had been a series of questionable accounting and business practices at Autonomy prior to HP's acquisition. (¶ 84.)  HP immediately began an investigation of the allegations, and an outside accounting firm was engaged to do a forensic

---

[1] The statement of facts assumes the truth of the allegations in the Complaint for purposes of this motion.

[2] All ¶ __ references are to the Complaint unless otherwise noted.

analysis of Autonomy's financials.  (¶ 84.)  On November 20, 2012, based on facts developed through the investigation, HP announced a non-cash impairment charge of $8.8 billion related to the Autonomy acquisition.  (*Id.*)  As explained in HP's press release, "The majority of this impairment charge, more than $5 billion, is linked to serious accounting improprieties, misrepresentation and disclosure failures discovered by an internal investigation by HP and forensic review into Autonomy's accounting practices prior to its acquisition by HP."  (¶ 8.)

### C. Plaintiff's Allegations Against Ms. Whitman

Despite the length of the Complaint, Plaintiff cites to just seven statements that Plaintiff attributes to Ms. Whitman and alleges were false.[3]  (¶¶ 177, 179, 185, 189, 191, 194, 200.)  The Complaint does not allege that Ms. Whitman or any other defendant personally benefitted from the alleged fraud (other than, of course, Mr. Lynch who benefitted from the fraud he committed against HP) or that the alleged fraud furthered any corporate objective.  Nevertheless, Plaintiff alleges claims against Ms. Whitman pursuant to (1) section 10(b) and Rule 10b-5(b), alleging she made false and misleading statements, (2) section 10(b) and Rule 10b-5(a) and (c), alleging she employed an unidentified device or scheme to defraud; and (3) section 20(a), alleging control person liability.

### III. ARGUMENT[4]

#### A. Plaintiff Fails to Allege Facts to Support a Strong Inference that Ms. Whitman Acted with Scienter

To state a claim for securities fraud under the PSLRA, a complaint must "state with

---

[3] To the extent that Plaintiff seeks to hold Ms. Whitman liable for unattributed statements or statements made by other defendants, such statements are not actionable against Ms. Whitman under the Supreme Court's decision in *Janus* as she did not make those statements.  The Supreme Court in *Janus* held that one "makes" a statement only by speaking it herself, or by having "ultimate authority over the statement, including its content and whether and how to communicate it."  *Janus Capital Group, Inc. v. First Derivative Traders*, --- U.S. ---, 131 S. Ct. 2296, 2302 (2011).  The Complaint fails to allege with particularity such authority.  Furthermore, to the extent Ms. Whitman is held to be the speaker of any of these unattributed statements, the statements are not false or misleading for the reasons stated in HP's motion to dismiss.

[4] Rather than repeat all of the relevant arguments herein, Ms. Whitman joins, to the extent applicable, in the arguments asserted in the memoranda in support of the motions to dismiss filed by HP, Ms. Lesjak, and Messrs Apotheker, Robinson, Lane and Murrin.

particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). "Thus, the complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005). To allege an actionable omission, deliberate recklessness requires "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco,* 552 F.3d at 991 (quoting *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (quotations omitted).) Further, Plaintiff must plead with particularity facts giving rise to a strong inference that *each Defendant* made a false statement knowingly or with deliberate recklessness. *In re Impac Mort. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1099 (C.D. Cal. 2008).

The scienter analysis "is inherently comparative." *Tellabs*, 551 U.S. at 323. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991. "[W]hile allegations of insider sales are not required in securities fraud cases, the lack of *any* tangible, personal benefit . . . weighs against . . . scienter." *In re Wet Seal,* 518 F. Supp. 2d at 1177–78 (internal citation omitted). Further "[k]nowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive." *Higginbotham,* 495 F.3d at 755, 758 . Finally, the voluntary investigation and disclosure of alleged improprieties negates an inference of scienter. *Slayton v. Am. Express Co.,* 604 F.3d 758, 777 (2nd Cir. 2010).

Either viewing the scienter allegations individually or holistically, Plaintiff fails to raise a strong or cogent inference that Ms. Whitman acted with an intent to deceive.

