1  DANIEL H. BOOKIN (S.B. #78996)
   dbookin@omm.com
2  LISA CHEN (S.B. #234681)
   lisachen@omm.com
3  DIANA C. ROGOSA (S.B. #287967)
   drogosa@omm.com
4  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
5  San Francisco, California 94111-3823
   Telephone: (415) 984-8700
6  Facsimile: (415) 984-8701

7  MATTHEW W. CLOSE (S.B. #188570)
   mclose@omm.com
8  O'MELVENY & MYERS LLP
   400 South Hope Street
9  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
10 Facsimile: (213) 430-6407

11 Attorneys for Defendant
   Shane V. Robison

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION, | Master File No. C-12-5980 CRB |
| This Document Relates To: All Actions | **CLASS ACTION** |
| | **DEFENDANT SHANE ROBISON'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: November 8, 2013<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 6, 17th Fl.<br>Judge: Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. iv

STATEMENT OF ISSUES .................................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND AND SUMMARY OF ALLEGATIONS ........................................ 2

ARGUMENT ......................................................................................................................... 3

    I.    THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE SCIENTER WITH RESPECT TO SHANE ROBISON ............................................................... 3

        A.    Plaintiff Fails to Allege Facts That Would Establish Scienter ................... 3

        B.    The Complaint's Allegations and Judicially Noticeable Facts Support the Inference That Mr. Robison Lacked Scienter ........................ 6

        C.    Mr. Robison Is Not Liable for Statements Made by Other Defendants ................................................................................................ 8

    II.    THE "CONTROL PERSON" CLAIM AGAINST MR. ROBISON FAILS .......... 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Applestein v. Medivation, Inc.*,
    861 F. Supp. 2d 1030 (N.D. Cal. 2012) ........................................................................... 6

*Berry v. Valence Tech., Inc.*,
    175 F.3d 699 (9th Cir. 1999) ........................................................................................... 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................... 4

*Durgin v. Mon*,
    659 F. Supp. 2d 1240 (S.D. Fla. 2009) ............................................................................ 6

*Griffin v. McNiff*,
    744 F. Supp. 1237 (S.D.N.Y. 1990) ................................................................................ 6

*Hockey v. Medhekar*,
    No. C-96-0815, 1997 WL 203704 (N.D. Cal. Apr. 15, 1997) ......................................... 4

*In re Downey Sec. Litig.*,
    CV 08-3261-JFN (Rzx), 2009 U.S. Dist. LEXIS 25007 (C.D. Cal. Mar. 18, 2009) ........ 6

*In re Ramp Networks, Inc. Sec. Litig.*,
    201 F. Supp. 2d 1051 (N.D. Cal. 2002) ........................................................................... 8

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ........................................................................................... 6

*In re Silicon Storage Tech. Inc.*,
    No. C 05-0295 PJH, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ................................. 3

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) .................................................................................................... 8

*McCasland v. FormFactor Inc.*,
    No. C07-5545, 2009 WL 2086168 (N.D. Cal. July 14, 2009) ......................................... 7

*McIntire v. China MediaExpress Holdings, Inc.*, --- F. Supp. 2d ---,
    No. 11 Civ. 0804 VM, 2013 WL 752954 (S.D.N.Y. Feb. 28, 2013) ............................... 6

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................... 8

*Neumann v. Hewlett-Packard Co.*,
    No. 5:13-cv-00284-EJD (N.D. Cal. Jan. 18, 2013) .......................................................... 1

*Nicolow v. Hewlett-Packard Co.*,
    No. 3:12-cv-05980-CRB (N.D. Cal. Nov. 26, 2012) ....................................................... 1

*Pokoik v. Hewlett-Packard Co.*,
  No. 3:12-cv-06074-CRB (N.D. Cal. Nov. 30, 2012) .............................................................. 1

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  No. 10-3451, 2012 WL 1868874 (N.D. Cal. May 22, 2012) ................................................. 4

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ................................................................................................. 3

