1  DANIEL H. BOOKIN (S.B. #78996)
   dbookin@omm.com
2  LISA CHEN (S.B. #234681)
   lisachen@omm.com
3  DIANA C. ROGOSA (S.B. #287967)
   drogosa@omm.com
4  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
5  San Francisco, California 94111-3823
   Telephone:    (415) 984-8700
6  Facsimile:    (415) 984-8701

7  MATTHEW W. CLOSE (S.B. #188570)
   mclose@omm.com
8  O'MELVENY & MYERS LLP
   400 South Hope Street
9  Los Angeles, CA 90071-2899
   Telephone:    (213) 430-6000
10 Facsimile:    (213) 430-6407

11 Attorneys for Defendant
   Shane V. Robison

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | Master File No. C-12-5980 CRB<br><br>**CLASS ACTION**<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT SHANE ROBISON'S MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date:      November 8, 2013<br>Time:      10:00 a.m.<br>Courtroom: Courtroom 6, 17th Fl.<br>Judge:     Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES ...................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

      I.     THE OPPOSITION CONFIRMS THAT THERE IS NO COGENT AND
            COMPELLING BASIS FOR A STRONG INFERENCE OF SCIENTER ............ 1

      II.    PLAINTIFF'S ARGUMENTS ON CONTROL-PERSON LIABILITY
            FAIL ................................................................................................................... 4

CONCLUSION ............................................................................................................................ 5

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re ChinaCast Educ. Corp. Sec. Litig.*, No. CV 12-4621-JFW (PLAx), 2012 WL 6136746 (C.D. Cal. Dec. 7, 2012) .................................................................................. 4

*In re Cooper Sec. Litig.*,
  691 F. Supp. 2d 1105 (C.D. Cal. 2010) ........................................................................ 5

*In re Diamond Foods, Inc.*,
  No. C 11-05386, 2012 U.S. Dist. LEXIS 170704 (N.D. Cal. Nov. 30, 2012) ........................... 3

*In re LeapFrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ........................................................................ 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................... 2, 5

*In re Verifone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ........................................................................................ 2

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ...................................................................................... 3

*N.Y.C. Emps.' Ret. Sys. v. Barry*,
  616 F. Supp. 2d 987 (N.D. Cal. 2009) .......................................................................... 5

*Ramirez v. Ghilotti Bros.*,
  __ F. Supp. 2d __, No. C 12-04590, 2013 WL 1786636 (N.D. Cal. Apr. 25, 2013) ................. 2

*Reiger v. PwC, LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd, DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ............................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................... 4

**STATEMENT OF ISSUES**

1. Whether the complaint pleads sufficient facts to give rise to a strong inference that Mr. Robison acted with scienter.

2. Whether the complaint pleads sufficient facts to state a claim for control person liability against Mr. Robison.

**INTRODUCTION**

Plaintiff's claim for primary liability against Shane Robison is based on one statement he made before Hewlett-Packard Company's ("HP") acquisition closed that accurately reflected Autonomy's published financial results. Even if subsequently discovered accounting irregularities render that statement incorrect in hindsight, the complaint alleges no basis to conclude that Mr. Robison acted with scienter—let alone establishes the required cogent and compelling basis for a strong inference of scienter. The small number of bearish analyst reports and blog postings relied on by plaintiff are not sufficient to support a claim that Mr. Robison was deliberately reckless when he relied on Autonomy's published financial results that had been reviewed by Deloitte & Touche as well as by HP's advisors at KPMG, Perella Weinberg, and Barclays, and were widely available in the market. The case law applying the PSLRA's scienter requirement confirms that plaintiff's factual allegations are grossly insufficient to allege deliberate recklessness by Mr. Robison. Plaintiff's control-person claim against Mr. Robison is equally without merit.

