PILLSBURY WINTHROP
  SHAW PITTMAN LLP
Bruce A. Ericson (Bar No. 76342)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

DEBEVOISE & PLIMPTON LLP
Bruce E. Yannett (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
beyannett@debevoise.com

Colby A. Smith (*pro hac vice*)
Ada Fernandez Johnson (*pro hac vice*)
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
casmith@debevoise.com
afjohnson@debevoise.com

*Attorneys for Defendant Léo Apotheker*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION,<br><br>This Document Relates to: All Actions<br>. | Master File No. C-12-5980 CRB<br><br>**CLASS ACTION**<br><br>**DEFENDANT LÉO APOTHEKER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date: November 8, 2013<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Court: 6 |

**TABLE OF CONTENTS**

ISSUES TO BE DECIDED ................................................................................................................ iv

SUMMARY OF ARGUMENT ........................................................................................................ iv

REPLY ARGUMENT ....................................................................................................................... 1

    A.    Plaintiff's Opposition Fails To Support A Strong Inference Of Scienter ..................... 1

        1.    Plaintiff Has Failed To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Due Diligence Statements ................................. 1

        2.    Plaintiff Fails To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Statements About Price And Valuation ............. 3

        3.    Plaintiff Fails To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Statements About Autonomy's Historical Performance ...................................................................................................... 5

        4.    Plaintiff's "Holistic" Approach To Scienter Cannot Resurrect Its Claims ........................................................................................................... 6

    B.    Plaintiff Does Not Answer Mr. Apotheker's Argument That The Majority Of His Statements Are Non-Actionable Opinion Or "Puffery." ......................................... 6

    C.    Plaintiff Fails To State A Claim Under Section 20(a) ................................................. 7

CONCLUSION ................................................................................................................................. 8

# TABLE OF AUTHORITIES

**CASES**

*Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199
 (C.D. Cal. 2012)...............................................................................................................4, 7

*City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 12-Civ-1203,
 2013 WL 1174017 (S.D.N.Y. Mar. 22, 2013)................................................................2, 6

*City of Roseville Employees' Retirement System v. Sterling Financial Corp.*,
 No. CV-09-0368-EFS, 2013 WL 3990798 (E.D. Wash Aug. 5, 2013)..........................3, 6

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228 (3d Cir. 2004) ....................................2, 6

*Higginbotham v. Baxter International Inc.*, 495 F.3d 753 (7th Cir. 2007).....................................4

*In re FVC.com Securities Litigation*, 136 F. Supp. 2d 1031 (N.D. Cal. 2000)...............................6

*In re Gold Resource Corp. Securities Litigation*, No. 12-cv-02971-RBJ,
 2013 WL 3724918 (D. Colo. July 15, 2013) .....................................................................4

*In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248
 (N.D. Cal. 2000).................................................................................................................5

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999) ...........................1

*In re Yahoo! Inc. Securities Litigation*, No. C 11-02732 CRB, 2012 WL 3282819
 (N.D. Cal. Aug. 10, 2012) (Breyer, J.)...............................................................................6

*McGuire v. Dendreon Corp.*, 688 F. Supp. 2d 1239 (W.D. Wash. 2009) ......................................4

*Murdeshwar v. Search Media Holdings Ltd.*, No. 11-Civ-20549, 2011 WL 7704347
 (S.D. Fla. Aug. 8, 2011).....................................................................................................2

*New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089
 (9th Cir. 2011)....................................................................................................................5

*Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996)...............7

*Philco Investments, Ltd. v. Martin*, No. C 10-02785 (CRB), 2011 WL 4595247
 (N.D. Cal. Oct. 4, 2011).....................................................................................................5

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009)..................................................4, 7

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ....................1, 5

*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .....................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................ iv, 6

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) .................................................. 4, 7

**STATUTES**

Private Securities Litigation Reform Act of 1995 ....................................................................... iv

Securities Exchange Act of 1934

    Section 10(b) ............................................................................................................... iv, 7

    Section 20(a) ....................................................................................................................7

United States Code

    Title 15, section 78u-4(b)(3)(A) ..................................................................................... iv

**REGULATIONS**

Rules and Regulations of the Securities and Exchange Commission

    Rule 10b-5 ..................................................................................................................... iv

**ISSUES TO BE DECIDED**

1. Whether the claim against Mr. Apotheker under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 should be dismissed as a matter of law because the Consolidated Class Action Complaint (Dkt. No. 100) (the "Complaint" or "Compl.") fails to allege facts giving rise to a strong inference of scienter, and fails to establish falsity, as to the very few statements attributable to Mr. Apotheker during the Class Period.

