1  ALLEN S. RUBY (STATE BAR NO. 47109)
   allen.ruby@skadden.com
2  TIMOTHY A. MILLER (STATE BAR NO. 154744)
   timothy.miller@skadden.com
3  RICHARD S. HORVATH, JR. (STATE BAR NO. 254681)
   richard.horvath@skadden.com
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
5  Palo Alto, California 94301
   Telephone: (650) 470-4500
6  Facsimile:  (650) 470-4570

7  ERIC S. WAXMAN (STATE BAR NO. 106649)
   eric.waxman@skadden.com
8  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
9  Los Angeles, California 90071
   Telephone: (213) 687-5000
10 Facsimile:  (213) 687-5600

11 Attorneys for Defendant
   RAYMOND J. LANE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION | MASTER DOCKET NO. **C-12-05980 CRB** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **(1) DEFENDANT RAYMOND J. LANE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS; and**<br><br>**(2) JOINDER IN REPLY MEMORANDA FILED BY OTHER DEFENDANTS.**<br><br>Date: **November 8, 2013**<br>Time: **10:00 a.m.**<br>Judge: **Hon. Charles R. Breyer**<br>Ctrm.: **6, 17th Floor** |

**DEFENDANT LANE'S JOINDER & MOTION TO DISMISS**     **MASTER CASE NO.: C-12-05980-CRB**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 AGAINST MR. LANE ..................................................................3

    A. Plaintiff Fails To Satisfy The Well-Established United States Supreme Court Standard For Alleging Fraud In The Expression Of An Opinion ..........................3

    B. Plaintiff's Claim Based On HP's 2011 Form 10-K Fails Because The Consolidated Complaint Fails To Plead Particularized Facts Giving Rise To A Strong Inference That Mr. Lane Acted With Scienter ........................................6

    C. Plaintiff's Half-Hearted Attempt To Plead "Scheme" Liability Under Section 10(b) Fails ..............................................................................................................7

III. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 20(a)..................8

IV. CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Cho v. UCBH Holdings, Inc.*,
 C 09-4208 JSW, 2011 WL 3809903 (N.D. Cal. May 17, 2011) ................................................... 8

*Dodona I, LLC v. Goldman, Sachs & Co.*,
 847 F. Supp. 2d 624 (S.D.N.Y. 2012) .......................................................................................... 6

*Howard v. Hui*,
 C 92-3742-CRB, 2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ................................................. 8

*In re Accuray, Inc. Shareholder Derivative Litigation*,
 757 F. Supp. 2d 919 (N.D. Cal. 2010) ......................................................................................... 8

*In re BP Prudhoe Bay Royalty Trust Securities Litigation*,
 No. C06-1505, 2007 U.S. Dist. LEXIS 83007 (W.D. Was. Oct. 26, 2007) ................................ 7

*In re Charles Schwab Corp. Securities Litigation*,
 257 F.R.D. 534 (N.D. Cal. 2009) ................................................................................................. 9

*In re McKesson HBOC, Inc. Securities Litigation*,
 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................... 1, 3

*In re Salomon Analyst AT&T Litigation*,
 350 F. Supp. 2d, 455 (S.D.N.Y. 2004) ................................................................................ 1, 3, 4

*In re Siebel Systems, Inc. Securities Litigation*,
 No. C 04-0983 CRB, 2005 WL 355718 (N.D. Cal. Dec. 28, 2005) ............................................ 3

*In re Splash Technology Holdings, Inc. Securities Litigation*,
 No. C-99-00109-SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ....................................... 9

*In re WorldCom, Inc. Securities Litigation*,
 294 F. Supp. 2d 392 (S.D.N.Y. 2003) ......................................................................................... 9

*Kane v. Madge Networks N.V.*,
 C-96-20652-RMW, 2000 WL 33208116 (N.D. Cal. May 26, 2000) .......................................... 4

*Kane v. Zisapel*,
 32 F. App'x 905 (9th Cir. 2002) .................................................................................................. 4

