1   COOLEY LLP
    STEPHEN C. NEAL (170085) (nealsc@cooley.com)
2   JOHN C. DWYER (136533) (dwyerjc@cooley.com)
    JEFFREY M. KABAN (235743) (jkaban@cooley.com)
3   ADAM C. TRIGG (261498) (atrigg@cooley.com)
    JEFFREY M. WALKER (280505) (jwalker@cooley.com)
4   Five Palo Alto Square
    3000 El Camino Real
5   Palo Alto, CA  94306-2155
    Telephone:    (650) 843-5000
6   Facsimile:    (650) 849-7400

7   Attorneys for Defendant
    MARGARET C. WHITMAN
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13   IN RE HP SECURITIES LITIGATION,          Case No.  C-12-5980 CRB

14   This Document Relates To: All Actions    **CLASS ACTION**

15                                            **DEFENDANT MARGARET C.**
                                              **WHITMAN'S REPLY IN SUPPORT**
16                                            **OF MOTION TO DISMISS THE**
                                              **CONSOLIDATED COMPLAINT**
17
                                              Hearing:      November 8, 2013
18                                            Time:         10:00 a.m.
                                              Courtroom:  6
19                                            Judge:        Hon. Charles R. Breyer

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................... 1

    A.    The Complaint Fails to Allege Facts to Support a Cogent and Compelling Inference that Ms. Whitman Acted with Scienter ................................... 1

        1.    Plaintiff's Attempt to Manufacture a Motive for Ms. Whitman to Commit Fraud Has No Merit ..................................................... 1

        2.    Plaintiff's "Red Flag" Allegations Do Not Establish Scienter .................. 3

        3.    Plaintiff's Claim that Ms. Whitman Was a "Hands-On" Manager Fails to Create an Inference that She Acted with Scienter ........................ 3

        4.    Viewed Holistically, the Only Cogent and Compelling Inference from Plaintiff's Allegations Is that Ms. Whitman Acted in Good Faith ......................................................................................... 5

    B.    Plaintiff Fails to Plead with Particularity that Ms. Whitman Made any False or Misleading Statements .............................................................. 5

        1.    Most of the Statements Attributed to Ms. Whitman Are Inactionable ............................................................................. 5

        2.    Plaintiff Fails to Allege with Particularity that Ms. Whitman's Statements Between September 2011 and March 2012 Were False or Misleading ..................................................................... 7

        3.    Ms. Whitman's Subsequent Statements Were Not False or Misleading ........................................................................... 9

    C.    Plaintiff Fails to Plead that Ms. Whitman Is Liable as a Control Person ............. 10

III.   CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010)...................................................................................... 6

*In re Bristol-Myers Squibb Sec. Litig.*,
2005 WL 2007004 (D.N.J. Aug. 17, 2005)............................................................... 6

*In re Browning-Ferris Indus. Inc. S'holder Deriv. Litig.*,
830 F. Supp. 361 (S.D. Tex. 1993) ......................................................................... 10

*City of Livonia Employees' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013)................................................................................. 2, 9

*City of Omaha, Neb. Civilian Emps. Ret. Sys. v. CBS Corp.*,
679 F.3d 64 (2d Cir. 2012) ....................................................................................... 5

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .......................................................... 7

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)............................................................................... 6, 7

*In re CV Therapeutics, Inc. Sec. Litig.*,
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ........................................................... 6

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005)................................................................................... 8

*In re Dot Hill Sys. Corp. Sec. Litig.*,
594 F. Supp. 2d 1150 (S.D. Cal. 2008) .................................................................... 4

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007).............................................................................. 5, 10

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
2010 WL 1287058 (E.D. Wis. Mar. 30, 2010) ........................................................ 2

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)................................................................................... 1

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011)...................................................................... 4

*In re Nuvelo, Inc. Sec. Litig.*,
668 F. Supp. 2d 1217 (N.D. Cal. 2009) ................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*In re Nvidia Corp. Sec. Litig.*,
    2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) ........................................................................... 4

