1  JENNIFER BONNEVILLE (S.B. #243686)
   jbonneville@steptoe.com
2  STEPTOE & JOHNSON LLP
   633 West Fifth Street, Suite 700
3  Los Angeles, California 90071
   Tel: (213) 439-9405
4  Fax: (213) 439-9599

5  JOHN D. LOVI (*admitted pro hac vice*)
   jlovi@steptoe.com
6  LARA E. ROMANSIC (*admitted pro hac vice*)
   lromansic@steptoe.com
7  MICHELLE L. LEVIN (*admitted pro hac vice*)
   mlevin@steptoe.com
8  STEPTOE & JOHNSON LLP
   1114 Avenue of the Americas
9  New York, New York 10036
   Tel: (212) 506-3900
10 Fax: (212) 506-3950

11 JEFF E. BUTLER (*admitted pro hac vice*)
   jeff.butler@cliffordchance.com
12 CHRISTOPHER J. MORVILLO (*admitted pro hac vice*)
   christopher.morvillo@cliffordchance.com
13 SARAH A. SULKOWSKI
   sarah.sulkowski@cliffordchance.com (*admitted pro hac vice*)
14 CLIFFORD CHANCE US LLP
   1 West 52nd Street
15 New York, New York 10019
   Tel: (212) 878-8000
16 Fax: (212) 878-8375

17 *Attorneys for Defendant*
   *Dr. Michael Lynch*
18

19          **UNITED STATES DISTRICT COURT**

20   **NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION**

21                                          Master File No. C-12-5980 CRB
22
23  IN RE HP SECURITIES LITIGATION         **DR. MICHAEL LYNCH'S REPLY
                                           IN FURTHER SUPPORT OF HIS**
24  This Document Relates To: All Actions,  **MOTION TO DISMISS THE
                                           CONSOLIDATED COMPLAINT**
25
26
27
28

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................................................ii

SUMMARY OF ARGUMENT..............................................................................................v

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................2

    I.     Plaintiffs Have Failed to State a Claim
         against Dr. Lynch under Rule 10b-5(b) ...............................................................2

        A.   Dr. Lynch is not liable for statements made by HP's CEO and Chief
            Strategy and Technology Officer before the HP/Autonomy Merger. .............2

        B.   Dr. Lynch is not liable for alleged misstatements in HP's
            August 18, 2011 Press Release.......................................................................7

        C.   Dr. Lynch is not liable for statements he did not make
            during the time he was employed by HP. ........................................................8

    II.    Plaintiffs Have Failed to State a Claim
         against Dr. Lynch under Section 20(a) ...............................................................12

CONCLUSION....................................................................................................................13

DEFENDANT MICHAEL LYNCH'S
REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

CASES

*Bartesch v. Cook,*
Civ. No. 11-1173-RGA, 2013 WL 1750455 (D. Del. Apr. 23, 2013) .......................3

*Berry v. Valence Tech., Inc.,*
175 F.3d 699 (9th Cir. 1999) ...................................................................3

*Central Bank of Denver, NA. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994).................................................................................4

*City of Pontiac Gen. Employees' Retirement System v. Lockheed Martin Corp.,*
875 F. Supp. 2d 359 (S.D.N.Y. 2012).......................................................10

*City of Roseville Emps.' Ret. Sys.v. EnergySolutions, Inc.,*
814 F. Supp. 2d 395 (S.D.N.Y. 2011).......................................................10

*Curry v. Hansen Medical, Inc.,*
No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. August 10, 2012) ..........*passim*

*Hawaii Ironworkers Annuity Trust Fund v. Cole,*
Case No. 3:10CV371, 2011 U.S. Dist. LEXIS 98760 (N.D. Ohio Sept. 1, 2011)...............6, 11

*In re Allstate Life Ins. Co. Litigation,*
No. CV-09-8162-PCT-GMS, 2012 U.S. Dist. LEXIS 72900 (D. Ariz. May 24, 2012)....5, 6, 8

*In re Am. Apparel, Inc. Shareholder Litigation,*
No. CV 10-06352, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ..........................9

*In re GlenFed, Inc.,*
60 F.3d 591 (9th Cir. 1995) ...................................................................9

*In re Hansen Natural Corp. Sec. Litig.,*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ....................................................9

*In re Merck & Co.,*
MDL No. 1658 (SRC), 2011 U.S. Dist. LEXIS 87578 (D.N.J. August 8, 2011)....................9

*In re Metawave Communications Corp. Sec. Litig.,*
298 F. Supp. 2d 1056 (W.D. Wash. 2003)...............................................13

*In re New Century,*
588 F. Supp. 2d 1206 (C.D. Cal. 2008) ..................................................9, 12

- ii -

*In re Pfizer Inc. Sec. Litig.,*
    No. 04 Civ. 9866 (LTS)(HBP), 2013 U.S. Dist. LEXIS 49333
    (S.D.N.Y. March 28, 2013)................................................................10, 11