> **1.** **Plaintiff Fails to Adequately Allege that Ms. Whitman Acted with the Requisite Scienter**

The Complaint, despite its 100 pages, lacks any allegations supporting an inference that

Ms. Whitman acted with any intent to deceive.  It is also completely devoid of any allegations as to why she would allegedly engage in the purported fraud.  *Coble v. Broadvision, Inc.*, No. C 01-01969 CRB, 2002 WL 31093589, at *4 (N.D. Cal. Sept. 11, 2002) (dismissing complaint and finding inference of scienter "is particularly not strong" where the plaintiffs "did not proffer any theory as to why defendants would make these false statements if they did not personally profit from them.")  The Complaint fails to cite to any emails, internal reports, other contemporaneous documents, meetings, or discussions suggesting that Ms. Whitman had any reason to believe that any of the statements attributed to her were false when she made them, that she was aware that Autonomy had materially inflated its revenues prior to the acquisition or that she believed HP should have taken a goodwill impairment charge prior to the time it actually did.[5]  Nor does Plaintiff identify any witnesses – confidential or otherwise – that had any information regarding Ms. Whitman's state of mind at any time.  Those pleading failures are fatal to the claims against Ms. Whitman.  *See In re ICN Pharm. Inc. Sec. Litig.*, 299 F. Supp. 2d. 1055, 1065 (C.D. Cal. 2004) (dismissing complaint where plaintiffs "failed to provide detailed evidence of the contemporaneous decision-making behind the alleged accounting errors" sufficient to show scienter); *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.* , No. 08-C-797, 2010 WL 1287058, at *19 (E.D. Wis. Mar. 30, 2010) (holding allegations of scienter insufficient where there were no confidential witnesses or citations to internal documents showing that it was necessary to take an impairment charge earlier).

Rather, Plaintiff relies on generalized allegations relating to the fact that the Autonomy acquisition was not the success initially anticipated, allegations relating to "red flags" regarding Autonomy's accounting practices, and allegations regarding the disclosure of certain

---

[5] Plaintiff alleges that Ms. Whitman attended one quarterly meeting at the end of Q1 2012 with HP executives "to examine HP/Autonomy's financial results." (¶ 183.)  However, Plaintiff fails to allege with specificity what was discussed at this meeting.  Further, there are no allegations that Ms. Whitman was informed that Autonomy's financials were overstated or that HP needed to take a goodwill impairment charge. That Ms. Whitman attended an end of quarter meeting and discussed HP's financials is not surprising and does not support an inference of scienter.  *In re Daou*, 411 F.3d at 1022 (holding that mere allegations of attendance at meetings is insufficient to plead scienter).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"whistleblower" allegations. However, the Complaint fails to tie these generalized allegations to Ms. Whitman. Moreover, the allegations fail to support a cogent and compelling inference of scienter. <u>First</u>, it is beyond dispute that the failure of a corporate acquisition is not indicative of fraud. "Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi*, 253 F.3d at 432. In *Ronconi*, the Ninth Circuit affirmed the dismissal of a securities fraud case asserting remarkably similar allegations to those Plaintiff makes here.[6] "That a pessimistic argument could have been made against the [Autonomy] merger, and that had [defendants] known in [October 2011] what they learned the following [November] they would not have spoken so optimistically, does not raise a strong inference" of scienter. *Id*. at 430. *See also Iron Workers*, 2010 WL 1287058 at *22 ("Rather than attributing the course of events to fraud, it is far more reasonable to conclude that although the Geesink acquisition simply didn't work out, the Defendants maintained reasonable (if unrealized) hopes that success could eventually be achieved.").

Second, the "red flags" identified by Plaintiff related to Autonomy's accounting in the years before the HP acquisition fall well short of supporting a scienter inference. (*See, e.g.*, ¶¶ 17-25.) The concerns raised by the carefully-selected analyst reports cited in the Complaint must be considered in the context that Autonomy was a publicly-traded company whose financial statements were audited by Deloitte and that HP retained KPMG, Perella Weinberg, and Barclays Capital to assist it in conducting pre-acquisition diligence. (¶¶ 31, 36, 39.) The Complaint does not allege that any of those entities raised concerns regarding Autonomy's financials.[7] Further, if

---

[6] "The theory of the complaint is that the merger was a failure and that the [defendants] knew that almost from the start. But they repeatedly lied to the market through stock analysts and press releases, misleading the stock market into overvaluing their stock based on a false impression that the merger was going well." *Id*. at 428.