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) ................................................................................................ 5, 6

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
  No. 11 Civ. 2327(GBD), 2013 WL 1342529 (S.D.N.Y. Mar. 29, 2013) ............................... 5

**STATUTES**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 & 78u-5 ..................... iv, 4

Securities and Exchange Act of 1934, § 20(a), 15 U.S.C. § 78t(a) ............................................... 8

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ iv

Fed. R. Civ. P. 9(b) ...................................................................................................................... iv

# NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFF AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on November 8, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 6, 17th Floor, of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Charles R. Breyer presiding, Defendant Shane V. Robison will and hereby does move this Court for an order dismissing Plaintiff's Consolidated Complaint for Violations of the Federal Securities Laws, filed on May 3, 2012, without leave to amend pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

PLEASE TAKE FURTHER NOTICE that Defendant Robison will and hereby does join in and adopt the concurrently filed Motions to Dismiss and Requests for Judicial Notice of Defendant Hewlett-Packard Company ("HP") and the other present and former HP executive and director defendants (collectively, "HP Defendants").

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Request for Judicial Notice and supporting Declaration of Lisa Chen; the HP Defendants' Motions to Dismiss and Requests for Judicial Notice, any Reply Memoranda, the pleadings and files in this action, and such arguments and authorities as may be presented at or before the hearing.

## STATEMENT OF ISSUES

1. Whether the complaint pleads sufficient facts to give rise to a strong inference that Mr. Robison acted with scienter.

2. Whether the complaint pleads sufficient facts to state a claim for control person liability against Mr. Robison.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The complaint against Shane Robison should be dismissed because it fails to allege sufficient facts to support the claim that Mr. Robison acted with scienter. The other HP Defendants persuasively point out the nonsensical premise of Plaintiff's theory that HP spent $11 billion to acquire Autonomy, knowing that its audited financial statements were false.

The case for dismissing the complaint against Shane Robison is particularly strong. Mr. Robison, who served as Chief Strategy and Technology Officer, left HP on November 1, 2011—before the vast majority of the statements challenged in the complaint and before HP had the opportunity to gain firsthand knowledge as the owner of Autonomy's business. Mr. Robison did not sell HP stock and never had any role in accounting, finance, or financial disclosure issues. And all of the SEC filings the complaint alleges to be misleading post-date Mr. Robison's departure from HP.

None of the original securities complaints named Mr. Robison as a defendant, and the current 100-page, 241-paragraph complaint contains only the scantest of allegations against him. Of the more than 50 allegedly false statements included in the complaint, Plaintiff challenges only two statements that Mr. Robison made at a technology conference on September 13, 2011, during a discussion about how HP hoped to benefit from its planned acquisition of Autonomy. In his statements, Mr. Robison did no more than refer to Autonomy's own publicly announced financial results and growth rates.[1] If Mr. Robison's statements were incorrect, it was only because he repeated statements previously made by Autonomy in its public financial disclosures. The sole allegation regarding Mr. Robison's scienter—that he allegedly knew or was severely reckless in not knowing that Autonomy inflated its IDOL OEM revenue—is wholly conclusory and unsupported by any facts.

---

[1] Plaintiff did not just recently learn of the September 13, 2011 conference. The original securities complaints all allege that another defendant made allegedly false statements at the conference, but do not allege that any statements by Mr. Robison were misleading—or even mention his attendance. *See* Compl. ¶ 29, *Nicolow v. Hewlett-Packard Co.*, No. 3:12-cv-05980-CRB (N.D. Cal. Nov. 26, 2012); Compl. ¶ 31, *Pokoik v. Hewlett-Packard Co.*, No. 3:12-cv-06074-CRB (N.D. Cal. Nov. 30, 2012); Compl. ¶¶ 35–36, 73–74, *Neumann v. Hewlett-Packard Co.*, No. 5:13-cv-00284-EJD (N.D. Cal. Jan. 18, 2013).