Mr. Robison never made a statement about HP's due diligence process on Autonomy, never participated in accounting, finance, or disclosure issues at HP, never signed or participated in the preparation of the post-acquisition disclosures that form the bulk of this case, and did not sell any of his HP stock after the Autonomy acquisition.[1] The Court should dismiss Mr. Robison from this case with prejudice.

**I. THE OPPOSITION CONFIRMS THAT THERE IS NO COGENT AND COMPELLING BASIS FOR A STRONG INFERENCE OF SCIENTER**

Plaintiff's opposition brief seeks to hold Mr. Robison liable for a single statement, made in the context of a September 2011 investor conference that addressed a broad range of issues, including HP's decision to acquire Autonomy:

---

[1] By lumping together various defendants, the opposition brief incorrectly implies that Mr. Robison made statements about HP's due diligence. Lead Pl.'s Omnibus Mem. of Law in Opp'n to Defs.' Mots. to Dismiss (Dkt. No. 168) at iv–v, 25–26, 29–30. This implication is belied by both the factual allegations in the complaint and the transcript of the conference where Mr. Robison spoke, which shows that Mr. Robison made no statements about HP's due diligence. Decl. of L. Chen in Supp. of Def. Robison's Mot. to Dismiss Consol. Cmpl. (Dkt. No. 143) Ex. 1.

> There's no data that indicates the core OEM franchise is deteriorating. If you look
> at the growth for the IDOL platform, it's growing nicely and will continue.

Consol. Cmpl. for Violation of the Fed. Sec. Laws (Dkt. No. 100) ¶ 174; *see also* Dkt. No. 143-1 at 6–7 (full text of exchange between Mr. Robison and questioner).[2]

Plaintiff does not dispute that Mr. Robison was relying on and accurately describing the financial results as reported in Autonomy's financial releases. In fact, plaintiff alleges that Mr. Robison "incorporated" Autonomy's figures, Dkt. No. 100 ¶ 173, and cites the published Autonomy figures that justified Mr. Robison's statement, *id.* ¶ 174 (alleging that Mr. Robison was relaying the 27% growth figure reported by Autonomy). Plaintiff does not dispute that Deloitte audited Autonomy's year-end financial results or that those same figures and interim results were reviewed by HP's advisors at KPMG, Perella Weinberg, and Barclays, and widely available in the market. Moreover, the vast majority of market analysts were positive about Autonomy and accepted Autonomy's financial results as accurate. As an article cited by the complaint explains, Autonomy analysts comprised a "majority of bulls" and a "smaller but highly vocal camp of bears." *See* Dkt. No. 100 ¶ 21; Dkt. No. 143-6 at 1; *see also* HP's Mot. to Dismiss Consol. Cmpl. (Dkt. No. 133) at 12; Reply Mem. in Further Supp. of HP's Mot. to Dismiss ("HP Reply") at 4-5.

These factual allegations cannot give rise to a compelling and cogent inference of scienter. Although a corporate officer in theory can be liable for "recapitulat[ing] . . . false financial data," the plaintiff must plead "facts suggesting that [the officer] knew or was deliberately reckless to the truth prior to" making the statement. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1276 (N.D. Cal. 2000). Deliberate recklessness requires that falsity be "so obvious that the actor must have been aware of" the falsity of the statement. *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) (citation omitted). In the face of actual reported

---

[2] Plaintiff's opposition brief nowhere refers to Mr. Robison's statement quoted in paragraph 172 of the complaint. Mr. Robison has already demonstrated why that statement is not actionable because scienter is not alleged. Def. Robison's Notice of Mot. and Mot. to Dismiss Consol. Cmpl.; Mem. of P. & A. in Supp. Thereof (Dkt. No. 142) at 3–6. By failing to respond, plaintiff concedes the issue. *See, e.g.*, *Ramirez v. Ghilotti Bros.*, __ F. Supp. 2d __, No. C 12-04590, 2013 WL 1786636, at *11 & n.7 (N.D. Cal. Apr. 25, 2013) (Breyer, J.).