2. Whether the claim against Mr. Apotheker under Section 20(a) of the Exchange Act should be dismissed as a matter of law because the Complaint fails to allege facts giving rise to a primary violation of the Act or control by Mr. Apotheker over any other defendants to this action.

**SUMMARY OF ARGUMENT**

Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Dkt. No. 168) (the "Opposition" or "Opp.") is a lengthy and ultimately unsuccessful attempt to obscure the weaknesses of its Complaint – especially as it relates to defendant Léo Apotheker. The Complaint's central allegation is that Autonomy plc ("Autonomy") orchestrated a fraud that prompted Hewlett-Packard Co. ("HP") to buy Autonomy for more than it was worth. Neither plaintiff nor defendants – other than Autonomy's former CEO – contest this characterization, which is by far the most cogent, compelling and complete explanation of the events alleged in the Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

The only problem for plaintiff is that this cogent and compelling explanation does not give rise to a securities fraud claim. As a result, plaintiff spends 100 pages of the Complaint and another 58 pages of the Opposition attempting to spin an alternative story in which HP, led by a host of fools motivated by desires that make no sense, became a willing or witless participant in Autonomy's fraud, leaving plaintiff and other shareholders as the only true victims. Plaintiff's theory is precisely the kind of groundless claim that the Supreme Court in *Tellabs* and Congress in the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(A), have said cannot survive.

As applied to Mr. Apotheker, plaintiff's theory has even less merit. Mr. Apotheker worked at HP for only 35 days after the Autonomy transaction was announced. During those 35 days, he spoke publicly about the Autonomy transaction only two times: when announcing the deal on

August 18, 2011 and at an analyst conference on September 13, 2011, little more than a week before he left HP. The Complaint alleges only three kinds of misstatements by Mr. Apotheker: (i) that HP's due diligence had been "tight," "professional," "rigorous" and "conservative;" (ii) that HP would be paying a "fair price" for Autonomy; and (iii) that Autonomy, as its audited financial statements showed, enjoyed a high "margin" and strong product growth. The Complaint, however, alleges no facts creating the required strong inference that Mr. Apotheker knew or was deliberately reckless in not knowing that these statements were false.[1] The Opposition fares no better. For example, with respect to the adequacy of due diligence, plaintiff cites several purported "red flags," but never says how or whether they came to Mr. Apotheker's attention – an essential requirement for pleading scienter. With regard to Autonomy's valuation, plaintiff can only say that others thought HP was paying too much; but the fact that others' opinions differed does not make Mr. Apotheker's opinion wrong or deliberately reckless. Finally, with respect to Mr. Apotheker's repetition of Autonomy's own financial statements about its past results, margins and growth, plaintiff alleges no facts suggesting that Mr. Apotheker did not believe Autonomy's financial reports or suspected accounting fraud.

      Plaintiff's Opposition founders even more tellingly when it attempts to explain why, if Mr. Apotheker had any inkling that Autonomy was a fraud, he would have proceeded to close the transaction anyway. All plaintiff can say is that Mr. Apotheker wanted to "defend his credibility in the market," "avoid a leak about the deal" (Opp. at viii) and "double-down" on his promise to "transform" HP (Opp. at 6-7). But these motives would hardly prompt Mr. Apotheker to acquire a fraudulent business, even if it was part of a "desperate plea by a desperate CEO," as plaintiff imagines. (Opp. at 7.) Plaintiff's explanation is not credible and certainly not the kind of cogent and compelling explanation that *Tellabs* requires. Here, moreover, there is an obvious, cogent, coherent and compelling alternative explanation – that Mr. Apotheker, like HP and everyone else, was victimized by the fraud at Autonomy. The only reason plaintiff goes to such great lengths to ignore this explanation and try to posit another is because the more cogent and compelling explanation does

---

[1] *See* Defendant Léo Apotheker's Mot. to Dismiss the Consolidated Compl. and Supporting Mem. of Points and Authorities (Dkt. No. 127) (the "Opening Memorandum") at 6-12.

not give rise to a securities fraud claim.  And it is for precisely that reason that plaintiff's claim, as pleaded against Mr. Apotheker, must be dismissed.