*Nieman v. Duke Energy Corp.*,
 No. 12-00456-MOC, 2013 U.S. Dist. LEXIS 110693 (W.D. N.C. July 26, 2013) ..................... 5

*Podany v. Robertson Stephens, Inc.*,
 318 F. Supp. 2d 146 (S.D.N.Y. 2004) ......................................................................................... 4

*SEC v. Mercury Interactive, LLC*,
 No. 07CJ02822 (WHA), 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011) .................................... 8

*Shurkin v. Golden State Vintners Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006) .................................................................................. 8

*Silicon Graphics Inc. Securities Litigation*,
   183 F.3d 970 (9th Cir. 1991) ................................................................................................ 6

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
   690 F. Supp. 2d 959 (D. Ariz. Feb. 22, 2010) ...................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................................................. 3

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ........................................................................................................ 1, 3

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011) .............................................................................................. 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................................ 5, 6

## **RULES**

Federal Rule of Civil Procedure 8(a) ............................................................................................ 8

# JOINDER IN REPLY MEMORANDA OF OTHER DEFENDANTS

Defendant Raymond J. Lane ("Lane" or "Mr. Lane") hereby joins in, adopts and fully incorporates herein the arguments made in the reply memoranda concurrently filed by defendants Hewlett-Packard Company ("HP"), Margaret C. Whitman, Léo Apotheker, Catherine A. Lesjak, James T. Murrin, and Shane V. Robison (filed on October 2, 2013). The claims against Mr. Lane fail for the reasons stated in these defendants' moving and reply papers.

DATED: October 2, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____/s/ Timothy A. Miller_____
TIMOTHY A. MILLER
Attorneys for Defendant
RAYMOND J. LANE

# I. INTRODUCTION

Because Lead Plaintiff ("Plaintiff") fails to plead scienter with the specificity required by the PSLRA, Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (the "Opposition" or "Opp.") fails to salvage the deficient claims asserted against Mr. Lane. Significantly, Plaintiff does not contend, nor could it, that Mr. Lane had actual knowledge of accounting improprieties at Autonomy. Rather, Plaintiff suggests that Mr. Lane was "deliberately reckless" in making the allegedly false statements attributed to him:

> Lane's statement [that HP paid "market price" for Autonomy] was misleading, not only because he withheld the fact that he had attempted to withdraw HP from the deal, but also because he was aware, *inter alia*, that: (i) numerous analysts and commentators thought that those reported numbers [presumably referring to Autonomy's financial results] were improperly inflated; (ii) Autonomy had strong-armed Lane into raising HP's offer above that original offer price; (iii) Autonomy had stymied HP's due diligence; and (iv) that Lesjak vigorously opposed the deal at a meeting that Lane attended.

(Opp. 34 n. 48.) For several reasons, these purported "red flags" are simply insufficient as a matter of law under the stringent pleadings standards of the PSLRA.

First, Mr. Lane's statement that HP paid "market price" for Autonomy is a statement of **opinion**, and Plaintiff does not contend otherwise. Thus, under *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), Plaintiff must plead facts establishing his opinion was **subjectively** false, *i.e.*, "not merely that [the] proffered opinion was incorrect or doubtful, but that [Mr. Lane] **deliberately misrepresented** his actual opinion." *In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 465-466 (S.D.N.Y. 2004) (emphasis added). Thus, even if he was aware of these purported "red flags," such knowledge would not establish that Mr. Lane did not **sincerely hold the opinion** when he made the statement. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000) ("[S]tatements of opinion are false only if the opinion was not sincerely held.").