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial*
    *Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ........................................................................... 5

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*,
    717 F. Supp. 2d 1170 (E.D. Wash. 2010) ........................................................................... 4

*In re Remec Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ........................................................................... 2

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ........................................................................... 2, 9

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir.1999) ........................................................................... 8

*In re Textainer P'ship Sec. Litig.*,
    2007 WL 108320 (N.D. Cal. Jan. 10, 2007) ........................................................................... 8

*In re Yahoo! Inc. Sec. Litig.*,
    2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) ........................................................................... 5, 10

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009) ........................................................................... 4, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEFENDANT WHITMAN'S REPLY ISO
MOTION TO DISMISS C-12-5980 CRB

I.    **INTRODUCTION**

Plaintiff's claims against Ms. Whitman should be dismissed as they fail to support a cogent and compelling inference that Ms. Whitman acted with an intent to deceive. Nothing in Plaintiff's Opposition cures that fatal flaw. Neither the Complaint nor the Opposition present a credible response to the most basic question: Why would Ms. Whitman put her job, reputation, and potentially her liberty in jeopardy to fraudulently conceal a mess that she did not create, only to voluntarily disclose that very mess a few months later? The answer of course is that she would not (and did not). As a result, the Complaint fails to adequately allege facts giving rise to a strong inference of scienter.

The Complaint also fails to adequately allege any facts that demonstrate any of the statements Ms. Whitman made were false or misleading. The majority of Ms. Whitman's statements are either inactionable statements of corporate optimism or are protected by the PSLRA's safe harbor. As to the remainder of the statements attributed to Ms. Whitman, the Complaint fails to adequately allege that they were false at the time they were made.

Accordingly, the claims against Ms. Whitman should be dismissed.

II.   **ARGUMENT**

A.    **The Complaint Fails to Allege Facts to Support a Cogent and Compelling Inference that Ms. Whitman Acted with Scienter**

1.    **Plaintiff's Attempt to Manufacture a Motive for Ms. Whitman to Commit Fraud Has No Merit**

In an effort to meet its scienter pleading burdens, Plaintiff argues that Ms. Whitman and the other defendants had a motive to commit fraud. Those arguments are unavailing. <u>First</u>, Plaintiff's reliance on the argument that Ms. Whitman was motivated to see HP succeed is misplaced. Indeed, it is in direct conflict with the repeated holdings of the Ninth Circuit that such general corporate motives – motives shared by virtually every officer of every public company in the country – do not support an inference of scienter. *E.g., Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be

forced to defend securities fraud actions.'") (citation omitted); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). Moreover, Plaintiff's citation to the ruminations of the court during a hearing in the *SunPower* case is misleading, as those statements lack any precedential value and conflict with Ninth Circuit law. (Opp. at 4:15-21.)

<u>Second</u>, Plaintiff argues that the Complaint "alleges that Defendants Whitman, Lane and Lesjak opted to quietly clean up the mess Apotheker and Lynch left behind in the hopes that it would never come to light." (Opp. at 52:3-4.) Conspicuously, Plaintiff does not cite to any allegations in the Complaint to support this theory. In fact, the Complaint includes no particularized facts to support such a claim. Indeed, the allegations are very much to the contrary. According to the Complaint, Ms. Whitman, after becoming HP's CEO, publicly expressed increasing levels of concern regarding Autonomy's performance (¶¶ 82, 189, 191, 204), oversaw an investigation of whistleblower allegations (¶ 84), and ultimately publicly disclosed the $8.8 billion write down of this asset (¶¶ 84, 217). The Opposition's theory that Ms. Whitman was motivated to "quietly clean up" Apotheker's mess simply is not supported by the actual allegations in the Complaint. Rather, the allegations regarding Ms. Whitman's actions negate any inference of scienter *See Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08-C-797, 2010 WL 1287058, at *21 (E.D. Wis. Mar. 30, 2010) ("[A]ny inference of an intent to deceive is further undermined by the disclosures the company actually made."); *In re Remec Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1246-47 (S.D. Cal. 2010) (holding that disclosure of negative information and writing down goodwill negated inference of scienter).