*In re Smith Barney Transfer Agent Litig.,*
    884 F. Supp. 2d 152 (S.D.N.Y. 2012)..................................................10

*In re UBS AG Sec. Litig.,*
    No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)..............10

*Int'l Rectifier Corp. Secs. Litig.,*
    No. CV 07-02544-JFW (VBKx), 2008 WL 4555794 (C.D. Cal. 2007)..............9, 13

*Jackson v. Fischer,*
    No. C 11-2753 PJH, 2013 WL 1089860 (N.D. Cal. March 15, 2013) ...............6, 7

*Janus Capital Group, Inc. v. First Derivative Traders,*
    131 S. Ct. 2296 (2011) ............................................................. *passim*

*Meltzer Investment v. Corinthian Colleges,*
    540 F.3d 1049 (9th Cir. 2008) ..........................................................8

*Middlesex Ret. System v. Quest Software, Inc.,*
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ...............................................13

*Petrie v. Elec. Game Card Inc.,*
    No. SACV 10-00252 DOC, 2011 WL 165402 (C.D. Cal. Jan. 12, 2011).........3, 9, 12

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) ..........................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd. v. Tellabs, Inc.,*
    551 U.S. 308 (2007)..................................................................9

*United States SEC v. Landberg,*
    836 F. Supp. 2d 148 (S.D.N.Y. 2011).................................................10

*Winer Family Trust v. Queen,*
    503 F.3d 319 (3d Cir. 2007)............................................................9

- iii -

Plaintiffs claim that Dr. Lynch is liable under Section 10(b) and Rule 10b-5 for the alleged misstatements of others made both before and during his time at HP, including: (i) statements made by Defendants Apotheker and Robison on August 18, 2011 and September 13, 2011, regarding Autonomy's pre-acquisition financial results; (ii) statements contained in the August 18, 2011 press release announcing HP's acquisition of Autonomy; and (iii) statements made by HP after the acquisition of Autonomy, during Dr. Lynch's employment at HP. Because they can point to no statements actually made by Dr. Lynch, Plaintiffs argue that the alleged misstatements made by others can be "implicitly" attributed to Dr. Lynch by "surrounding circumstances" such that the investing public knew that he had "ultimate authority" over them.

Plaintiffs' arguments fail in light of the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), which holds that "[o]ne 'makes' a statement by stating it." Merely being involved in the creation of a statement, or supplying the false information included in a statement *made by another,* is not sufficient to state a claim under Section 10(b) and Rule 10b-5. "[T]he maker [of a statement] is the person or entity with ultimate authority over a statement and others are not." *Id.* at 2302 n.6. This Court recently applied the rule in *Janus* in the case of *Curry v. Hansen Medical, Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. August 10, 2012). The facts of *Curry* are very similar to those alleged in this case.

Plaintiffs also seek to implicitly revive the now discredited "group pleading doctrine" in an attempt to attribute the alleged misstatements in HP's SEC filings to Dr. Lynch while he was briefly employed at HP. However, the group pleading doctrine, which "allowed a presumption that false and misleading information disseminated through documents were made by the collective action of the corporation's officers," is no longer viable after *Janus* and the Private Securities Litigation Reform Act ("PSLRA"). *See Int'l Rectifier Corp. Secs. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *12 n.7 (C.D. Cal. May 23, 2008); *In re GlenFed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995); *see also In re Am. Apparel, Inc. Shareholder Litig.*, No.

CV 10-06352, 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) (collecting cases inside and outside of the Ninth Circuit "conclud[ing] that [the] group pleading doctrine did not survive the PSLRA").

Finally, Plaintiffs have no answer to the pleading deficiencies of their Section 20(a) claim. Plaintiffs do not dispute that the law requires that they allege that Dr. Lynch directly or indirectly controlled the person or entity that committed the primary securities violation, nor do they dispute that the only allegation in support of their claim is Dr. Lynch's title (Executive Vice President) and his dates of employment at HP.

The title of "Executive Vice President," however, has been repeatedly held insufficient to establish control sufficient to state a claim under Section 20(a), particularly where, as here, it appears that virtually every other defendant in this case was senior to Dr. Lynch at HP. *See, e.g., Int'l Rectifier Corp. Secs. Litig.,* 2008 WL 4555794, at *22; *Middlesex Ret. Sys. v. Quest Software, Inc.,* 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) ("[I]t is difficult for the Court to determine how, as a Vice President, Garn was able to exercise control over the other 10b-5 Defendants when the other 10b-5 Defendants held positions of Vice President or higher.").

This Court should dismiss the Section 10(b), Rule 10b-5 and Section 20(a) claims against Dr. Lynch in their entirety.