[7] Plaintiff also makes conclusory allegations that HP had to "unwind" Autonomy's improper accounting practices beginning in December 2011. (¶¶ 75-79; *see also e.g.* ¶ 186.) However, Plaintiff never identifies any improper transaction that was allegedly "unwound" during the class period. Further, there are no allegations that Ms. Whitman had any knowledge of any such actions. Similarly, Plaintiff alleges "HP" must have known of these issues based on an employment dispute concerning $96,000 in commissions. (¶¶ 62-67, 98.) There are no allegations that Ms. Whitman had any knowledge of this lawsuit, nor would you expect the CEO of a company employing nearly 350,000 people and with annual revenues over $127 billion per year to have knowledge of such a relatively minor dispute. (Dec. Ex. 4.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the public reports of "red flags" and allegations of fraud were sufficient to establish that Ms. Whitman had knowledge of the Autonomy improprieties, then the market would have also had knowledge of the fraud. The securities laws do not require disclosure of information already in the public domain. *Higginbotham*, 495 F.3d at 759. At most, Plaintiff has alleged that HP should have known of the fraud, which falls well short of the allegation that Ms. Whitman acted either intentionally or with deliberate recklessness. *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (allegation that defendant "*should* have known . . . . is not sufficient to meet the stringent scienter pleading requirements of the PSLRA").

And <u>third</u>, the fact that an internal "whistleblower" allegedly "raised serious accounting improprieties at HP/Autonomy . . . with HP's GC Schultz" in late May 2012 does not move Plaintiff any closer to satisfying its pleading burden. (¶ 80.) The Complaint is critical of Ms. Whitman for not disclosing the "whistleblower" allegations in August 2012 when the Company disclosed that "its Software Segment results had worsened, and warned that it could record a goodwill impairment in that segment." (¶ 82.) Yet, Plaintiff fails to allege that HP had any obligation to disclose the fact that a "whistleblower" had made allegations or how the omission of that information rendered the negative disclosures about the Company's Software business misleading. Moreover, mere "[k]nowledge of the problem . . . is insufficient to infer that [a defendant] acted with the intent to defraud or with deliberate recklessness in not reporting the issue publicly." *In re NVIDIA Corp. Sec. Litig.*, No. C 08-04260 RS, 2011 WL 4831192, at *11 (N.D. Cal. Oct. 12, 2011). Thus, courts have regularly found that "taking time to investigate a situation prior to disclosing the situation to the investing public is not fraudulent." *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *22 (N.D. Cal. Aug. 10, 2012). In *In re Yahoo!*, this Court dismissed a securities fraud claim based on Yahoo's alleged delay in disclosing that its investment in a Chinese company had been compromised. Quoting from *Higginbotham*, this Court explained:

> Prudent managers conduct inquiries rather than jump the gun with half-formed stories as soon as a problem comes to their attention. [Defendants] might more plausibly have been accused of deceiving investors had managers called a press conference before completing the steps necessary to determine just what happened [at a foreign subsidiary].

> Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal.

*In re Yahoo*, 2012 WL 3282819, at *22. In *Higginbotham*, the Seventh Circuit affirmed the dismissal of a securities fraud claim premised on the allegations that a U.S. company and its CEO had been notified of accounting fraud at a Brazilian subsidiary in May 2004 but defrauded investors by not disclosing the issue until July 2004. 495 F.3d at 755, 758. The court rejected this theory, stating:

> The most one can say is that, sometime during May 2004, [the company] learned enough to lead a reasonable person to conduct an investigation. That is exactly what [the company] did during the next two months, demonstrating a pursuit of truth rather than reckless indifference to the truth. Knowing enough to launch an investigation ([the company] could not simply assume that the initial report of bad news was accurate) is a very great distance from convincing proof of intent to deceive.