The inference of scienter is neither plausible nor reasonable, and it does not come close to meeting the requirement that the inference be cogent and at least as compelling as any opposing inference of nonfraudulent intent. Mr. Robison is not an accountant or auditor. He was not required to eschew Deloitte & Touche's audit certifications of Autonomy's financial results and the numerous public analysts who endorsed Autonomy's results, even if a few critics had publicly questioned Autonomy's business for years before the acquisition. The complaint presents no facts showing that Mr. Robison, HP's internal due diligence team, or HP's best-in-class financial, accounting and legal advisors retained to work on the transaction learned of the alleged accounting fraud at Autonomy. Consolidated Compl. ("CC") ¶¶ 84, 88 & 141. Mr. Robison's failure to uncover the alleged accounting fraud does not create a compelling inference that he acted with scienter when he repeated Autonomy's published financial metrics in discussing the rationale for the acquisition. The far more compelling and cogent inference is that Mr. Robison honestly believed in the reliability of the audited financial results of Autonomy, one of the United Kingdom's most widely followed software companies.

## FACTUAL BACKGROUND AND SUMMARY OF ALLEGATIONS

The HP Motion describes the relevant factual background and the core allegations in the complaint. The complaint challenges only two statements that Mr. Robison made at a September 13, 2011 Deutsche Bank Technology Conference regarding Autonomy's IDOL growth rate and IDOL OEM revenue. CC ¶¶ 171–75. At the conference, Mr. Robison and Mr. Apotheker participated in a panel discussion. *Id.* ¶ 171. Among other topics, they discussed the hoped-for benefits of the planned Autonomy acquisition. Ex. 1 at 2, 5–7, 11–12.[2]

The Autonomy acquisition closed on October 3, 2011. CC ¶ 179. Mr. Robison departed from HP less than a month thereafter, and was not involved in HP's efforts to integrate Autonomy, HP's consolidation of Autonomy's financial results, or any HP statements or disclosures following the acquisition.

---

[2] "Ex. __" refers to the Exhibits attached to the Declaration of Lisa Chen in Support of Motion to Dismiss filed concurrently herewith.

# ARGUMENT

## I. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE SCIENTER WITH RESPECT TO SHANE ROBISON

### A. Plaintiff Fails to Allege Facts That Would Establish Scienter

The complaint alleges that Mr. Robison's remarks at the September 13, 2011 conference that "the right way to think about Autonomy's growth is to look at the organic growth for the IDOL engine" and that Autonomy's "IDOL growth year on year is about 17%" were false and misleading. *Id.* ¶¶ 172–73. Plaintiff's basis for asserting that Mr. Robison made these statements intending to defraud is that a few analyst reports, going back as far as 2007, had described Autonomy's organic growth rates as "unusual." *Id.* ¶ 173.

The complaint's descriptions of a handful of negative and largely stale analyst reports are inadequate to establish scienter.[3] The complaint describes more than thirty-four analyst or media reports that predate September 2011. *See id.* ¶¶ 17–24, 46, 49, 93–95. Five of those reports question Autonomy's organic growth rate. *See id.* ¶¶ 18, 21, 22 & 94. Most of those criticisms were several years old. They reflected a distinct minority view in the analyst and investment community. Financial and market regulators were not moved to act by the criticisms. And Deloitte & Touche was aware of the questions when it performed its annual audits. *See id.* ¶ 39.

Moreover, the complaint is silent as to which analyst reports, if any, Mr. Robison was aware, the dates when he supposedly learned of them, and what information in those reports should have caused Mr. Robison to know that Autonomy's recently published growth rates were false or misleading. Lacking such specifics, the complaint does not come close to creating the required strong inference of scienter. *See In re Silicon Storage Tech. Inc.*, No. C 05-0295 PJH, 2006 WL 648683, at *17 (N.D. Cal. Mar. 10, 2006) (rejecting scienter allegations based on negative market trends reported by the media where plaintiffs failed to "plead particularized facts showing that defendants did in fact know these details of industry prices, news reports, and financial analysts' reports"); *accord Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001)

---

[3] The HP Motion sets forth the governing legal standards, including the elements of the claims and the heightened pleading standards that apply under the PSLRA, and will not be repeated here.