DEF. ROBISON'S REPLY ISO MOTION TO
DISMISS CONSOLIDATED COMPLAINT
NO. C-12-5980 CRB

financial data, courts have required that the "red flags" be "in your face facts, that cry out, how could defendants not have known that the financial statements were false." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1103 (9th Cir. 2011) (quotations and brackets omitted). A complaint must point to specific and detailed facts—such as "letters, notes, memos, telephone calls, or conversations"—showing a defendant's awareness of accounting fraud. *Reiger v. PwC, LLP*, 117 F. Supp. 2d 1003, 1012 (S.D. Cal. 2000), *aff'd, DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).[3]

A few analyst reports and blogs are not "in your face facts" that "cry out" that Mr. Robison must have known of accounting fraud at Autonomy. Dkt. No. 168 at 10–11 (citing Dkt. No. 100 ¶¶ 24, 61, 89, 93–95). Plaintiff does not even allege that Mr. Robison reviewed the particular negative analyst reports cited in the complaint. Dkt. No. 142 at 3; HP Reply at 5–6. In addition, many of the analysts relied on by plaintiff are unnamed, some were reported ***after*** Mr. Robison's statement at the conference, and one analyst relied on in the complaint actually changed course and opined favorably on Autonomy before the conference.[4] No court has held that the existence of some analysts and blogs with bearish views, even if they call into question present financial results, is sufficient to give rise to a strong inference of scienter, particularly in the face of the published and audited financial results of a company and a majority of positive

---

[3] Plaintiff cites *In re Diamond Foods, Inc.*, No. C 11-05386, 2012 U.S. Dist. LEXIS 170704, at *35–*37 (N.D. Cal. Nov. 30, 2012), for the proposition that participation in a conference call, standing alone, demonstrates that a defendant knew enough about the business to know his statement was false. Dkt. No. 168 at 26. That is not what the district court held. *Diamond* involved numerous allegations from well-placed witnesses describing the CFO's and President's personal participation in the accounting schemes at their company. 2012 U.S. Dist. LEXIS 170704, at *26–*36. It was those detailed witness allegations, not merely the defendants' participation in analyst calls, that the district court emphasized when it found the allegations sufficient to show "that defendants were actually aware of the data that was the subject of the allegedly false statements." *Id.* at *27, *26–*36. The scienter allegations against Mr. Robison are dramatically different from and weaker than the allegations in *Diamond*.

[4] *See* Dkt. No. 100 ¶ 24 (citing unnamed analysts who in 2010 concluded that IDOL was becoming increasingly outdated and losing market share, but identifying or quoting none); *id.* ¶ 89 (citing November 2012 statement that after the acquisition was announced "a number[ ] of blogs that came to the fore about potential issues at Autonomy" without citing or quoting any, or stating whether the blog posts were made before Mr. Robison's statement); *id.* ¶ 94 (citing July 2010 article, with no author, alleging some inflation of revenue growth); *compare id.* ¶¶ 93, 95 (citing bearish reports of Numis), *with* Dkt. No. 142 at 7; Dkt. No. 143-11 at 1 (bullish report from Numis, after its prior bearish forecasts, but before Mr. Robison's statement).

forecasts and analyses. The heightened pleading standards in the PSLRA would be eviscerated if a compelling inference of scienter could be shown by citing a smattering of bearish analysts and blogs.[5]

The Court "must consider plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). The only plausible inference is that Mr. Robison in good faith relied on Autonomy's audited figures and believed them to be fair and accurate as he made the challenged statement summarizing Autonomy's financial results. His belief and judgment were in line with the many market analysts who also believed Autonomy's reported results, as well as HP's outside experts on the transaction. Plaintiff offers absolutely no motive for Mr. Robison to deceive, and his decision not to sell any HP stock after his departure from the company reinforces Mr. Robison's lack of fraudulent intent. *See In re ChinaCast Educ. Corp. Sec. Litig.*, No. CV 12-4621-JFW (PLAx), 2012 WL 6136746, at *8 (C.D. Cal. Dec. 7, 2012) ("[A] strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal.") (citations omitted).[6]