**REPLY ARGUMENT**

Plaintiff alleges that Mr. Apotheker made false or misleading statements about Autonomy on only two occasions: August 18, 2011, when announcing the Autonomy transaction, and September 13, 2011, when answering analysts' questions at a conference. (Compl. ¶¶ 44, 58.) Mr. Apotheker's alleged statements fall into three broad categories – statements about the adequacy of the due diligence process (Compl. ¶¶ 58; Opp. at iv, 23-24), the value of Autonomy (Compl. ¶¶ 58; Opp. at iv, 10, 28) and Autonomy's past financial results and growth (Compl. ¶¶ 44, 58, 163, 171, 174; Opp. at 10, 21).[2] The Complaint and the Opposition repeat these statements frequently. (Compl. ¶¶ 164, 172, 176; Opp. at iv, 10-11, 21-23, 27-28.) But mere repetition does not expand or improve the allegations for plaintiff, give rise to a strong inference of scienter, or mask the fact that Mr. Apotheker's anodyne statements are of the type that courts consistently have held to be non-actionable puffery or opinion.

### A.  Plaintiff's Opposition Fails To Support A Strong Inference Of Scienter.

Plaintiff attempts to establish scienter by highlighting a handful of "red flags" that supposedly arose during the 35 days before Mr. Apotheker's departure from HP. But nothing about those alleged red flags raises a cogent or compelling inference that Mr. Apotheker engaged in the type of intentional misconduct or deliberate recklessness the law requires. *S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (allegedly ignoring "red flags" not actionable in the absence of allegations that defendants knew their representations were inaccurate); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999), *abrogated in part on other grounds by S. Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).

#### 1.  Plaintiff Has Failed To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Due Diligence Statements.

The Opposition, like the Complaint, focuses particularly on Mr. Apotheker's characterization of HP's due diligence process as "rigorous," "professional" and "tight," and then, using 20/20 hindsight, juxtaposes those words with the failure of the process to uncover Autonomy's fraud. But courts have repeatedly held that the failure of a due diligence process to uncover fraud is not enough

---

[2]  For transcripts of Mr. Apotheker's complete remarks on these two occasions, see his Request for Judicial Notice, Dkt. No. 128.

to establish scienter. *See Murdeshwar v. Search Media Holdings Ltd.*, No. 11-Civ-20549, 2011 WL 7704347, at *17 (S.D. Fla. Aug. 8, 2011) (defendants' failure to discover irregularities in due diligence did not raise an inference of scienter); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 244-46 (3d Cir. 2004) (allegations of insufficient due diligence failed to give rise to strong inference of scienter).

Plaintiff argues that the "red flags" highlighted in the Opposition should have prompted Mr. Apotheker to insist upon more extensive due diligence. Those purported red flags include the alleged opposition to the Autonomy acquisition by two others at HP (Opp. at 8), a statement by KPMG in a due diligence report that its work had been "limited" (Opp. at 24), a report by one analyst that criticized Autonomy (Opp. at 9), concerns expressed by other analysts about Autonomy's revenue and growth (Opp. at 21), and the negative reaction of the market and some analysts to the announcement of the Autonomy deal (Opp. at 2). None of these issues supports a strong inference of scienter:

*Alleged opposition of HP's CFO and one board member*: Plaintiff argues that HP's CFO argued against the Autonomy acquisition, saying "I don't think we're ready" and the deal is "too expensive." (Opp. at 7.) Plaintiff also argues that one Board member opposed the deal (Opp. at 8), although the Complaint acknowledges that he voted with a unanimous Board to approve it. (Compl. ¶¶ 92, 101.) But it is one thing to offer the view that the timing was wrong or the price too high, and quite another thing to express concern about widespread fraud. Nothing suggests that either person suspected fraud or questioned the sufficiency of the due diligence, much less voiced such concerns to Mr. Apotheker.