Second, the very notion that Mr. Lane was "deliberately reckless" or "turned a blind eye" to any purported "red flags" in signing HP's 2011 Form 10-K is belied by Plaintiff's own allegations. Plaintiff concedes that HP and its Board, including Mr. Lane, retained well qualified accounting and financial advisors—Barclays Bank PLC ("Barclays"), Perella Weinberg Partners ("Perella

1

Weinberg"), and KPMG LLC ("KPMG")—to assist in HP's pre-merger examination of Autonomy. (Compl. ¶¶ 31, 36.) Then, during the integration of Autonomy post-merger, HP asked its auditors, Ernst & Young LLP ("E&Y") and KPMG, to assist with the harmonization of Autonomy's financial statements, which had been audited under UK standards, with HP's U.S. GAAP accounting. (Compl. ¶ 75.) When Whistleblower No. 4 came forward, HP and its board, far from sweeping the whistleblower's accusations under the rug, handed them over to PricewaterhouseCoopers LLP ("PwC") for a full investigation. (Compl. ¶ 80.) These are not the actions of a board that is turning a blind eye to a known risk. To the contrary, that is exactly what one would expect from an active, independent board when confronted with such allegations. Thus, far from establishing scienter, Plaintiff's allegations show appropriate attention to good corporate governance.

Plaintiff's concession that there were "two narratives" (Opp. 22:3-6; Compl. ¶ 25) in the investment community about Autonomy is also fatal to Plaintiff's claims against Mr. Lane. Plaintiff points to only one of the two narratives, and in a classic case of "fraud by hindsight," asserts that Mr. Lane was deliberately reckless in failing to heed these warnings. The public analyst reports highlighted by Plaintiff were available to HP's experts. The notion that Mr. Lane should have ignored the "green flags" being waived by HP's experts and instead drilled down into the minutiae of Autonomy's accounting does not even constitute negligence let alone "deliberate recklessness."

Plaintiff's Opposition also fails to remedy the deficiency in its Section 20(a) "control person" claim. Plaintiff points to no specific allegations regarding the role or responsibilities of Mr. Lane in his capacity as HP's "Executive Chairman." Plaintiff argues that his signature on HP's SEC filing is enough. That is not the law. The Section 20(a) claim fails.

In the end, Plaintiff's weak allegations against Mr. Lane cannot overcome the implausible premise underlying its Complaint: that Mr. Lane, a Silicon Valley business leader with no financial stake in the Autonomy transaction, would knowingly or with "deliberate recklessness" support an $11 billion acquisition of a company he knew or even suspected was rife with accounting fraud. The far more compelling inference is that Mr. Lane and HP were victims of an accounting fraud by

2

Autonomy that went undetected by HP despite having world class accounting and financial advisors. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) ("an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 AGAINST MR. LANE

### A. Plaintiff Fails To Satisfy The Well-Established United States Supreme Court Standard For Alleging Fraud In The Expression Of An Opinion

Plaintiff does not dispute that Mr. Lane's statement that HP paid "market price" for Autonomy is a statement of **opinion**. Rather, Plaintiff attempts to invoke the recognition of *Virginia Bankshares* that in certain circumstances, "statements of belief or opinions can be materially misleading whenever they are not supported by the underlying facts." (Opp. 35 n. 51.) Plaintiff's attempt is misplaced because as Judge Whyte held in the *McKesson* securities litigation, "statements of opinion are false only if the opinion was not sincerely held." *McKesson*, 126 F. Supp. 2d at 1265.

Plaintiff argues that "HP has effectively admitted that Lane's statement was inaccurate by virtue of their $8.8 billion Autonomy write down," a write down taken one year after the Autonomy acquisition closed. (Opp. 11:14-15.) Once again, that argument is classic "fraud by hindsight." *See In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983 CRB, 2005 WL 355718, at *11 (N.D. Cal. Dec. 28, 2005) ("Plaintiffs are simply alleging fraud by hindsight; because the second quarter revenues fell by 15 percent plaintiffs conclude that defendants must have known in April that such a decline would occur. The Court is not persuaded."). Even if one concluded that HP's write down of goodwill associated with Autonomy was tantamount to a statement that HP paid too much (a point not conceded here), the fact that, with the benefit of hindsight, Mr. Lane's opinion turned out to be wrong does not mean that Mr. Lane "deliberately misrepresented his actual opinion." *Salomon Analyst*, 350 F. Supp. 2d at 465-466.