Finally, the Complaint fails to allege that Ms. Whitman had any personal financial motive to engage in fraud. Ms. Whitman did not sell any of her HP stock during the Class Period. The lack of any such allegations weighs against scienter. (*See* Dkt. 139, Whitman Motion to Dismiss, at 8:21-9:1.) Moreover, the lack of any plausible motive for Ms. Whitman to commit fraud weighs against an inference of scienter. *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013) ("Without a motive to commit fraud, businessmen are unlikely to commit it.").

## 2. Plaintiff's "Red Flag" Allegations Do Not Establish Scienter

Plaintiff's allegations of "red flags" from blogs and analyst reports do not support an inference of scienter regarding Ms. Whitman's September 2011 statement, as Plaintiff argues in the Opposition. (Opp. at 20:11-15.) <u>First</u>, the Complaint does not allege that Ms. Whitman ever read or saw the analyst or blog reports. To attempt to overcome this pleading deficiency, Plaintiff misleadingly claims that Ms. Whitman admitted knowledge of the reports, citing an interview she gave in late 2012. (*See* Opp. 20:16-18; ¶ 89.) However, her actual statement was that "after we announced the acquisition there were a number of blogs that came to the fore about potential issues at Autonomy. The former management team ran that to the ground and came up with the conclusion that there was nothing there." (Dkt. 180-1, Declaration of Marc Wolinsky, Ex. 15.) The statement does not indicate that she knew prior to September 2011 of accounting issues at Autonomy. Rather, it indicates that she learned at some indeterminate time that the company's former management became aware at some point of the postings and concluded they lacked merit. If anything, the allegations negate scienter. <u>Second</u>, the only statement of Ms. Whitman's that Plaintiff points to is a statement Ms. Whitman made ***the day she became CEO*** in which she indicated that, based on what she knew at the time, she supported HP's August 18, 2011 initiatives – including the exploration of strategic alternatives for HP's PC business and the discontinuation of operations for webOS devices – and that she would "have a more informed view" later. (¶177.) The qualified nature and timing of this statement does not support any intent to deceive. <u>Finally</u>, to the extent Plaintiff's are alleging that the supposed "red flags" are sufficient to establish scienter with regard to statements concerning HP's due diligence (which, as discussed by other defendants, they are not), that theory is inapplicable to Ms. Whitman. (Opp. at 22:22-23:2.) Ms. Whitman is not alleged to have made ***any*** statements during the Class Period regarding HP's due diligence prior to the Autonomy acquisition.

## 3. Plaintiff's Claim that Ms. Whitman Was a "Hands-On" Manager Fails to Create an Inference that She Acted with Scienter

Plaintiff also argues that scienter can be inferred from Ms. Whitman's alleged hands-on management style. (Opp. at 52:17-53:2.) Plaintiff quotes from the Ninth Circuit's opinion in

*Zucco*, but conveniently ignores that that opinion calls the "hands-on" management theory that

Plaintiff relies on a narrow exception to the basic rule that scienter must be pleaded with

specificity as to each defendant.  *Zucco Partners, LLC v. Digimarc Corp.* 552 F.3d 981, 1000 (9th

Cir. 2009).[1]    Moreover, the "narrow exception" requires that general allegations of "hands-on"

management be "buttressed with 'detailed and specific allegations about management's exposure

to factual information within the company.'"  *Id.* at 1000 (citation omitted).  In *Zucco*, the Ninth

Circuit rejected plaintiffs' scienter allegations despite their effort to rely on this exception as they

failed to allege that the executives had actual knowledge that the challenged inventory figures

were false.  *Id.*  Plaintiff's allegations regarding Ms. Whitman are much less detailed and specific

than those in *Zucco*, and there are no allegations demonstrating that Ms. Whitman had knowledge

that Autonomy's pre-acquisition financials were false.  Furthermore, Plaintiff's argument that Ms.