///
///
///
///
///
///
///
///
///
///

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Michael Lynch respectfully submits this reply memorandum of law in further support of his Motion to Dismiss (Dkt. No. 125) the Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint" or "CC") (Dkt. No. 100).

### PRELIMINARY STATEMENT

Plaintiffs concede that "this is not a 'duty to disclose' or 'duty to update' case." (Opp.[1] at iv, n.4.)  Plaintiffs also do not dispute that Dr. Lynch is not responsible for statements made when he was not an officer of HP.  (Opp. at 44 ("[Dr. Lynch] argues that he cannot be held liable under Section 10(b) for statements made when he was not an officer of HP.  Fair enough.") (internal citations omitted).)  Nonetheless, Plaintiffs argue that the Court should find Dr. Lynch liable under Section 10(b) and Rule 10b-5 for the following alleged misstatements made by others both before and during Dr. Lynch's time at HP:  (i) false statements made by Defendants Apotheker and Robison on August 18, 2011, and September 13, 2011, relaying Autonomy's pre-acquisition financial results; (ii) all false statements contained in the August 18, 2011 press release announcing HP's acquisition of Autonomy (the "8.18.11 Press Release") (Opp. at 44 (citing CC ¶ 44 and Dkt. No. 169, Ex. C)); and (iii) all false statements made by HP after the acquisition of Autonomy and during the time Dr. Lynch was an officer of HP (from October 2011 to April 2012).  (Opp. at 44 (citing CC ¶¶ 164, 171-172).)

Plaintiffs make two arguments in support of this theory:  *First*, the statements can be implicitly attributed to Dr. Lynch by surrounding circumstances (*e.g.*, his job title) such that the investing public knew that he "played a large role in the preparation of the misstatements," was "responsible" for the misstatements, and thus had "ultimate authority" over them.  (Opp. at 44-45.)  *Second*, where "multiple people in a single corporation have the joint authority to 'make' an SEC filing," misstatements can have "more than one 'maker'" (*Id.* at 44 (internal citations omitted).)  Plaintiffs claim that statements made by others at HP are "implicitly" attributable to Dr. Lynch based on the following circumstances alleged in the Complaint:  (i) when the

---

[1] Lead Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed August 30, 2013 (Dkt. 168) ("Opp." or "Opposition").

acquisition of Autonomy was completed in October 2011, Dr. Lynch became one of HP's top 15 executive officers (Opp. at 45 (citing CC ¶¶ 45, 73)); (ii) during his approximately six months as HP's Executive Vice President of Information Management, Dr. Lynch was in charge of Autonomy within HP's Software Division, (Opp. at 44-45 (citing CC ¶ 45)); and (iii) HP fired Dr. Lynch because he "did not deliver positive results for HP's Software Division" (Opp. at 45 (citing CC ¶ 80)).[2]

As shown below, the unavoidable fact is that Plaintiffs have failed to allege any misrepresentation made by Dr. Lynch as the law requires, and they have failed to allege facts that could justify attributing the alleged misstatements of HP and its executives to Dr. Lynch under any cognizable legal theory. Indeed, even if all Plaintiffs' allegations are accepted as true, the misconduct of which Plaintiffs accuse Dr. Lynch is not properly redressed by means of a claim under Section 10(b), Rule 10b-5 or Section 20(a).

**ARGUMENT**

**I.**

**Plaintiffs Have Failed to State a Claim**
**against Dr. Lynch under Rule 10b-5(b)**

A.    **Dr. Lynch is not liable for statements made by HP's CEO and**
    **Chief Strategy and Technology Officer before the HP/Autonomy Merger.**

Plaintiffs argue that Dr. Lynch "made" statements actually uttered by HP's CEO (Apotheker) and HP's Chief Strategy and Technology Officer (Robison) during August 18, 2011

---

[2] Plaintiffs also cite to statements made by Defendant Meg Whitman in her motion to dismiss that Dr. Lynch "failed to meet license revenue projections for Autonomy," and that Dr. Lynch's "first full quarter leading Software . . . ended with mixed results." (Opp. at 45 (citing Dkt. No. 139 at 2).) Of course, Plaintiffs cannot rely on facts not alleged in the Complaint on this Motion. Although Plaintiffs offer no explanation, it appears Plaintiffs cite these statements to show that Dr. Lynch had a role in HP's post-acquisition accounting and thus had ultimate authority over HP's financial statements, HP's SEC filings and HP's public statements concerning Autonomy. Ms. Whitman's statements do not remotely support those propositions. At best, these statements convey Ms. Whitman's current view that Dr. Lynch was responsible for whether Autonomy met its financial projections during the two quarters he was employed by HP.

and September 13, 2011 conference calls that "relay[ed] Autonomy's financial results," on the theory that Autonomy's financial results were implicitly "attributable to Dr. Lynch." (Opp. at 44-45.) This argument fails because even if the Complaint alleged that Dr. Lynch was the source of the information contained in the alleged misstatements of Apotheker and Robison (it does not), the law is clear that supplying the information contained in the misstatements of others is not actionable under Section 10(b) or Rule 10b-5. Moreover, Plaintiffs have failed to allege any facts showing how Dr. Lynch, who was the then-CEO of Autonomy, controlled the CEO (and another officer) of HP before the merger.