*Id.* at 758. The same analysis applies here. It was lawful and prudent for HP to take the time to investigate whether the "whistleblower's" allegations were true and, if so, to determine the impact of the alleged improprieties prior to disclosing them to the market.

### 2. Numerous Allegations in the Complaint Negate Any Inference of Scienter

Plaintiff's own allegations undercut the very inference its asks this Court to draw. Most tellingly, Plaintiff does not allege that Ms. Whitman or any of the individually-named defendants benefitted financially or otherwise from the fraud allegedly perpetrated against HP's shareholders. Plaintiff fails to allege that Ms. Whitman, or any other defendant sold a single share of stock during the period in which HP's stock price was allegedly inflated (she did not). It is well settled that "a strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal." *In re ChinaCast Educ. Corp. Sec. Lit.*, No. CV 12–4621–JFW (PLAx), 2012 WL 6136746, at *8 (C.D. Cal. Dec. 7, 2012); *In re Wet Seal*, 518 F. Supp. 2d at 1177–78 ("the lack of *any* tangible, personal benefit here further weighs against . . . scienter") (internal citations omitted). As the Ninth Circuit explained, if an officer knew that the company's stock was inflated, he "probably would have bailed out of [his] substantial holdings" rather than incur the same "losses as . . . Plaintiffs themselves." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d

1407, 1424-25 (9th Cir. 1994).

Further, the Complaint's primary narrative regarding Ms. Whitman is entirely inconsistent with scienter. Ms. Whitman became CEO of HP after HP's acquisition of Autonomy had been announced and shortly before the transaction closed. (¶ 68.) The optimistic statements she made about the deal shortly after she became CEO (¶¶ 177, 179, 185) gave way in the Spring of 2012 to statements of increasing concern regarding, for example, "weakness in the portfolio" (¶ 189) and Autonomy's "disappointing results." (¶ 191.) Plaintiff alleges that by August 2012, the Company was warning of a possible impairment charge relating to Autonomy. (¶¶ 82, 204.) These increasingly negative disclosures negate any inference of scienter. *See Ironworkers*, 2010 WL 1287058, at *21 ("[A]ny inference of an intent to deceive is further undermined by the disclosures the company actually made."); *In re Remec Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1246-47 (S.D. Cal. 2010) (holding that disclosure of negative information and writing down goodwill from two years earlier negated inference of scienter.) Further, HP's investigation of the "whistleblower's" allegations relating to Autonomy's fraudulent financial records and the subsequent disclosure of the results of that investigation "demonstrate[s] a pursuit of truth rather than reckless indifference to the truth." *Higginbotham*, 495 F.3d at 758. The voluntary disclosure to investors of the very information that was allegedly fraudulently concealed from those investors quite simply is inconsistent with scienter. *Slayton*, 604 F.3d at 777 (holding that investigation and disclosing improprieties negates an inference of scienter); *see also Horizon Asset Mgmt. v. H&R Block, Inc.*, 580 F.3d 755, 763 (8th Cir. 2009).

**3.** **Plaintiff's Allegations Are Far More Consistent with an Inference that Ms. Whitman Acted in Good Faith**

Whether viewed individually or holistically, Plaintiff's allegations regarding Ms. Whitman are far more consistent with an innocent inference then a malicious one. Plaintiff would have the Court infer that Ms. Whitman intentionally defrauded HP's shareholders by supporting an acquisition of a company prior to her appointment as CEO based on financial reports that she knew were fraudulent and then delaying the disclosure of that fraud until she was well within her tenure as CEO. According to Plaintiff, she did this for no personal gain. And then, Ms. Whitman

caused the Company to disclose the alleged fraud. The Complaint also leaves unanswered the most basic question: Why would Ms. Whitman put her reputation at risk for no apparent purpose? Plaintiff's theory makes no sense and, thus, is inconsistent with a cogent inference of scienter.