(rejecting assertion of scienter absent "documents or facts suggesting that the defendants knew" their statements were false).

Plaintiff also challenges Mr. Robison's comments that the IDOL OEM platform was "growing nicely and will continue," based on Autonomy's second quarter earnings announcement that disclosed IDOL OEM revenue growing at a 27% rate during the first half of 2011. CC ¶¶ 174–75. Mr. Robison's comment that revenue is "growing nicely" is a generalized statement of corporate optimism that courts recognize is not actionable as securities fraud.[4] Mr. Robison's generalized, forward-looking projection that the IDOL OEM platform "will continue" to grow also is not actionable.[5]

The complaint relies on hindsight to assert, without any supporting facts, that Mr. Robison "knew, or was severely reckless in not knowing, that Autonomy inflated its IDOL OEM revenue." *Id.* ¶ 175. This allegation does not establish a cogent and compelling inference that Mr. Robison knew, or was deliberately reckless in failing to know, the secret about Autonomy's financial results—a secret that Autonomy's auditors, regulators, and HP's professional accountants, financial advisors and lawyers did not uncover.

---

[4] "[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing'" are not actionable under the federal securities laws. *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1063–64 (N.D. Cal. 2012). *See* cases cited in Section II.A of HP Motion.

[5] The challenged statements made by Mr. Robison are forward-looking in nature, accompanied by meaningful cautionary language and therefore protected under the PSLRA's safe harbor. 15 U.S.C. § 78u-5(c)(1)(A)(i). *See, e.g.*, Ex. 1 at 1 (cautionary safe harbor language given at September 13 conference); Ex. 11 at 8–9, 29–30 (HP's SEC filings containing cautionary disclosures about Autonomy acquisition). Mr. Robison's remarks were part of a forward-looking discussion of whether the Autonomy acquisition would prove beneficial to HP in the future. An analyst asked how HP investors could "ever earn a return" on the planned acquisition, given that Autonomy's acquisition price "seemed to be anticipating explosive growth from Autonomy going forward." CC ¶ 172. The Autonomy figures cited by Mr. Robison were to explain why HP believed that the acquisition would be profitable to HP in the future, and are thus forward-looking as factors underlying the projection. *See Hockey v. Medhekar*, No. C-96-0815, 1997 WL 203704, at *5 (N.D. Cal. Apr. 15, 1997) (holding past or present statements relating to revenue results and product demand to be forward-looking when presented as basis for company's prediction of increased earnings); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-3451, 2012 WL 1868874, at *10–11 (N.D. Cal. May 22, 2012) (holding statement that defendants lacked indicators of longer sales lead times "at the present time" to be forward-looking when statement was in response to analyst question about "longer lead times . . . *going forward*") (emphasis in original).

The complaint, in contrast, does establish a strong inference that Mr. Robison honestly believed in the reliability of Autonomy's audited financial results. Autonomy's financial releases contained the same figures and corporate optimism discussed by Mr. Robison and were transmitted to the market prior to the September 13 conference. Autonomy's audited FY 2010 annual report disclosed a 17% organic IDOL growth and also "[s]trong growth in core IDOL business." Ex. 2 at i & 16. This is the same figure Mr. Robison cited at the conference and which is challenged in the complaint. *See* CC ¶ 172. For the first quarter of 2011, Autonomy similarly reported "[s]trong year-on-year growth in core IDOL business," and "continued strength in our IDOL OEM business." Ex. 3 at 1–2. Autonomy's July 27, 2011 press release announcing results for the first six months of 2011 also reported an organic growth rate of 17% and IDOL OEM growth of 27%. CC ¶ 51 & Ex. 4 at 2 & 5–6. Autonomy's published financial results explain that organic IDOL growth is the "most meaningful performance metric for understanding the momentum within the business." Ex. 2 at 16; Ex. 3 at 4; Ex. 4 at 6.