## II. PLAINTIFF'S ARGUMENTS ON CONTROL-PERSON LIABILITY FAIL

The "control person" claim under section 20(a) fails for two reasons. First, as set forth in the HP Motion and Reply, the complaint fails to plead a primary violation of the federal securities laws by HP. In particular, there is no actionable statement by HP during the time when

---

[5] To be clear, Mr. Robison's "no data" statement does not deny the existence of negative analyst reports. The question he was answering at the conference was about "third-party analysis" that raised "questions" about Autonomy's business. Dkt. No. 143-1 at 6–7. Mr. Robison was not telling the questioner that the negative analysis he alluded to did not exist; he was communicating to the conference that the negative analysis was not grounded in Autonomy's reported financial data. Plaintiff does not allege or argue that Mr. Robison denied the existence of negative analysts.

[6] In addition to failing to allege scienter, the portion of Mr. Robison's statement where he says the IDOL platform growth "will continue" is also forward-looking and subject to the safe-harbor provision. Dkt. No. 142 at 4 n.5. Cautionary language was given at the beginning of the conference. Dkt. No. 143-1 at 1. And the fact that Mr. Robison also said, "continue to grow" does not defeat the safe harbor. Even "[h]istorical statements can . . . be forward-looking if they are presented as factors underlying a projection or economic forecast." *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1046 (N.D. Cal. 2007). Mr. Robison's statement about "growing nicely" and "continu[ing] to grow" were non-actionable puffery. Dkt. No. 142 at 4 & n.4. Plaintiff's conclusory two-sentence response on this issue is unsupported by any reasoning or analysis. Dkt. No. 168 at 27 n.37.

DEF. ROBISON'S REPLY ISO MOTION TO
DISMISS CONSOLIDATED COMPLAINT
NO. C-12-5980 CRB

Mr. Robison was employed. This defeats any control-person claim because, as plaintiff concedes, Mr. Robison is not liable for statements made after his departure or statements made by other individuals. Dkt. No. 168 at 26 n.33, 54 n.85.

Second, plaintiff does not and cannot plead that Mr. Robison "exercised a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations." *McKesson*, 126 F. Supp. 2d at 1277 (quotation and citation omitted). Mr. Robison was not a member of the board, and had no role in HP's securities filings. Although Mr. Robison is alleged to have played an important role supervising due diligence, plaintiff concedes the case is not about the quality of HP's due diligence. Dkt. No. 168 at v, 23 n.26. And Mr. Robison made no public statements about diligence. *See supra* note 1.

Plaintiff merely points to Mr. Robison's title, his membership on a committee that set research agenda, that he "led" HP's due diligence, and that he spoke at investor conferences. Dkt. No. 168 at 56. But a "plaintiff must allege more than the defendant's position and committee membership." *N.Y.C. Emps.' Ret. Sys. v. Barry*, 616 F. Supp. 2d 987, 1002 (N.D. Cal. 2009). Nor have courts found that being "involved in the decision to purchase [a company] and manag[ing] due diligence in connection with the merger" are sufficient, absent specific allegations of significant control of day-to-day operations. *In re Cooper Sec. Litig.*, 691 F. Supp. 2d 1105, 1122 (C.D. Cal. 2010). In sum, Mr. Robison was not the person who controlled HP's public statements.

## CONCLUSION

For the foregoing reasons, the claims against Mr. Robison should be dismissed with prejudice.

Dated: October 2, 2013         O'MELVENY & MYERS LLP

                               By: */s/ Daniel H. Bookin*
                                   Daniel H. Bookin

                               Attorneys for Defendant
                               Shane V. Robison