*Scope limitations in KPMG's due diligence report*: Plaintiff does not and cannot allege that the draft KPMG report mentioning a limitation in the due diligence process ever came to Mr. Apotheker's attention. Plaintiff also reads the report selectively, omitting KPMG's additional statement that its work on the due diligence project was "comparable with other acquisitions." (*See* Reply Mem. in Further Support of HP's Mot. to Dismiss, Dkt. No. 179 ("HP's Reply") at ix.) Due diligence that is comparable with other acquisitions raises no inference of scienter. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 12-Civ-1203, 2013 WL 1174017, at *19 (S.D.N.Y. Mar.

22, 2013) (failure to plead scienter where there were no allegations that defendant knew that it had done "materially less homework than was customary" in terms of due diligence).[3]

*Analysts' reports critical of Autonomy and the deal*: There is no allegation that any of the analyst reports highlighted by plaintiff's Opposition came to Mr. Apotheker's attention. More importantly, the fact that Autonomy was a publicly traded company in the United Kingdom, with financial statements audited by a leading accounting firm, was more than sufficient to counterbalance any analyst concerns about Autonomy's revenues or accounting. Indeed, plaintiff alleges that Mr. Apotheker said as much, noting that for him and for HP, the fact that Autonomy had financial statements that were "audited on very professional standards" was "where we pick up the trail . . . that's the basis of our due diligence." (Compl. ¶ 41.)[4]

*The market's negative reaction*: Rank speculation about why markets move cannot create a cogent and compelling inference of scienter. *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, No. CV-09-0368-EFS, 2013 WL 3990798, at *34 (E.D. Wash. Aug. 5, 2013) (complaint dismissed where plaintiffs provided "only speculation of fraudulent intent"). Yet that is all plaintiff offers on this point. Plaintiff forgets that HP's announcement of the Autonomy deal coincided with its announcement that it might exit the personal computer business. (Compl. ¶¶ 27, 33.) Given the multiple simultaneous announcements, there was no reason for Mr. Apotheker to conclude that the market reaction somehow meant that Autonomy was a fraud or that more due diligence was needed.

### 2. Plaintiff Fails To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Statements About Price And Valuation.

Plaintiff claims the Mr. Apotheker made a knowingly false statement when he said that HP proposed to pay "a very fair price" for Autonomy. (Opp. at iv, 10, 28, 29.) As support, plaintiff again points to the alleged comment of HP's CFO that Autonomy was "too expensive" (Opp. at vi-

---

[3] Plaintiff's contention (Opp. at v) that the issue is not what defendants knew about the fraud, but what they knew about the due diligence process is beside the point. *First*, there is no indication that Mr. Apotheker was aware of anything unusual about the due diligence process itself – and the KPMG report said the diligence was comparable with other transactions. *Second*, under the cases, as noted, mere allegations of an insufficient due diligence process do not give rise to an inference of scienter.

[4] The Opposition also mischaracterizes what Mr. Apotheker said about HP's reliance on Deloitte in the due diligence process. Plaintiff claims (Opp. at 23) that Mr. Apotheker "relied entirely" on Deloitte. But the transcript shows that Mr. Apotheker said Deloitte's audits were the starting point, not the ending point, of the due diligence. Dkt. No. 128, at 7.

viii, 7-8) and comments by competitors at Dell and Oracle (Opp. at 28) and analysts (Opp. at 2). Here, again, the opinions of others fail to create a compelling inference that Mr. Apotheker in fact did not hold the opinion that the price was fair.

To be actionable, a statement of opinion, such as a statement that the price or value was fair, must be both objectively *and* subjectively false. *Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199, 1208 (C.D. Cal. 2012) (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009); *McGuire v. Dendreon Corp.*, 688 F. Supp. 2d 1239, 1243 (W.D. Wash. 2009)). There is no allegation that Mr. Apotheker was not sincere in his belief that the price was fair – undermining any possible contention by plaintiff that his statement was subjectively false. Nor do the alleged statements by HP's CFO Lesjak that Autonomy was "too expensive" (Opp. at 29) bolster plaintiff's claim. That may have been her view, but it raises no inference that Mr. Apotheker's contrary view was not honestly held. Indeed, the fact that different executives held different opinions about what constitutes a "fair price" cannot transform Mr. Apotheker's expression of his opinion into a knowing or deliberately reckless misstatement.