Plaintiff argues that Mr. Lane ignored purported "red flags" allegedly suggesting that Autonomy's accounting was inaccurate or that Autonomy was overpriced. (Opp. 35:3-5.) But even assuming that Mr. Lane was aware that "numerous analysts and commentators thought" that

3

Autonomy's financial results were misstated, that Autonomy "strong-armed Lane into raising HP's offer," or that Autonomy had "stymied HP's due diligence" (Opp. 34 n. 48), none of these alleged facts either alone or together would establish either falsity or scienter because a "statement [of opinion] (unlike a statement of fact) cannot be false at all unless the speaker is knowingly misstating his truly held opinion." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004). For example, even if Mr. Lane was forced to increase the price HP paid, that does not mean, even on an objective basis, that the final price was not market, let alone demonstrate that Mr. Lane did not **actually** hold the opinion that the final price was market. (Opp. 22:3-6.) The same is true with respect to the admitted split among analysts about Autonomy's value. The existence of a split in analysts' opinions does not permit an inference that Mr. Lane concurred with one side of that split rather than the other but chose to say otherwise despite the lack of any reasonable motive to do so. And, of course, Plaintiff's due diligence allegation is even less revealing as to Mr. Lane's subjective opinion that the price was other than "market" as he publicly stated. In short, Plaintiff nowhere pleads **contemporaneous facts** establishing that Mr. Lane **did not in fact believe** that HP had paid "market price" (whatever that means) for Autonomy. *See Salomon Analyst* at 466 ("[i]t is not sufficient to allege that an opinion was unreasonable, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held").

The same flawed reasoning underlies Plaintiff's reliance on the opinion expressed by HP CFO Catherine Lesjak that the price paid for Autonomy was too high. (Opp. 29:4-10.) Plaintiff simply ignores the fact that Ms. Lesjak and Mr. Lane can simultaneously and sincerely hold opposite opinions on the matter. Ms. Lesjak's opinion does not tend to show that Mr. Lane did not sincerely hold the opinion that HP paid "market price." *See Kane v. Madge Networks N.V.*, C-96-20652-RMW, 2000 WL 33208116, at *9 (N.D. Cal. May 26, 2000), *aff'd sub nom.*, *Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002) ("[p]laintiffs argue that defendants could not make positive statements about the Lannet takeover without also disclosing that one particular Lannet executive disagreed with Madge's decision . . . However, general positive statements do not give rise to a

4

**DEFENDANT LANE'S JOINDER & RELY ISO MOTION TO DISMISS**  **MASTER CASE NO.: C-12-05980-CRB**

duty to disclose the details of internal corporate disputes.").

Plaintiff points to *Nieman v. Duke Energy Corp.*, No. 12-00456-MOC, 2013 U.S. Dist. LEXIS 110693, at *10-15, 25-26 (W.D. N.C. July 26, 2013), arguing that falsity can be established "where several board members 'had mounted significant yet undisclosed opposition.'" (Opp. 29:10-12.) *Nieman* is totally inapposite. *Nieman* involved a representation to the investing public by the acquiring company that it would name as CEO of the merged entity the then-current CEO of the target company. *Id.* at *7-9. It was alleged, the acquiring company's board had unanimously decided to fire the target company CEO hours after appointing him. *Id.* at *6-8, 12-16. That predetermined intent rendered false the factual statement that the target company CEO would become the merged entity's CEO. *Id.* at *12, 24. No statement of opinion was involved.