Whitman admitted on numerous occasions that she monitored "every detail about Autonomy" is

not supported by the allegations in the Complaint.  (Opp. at 52:22-24 (citing ¶¶ 76, 177, 191).)

The fact that Ms. Whitman stated that leveraging HP's distribution channels to grow Autonomy

was a priority for HP does not mean she monitored every detail about Autonomy or that she had

any knowledge that Autonomy had committed fraud before the acquisition.  These allegations

simply do not support an inference of scienter.  *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F.

Supp. 2d 1150, 1161-62 (S.D. Cal. 2008) (finding insufficient the scienter allegations related to

company's small size, "involved managers," and defendants' express admissions that the subjects

of the alleged misrepresentations were the company's "top priorities" during the class period).[2]

---

[1] Furthermore, courts typically only apply the "hands-on management" inference when the case involves a small corporation or a product that accounts for a large percentage of the company's overall business. *See, e.g.*, *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 814 (C.D. Cal. 2011) (applying hands-on management presumption when the case involved the company's "only advanced-stage product" that was "by an overwhelming margin the most important product in the Company") (quotation and citation omitted); *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*, 717 F. Supp. 2d 1170, 1179 (E.D. Wash. 2010) (applying the core operations inference to a small corporation where the undisclosed information accounted for 45 percent of the company's marketing leads).

[2] Plaintiff's other individual scienter allegations have no merit.  First, Plaintiff has failed to allege any facts surrounding the executive departures in this case to create an inference of scienter. *See, e.g.*, *In re Nvidia Corp. Sec. Litig.*, No. 08-CV-04260-RS, 2010 WL 4117561 at *114  (N.D. Cal.

#### 4. Viewed Holistically, the Only Cogent and Compelling Inference from Plaintiff's Allegations Is that Ms. Whitman Acted in Good Faith

When viewed holistically, the allegations in the Complaint are far more consistent with an inference that Ms. Whitman acted without scienter. The Complaint alleges that Ms. Whitman voted for the Autonomy deal as an HP director based on the information she was provided at the time, worked diligently to integrate Autonomy when she became CEO, informed the public of Autonomy's disappointing results in the spring and summer of 2012, investigated "whistleblower" claims of Autonomy's fraud in the years prior to HP's acquisition, and voluntarily disclosed the problems at Autonomy after concluding the investigation. (*See* ¶¶ 80-82, 84, 217-18.) All the while she continued to hold every single share of her HP stock. These are not the actions of one engaging in fraud. *See In re Yahoo! Inc. Sec. Litig.*, C 11-02732 CRB, 2012 WL 3282819, at *22 (N.D. Cal. Aug. 10, 2012); *see also Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful.").

### B. Plaintiff Fails to Plead with Particularity that Ms. Whitman Made any False or Misleading Statements

#### 1. Most of the Statements Attributed to Ms. Whitman Are Inactionable

As demonstrated in Ms. Whitman's opening brief, many of Ms. Whitman's statements are vague statements of corporate optimism and are, thus, inactionable as a matter of law. (Dkt. 139, Whitman Motion to Dismiss, at 11:7-12:8.) Plaintiff does not dispute that these statements[3]

---

Oct. 19, 2010) (finding the resignation of two corporate executives was not indicative of scienter because the complaint provided "no specifics as to the circumstances surrounding their resignations"). Similarly, there is no merit to Plaintiff's claim that scienter should be inferred from the size of the write-down. *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010) (holding the "size of an alleged fraud alone does not create an inference of scienter") (quotations and citations omitted); *City of Omaha, Neb. Civilian Emps. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67 and n.6 (2d Cir. 2012) (rejecting allegations that a $14 billion write-down was indicative of scienter).