*Janus Capital Group, Inc. v. First Derivative Traders* is clear on who "makes" (and thus can be held liable for) a statement for purposes of Rule 10b-5:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it . . . . One who prepares or publishes a statement on behalf of another is not its maker . . . . This rule might be best exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes the credit – or blame – for what is ultimately said.

131 S. Ct. 2296, 2302 (2011). Even Plaintiffs concede that *Janus* holds that "[o]ne 'makes' a statement by stating it." (Opp. at 46 n.72 (quoting *Janus*, 131 S. Ct. at 2302).)[3]

---

[3] Plaintiffs also concede that Dr. Lynch cannot be held liable under Section 10(b) for statements made by HP when he was not an officer of HP (Opp. at 44) yet nonetheless argue that Dr. Lynch is the maker of statements made by HP in August and September 2011, before he joined HP. Plaintiffs' position has no support and should be rejected. *See, e.g., Bartesch v. Cook*, Civ. No. 11-1173-RGA, 2013 WL 1750455, at *7 (D. Del. Apr. 23, 2013) ("[N]o fraud liability can exist against any defendant who was not a director or officer . . . at the time of the challenged statement because they would not have had the required 'ultimate authority over the statement, including its content and whether and how to communicate it.'") (quoting *Janus* 131 S. Ct. at 2302); *Petrie v. Elec. Game Card Inc.*, No. SACV 10-00252 DOC (RNBx), 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) (holding that individual defendants in Rule 10b-5 action "may not be held liable for statements made . . . before they affiliated with the company") (internal citation omitted); *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706-07 (9th Cir. 1999) (holding that former CEO could not be liable for statements made by company after his resignation where plaintiffs did not allege any facts to show how former CEO "controlled" the alleged misstatements made by the company after his resignation).

Moreover, *Janus* is clear that the maker of the statement alone is liable under Section 10(b) and Rule 10b-5. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, the Court held that there is no private action against aiders and abettors under Section 10(b). 511 U.S. 164 (1994). In *Janus*, the Court reasoned that, "for *Central Bank* to have any meaning, there must be some distinction between those who are primarily liable (and thus may be pursued in private suits) and those who are secondarily liable (and thus may not be pursued in private suits)." *Janus*, 131 S. Ct. at 2302 n.6.[4] The Court explained, "We draw a clean line between the two – the maker is the person or entity with ultimate authority over a statement ***and others are not***." *Id.* (emphasis added). In making its ruling, the *Janus* Court specifically held that a Rule 10b-5 claim does not lie against "a person who 'provides the false or misleading information that another person then puts into the statement.'" *Id.* at 2303 (internal citation omitted).

The facts of *Janus* are also instructive here. *Janus* concerned a Rule 10b-5 claim against the investment advisor of Janus Investment Fund ("JIF"). JIF had issued prospectuses to its investors that were alleged to contain misrepresentations concerning the intended actions of the investment advisor. *Id.* at 2300-01. Plaintiffs alleged that the investment advisor had "made" the statements in the prospectuses issued by its client, JIF, because the investment advisor "was significantly involved in preparing the prospectuses." *Id.* at 2305. The Court found that because JIF filed the prospectuses and nothing "on the face of the prospectuses indicate[d] that any statements [contained] therein came from [the investment advisor] rather than [JIF]," the investment advisor did not make any of the false statements contained in the prospectuses. *Id.* at 2304-05. In so ruling, the Court rejected plaintiffs' argument that the statements could be "indirectly" attributed to the investment advisor because, as a result of the "well-recognized and uniquely close relationship between a mutual fund and its investment adviser . . . an investment advisor should generally be understood to be the 'maker' of the statements by its clients . . . like

---

[4] The Court noted that suits against aiders and abettors who "contribute 'substantial assistance' to the making of a statement but do not actually make it – may be brought by the SEC . . . but not by private parties." *Janus*, 131 S. Ct. at 2302 (internal citation omitted).

- 4 -

a playwright whose lines are delivered by an actor." *Id.* at 2304 (internal quotation marks and citation omitted). The Court explained that "[i]n this case, we need not define precisely what it means to communicate a 'made' statement indirectly because none of the statements in the prospectuses were attributed, explicitly or implicitly, to [the investment advisor]." *Id.* at 2305 n.11. The Court held that "[m]ore may be required to find that a person or entity made a statement indirectly, but attribution is necessary," at the very least. *Id.*[5]

Cases in the Ninth Circuit and elsewhere since *Janus* make clear that allegations that a defendant directed or engaged in the deceptive acts that make the misstatements inevitable or provided the false information incorporated into misstatements of others are insufficient to support a claim under Rule 10b-5. *Curry v. Hansen Medical, Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012), is particularly instructive because its allegations are very similar to the instant case (though significantly more detailed than those alleged against Dr. Lynch).