The opposite inference – that Ms. Whitman and the other defendants acted in good faith – is, of course, far more compelling and cogent. The following five facts are critical in drawing any inference regarding Ms. Whitman's state of mind. First, Mr. Apotheker, not Ms. Whitman, identified Autonomy as an acquisition target and championed the deal internally at HP. Second, the Complaint fails to allege that Ms. Whitman sold any shares during the period that HP's stock price was allegedly inflated or otherwise personally benefitted from the alleged fraud. Third, while Ms. Whitman was CEO, the Company undertook a major investigation into the integrity of Autonomy's prior financial statements. Fourth, the Company, under Ms. Whitman's stewardship, publicly disclosed the results of that investigation. And fifth, the Company, again while Ms. Whitman was CEO, took an impairment charge of $8.8 billion in large part as a result of Autonomy's fraudulent representations. The only reasonable and cogent inference from these and the other allegations in the Complaint is that Ms. Whitman acted diligently and in good faith.

**B.      Plaintiff Fails to Plead with Particularity that Ms. Whitman Made Any Actionable Statements that Were False or Misleading When Made**

To plead falsity under the PSLRA, a plaintiff must identify with particularity (1) each statement alleged to have been misleading, (2) the reason or reasons why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, all facts on which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002), *abrogated on other grounds in South Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008). It must be clear from the complaint what statements a plaintiff alleges were false and why they were false. *Ronconi*, 253 F.3d at 429. A plaintiff must also explain why the disputed statement was untrue or misleading when made. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994). If a plaintiff alleges an omission of material fact, the "omission must be misleading; . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "Vague statements of opinion are not actionable under the federal securities laws because they are considered immaterial and discounted by the market as mere 'puffing.'" *Wenger*, 2 F. Supp. 2d at 1245.

The Complaint fails to adequately allege falsity under Rule 9 and the PSLRA with regard to any of the seven statements attributed to Ms. Whitman.

### 1.    The Majority of Ms. Whitman's Statements Are Inactionable

Four out of the seven statements attributed to Ms. Whitman are inactionable statements of corporate optimism.  (¶¶ 177, 179, 185, 191; *see* Appendix of Statements 1, 2, 3, and 5.[8])  Ms. Whitman's statements expressing support and excitement about the Autonomy deal and that the integration efforts were going well are classic examples of corporate optimism that investors ignore when making investment decisions.  (*See* Statement 1 ("I'm supportive of the actions that were announced on August 18 . . . and I think the strategy is right. . . ."); Statement 2 (stating she was "really excited" and "Software ought to be a big improvement with Autonomy"); and Statement 3 ("The Autonomy acquisition is going well.").)  As such, they cannot form the basis for a section 10(b) claim.  *See, e.g., In re Wet Seal*, 518 F. Supp. 2d at 1167-68 (finding that the statement "I am personally very excited" was inactionable "corporate puffery"; *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 232 (D.N.J. 2002) (holding "[we] are very excited about this deal" was an inactionable puffery); *In re Foundry Networks, Inc. Sec. Litig.*, No. C 00-4823 MMC, 2003 WL 22077729, at *15 (N.D. Cal. Aug. 29, 2003) (statements that company's business was "on track" were inactionable "vague statements of optimism") (citation and quotations omitted); *Kane v. Madge Networks N.V.*, No. C-96-20652, 2000 WL 33208116, at *8 n.9 (N.D. Cal. May 26, 2000) ("[S]tatements like 'things are going well' are not actionable [because] hindsight can always reveal problems that can make such optimism seem unfounded.").  Similarly, Ms. Whitman's positive opinions about the Autonomy product are also not actionable.  (Statement 5 ("Autonomy is a terrific product. . . . There is an enormous demand for

---

[8] For the Court's convenience, attached hereto is an Appendix of Statements that sets forth each of the seven statements the Complaint attributes to Ms. Whitman and alleges were false. Hereafter, citations to Ms. Whitman's statements will be to the statement numbers reflected in the Appendix of Statements.

Autonomy.").) *See, e.g., Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418, at *4 (N.D. Cal. June 8, 2011) (finding "very solid demand" and "solid demand" were inactionable puffery); *In re LeapFrog Enters., Inc. Sec. Lit.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (finding "consumer demand for our learning products is more vibrant than ever" was inactionable "soft statement") (citation and quotations omitted); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) ("we have strong demand metrics and good momentum" and "our demand indicators are strong, our product portfolio is robust" are inactionable puffery) (citation and quotations omitted).