Mr. Robison referred to these disclosures by Autonomy when he explained the expected future benefits HP anticipated from the transaction. *See* CC ¶¶ 172–74. Plaintiff does not plead any facts sufficient to give rise to an inference that Mr. Robison knew that Autonomy's published financial figures were false. *See S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 111–13 (2d Cir. 2009) (no scienter where defendant's allegedly misleading statements merely repeat another company's performance and financial history); *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, No. 11 Civ. 2327(GBD), 2013 WL 1342529, at *8–9 (S.D.N.Y. Mar. 29, 2013) (no scienter for accurately reporting information provided by third parties unless defendants knew the underlying information was false).

The complaint alleges that the due diligence team reported to Mr. Robison and that Mr. Robison had access to information concerning Autonomy's accounting improprieties because of the "red flags" raised during the due diligence process. CC ¶¶ 38 & 42. But the complaint does not allege what "red flags" came to Mr. Robison's attention through the due diligence. The only purported red flag prior to Mr. Robison's statements at the conference was Deloitte's disclosure of allegations by Whistleblower No. 1 of "improper accounting" at Autonomy, which

ROBISON'S NOTICE AND MOTION
TO DISMISS CONSOL. COMPL.;
MEM. OF P. & A. – C-12-5980 CRB

Deloitte also said were unsubstantiated after a subsequent review. *Id.* ¶ 39. These disclosures were allegedly made to KPMG, the accounting firm HP retained to assist it on due diligence. *Id.* The complaint does not allege that Mr. Robison specifically had knowledge of these whistleblower allegations or Deloitte's disclosures to KPMG. Even if these facts had been alleged, Plaintiff cannot demonstrate that it would have been deliberately reckless for Mr. Robison (and KPMG) to rely on Deloitte's conclusion that its investigation found the allegations to be unsubstantiated.

Ultimately, the complaint offers nothing more than hindsight, second-guessing of the judgments made by HP's due diligence professionals. HP's decision not to undertake a full-blown forensic examination during due diligence of an audited public company does not provide a compelling inference of scienter. On the contrary, "allegations that a defendant 'would have learned the truth' if it had performed sufficient due diligence have been repeatedly rejected as insufficient to allege knowledge or conscious recklessness." *McIntire v. China MediaExpress Holdings, Inc.*, --- F. Supp. 2d ---, No. 11 Civ. 0804 VM, 2013 WL 752954, at *17 (S.D.N.Y. Feb. 28, 2013); *accord S. Cherry St.*, 573 F.3d at 111–13; *Durgin v. Mon*, 659 F. Supp. 2d 1240, 1255 (S.D. Fla. 2009); *Griffin v. McNiff*, 744 F. Supp. 1237, 1251 (S.D.N.Y. 1990).

### B. The Complaint's Allegations and Judicially Noticeable Facts Support the Inference That Mr. Robison Lacked Scienter

Mr. Robison did not sell any HP stock during or anytime near the alleged Class Period, although he owned more than 80,000 shares. It makes no sense that Mr. Robison, himself a substantial HP shareholder, would engage in a fraudulent scheme to inflate HP's stock price and yet fail to sell any of his shares at artificially inflated prices. If Mr. Robison was acting wrongly as the complaint alleges, he surely would have sold stock between the time he departed HP and when the Company disclosed the problems at Autonomy a year later. Courts recognize that even "[a] strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal." *In re Downey Sec. Litig.*, CV 08-3261-JFN (Rzx), 2009 U.S. Dist. LEXIS 25007, at *40 (C.D. Cal. Mar. 18, 2009); *accord In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1042–43

(N.D. Cal. 2012); *McCasland v. FormFactor Inc.*, No. C07-5545, 2009 WL 2086168, at *7–8 (N.D. Cal. July 14, 2009).