The statements by the CEOs of Dell and Oracle – both competitors of HP (Oracle also was a competitor of Autonomy) – are even less probative. Larry Ellison could hardly be expected to compliment a competitor on a great deal – even if it were true. Comments by business rivals in no way support a conclusion that Mr. Apotheker knew that the price paid for Autonomy was not fair. Likewise, the opinions of analysts create no basis for concluding that Mr. Apotheker was being dishonest in his public statements, simply because his opinion did not match theirs. Also, "[i]f [negative reports] were enough to demonstrate fraud, then plaintiffs and other investors could have drawn that inference themselves," given that the analyst commentary already was in the public domain. *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 759 (7th Cir. 2007).

Nor does the hindsight realization that Autonomy turned out to be a fraud, and therefore overpriced, provide a basis for inferring that Mr. Apotheker must have known at the time that the price was not fair. *In re Gold Resource Corp. Sec. Litig.*, No. 12-cv-02971-RBJ, 2013 WL 3724918, at *14 (D. Colo. July 15, 2013) ("Any after the fact admissions regarding . . . problems may establish

that the defendants made statements that were false *in hindsight*, but that is insufficient to establish fraud. The Court cannot, without particularized cause, assume that the later-disclosed . . . problems were known to [defendants] at the moment of the alleged misrepresentations.") (internal citations omitted).

### 3. Plaintiff Fails To Establish A Strong Inference Of Scienter With Respect To Mr. Apotheker's Statements About Autonomy's Historical Performance.

Plaintiff asserts that Mr. Apotheker was deliberately reckless when he repeated information that Autonomy itself had reported to investors. (Opp. at 10.) But mere repetition of another entity's audited financial information cannot establish scienter unless the speaker knew the prior information was false or was deliberately reckless in not knowing. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1276-77 (N.D. Cal. 2000); *see also S. Cherry St.*, 573 F.3d at 111-13.

Here again, plaintiff cites the market's negative reaction to the deal (Opp. at 2) and an analyst report that claimed Autonomy's products were not as widely used as some believed (Opp. at 22). These assertions, however, do not present the kind of "in your face facts" that prompt the question, "[H]ow could [defendants] not have known that the financial statements were false[?]" *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1103 (9th Cir. 2011).

For reasons already discussed, the market's reaction to HP's multiple announcements on August 18 does not create an inference that Mr. Apotheker knew or was deliberately reckless in not knowing that Autonomy's historical information was false. In addition, plaintiff once again has failed to allege that Mr. Apotheker ever received a copy of the analyst report in question or any other contemporaneous document or communication that would have alerted him to any purported concerns about Autonomy's historical performance. *See Philco Invs., Ltd. v. Martin*, No. C 10-02785 (CRB), 2011 WL 4595247, at *8-9 (N.D. Cal. Oct. 4, 2011) (Breyer, J.) ("[c]onclusory allegations about a defendant's state of mind, without specific facts, are not enough"). And while the analysts who questioned Autonomy's past financial performance and growth rates certainly are entitled to their own views, Mr. Apotheker's decision to rely instead on the opinions of Autonomy's independent outside auditor certainly does not create a strong inference that he knew Autonomy's historical, audited financial information was wrong or was deliberately reckless about that

possibility. Publicly acknowledged reliance on financial information audited by a highly reputable accounting firm hardly prompts the question, "How could defendants have not have known the information was false?"

### 4. Plaintiff's "Holistic" Approach To Scienter Cannot Resurrect Its Claims.

Plaintiff's "holistic" view (Opp. at 19) adds nothing to its other arguments. *See* HP's Reply (Dkt. No. 179) at 1-2, which Mr. Apotheker adopts and fully supports in its entirety. The "holistic" approach rests on a view that HP and its leaders were bent on a "suicide mission" to pay top dollar for a business they knew to be a fraud. That is neither a cogent nor compelling explanation for what happened. *Tellabs*, 551 U.S. at 324; *GCS Partners CDO Fund v. Washington*, 368 F.3d 228, 244 (3d Cir. 2004).[5]

### B. Plaintiff Does Not Answer Mr. Apotheker's Argument That The Majority Of His Statements Are Non-Actionable Opinion Or "Puffery."