No more helpful is Plaintiff invoking, yet again, that Mr. Lane asked his advisors whether HP could extract itself from the transaction after the announcement of the deal but prior to close. (Opp. 33:3-8.) This argument fails for two reasons. First, as Mr. Lane demonstrated in his opening papers, this allegation is not alleged with the specificity demanded by the PSLRA. (Lane's Br. 7:15-8:3.). In true *ipse dixit* fashion, Plaintiff argues that the "Complaint painstakingly alleges that, by [September 23, 2011,] Lane had specifically asked HP's financial advisers (Barclays and Perella) whether HP could back out of the deal." (Opp. 11:24-12:2.) False. The Complaint does not specify when these communications took place, who at Barclays and Perella were consulted, or what was said. Moreover, because Plaintiff could not possibly have personal knowledge of these allegations, Plaintiff must disclose the basis of these allegations. *See*, *e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) ("to satisfy the PSLRA pleading requirements" a "confidential witness [] . . . must be described with sufficient particularity to establish their reliability and personal knowledge" and the witness's statements "must be indicative of scienter.").

Independently, the claim fails because Mr. Lane could have truly held the opinion that HP paid "market price" while simultaneously exploring HP's options in light of negative market reaction to the deal. (Lane's Br. 8:10-18.) Plaintiff's response: "The negative market reaction, however, was to the price (given, among other things, the numerous concerns about Autonomy's accounting)." (Opp. 32 n. 45.) Plaintiff misses the point. Even assuming that the negative market

5

reaction was to the price paid for Autonomy, Mr. Lane could disagree with that reaction while at the same time recognizing the imperative of responding to unhappy HP shareholders.

Plaintiff points to *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624 (S.D.N.Y. 2012), and argues that Mr. Lane's alleged attempt to withdraw from the Autonomy transaction is like the alleged "sudden – and prescient – shift" by the defendant in that case. (Opp. 32-33.) *Dodona* is distinguishable. That case involved sales of mortgage backed securities by Goldman Sachs. *Dodona*, 847 F. Supp. 2d at 630-32. Government investigations had found that Goldman learned of material, non-public facts suggesting that the mortgage backed securities market was on the verge of collapse, devised an internal plan to divest Goldman of its own exposure to those markets, but at the same time solicited investments in those mortgage backed securities from its clients. *Id.* at 633-34, 642-43. Plaintiff does not claim that Mr. Lane was aware of material non-public information regarding the Autonomy transaction; it alleges that he ignored public analyst reports and public pronouncements by Larry Ellison. (Opp. 2:17-24, 11 n. 17.) Unlike the detailed internal reports at Goldman predicting the collapse of the mortgage backed securities market, Plaintiff does not allege here that Mr. Lane learned of any material non-public information **after** the announcement of the Autonomy deal that led him to attempt to withdraw.

### B. Plaintiff's Claim Based On HP's 2011 Form 10-K Fails Because The Consolidated Complaint Fails To Plead Particularized Facts Giving Rise To A Strong Inference That Mr. Lane Acted With Scienter

Plaintiff's allegations regarding Mr. Lane establish prudence, not "deliberate recklessness." The Ninth Circuit's "deliberate recklessness" standard requires plaintiff to plead "'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Zucco*, 552 F.3d at 991 (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1991)). Plaintiff misses the mark by a wide margin.

Plaintiff claims that Mr. Lane was deliberately reckless because he was aware that Autonomy had "stymied HP's due diligence." (Opp. 34 n. 48.) Plaintiff's only support for this proposition fails because it selectively draws from a snippet of the KPMG report, but ignores

KPMG's conclusion that the "data and access provided to [KPMG] during due diligence [of Autonomy] was very limited **but was comparable with other acquisitions involving large U.K. publicly traded companies.**" (Exhibit D of Declaration of Ramzi Abadou (emphasis added).) How Mr. Lane could have been "deliberately reckless" to rely upon the conclusions of HP's accounting expert is a riddle Plaintiff's Opposition fails to answer. Mr. Lane was entitled by law to rely on his experts to sort out the "two narratives" about Autonomy that prevailed in the investment community.