[3] Hereafter, citations to Ms. Whitman's statements will be to the statement numbers reflected in the Appendix of Statements. *See* Dkt. 139-1, Statements 1 ("the Autonomy acquisition, which I'm excited about . . ."); 2 ("Software ought to be a big improvement" . . . "Autonomy . . . We're really excited about it."); 3 ("The Autonomy acquisition is going well."); and 5 ("Autonomy is a terrific product.").

contain the type of generalized statements of generic corporate optimism that courts routinely hold cannot form the basis for a securities fraud claim. (*See* Dkt. 139 at 11:7-12:8.) Instead, Plaintiff argues that the statements are actionable because they were made in response to questions. (*See* Opp. 34:11-16.) This contention has no merit. None of the authorities cited by Plaintiff stand for the proposition that a statement of corporate optimism becomes actionable if it is in response to a question, nor has Plaintiff articulated a basis for such a distinction. Moreover, there is nothing about the context in which Ms. Whitman made the challenged statements that would render these otherwise inactionable statements actionable.

Further, Plaintiff's argument that the forward-looking statements attributed to Ms. Whitman are not protected by the PSLRA's safe harbor fails.[4] <u>First</u>, despite Plaintiff's protestations otherwise (Opp. at 31:7-23), these statements are forward-looking and not statements of present fact. *See In re Bristol-Myers Squibb Sec. Litig.*, Civ.A. 00-1990(SRC), 2005 WL 2007004, at *26 (D.N.J. Aug. 17, 2005) (holding that statements about what "'should' happen in the future" are forward-looking); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 281 (3d Cir. 2010) ("Statements about future profitability . . . fall squarely within the definition of forward-looking statement."). <u>Second</u>, such forward looking statements, otherwise protected by the safe harbor, are actionable only if "made with *actual* knowledge that they were materially false or misleading." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010) (emphasis in original). The Complaint fails to make any showing that such is the case. <u>Third</u>, the case law Plaintiff cites is inapplicable because in *each* of those cases the plaintiffs had alleged with well plead factual allegations that the defendants knew the statements were misleading despite their forward-looking nature.[5] <u>Finally</u>, here, the forward-looking statements were accompanied by

---

[4] The statements are: (1) "Software ought to be a big improvement with Autonomy;" and (2) "[I]t may take us a couple of quarters to work through some of the growing pains of the organization." (*See* Dkt. 139-1, Statements 2 and 5.)

[5] *See e.g. In re Nuvelo, Inc. Sec. Litig.,* 668 F. Supp. 2d 1217, 1231 (N.D. Cal. 2009) ("These statements were not allegedly misleading because they failed to predict the future, but because they concealed or downplayed *known* present risks related to regulatory approval.") (emphasis added); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C 03-03709 SI, 2004 WL 1753251, at * 10 (N.D. Cal. Aug. 5, 2004) (holding safe harbor did not apply "when the defendants *possessed* and failed to disclose detailed information about the FDA's serious reservations concerning [its

meaningful cautionary language "identifying important factors that could cause actual results to differ materially." *Cutera Sec. Litig.*, 610 at 1111-12. (See Dkt. 141, Dec. ¶¶ 13-19, and Exs. 1, 3, 4, 6, 8.) Accordingly, the statements are protected under the PSLRA's safe harbor provisions and cannot support Plaintiff's securities fraud claims. *Cutera*, 610 F.3d at 1111-12.

> **2.** **Plaintiff Fails to Allege with Particularity that Ms. Whitman's Statements Between September 2011 and March 2012 Were False or Misleading**

On the day she became CEO and shortly before the Autonomy deal closed, the Complaint alleges that Ms. Whitman stated, "I am supportive of the actions that were announced on August 18 . . . [and] I'll dive in and have a more informed point of view for you probably at our next earnings call." (¶ 177.)[6] Plaintiff alleges that the statement was misleading because, at approximately the same time, "HP was actively seeking to withdraw its offer to purchase Autonomy due, in part, to the profoundly negative market response" to the deal. (¶ 69.) However, the Complaint is devoid of any well-plead factual allegations supportive of the conclusory assertion that HP was seeking to withdraw from the deal. In addition, the allegation is temporally flawed. The challenged statement was made by Ms. Whitman *on the day she became CEO*. (Opp. at 34:8-10 (citing ¶177).) It stretches credulity to suggest that Ms. Whitman was engaged in some effort to rescind the deal the very morning she became CEO. Moreover, the Complaint merely alleges that such efforts were made sometime before October 3, 2011, while the challenged statement was allegedly made on September 22. That is, the Complaint fails to allege that any effort to rescind the transaction had been made prior to the challenged statement.