In *Curry,* defendant Sells was the former Senior Vice President of Commercial Operations and one of only six executives at Hansen Medical, Inc. ("Hansen"). *Curry,* 2012 WL 3242447, at *2. The complaint alleged that Hansen engaged in fraudulent revenue recognition practices, specifically with respect to Hansen's software revenue, and that Sells directed and was a principal participant in the company's fraudulent accounting scheme. *Id.* The complaint contained detailed allegations concerning specific transactions in which Sells knowingly engaged or directed other Hansen employees to engage in activities designed to permit revenue to be recorded fraudulently. *Id.* Plaintiffs also alleged that Sells was a member of the disclosure committee and thus "had responsibility for the accurate and fair presentation of Hansen's press

---

[5] Plaintiffs cite *In re Allstate Life Insurance Co. Litigation*, No. CV-09-8162-PCT-GMS, 2012 U.S. Dist. LEXIS 72900 (D. Ariz. May 24, 2012), which it contends conflicts with *Janus.* (Opp. at n.68.) It does not. The court in *Allstate* found that, while the defendant was the maker of misstatements issued by others because, unlike the misstatements in *Janus,* those misstatements were expressly attributed to the defendant with the defendant's knowledge and approval. *Allstate,* 2012 U.S. Dist. LEXIS 72900, at *14-*15.

- 5 -

releases and SEC quarterly filings." *Id.* at *4. Plaintiffs argued that the "decisions Sells took to manipulate Hansen's financial results . . . made it necessary and inevitable that false and misleading statements regarding Hansen's financial statements would be communicated to investors." *Id.*

Sells argued that he could not be liable under Rule 10b-5 because plaintiffs did not allege that he made any statements. *Id.* Although plaintiffs cited a number of press releases and investor calls containing false or misleading statements or omissions, none were attributed to Sells. *Id.* Plaintiffs also alleged that Hansen's SEC filings were false and misleading, but Sells did not sign any of those filings. *Id.* Despite plaintiffs' detailed allegations concerning Sells's participation in Hansen's fraudulent accounting, the court dismissed the Rule 10b-5 claim for failure to "allege that Sells made a statement as required by *Janus*." *Id.* at *5. The court explained that "*Janus* clarifies that the lack of allegations that an individual was the maker of a statement is fatal to a Rule 10b-5(b) claim against that individual." *Id.*[6]

Here, the Complaint does not allege that Apotheker or Robison attributed their alleged misstatements to Dr. Lynch. Even had Plaintiffs alleged that Dr. Lynch was the source of the allegedly false information in the statements made by Apotheker and Robison, such allegations do not support a Section 10(b) or Rule 10b-5 claim under *Janus* because Dr. Lynch did not have

---

[6] Additional cases in this district and other courts in the Ninth Circuit agree with *Curry*. For example, *Jackson v. Fischer* holds that no Rule 10b-5 claim lies against a defendant who was the "source" of the false information that was communicated in the misstatement but who was not the speaker. *Jackson v. Fischer*, No. C 11-2753 PJH, 2013 WL 1089860, at *8 (N.D. Cal. March 15, 2013). Moreover, Plaintiffs' own cited authority agrees with *Curry*. *See, e.g., Allstate*, 2012 U.S. Dist. LEXIS 72900, at *23-25 (Opp. at n.68) (dismissing claim on motion for reconsideration in light of *Janus*, where defendant allegedly made substantial contributions to the misleading projections, but plaintiffs did "not allege[] facts which make it plausible that [defendant] made (*i.e.* had ultimate authority over) misleading statements"); *Haw. Ironworkers Annuity Trust Fund v. Cole*, Case No. 3:10CV371, 2011 U.S. Dist. LEXIS 98760, at *10-*16 (N.D. Ohio Sept. 1, 2011) (Opp. at 45) (citing *Curry* with approval and dismissing claim upon motion for reconsideration in light of *Janus* where corporate insiders accused of fraudulent accounting underlying misstatements did not have "ultimate authority over the contents of the statement").

- 6 -

"ultimate authority" over the statements. Indeed, it is difficult to imagine how Dr. Lynch – not yet even an HP employee – could be the person with "ultimate authority" over comments made by a *another company's* CEO and Chief Strategy and Technology Officer. (*See* CC ¶¶ 112, 117.)

### B. Dr. Lynch is not liable for alleged misstatements in HP's August 18, 2011 Press Release.

Plaintiffs also argue that Dr. Lynch had "ultimate authority" over another statement made by HP prior to Dr. Lynch's employment by HP, the 8.18.11 Press Release, again on the grounds that he was the source of the false information in the statements.