Further, to the extent these comments constitute forward-looking statements (*see, e.g.,* Statements 2 and 5), they fall squarely within the PSLRA's "safe harbor" and are, therefore, non-actionable. Under the "safe harbor," a defendant cannot be held liable for a forward-looking statement that is accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially." 15 U.S.C. § 78u-5(c)(1)(A)(i); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010). The definition of "forward-looking statement" includes projections of revenues, income, earnings, a statement of future economic performance, or a statement of underlying assumption. 15 U.S.C. § 78u-5(i)(1)(A)-(D). Ms. Whitman's statements were accompanied by appropriate safe harbor language.[9]

### 2. Plaintiff Fails to Allege Particularized Facts to Support that the Alleged Misstatements Were False or Misleading When Made

Furthermore, Plaintiff has failed to allege specific facts demonstrating that any of Ms. Whitman's statements were false or misleading when made. <u>First</u>, Plaintiff claims that Ms. Whitman's statements of support for the Autonomy acquisition (Statements 1 and 2) were false because she "had already directed HP and its advisors to try to withdraw HP's offer to purchase Autonomy." (*See e.g.* ¶ 178.) However, Plaintiff alleges no particularized facts to support this claim. Plaintiff does not point to any confidential witness statements, contemporaneous documents, statements from Ms. Whitman, or any other actual *facts* to demonstrate that she was attempting to extricate HP from the Autonomy deal. (*See* ¶¶ 178 and 69-73.) Further, even if HP

---

[9] *See* Dec. ¶¶ 13-19 and Exs. 1, 3, 4, 6, 8.

had considered at some point "withdrawing" its offer, it is unclear how that would render statements regarding the acquisition made months later false and misleading. (*See, e.g.*, Statement 2 (Nov. 21, 2011, "Software ought to be a big improvement with Autonomy").)

Second, Plaintiff claims that four statements attributed to Ms. Whitman between March and August 2012 (Statements 4, 5, 6 and 7) repeatedly warning the market that Autonomy was not performing as expected were false and misleading because she failed to disclose that HP was supposedly trying to "unwind" Autonomy's improper accounting and that a "whistleblower" had come forward at the end of May raising questions about Autonomy's financial reporting. (*See* ¶¶ 80, 82, 186, 189, 193, 195, 200.)[10]  As an initial matter, Plaintiff has failed to allege how these statements misled the market.  Rule 10b-5 prohibits "only misleading and untrue statements, not statements that are incomplete." *Brody*, 280 F.3d at 1006; *see also In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) (explaining that companies may omit information that investors would consider "significant" so long as it does not make a statement misleading). In fact, here, as Plaintiff recognizes, the market understood from HP's statements that HP might have to take a goodwill impairment charge related to Autonomy.  (¶¶ 82, 202; *see also* Dec. Ex. 11.)  Ms. Whitman's repeated warnings that the business was not meeting expectations and that the margins and revenues were not what HP expected did not create an impression that differed materially from what existed at that time.  Moreover, it is important to note that these statements were not the type of unfounded hype typical of a fraudulent scheme, but rather reflected growing concern with the acquisition.  (*See, e.g.*, Statement 4 ("there was some weakness in the portfolio . . . license revenue didn't grow like we wanted it to"); Statement 5 ("Autonomy had a very disappointing license revenue quarter."); Statement 7 ("Autonomy still requires a great deal of attention and we've been aggressively working on that business.").)  The Complaint is simply

---

[10] The Complaint also alleges that Statement 3 ("the Automony transaction is going well") was false for the same reasons.  As indicated previously, this statement is inactionable corporate optimism.  Moreover, Plaintiff fails to allege with specificity any facts establishing that this statement was false when made or that Ms. Whitman believed it was false when she offered her opinion.

Cooley LLP
Attorneys At Law
San Francisco

devoid of any nonconclusory allegation that any one of these statements was false or misleading in any way.