Although the complaint emphasizes negative comments from a few doubting analysts and uses these comments to suggest deliberate recklessness, it omits that multiple other analysts maintained buy ratings for Autonomy and extolled its strong operating metrics. The negative analyst reports are more balanced than the selective quotes from the complaint suggest. *See* Section I.A.3 of the HP Motion. As the January 5, 2010 *Financial Times* article cited in the complaint explained, the followers of Autonomy split into two camps—a "majority of bulls" and a "smaller but highly vocal camp of bears." *See* CC ¶ 21; Ex. 5 at 1. In contrast to the "bears" quoted extensively by the complaint, Jefferies stated, "The relatively positive tone of Q&A in the analyst call confirms that suspicions with respect to accounting issues have faded. The scene is set for the premium organic growth rate to unfold into a premium rating, which we believe to be entirely warranted." Ex. 6 at 1. Jefferies emphasized Autonomy's "strong organic growth metrics" and remained "highly positive on the prospects for the OEM business given the high level of market penetration and consistent growth in agreements." *Id*.

Panmure Gordon & Co. also praised Autonomy for outperforming its competitors and specifically noted OEM growth of 27%. Ex. 7 at 1. Natixis reiterated its buy rating given the positive momentum trigged, in part, by "strong client demand." Ex. 8 at 1. UBS Investment Research similarly observed that "[c]ustomer commit rises strongly" and that OEM sales growth for the quarter was "strong." Ex. 9 at 1. Even Numis Securities Limited, a purported "bear" whose earlier analyst reports are featured prominently in the complaint, upgraded Autonomy on July 28, 2011 and praised the company for its "current and structural growth potential." *See* CC ¶¶ 93–95 (quoting prior Numis reports from April 2010, November 2010, February 2011 and May 2011); Ex. 10 at 1. Despite its earlier concerns detailed in the complaint, Numis stated, "[i]mportantly, we see no material issues in the results to worry the more cynical analysts." Ex. 10 at 1. These analyst reports rebut Plaintiff's assertion that Mr. Robison knew that Autonomy's financials were inaccurate based on reports from securities analysts.

1    Any suggestion of deliberate recklessness is further rebutted by the fact that HP retained leading financial advisors, accountants, and lawyers to assist in its due diligence efforts. HP took these steps even though it was buying a closely followed public company that repeatedly received clean audit certifications from Deloitte & Touche notwithstanding accounting questions that a few had raised. Taken as a whole, the facts and allegations strongly rebut Plaintiff's scienter assertion and demonstrate that the only cogent and compelling inference is that Mr. Robison honestly believed that Autonomy's financial statements were reliable when he spoke about the transaction on September 13.

### C. Mr. Robison Is Not Liable for Statements Made by Other Defendants

To the extent that Plaintiff seeks to hold Mr. Robison liable for statements allegedly made by HP or other individual Defendants, those claims should be dismissed. For example, all of the challenged SEC filings post-date Mr. Robison's departure from HP. As the Supreme Court held in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), Rule 10b-5's private right of action does not expand beyond the maker of the purported false statement—"the person . . . with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302–03. This is particularly so after Mr. Robison stopped working at the Company. *See Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706–07 (9th Cir. 1999); *In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1078–79 (N.D. Cal. 2002).

## II. THE "CONTROL PERSON" CLAIM AGAINST MR. ROBISON FAILS

The claim that Mr. Robison is liable under Section 20(a) as a "control person" of HP fails for two reasons. First, as set forth in the HP Motion and incorporated herein, the complaint fails to plead a primary violation of the federal securities laws by HP. Second, Plaintiff does not plead any facts to show that Mr. Robison exercised actual control or power over HP or any of the individual Defendants who made allegedly false statements. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1193–94 (C.D. Cal. 2007).

## CONCLUSION

For the foregoing reasons, the claims against Mr. Robison should be dismissed without leave to amend.

Dated: July 2, 2013          O'MELVENY & MYERS LLP

By: */s/ Daniel H. Bookin*
Daniel H. Bookin

Attorneys for Defendant
Shane V. Robison