Mr. Apotheker argued in his Opening Memorandum that most of his challenged statements constituted non-actionable opinion or "puffery." (*See* Opening Memorandum at 11-12.) While plaintiff claims that these arguments were raised only "half-heartedly" (Opp. at ix), plaintiff's own response (Opp. at 29-30) fails to answer them. For example, plaintiff claims that the exception for puffery is "narrowly drawn" (Opp. at 29), but never explains why Mr. Apotheker's statements do not come within the bounds of that narrow exception. The cases are unequivocal that Mr. Apotheker's statements describing the due diligence as "tight," "professional," "rigorous" and "conservative" are non-actionable puffery. *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *17 (N.D. Cal. Aug. 10, 2012) (Breyer, J.) (holding phrases such as "tremendous value" and "important investment" and adjectives such as "fantastic" are not actionable statements but are "general and mere puffery" in the context of vague expressions of enthusiasm made by company's executives in connection with a decision to invest); *see also City of Austin*, 2013 WL 1174017 (S.D.N.Y. Mar. 22, 2013) (finding general statements made by Company officers describing due

---

[5] And, indeed, the absence of any allegations that Mr. Apotheker stood to benefit in a concrete and personal way from the alleged fraud undermines any inference of fraudulent intent. *City of Roseville*, 2013 WL 3990798, at *41 ("complete absence of any stock sales during the Class Period 'negates any slight inference of scienter'") (citing *In re FVC.com Sec. Litig.*, 136 F. Supp. 2d 1031 (N.D. Cal. 2000)). *See* Opening Memorandum at 11. Plaintiff offers no credible response to this argument.

diligence efforts as "exhaustive," very detailed," and "in-depth" "do not rise to the level of an actionable misstatement . . . . [t]hey are puffery").

Similarly, plaintiff asserts that Mr. Apotheker's statements are not mere expressions of "corporate optimism" (Opp. at 30), but never analyzes the content of the statements to say why. Again, however, the case law is clear that statements about the fairness of the price paid for an acquisition are not actionable unless plaintiff can allege that the opinions were both objectively and subjectively false. *Buttonwood Tree*, 910 F. Supp. 2d at 1208; *see also Va. Bankshares*, 501 U.S. at 1095-96; *Rubke*, 551 F.3d at 1162. Plaintiff alleges nothing suggesting that Mr. Apotheker did not actually believe the price was fair and the deal worth doing. As such, plaintiff has not alleged facts sufficient to conclude that Mr. Apotheker's statements of opinion did not reflect his true belief.[6]

### C. Plaintiff Fails To State A Claim Under Section 20(a).

As Plaintiff has not pled a violation of Section 10(b) against Mr. Apotheker for any of the challenged statements made prior to September 22, 2011, Mr. Apotheker's last day at the company, Plaintiff's Section 20(a) claim also must fail. There are no allegations that Mr. Apotheker exercised any actual power or control over any of the other defendants or the overwhelming majority of the challenged statements, which occurred after Mr. Apotheker left HP. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996) (finding no control on the part of the CEO where there was "no evidence that [the CEO] exercised direct or indirect control over" the transaction at issue). Plaintiff's Section 20(a) claim therefore must fail as a matter of law.

---

[6] Plaintiff also inexplicably argues (Opp. at 46) that Mr. Apotheker should be liable for his signature on documents containing allegedly false representations. But in the 35 days between the announcement of the Autonomy deal and his departure from HP, Mr. Apotheker is not alleged to have signed any documents that contained false statements about Autonomy.

# CONCLUSION

For these reasons, as well as those set forth in Mr. Apotheker's moving papers (Dkt. No. 127-128), the claims against Mr. Apotheker arising under both Sections 10(b) and 20(a) of the Securities Exchange Act should be dismissed for failure to state a claim.

Dated: October 2, 2013.

Respectfully submitted,

PILLSBURY WINTHROP
  SHAW PITTMAN LLP


By: /s/ Bruce A. Ericson
    Bruce A. Ericson (Bar No. 76342)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

DEBEVOISE & PLIMPTON LLP
Bruce E. Yannett (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
beyannett@debevoise.com

Colby A. Smith (*pro hac vice*)
Ada Fernandez Johnson (*pro hac vice*)
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
casmith@debevoise.com
afjohnson@debevoise.com

*Attorneys for Defendant Léo Apotheker*