Plaintiff's reliance on *In re BP Prudhoe Bay Royalty Trust Sec. Litig.*, No. C06-1505, 2007 U.S. Dist. LEXIS 83007, at *10-12 (W.D. Was. Oct. 26, 2007) (Opp. 35), hurts, rather than helps, its arguments against Mr. Lane. In that case, plaintiff specifically alleged knowledge of a series of internal statements and events by BP Exploration Alaska ("BPXA") showing it knew its Prudhoe Bay pipelines faced a "catastrophic event" because of years of cost cutting and corrosion. *Id.* at *10-12. Yet, at the same time, BPXA was representing to investors: (i) that maintenance issues had been addressed; (ii) BPXA was not aware of any corrosion issues; and (iii) that production would increase to 90,000 barrels per day. *Id*. Here, there are no particularized allegations of specific, contemporaneous, inconsistent internal documents, and a different result must therefore follow.

    **C.**     <u>**Plaintiff's Half-Hearted Attempt To Plead "Scheme" Liability Under Section 10(b) Fails**</u>

Plaintiff argues that Mr. Lane's alleged attempt to withdraw HP from the Autonomy transaction provides an independent basis for scheme liability. (*See* Opp. 32-35; 32 n. 46.) This argument fails because the claim that Mr. Lane attempted to withdraw from the merger is part and parcel of Plaintiff's misrepresentation claim. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (affirming dismissal of Rule 10b-5(a) and 10b-5(c) claims based on concealing sales in violation of defendants' prior agreements where that conduct overlapped with 10b-5(b) claim that defendants failed to disclose those stock sales). This is so because Plaintiff does not contend that Mr. Lane's attempt to withdraw from the transaction was independently wrongful, but rather that it was indicative of his state of mind at the time of

certain allegedly false statements.  (*See, e.g.*, Compl. ¶ 178; Opp. 34:4-9.)

Plaintiff's reliance on *SEC v. Mercury Interactive, LLC*, No. 07CJ02822 (WHA), 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011), is misplaced because, unlike the pervasive backdating of options in that case, which was wrongful in of itself, Plaintiff does not allege that any attempt to withdraw from the Autonomy transaction was itself wrongful, but instead that it is purportedly indicative of Mr. Lane's state of mind.

Moreover, *Mercury Interactive* involved a "comprehensive scheme" that involved 45 different, backdated stock options granted by the defendants over a five year period to the defendants, other executives and company employees, and the falsification of company paperwork to cover up the option grants.  *Id*. at *2.  No similar allegations of a "comprehensive scheme . . . on a broad scale" appear in Plaintiff's Complaint.

## III. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 20(a)

As a preliminary matter, because Plaintiff has failed to plead a primary violation of Section 10(b) as to HP (the party allegedly controlled by Mr. Lane), its Section 20(a) claim must also fail. *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 933-34 (N.D. Cal. 2010).  But even were the Court to find that a primary violation has been alleged against HP, Plaintiff fails to allege facts sufficient to establish that Mr. Lane had the requisite actual power or control over HP.

First, Plaintiff is wrong when it asserts that its Section 20(a) claim is subject to the more lenient pleading standards of Federal Rule of Civil Procedure 8(a).  (Opp. 55:4-13.)  As this Court has held, where, as here, "[p]laintiff's section 20(a) claim is an allegation of fraud . . . a plaintiff must plead the circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)."  *Howard v. Hui*, C 92-3742-CRB, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001). Plaintiff's claim that the "weight of recent case law" supports the application of Rule 8 to Section 20(a) claims is also incorrect.  (Opp. 55.)  Many other district courts in this Circuit have agreed with this Court's ruling in *Howard v. Hui*.  *See*, *e.g.*, *Cho v. UCBH Holdings, Inc.*, C 09-4208 JSW, 2011 WL 3809903, at *2 (N.D. Cal. May 17, 2011) (applying the "dual pleading requirements of ... Rule 9(b) and the PSLRA [to plaintiff's] . . . Section 20(a) claim based on an underlying violation of section 10(b).") (citation omitted); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998,

8

1027 (N.D. Cal. 2006); *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ("Where a plaintiff asserts a section 20(a) claim based on an underlying violation of section 10(b), the pleading requirements for both violations are the same.").