Similarly, Plaintiff's arguments that Ms. Whitman's February[7] and March[8] 2012

---

drug's] safety and efficacy") (emphasis added); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (THK), 2013 WL 1197755, at * 13 (S.D.N.Y. Mar. 25, 2013) (omitted information was "sales and inventory problems that Defendants were aware of at the time the statements were made").

[6] Throughout its papers, Plaintiff misleadingly quotes this statement by replacing "supportive of the actions that were announced on August 18" with "supportive of the actions [to acquire Autonomy]." (*See* Opp. at ix:4-10, 34:9-10; ¶177.) The Company announced a number of actions on August 18, 2011, in addition to the Autonomy transaction, including the exploration of strategic alternatives for HP's Personal Systems Group and the discontinuation of operations for webOS devices.

[7] "The Autonomy acquisition is going well." (*See* Dkt. 139-1, Statement 3.)

statements were misleading are not supported by *facts* alleged in the Complaint. Plaintiff argues that these statements were misleading because HP had allegedly been "unwinding" Autonomy's accounting practices and Ms. Whitman allegedly held quarterly business meetings with Autonomy management during the Class Period. (Opp. at 37:2-9.) But Plaintiff fails to describe what this so-called "unwinding" involved. The most Plaintiff alleges is that HP reviewed Autonomy's revenue recognition practices to "optimize" them for U.S. GAAP. (¶¶ 75, 100, 164.) However, there is nothing nefarious about optimizing for U.S. GAAP when a foreign company's financial statements were previously governed by a different set of accounting rules. Despite the lack of facts to support it, Plaintiff asserts that "'optimizing' actually meant adjusting Autonomy's improper accounting practices." (¶75.) Such unsupported conclusions need not be accepted as true and are not the type of particularized allegations that satisfy the PSLRA's stringent standard. *In re Textainer P'ship Sec. Litig.*, C-05-0969 MMC, 2007 WL 108320, at *7 (N.D. Cal. Jan. 10, 2007) (citing *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 984, 985 (9th Cir.1999)).

In response to Defendants' arguments that mere attendance at quarterly business meetings is insufficient to establish that Ms. Whitman's statement was false when made, Plaintiff argues that "the Complaint does not merely contain . . . 'general allegations' of Defendants' 'attendance at meetings.'" (Opp. at 37:11-38:2.) But that is *exactly* what the Complaint does. The only allegation regarding such meetings is that "Whitman held quarterly business reviews with Autonomy management to discuss Autonomy's financial performance during the Class Period." (¶ 111.) That is *it*. There are no allegations about who attended these meetings, when they took place, what was discussed, or where they occurred. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) (holding allegations of attending meetings is insufficient to establish scienter).[9]

---

[8] "[T]here was some weakness in the portfolio. For example, license revenue didn't grow like we wanted it to.'" (*See* Dkt. 139-1, Statement 4.)

[9] It appears that Plaintiff is no longer contending that Ms. Whitman's November 2011 statement (Dkt. 139-1, Statement 2) is misleading as Plaintiff does not address this statement in the Opposition. Regardless, the arguments above apply with equal force to that statement. Moreover, Plaintiff does not even contend that the business meetings commenced until December 2011, after the November statement. (Opp. at 37:9-11 (citing ¶ 102).)