As discussed above, however, *Janus* makes clear that even if such allegations appeared in the Complaint (they do not), they would be insufficient to state a claim under Section 10(b) or Rule 10b-5. As shown above, *Janus* specifically held that contributing false and misleading information that is incorporated into a statement -- or even authoring the statement -- is not enough to find liability under Section 10(b) or Rule 10b-5. *See Janus*, 131 S. Ct. at 2303; *see also Curry* 2012 WL 3242447, at *4; *Jackson v. Fischer*, 2013 WL 1089860, at *8.

The Complaint does not contain a single allegation supporting Plaintiffs' argument that Dr. Lynch had ultimate authority over the 8.18.11 Press Release announcing that HP would acquire Autonomy, nor does the press release itself attribute any misstatement to Dr. Lynch. Indeed, the 8.18.11 Press Release appears to be an HP document in all respects. (Dkt. 169-3, at Ex. C.) The press release is printed on HP letterhead and copyrighted by HP. (*Id.*) The editorial contacts provided to obtain additional information are HP personnel; no contact information for Autonomy or Dr. Lynch is provided. (*Id.*) It announces that HP will be hosting a conference call concerning the acquisition and points readers to an HP website for further information about the transaction. (*Id.*) Moreover, the disclaimers on the press release relate only to HP and statements made by HP (*e.g.,* "HP assumes no obligation and does not intend to update any forward-looking statements"), and HP ultimately filed the press release in its own Form 8K. (*Id.*) It is hard to see how Dr. Lynch, at that point an officer of Autonomy, HP's counterparty in

an arm's length acquisition, could possibly have "ultimate authority" over an HP press release –

"including its content and whether and how to communicate it." *Janus*, 131 S. Ct. at 2302.

Although Plaintiffs do not mention it in their Opposition, the 8.18.11 Press Release

contains the only statement attributed to Dr. Lynch anywhere in the Complaint:

> "This is a momentous day in Autonomy's history," said Dr. Mike Lynch, chief executive officer and founder, Autonomy. "From our foundation in 1996, we have been driven by one shared vision: to fundamentally change the IT industry by revolutionizing the way people interact with information. HP shares this vision and provides Autonomy with the platform to bring our world-leading technology and innovation to a truly global stage, making the shift to a future age of the information economy a reality."

(Dkt. 169-3, at Ex. C at 3.) However, Plaintiffs do not allege that this statement was false or

misleading (or indeed, how it could be). *Curry*, 2012 WL 3242447, at *4 (The PSLRA requires

that the Complaint "'specify each statement alleged to have been misleading [and] the reason or

reasons why the statement is misleading'") (quoting 15 U.S.C. § 78u-4(b)(1)); *Meltzer*

*Investment v. Corinthian Colleges*, 540 F.3d 1049, 1070 (9th Cir. 2008) (same). As a result, this

statement cannot support Plaintiffs' claim against Dr. Lynch. *See In re Allstate Life Ins. Co.*

*Litig.*, 2012 U.S. Dist. LEXIS 72900, at *24-25 (Opp. at n.68; (dismissing Rule 10b-5 claim

under *Janus* against defendant who contributed data to fraudulent projections where the only

representation attributed to defendant in those projections was not alleged to be misleading)).

### C.   Dr. Lynch is not liable for statements he did not make during the time he was employed by HP.

Finally, Plaintiffs attempt to invoke the "group pleading doctrine" (although not by

name) to argue that misstatements in HP's SEC filings during the six months Dr. Lynch was

employed by HP after the Autonomy merger can be attributed not only to those who signed them

but also to Dr. Lynch, based on his job title, his position as one of HP's top 15 executives and

because HP fired him for failing to deliver positive results for Autonomy. (*See* Opp. at 44.)

"The group pleading doctrine allowed a presumption that false and misleading information

disseminated through documents were made by the collective action of the corporation's

- 8 -

officers." *Int'l Rectifier Corp. Secs. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *12 n.7 (C.D. Cal. May 23, 2008) (citing *In re GlenFed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995)).

Plaintiffs argument fails because group pleading is no longer viable in the Ninth Circuit (or in any jurisdiction in which a Court of Appeals has addressed the question) after *Janus, Tellabs* and the PSLRA. Indeed, no court in the Ninth Circuit has permitted attribution of a statement under the group pleading doctrine since *Janus* was decided. *See In re Am. Apparel, Inc. Shareholder Litig.*, No. CV 10-06352 MMM (JCGx), 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) ("Courts within the Ninth Circuit have . . . largely concluded that group pleading is not compatible with the PSLRA's requirements."); *Int'l Rectifier Corp. Secs. Litig.*, 2008 WL 4555794, at *12 n.7 ("[A]s this Court previously held, the group pleading doctrine did not survive the PSLRA."); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-65 (C.D. Cal. 2007) ("[T]his Court concludes that the group pleading doctrine can no longer be used in pleading cases under the PSLRA.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 n.6 (2007)); *Petrie v. Electronic Game Card Inc.*, No. SACV 10-00252 DOC (RNBx), 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) ("This Court hereby joins the chorus of voices rejecting the continued viability of the group pleading doctrine." (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004)).