Rather, Plaintiff seems to be asserting that the statements were false because they omitted that HP was "trying to unwind the improper accounting" or that a "whistleblower" had raised questions regarding Autonomy's financial reporting.  Plaintiff does not allege with particularity the specifics of any transaction that was actually "unwound" or really even explain what that means.  And, as discussed above, Ms. Whitman and HP were entitled to act responsibly and investigate the "whistleblower" allegations before disclosing to the public the existence of the "whistleblower" or the substance of the allegations.

### 3. HP's Financial Statements Were Not False and Misleading When Made

To the extent that Plaintiff seeks to hold Ms. Whitman personally liable for alleged false statements in HP's 10-Qs or 10-Ks or press releases that report HP's financial statements, those allegations fail because, as explained in HP's brief, Plaintiff has not adequately alleged that the statements were false at the time they were made.  For the reasons explained in the Company's brief, an impairment charge is different from a restatement and does not indicate in any way that the goodwill on HP's books was inflated or incorrect prior to the impairment charge.

### C. Plaintiff Fails to Adequately Plead a Rule 10b-5(a) or (c) Claim

Plaintiff fails to adequately allege a violation of Rule 10b-5(a) or (c).  Under Rule 10b-5(a) and (c), a person who uses a "device, scheme or artifice to defraud" or who engages in "any act practice or course of . . . fraud or deceit" may be liable for securities fraud.  17 C.F.R. § 240.10b–5; *WPP Luxembourg Gamma Three Sarl,* 655 F.3d at 1057 *cert. denied,* 132 S. Ct. 2713, 183 L. Ed. 2d 68 (U.S. 2012).  However, a rule 10b-5(a) or (c) claim cannot be based on alleged misrepresentations or omissions.  *Id.*, *see also In re Coinstar Sec. Litig.,* 2011 U.S. Dist. LEXIS 115794, at *32 (W.D. Wash. Oct. 6, 2011).  Plaintiff has alleged no conduct by Ms. Whitman besides the alleged misrepresentations and/or omissions.  As a result, the Rule 10b-5(a) and (c) claims must be dismissed.

### D. Plaintiff Fails to State a Claim that Ms. Whitman Violated Section 20(a)

To state a claim for control person liability, the Complaint must allege "(1) a primary violation of the federal securities laws and (2) that the alleged controlling person possessed the power to direct or cause the direction of the management and policies of the individual allegedly liable for the primary violation." *In re Splash Tech. Hold. Sec. Litig.,* 2000 U.S. Dist. LEXIS 15370, at *49-55 (N.D. Cal. Sept. 29, 2000)  Plaintiff's failure to plead a primary violation of Section 10(b) requires the dismissal of this claim.  To the extent that the court finds that the Complaint states a claim for violation of section 10(b) against any other defendants, Plaintiff has failed to plead facts sufficient to show that Ms. Whitman is a control person under section 20(a). Plaintiff fails to allege any facts indicating that Ms. Whitman exercised "actual power or control" over any of the other defendants. *See Red River Res., Inc. v. Mariner Sys.*, CV 11-02589-PHX-FJM, 2012 WL 2507517, at *8-9 (D. Ariz. June 29, 2012).  Rather, the Complaint offers only boilerplate allegations of control based on her status as CEO of HP.  (¶¶ 119, 120.)  Such boilerplate allegations are, however, insufficient to establish control person liability. *Anderson v. McGrath*, No. CV-11-01175-PHX-DGC, 2013 U.S. Dist. LEXIS 42575, at *27-28, (D. Ariz. Mar. 26, 2013) *citing SEC v. Todd,* 642 F.3d 1207, 1223-1224 (9th Cir. 2011).  As a result, Plaintiff's section 20(a) claim against Ms. Whitman should be dismissed.

## IV. CONCLUSION

The Complaint falls well short of the pleading requirements for securities fraud. Accordingly, the Court should dismiss the Claims against Ms. Whitman with prejudice.

Dated: July 2, 2013                                    COOLEY LLP


                                                      */s/ John C. Dwyer*
                                                      John C. Dwyer (136533)
                                                      Attorneys for Defendant
                                                      MARGARET C. WHITMAN

1141642 /HN

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEFENDANT WHITMAN'S MOTION TO DISMISS
C-12-5980 CRB