Second, Plaintiff erroneously contends that Mr. Lane's signature on HP's 2011 Form 10-K establishes "control." (Opp. 56:16-57:4.) A signature on an SEC filing is insufficient to establish "control." *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (signature of CEO and Chairman on Prospectus and Registration statements insufficient). Plaintiff's own authority is in agreement. In *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F. Supp. 2d 959 (D. Ariz. Feb. 22, 2010), the Court rejected plaintiff's argument as "tenuous at best" that directors were control persons because they signed false financial statements. *Id*. at 980.[1]

Plaintiff's Opposition adds nothing to its bald assertion that Mr. Lane should be held liable as a "control person" because he assumed the title "Executive Chairman" during the Class Period. (Opp. 56:6-16.) Plaintiff fails to point to a single allegation that specifies Mr. Lane's duties and responsibilities as HP's Executive Chairman. Once again, Plaintiff's reliance on *Apollo Group, Inc.* is misplaced because there the plaintiff alleged with specificity the nature of the director's responsibilities as an Audit Committee member and how those responsibilities related to the alleged primary violations (accounting misstatements by the company of which he was a director). *Id*. In *Apollo*, Plaintiff alleged that defendant's duties as an Audit Committee member included: (i) reviewing supposedly fraudulent financial statements; (ii) discussing the financial statements with independent accountants; and (iii) recommending to the Board that the audited financial statements be incorporated by reference into Annual Reports. *Id*. at 977. In stark contrast, the *Apollo* court **rejected** plaintiff's section 20(a) claim against another defendant where the complaint alleged only

---

[1] Plaintiff's cases to the contrary all involved conduct not alleged here. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) (finding a plausible inference that **officers** of various Schwab entities, who also signed a registration statement, were in a position to exercise control over Schwab's investments); *see also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003) (finding control by WorldCom directors who signed allegedly false SEC filings where plaintiff also pled that WorldCom's accounting fraud was rampant **and** the directors received kickbacks for perpetuating the fraud).

that the defendant sat on a corporate committee, but failed to allege the nature of director's responsibilities on the committee or how these responsibilities related to the alleged primary violations. *Id*. at 978.

Here, the Consolidated Complaint does not include any allegations as to Mr. Lane's responsibilities as a director or "principal" officer of HP or how Mr. Lane's responsibilities relate to the alleged primary violations. Plaintiff argues that Mr. Lane was "heavily actively involved in HP, including the Autonomy negotiations and making false and misleading statements" (Opp. 56:7-8), but points to no specific allegations in the Complaint to support this argument. Courts have rejected similar allegations as failing to demonstrate "control" under section 20(a). (Lane's Br. 13.)

Additionally, Plaintiff ignores Mr. Lane's argument that the allegations in the Consolidated Complaint establish that Mr. Lane acted in good faith, an affirmative defense to a Section 20(a) claim. (Lane's Br. 14-15.) Plaintiff deflects Mr. Lane's argument of good faith by asserting that "culpability is not required to plead control." (Opp. 55 n. 86.) Plaintiff misses the point. Mr. Lane's argument has nothing to do with control. (Lane's Br. 14-15.) Rather, Mr. Lane argues that Plaintiff has affirmatively pled that Mr. Lane relied on the advice of HP's advisors. (Lane's Br. 14:19-15:6.) Because that reliance appears on the face of the Consolidated Complaint, Plaintiff was required—and failed—to plead around this defense by alleging that Mr. Lane's reliance was not in good faith. (Lane's Br. 15:1-6.) Since Plaintiff concedes the point by ignoring Mr. Lane's argument, the Court should dismiss the Consolidated Complaint's Section 20(a) claim against Mr. Lane for this independent reason as well.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, and the reasons provided in HP's motion to dismiss, Defendant Raymond Lane respectfully requests that this Court dismiss the Consolidated Complaint.

DATED: October 2, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Timothy A. Miller
TIMOTHY A. MILLER
Attorneys for Defendant
RAYMOND J. LANE

10