**3.  Ms. Whitman's Subsequent Statements Were Not False or Misleading**

Plaintiff argues that Ms. Whitman's May 23, 2012[10] and June 5, 2012[11] statements were misleading because Ms. Whitman failed to disclose that a "whistleblower" came forward alleging fraudulent revenue practices at Autonomy.  (Opp. at 38-41.)  There are no facts in the Complaint to support this claim.  As a result, Plaintiff resorts to misrepresenting the timing of when the whistleblower allegedly came forward, claiming the whistleblower came forward before Ms. Whitman's May 23 statement. (Opp. at 5:12-13.)  However, the Complaint alleges that he "came forward [to HP's General Counsel] *following* the departure of Mike Lynch on May 23[, 2012]," (¶ 84 (emphasis added)), that is, sometime *after* May 23.  This fact alone makes it temporally impossible for the May 23 statement to be misleading for failing to disclose the whistleblower.  The timing of the whistleblower allegations also undermines Plaintiff's argument that the June 5 statement about the Autonomy "scaling" problem was misleading.  Plaintiff has not alleged that Ms. Whitman knew about the whistleblower prior to her June 5 statements.  Indeed, there are no allegations at all as to when HP's General Counsel informed Ms. Whitman of the allegations.

Moreover, at most, Plaintiff alleges that, as of June 5, HP had received unsubstantiated allegations from an unnamed individual of potential fraud of an unknown size related to Autonomy prior to its acquisition by HP.  Even if Ms. Whitman was aware of these facts, they would not have rendered the challenged statements misleading.  It is well established that speaking on a particular subject does not create a duty to disclose all information on that subject.  Rather, the speaker must disclose the information necessary to prevent the actual statements made from being materially misleading.  *See Rigel,* 697 F.3d at 879 n.7 (rejecting that a company is required to disclose all information "that may plausibly be of interest to some investors"); *see also Boeing*, 711 F.3d at 759 ("There is no duty of total corporate transparency – no rule that every hitch or glitch, every pratfall, in a company's operations must be disclosed in 'real time,' forming a running commentary, a baring of the corporate innards, day and night.")    The

---

[10] "Autonomy is a terrific product . . . This is classic entrepreneurial Company scaling challenges." (*See* Dkt. 139-1, Statement 5.)

[11] "In my view, this is classic case of scaling a business from start-up to grownup." (*See* Dkt. 139-1, Statement 6.)

whistleblower's unsubstantiated allegations do not make Ms. Whitman's statements misleading. "Taking time to investigate a situation prior to disclosing the situation to the investing public is not fraudulent." *In re Yahoo!*, 2012 WL 3282819, at *22. No court has required the disclosure of such allegations.[12] *See Higginbotham*, 495 F.3d at 761; *In re Browning-Ferris Indus. Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 368 (S.D. Tex. 1993).

### C. Plaintiff Fails to Plead that Ms. Whitman Is Liable as a Control Person

Plaintiff does not dispute that there can be no control person claim against any Defendant in the absence of an underlying Section 10(b) claim. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). That conclusion mandates dismissal of the Section 20(a) claim against all Defendants, including Ms. Whitman. In addition, Plaintiff has not pleaded any facts, let alone particularized ones, that show that Ms. Whitman had control over the other Defendants.

## III. CONCLUSION

For the foregoing reasons, Ms. Whitman respectfully requests that the Court dismiss, with prejudice, the claims asserted against her.

Dated: October 2, 2013                COOLEY LLP


                                      _____
                                          */s/ John C. Dwyer*
                                      John C. Dwyer (136533)

                                      Attorneys for Defendant
                                      MARGARET C. WHITMAN

---

[12] Plaintiff appears to concede that Ms. Whitman's August 22, 2012 statement (Dkt. 139-1, Statement 7 ("Autonomy still requires a great deal of attention and we've been aggressively working on that business.")) was not misleading, as the Opposition does not argue otherwise. Even if Plaintiff has not conceded this point, its allegations would necessarily fail as the August statement did not create an impression that differed materially from the state of affairs that existed in August.