Indeed, Plaintiffs' *own authority* rejects group pleading as a viable doctrine. *See In re Merck & Co.*, MDL No. 1658 (SRC), 2011 U.S. Dist. LEXIS 87578, at *83-4 (D.N.J. Aug. 8, 2011) (Opp. at 44-45) (rejecting plaintiffs' "patently insufficient" allegations of group pleading because "[t]he Third Circuit has expressly rejected the group pleading doctrine as inconsistent with the PSLRA's heightened pleading requirement." (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007)); *In re Am. Apparel, Inc. Shareholder Litig.*, 2013 WL 174119, at *25 (Opp. at 31, 46) (collecting cases inside and outside of the Ninth Circuit concluding that group pleading "did not survive the PSLRA"); *In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C.D. Cal. 2008) (Opp. at 31, 54) ("All of the Circuit courts that have expressly considered

- 9 -

whether group pleading is compatible with PSLRA have concluded that it is not," and "the

majority of reported district court cases in the Ninth Circuit appear to hold that the doctrine is no

longer viable.").

Notably, Plaintiffs cite no Ninth Circuit law supporting the survival of the group pleading

doctrine and instead rely on cases from the Southern District of New York. Even in New York,

however, group pleading is not a settled doctrine. *See, e.g., City of Roseville Emps.' Ret. Sys. v.*

*EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011) (holding that defendants who

did not sign a registration statement were not liable for its contents); *In re UBS AG Secs. Litig.*,

No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *10-11 (S.D.N.Y. Sept. 28, 2012) (rejecting the

application of the group pleading doctrine to a complaint that "contained a number of allegations

regarding Defendants['] . . . respective roles in the alleged mortgage-related securities fraud" but

"d[id] not allege that either executive made actionable material misstatements," noting that,

although the Second Circuit has never addressed whether group pleading survived the PSLRA,

"the majority view in the [SDNY] is wholly at odds with the view of each circuit court to have

squarely address the issue prior to *Janus*") (internal citations omitted).

Indeed, the primary case relied upon by Plaintiffs in support of their group pleading

argument, *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,

875 F. Supp. 2d 359 (S.D.N.Y. 2012) (Opp. at 44), was criticized by a fellow court in the same

district. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y.

2012)[7] (rejecting as "unpersuasive" the *Pontiac* court's conclusion that *Janus* "has no bearing on

how corporate officers who work together in the same entity can be held jointly responsible" for

---

[7] The remaining cases cited by Plaintiffs do not support their argument. In *In re Pfizer Inc. Secs. Litig.*, No. 04 Civ. 9866 (LTS)(HBP), 2013 U.S. Dist. LEXIS 49333, *40, n.10 (S.D.N.Y. Mar. 28, 2013), the court found that the defendants who did not sign the company's SEC filing were not liable for the misstatements contained in those filings. *United States SEC v. Landberg,* 836 F. Supp. 2d 148 (S.D.N.Y. 2011) relies on the group pleading doctrine but is a case brought by the SEC, not a private litigant, and thus is not relevant here. As the court notes, "the heightened pleading requirements set forth in the [PSLRA] . . . do not apply to actions filed by the SEC." *Id.* at 153 n.2 (internal citations omitted).

misstatements and holding that "only those officers whose signatures appear on misleading statements may be liable as the 'makers' of those statements") (internal quotation marks and citations omitted).

Finally, Plaintiffs argue that the statements of others should deemed to be "made" by Dr. Lynch in addition to those to whom the statement was expressly attributed because, under *Janus*, "'attribution' that is 'implicit from *surrounding circumstances* is strong evidence that a statement was made by' a defendant." (Opp. at 44 (citing *Janus*, 131 S. Ct. 2302) (emphasis added by Plaintiffs).) Plaintiffs' selective quotation mischaracterizes the actual sentence that appears in *Janus*, which, read in full, contradicts Plaintiffs' argument: "And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – *and only by – the party to whom it is attributed.*" *Janus*, 131 S. Ct. at 2302 (emphasis added to the portion of the sentence omitted by Plaintiffs). In other words, *Janus* clearly states that an attributed statement has one maker -- the person to whom it is attributed.

Plaintiffs nonetheless invoke group pleading in an attempt to hold Dr. Lynch responsible by virtue of his job title for the SEC filings made by HP during Dr. Lynch's six months of employment at HP. (*See* Opp. at 45-46.) However, Plaintiffs' failure to allege that Dr. Lynch signed HP's SEC filings, or even that he had any role in or responsibility for preparing, reviewing or approving them, is fatal to their claim. Plaintiffs' own authority holds that a defendant cannot be held liable under Rule 10b-5 for misstatements contained in SEC filings he did not sign simply by virtue of his job title. *See In re Pfizer Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 49333, at *40 n.10 (defendants who did not sign the company's SEC filing may not be held liable for the misstatements contained in those filings); *Haw. Ironworkers*, 2011 U.S. Dist. LEXIS 98760, at *10 n.3 (holding that Janus's definition of "make" "cannot be ignored simply because the defendants are corporate insiders," noting that to do so would result in a holding that "because defendants were corporate insiders, they are liable because they created the statement," which "would conflict directly with the Court in *Janus*").

Janus and courts in the Ninth Circuit agree that defendants cannot be held liable under Rule 10b-5 for SEC filings they did not sign. *See Janus*, 131 S. Ct. at 2304-05 (investment advisor who was the source of misstatements contained in client's SEC filing but who did not make the filing was not liable for the misstatements under Rule 10b-5); *Curry*, 2012 WL 3242447, at *4 (defendant, who was one of the top six executives in the company and who directed and engaged in the fraudulent accounting practices resulting in misstatements in SEC filings but who did not sign SEC filings was not liable for the misstatements contained in those filings under Rule 10b-5); *Petrie*, 2011 WL 165402, at *3 (dismissing claims against three defendants because plaintiffs failed to allege facts sufficient to show that defendants authored the press releases or signed the SEC filings at issue, particularly where "the Complaint specifically identifies other defendants as the signatories of the forms at issue").

## II.

### Plaintiffs Have Failed to State a Claim against Dr. Lynch under Section 20(a)

In his opening Motion, Dr. Lynch argued that, to state a claim under Section 20(a), Plaintiffs are required to allege that Dr. Lynch directly or indirectly controlled the person or entity committing the primary violation and that Plaintiffs' reliance on Dr. Lynch's title at HP, coupled with a boilerplate allegation of control, is not sufficient to satisfy this standard. (Dkt. No. 125, at 10.)

Plaintiffs do not dispute this legal standard (*see* Opp. at 54 (quoting *New Century*, 588 F. Supp. 2d at 1233)), nor do they dispute that the only allegations in support of their claim are Dr. Lynch's title – Executive Vice President – and his dates of employment (Opp. at 55-56). However, Plaintiffs cite no authority that holds that such bare-bones allegations are sufficient to plead a Section 20(a) claim.

In fact, the title of "Executive Vice President" has been repeatedly held insufficient to establish control sufficient to state a claim under Section 20(a), particularly where, as here, it appears that virtually every other one of the defendants in this case was senior to Dr. Lynch. *See*

1   *Int'l Rectifier Corp. Secs. Litig.*, 2008 WL 4555794, at *22 ("[Defendants'] position as

2   Executive Vice President, Global Sales and Marketing does not establish . . . control.") (citing *In*

3   *re Metawave Commc'ns Corp. Secs. Litig.*, 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003)

4   ("Titles of President of World Trade and Vice President for Worldwide Operations do not

5   establish . . . control.")); *Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1194

6   (C.D. Cal. 2007) ("[I]t is difficult for the Court to determine how, as a Vice President, Garn was

7   able to exercise control over the other 10b-5 Defendants when the other 10b-5 Defendants held

8   positions of Vice President or higher.").

9        And, the fact that Dr. Lynch had control of the Autonomy unit within HP does not

10  support a finding that he had control over HP's financial statements, press releases or conference

11  calls. *See Int'l Rectifier Corp. Secs. Litig.*, 2008 WL 4555794, at *22 (citing *In re Metawave*,

12  298 F. Supp. 2d at 1091). Indeed, Plaintiffs' own allegations state the opposite – that the other

13  defendants had control over and signed specific HP SEC filings. (*See, e.g.,* CC ¶¶ 111, 112,

14  115.)

15       The Section 20(a) claim must be dismissed.

16                                       **CONCLUSION**

17       For all the foregoing reasons, Dr. Lynch respectfully requests that this Court dismiss the

18  Consolidated Amended Complaint as against him.

19  Dated:   October 2, 2013             Respectfully submitted,

20                                   STEPTOE & JOHNSON LLP

21                                   By:  /s/ Jennifer Bonneville
                                     Jennifer Bonneville

22                                   *Attorneys for Defendant Dr. Michael Lynch*

23  ///

24  ///
    ///

25  ///
    ///

26  ///
    ///

27  ///
    ///

28

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2013, a true and correct copy of the foregoing instrument was forwarded to all known counsel of record by operation of the Court's electronic filing system.

/s/ Jennifer Bonneville
Jennifer Bonneville