WACHTELL, LIPTON, ROSEN & KATZ
MARC WOLINSKY (*pro hac vice*)
GEORGE T. CONWAY III (*pro hac vice*)
VINCENT G. LEVY (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel./Fax:  212.403.1000/2000
MWolinsky@wlrk.com
GTConway@wlrk.com
VGLevy@wlrk.com

FARELLA, BRAUN & MARTEL, LLP
NEIL A. GOTEINER, State Bar No. 83524
THOMAS B. MAYHEW, State Bar No. 183539
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Tel./Fax:  415.954.4400/4480
NGoteiner@fbm.com
TMayhew@fbm.com

*Attorneys for Defendant Hewlett-Packard Company*

COOLEY LLP
STEPHEN C. NEAL, State Bar No. 170085
JOHN C. DWYER, State Bar No. 136533
JEFFREY M. KABAN, State Bar No. 235743
ADAM C. TRIGG, State Bar No. 261498
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
Tel./Fax:  650.843.5000/849.7400
NealSC@cooley.com
DwyerJC@cooley.com
JKaban@cooley.com
ATrigg@cooley.com

*Attorneys for Defendant Margaret C. Whitman*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HP SECURITIES LITIGATION | Master File No. C-12-5980 CRB |
| | <u>Class Action</u> |
| | **AMENDED ANSWER** |
| This Document Relates to:  All Actions | |

Defendants Hewlett-Packard Company ("HP") and Margaret C. Whitman, by and through their counsel, respectfully submit this Amended Answer to the Consolidated Class Action Complaint (the "Complaint"). This Amended Answer replaces and supercedes the Answer that Defendants filed on January 10, 2013 (Docket No. 210).[1]

By decision and order dated November 26, 2013 (the "Dismissal Order"), the Court dismissed the Complaint as against all defendants other than HP and Ms. Whitman and dismissed all claims based on any statements made by HP or Ms. Whitman except certain statements made on May 23, 2012; June 5, 2012; and September 10, 2012. No part of this Answer is an admission that any of the Complaint's allegations remain relevant notwithstanding the Dismissal Order.

Defendants deny each and every allegation of the Complaint except with respect to those specific matters admitted herein. Notwithstanding anything to the contrary, defendants deny plaintiff's allegations to the extent that plaintiff's Complaint misquotes and/or mischaracterizes any document purportedly quoted or cited in the Complaint. In admitting that documents quoted in the Complaint contain the text quoted by plaintiff, defendants (1) do not admit that the original document(s) contain the italicization or other emphasis reflected in plaintiff's Complaint, and (2) do not intend to waive, and instead expressly reserve, the right to require plaintiff to rely on the original documents for all purposes, including without limitation summary judgment and/or trial.

1.    Defendants admit that Lead Plaintiff purports to bring this case as a class action and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1, and, on that basis, deny those allegations.

2.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations of paragraph 2, and, on that basis, deny those allegations.

3.    Defendants deny the allegations of paragraph 3 and further state that, by decision and order dated November 26, 2013 (the "Dismissal Order"), the Court dismissed the Complaint as against all defendants other than HP and Ms. Whitman and dismissed all claims based

---

[1]    Defendants have agreed to file this Amended Answer in response to certain objections made by Plaintiff's counsel and in a good-faith effort to avoid wasting judicial resources. Neither the filing of this Amended Answer nor anything contained herein shall be deemed an admission that the Answer filed on January 10, 2013 was in any way deficient.

on any statements made by HP or Ms. Whitman except certain statements made on May 23, 2012; June 5, 2012; and September 10, 2012.

4. The allegations in paragraph 4 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 4.

5. Defendants admit that (1) Ms. Whitman participated in an earnings call on November 20, 2012 during which HP made a number of disclosures and, among other things, released its 4Q12 earnings; (2) according to a transcript of that call, Ms. Whitman stated, among other things, that (a) HP had announced that day "an $8.8 billion noncash impairment charge related to Autonomy"; (b) "The majority of this impairment charge is linked to serious accounting improprieties, disclosure failures and outright misrepresentations that occurred prior to HP's acquisition of Autonomy and the associated impact on the expected financial performance of the business over the long term"; and (c) "The balance of the impairment charge is linked to the recent trading value of HP Stock"; (3) according to the same transcript, Ms. Lesjak stated, among other things, that "over $5 billion" of the $8.8 billion was "related to accounting impropries, disclosure failures and misrepresentations that occurred prior to HP's acquisition of Autonomy and the associated impact on the financial performance of the business over the long term"; (4) HP's stock closed at $13.30 on November 19, 2012; (5) HP's stock closed at $11.71 on November 20, 2012; and (6) approximately 155 million shares traded on November 20, 2012. Defendants otherwise deny the allegations of paragraph 5 and specifically deny that the text quoted in paragraph 5 fairly and completely summarizes the content of the referenced documents.

6. No response is required to the allegations of paragraph 6 in view of the Dismissal Order; to the extent a response is required, defendants respectfully refer the Court to the referenced documents for their content and otherwise deny the allegations of paragraph 6.

7. Defendants deny the allegations of paragraph 7.

8. Defendants admit that (1) Lynch was the founder and chief executive of Autonomy before the acquisition; (2) Lynch became Executive Vice President for Information

Management after the acquisition and held that position until May 23, 2012; (3) on November 20, 2012, HP issued a statement regarding the Autonomy impairment charge; and (4) this statement noted, among other things, that (a) HP was "extremely disappointed to find that some former members of Autonomy's management team used accounting improprieties, misrepresentations and disclosure failures to inflate the underlying financial metrics of [Autonomy], prior to Autonomy's acquisition by HP"; and (b) "[t]he majority of th[e] [Autonomy] impairment charge, more than $5 billion, is linked to serious accounting improprieties, misrepresentations and disclosure failures discovered by an internal investigation by HP and forensic review into Autonomy's accounting practices prior to its acquisition by HP." Defendants otherwise deny the allegations of paragraph 8 and specifically deny that the text quoted in paragraph 8 fairly and completely summarizes the content of the referenced documents.

9. Defendants admit the allegations of paragraph 9.

10. No response is required to the allegations of paragraph 10 in view of the Dismissal Order.

11. No response is required to the allegations of paragraph 11 in view of the Dismissal Order.

12. No response is required to the allegations of paragraph 12 in view of the Dismissal Order.

13. No response is required to the allegations of paragraph 13 in view of the Dismissal Order.

14. No response is required to the allegations of paragraph 14 in view of the Dismissal Order.

15. Defendants admit that (1) Lynch was the founder and chief executive of Autonomy before the acquisition; (2) Autonomy's shares traded on the London Stock Exchange before its acquisition by HP; (3) on August 18, 2011, HP issued a press release that was made an exhibit to a Form 8-K filed the same day with the SEC; and (4) this August 18, 2011 press release contained the text quoted in paragraph 15. Defendants otherwise deny the allegations of paragraph

15 and specifically deny that the text quoted in paragraph 15 fairly and completely summarizes the content of the referenced documents.

16.     No response is required to the allegations of paragraph 16 in view of the Dismissal Order.

17.     No response is required to the allegations of paragraph 17 in view of the Dismissal Order.

18.     No response is required to the allegations of paragraph 18 in view of the Dismissal Order.

19.     No response is required to the allegations of paragraph 19 in view of the Dismissal Order.

20.     No response is required to the allegations of paragraph 20 in view of the Dismissal Order.

21.     No response is required to the allegations of paragraph 21 in view of the Dismissal Order.

22.     No response is required to the allegations of paragraph 22 in view of the Dismissal Order.

23.     No response is required to the allegations of paragraph 23 in view of the Dismissal Order.

24.     No response is required to the allegations of paragraph 24 in view of the Dismissal Order.

25.     No response is required to the allegations of paragraph 25 in view of the Dismissal Order.

26.     Defendants admit that (1) HP announced in September 2010 that the HP board of directors had elected Léo Apotheker as Chief Executive Officer and President of HP, effective November 1, 2010; (2) Mr. Apotheker had worked previously at SAP, a German software company, including as CEO, until his resignation in 2010; (3) on September 21, 2011, the *New York Times* published the article cited in paragraph 26; and (4) this September 21, 2011 article contained the text

quoted in paragraph 26. Defendants otherwise deny the allegations of paragraph 26 and specifically deny that the text quoted in paragraph 26 fairly and completely summarizes the content of the referenced document.

27. Defendants admit that (1) HP took impairment charges related to Palm and EDS in November 2011 and August 2012, respectively; and (2) HP issued a press release on March 14, 2011, the content of which remains publicly available. Defendants otherwise deny the allegations of paragraph 27 and specifically deny that the text quoted in paragraph 27 fairly and completely summarizes the content of the referenced documents.

28. No response is required to the allegations of paragraph 28 in view of the Dismissal Order.

29. No response is required to the allegations of paragraph 29 in view of the Dismissal Order.

30. No response is required to the allegations of paragraph 30 in view of the Dismissal Order.

31. Defendants admit that (1) HP's board authorized Apotheker to evaluate a potential acquisition of Autonomy, (2) the project was coined "Project Tesla," and (3) HP retained Barclays Bank PLC and Perella Weinberg Partners to, among other things, assist HP in evaluating a possible acquisition of Autonomy. Defendants otherwise deny the allegations of paragraph 31.

32. Defendants admit (1) that Apotheker participated in conference calls on May 17, 2011 and June 2, 2011 and that transcripts of those calls contain the text quoted in the first sentence of paragraph 32 and attributed to those calls, (2) that *Fortune* issued an article on May 8, 2012 and that this article contains the quotes attributed in the second and third sentences of paragraph 32 to Apotheker and Lesjak, respectively, and (3) that Lesjak objected to the proposed acquisition of Autonomy in a board meeting on the grounds that it was too expensive and the timing was not right. Defendants otherwise deny the allegations of paragraph 32.

33. Defendants deny the allegations of paragraph 33.

34.     No response is required to the allegations of paragraph 34 in view of the Dismissal Order.

35.     No response is required to the allegations of paragraph 35 in view of the Dismissal Order.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants admit that the *Wall Street Journal* issued an article on January 21, 2013, which included the text quoted in paragraph 37 attributed to that article. Defendants otherwise deny the allegations of paragraph 37.

38.     Defendants deny the allegations of paragraph 38.

39.     Defendants admit that certain members of HP's diligence team, including from KPMG, spoke with Deloitte as part of the due diligence and that, during the call, Deloitte mentioned briefly that (a) an unidentified whistleblower had made allegations to Autonomy and (b) Deloitte had investigated those allegations and found them baseless. Defendants otherwise deny the allegations of paragraph 39.

40.     Defendants deny the first sentence of paragraph 40. Defendants lack sufficient information to form a belief as to the remaining allegations of paragraph 40 and, on that basis, deny those allegations.

41.     Defendants admit that Apotheker participated in a conference call on September 13, 2011, a transcript of which is publicly available. Defendants otherwise deny the allegations of paragraph 41 and specifically deny that (1) paragraph 41 accurately quotes the transcript of the conference call, and (2) the text quoted in paragraph 41 fairly and completely summarizes what Apotheker said.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants admit that Lesjak objected to the Autonomy acquisition but otherwise deny the allegations of paragraph 43.

44.     Defendants admit that on August 18, 2011, HP issued a press release, which was entitled "HP To Acquire Leading Enterprise Information Management Software Company

Autonomy Corporation plc" and was made an exhibit to a Form 8-K filed the same day with the SEC, which remains publicly available. Defendants otherwise deny the allegations of paragraph 44 and specifically deny that the text quoted in paragraph 44 fairly and completely summarizes the content of the referenced documents.

45. Defendants admit that (1) HP's stock closed at $29.51 per share on August 18, 2011 and $23.60 per share on August 19, 2011; (2) the trading volume for HP stock on August 19, 2011 was approximately 129 million shares; (3) Autonomy's stock price rose on August 19, 2011, reflecting in part the premium transaction then on offer; (4) HP announced on August 18, 2011 that Lynch would continue to lead Autonomy, which would operate separately, and Lynch would report directly to HP's CEO; (5) after the acquisition closed and until his termination in May 2012, Lynch (a) held the title of Executive Vice President of Information Management at HP, (b) continued to lead Autonomy, which operated separately, and (c) reported directly to HP's CEO; and (6) when the deal closed, Lynch made approximately $800 million. Defendants further admit that on November 30, 2012, the *New York Times* published the article cited in paragraph 45 and that this article contained the text quoted in paragraph 45. Defendants otherwise deny the allegations of paragraph 45 and specifically deny that the text quoted in paragraph 45 fairly and completely summarizes the content of the referenced documents.

46. Defendants admit that (1) HP's offer for Autonomy represented a premium of approximately 64% to the closing price of Autonomy shares on August 17, 2011 or approximately 58% when compared to Autonomy's prior one-month average closing price, and (2) certain analysts reacted negatively to the announcement that HP was acquiring Autonomy. Defendants otherwise deny the allegations of paragraph 46.

47. Defendants admit that Lesjak did not participate in a road show that occurred approximately one week after the transaction was announced but otherwise deny the first sentence of paragraph 47. Defendants also admit that, before the acquisition, Autonomy's publicly reported financial statements made the representation quoted in the last sentence of paragraph 47, but otherwise deny the allegations of that sentence. Defendants lack information sufficient to form a

belief as to the truth of the allegation that U.K. research analyst Alan Pelz-Sharpe received an anonymous email from "Joe Bloggs," and on that basis deny the remaining allegations of paragraph 47.

48. Defendants lack information sufficient to form a belief as to the truth of the allegations of paragraph 48, and on that basis deny the allegations contained therein.

49. Defendants admit that a blog entitled "Another look at the Autonomy IDOL OEM business" was posted on the Internet on or about August 29, 2011, and that the blog posted included the text quoted in paragraph 49. Defendants otherwise deny the allegations of paragraph 49 and specifically deny that the text quoted in paragraph 49 fairly and completely summarizes the content of the referenced documents

50. No response is required to the allegations of paragraph 50 in view of the Dismissal Order.

51. No response is required to the allegations of paragraph 51 in view of the Dismissal Order.

52. No response is required to the allegations of paragraph 52 in view of the Dismissal Order.

53. No response is required to the allegations of paragraph 53 in view of the Dismissal Order.

54. No response is required to the allegations of paragraph 54 in view of the Dismissal Order.

55. No response is required to the allegations of paragraph 55 in view of the Dismissal Order.

56. No response is required to the allegations of paragraph 56 in view of the Dismissal Order.

57. No response is required to the allegations of paragraph 57 in view of the Dismissal Order.

58. No response is required to the allegations of paragraph 58 in view of the Dismissal Order.

59. No response is required to the allegations of paragraph 59 in view of the Dismissal Order.

60. No response is required to the allegations of paragraph 60 in view of the Dismissal Order.

61. No response is required to the allegations of paragraph 61 in view of the Dismissal Order.

62. No response is required to the allegations of paragraph 62 in view of the Dismissal Order.

63. No response is required to the allegations of paragraph 63 in view of the Dismissal Order.

64. No response is required to the allegations of paragraph 64 in view of the Dismissal Order.

65. No response is required to the allegations of paragraph 65 in view of the Dismissal Order.

66. No response is required to the allegations of paragraph 66 in view of the Dismissal Order.

67. No response is required to the allegations of paragraph 67 in view of the Dismissal Order.

68. Defendants admit that (1) on September 22, 2011, Whitman replaced Apotheker as CEO of HP; (2) *AllThingsD* published an article purporting to summarize an interview with Whitman and Lane on September 22, 2011, and this article contained the text quoted in paragraph 68 attributed to the *AllThingsD* article; (3) on September 22, 2011, Lane participated in an investor call; and (4) a transcript of that September 22, 2011 call contains the text quoted in paragraph 68 attributed to the September 22, 2011 call. Defendants otherwise deny the allegations

of paragraph 68 and specifically deny that the text quoted in paragraph 68 fairly and completely summarizes the content of the referenced documents..

69.     Defendants admit that in response to the market's reaction to HP's announcement that it was acquiring Autonomy, HP asked certain of its advisors whether HP could back out of the deal and was told that it could not. Defendants otherwise deny the allegations of paragraph 69.

70.     No response is required to the allegations of paragraph 70 in view of the Dismissal Order.

71.     No response is required to the allegations of paragraph 71 in view of the Dismissal Order.

72.     No response is required to the allegations of paragraph 72 in view of the Dismissal Order.

73.     Defendants admit that (1) HP asked certain of its advisors whether HP could back out of the deal and was told that it could not; and (2) Autonomy's financial results were reported as part of HP's Information Management division's Software Segment after the acquisition closed. Defendants otherwise deny the allegations of paragraph 73 and specifically deny that the text quoted in paragraph 73 fairly and completely summarizes the content of the referenced document.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants admit that (1) in November 2011, HP's auditors at Ernst and Young reviewed certain of Deloitte's Autonomy work papers; (2) post-acquisition, KPMG and E&Y reviewed certain accounting issues associated with Autonomy's transition to GAAP from IFRS; (3) post-acquisition, Paul Curtis reviewed certain accounting issues related to Autonomy's transition to GAAP from IFRS; (4) a November 21, 2012 article published on *ZDNet* contained the text quoted in paragraph 75; (5) E&Y has earned approximately the fees noted in footnote 26; and (6) a publicly available letter purportedly from CtW Investment Group to Rajiv Gupta contained the text quoted in footnote 26. Defendants otherwise deny the allegations of paragraph 75 and specifically deny that

the text quoted in paragraph 75 fairly and completely summarizes the content of the referenced documents.

76.     Defendants admit that (1) on September 22, 2011, Ms. Whitman participated in a conference call, and a transcript of that September 22, 2011 call contains the text quoted in paragraph 76 attributed to the September 22, 2011 call; and (2) on November 21, 2011, Ms. Whitman participated in a separate conference call, and a transcript of that November 21, 2011 call contains the text quoted in paragraph 76 attributed to the November 21, 2011 call.  Defendants otherwise deny the allegations of paragraph 76 and specifically deny that the text quoted in paragraph 76 fairly and completely summarizes the content of the referenced documents.

77.     Defendants admit that Autonomy's revenues and margin fell below expectations after HP's acquisition of Autonomy closed and admit that HP's publicly disclosed financial statements are accurate, but otherwise deny the allegations of paragraph 77.

78.     Defendants admit that that (1) on October 3, 2012, George Kadifa, then HP's Executive Vice President for Software, gave a presentation in which he stated, among other things, that HP's license revenues were approximately 32% of HP's software revenues; (2) HP stated in Forms 10-Q filed with the SEC that net revenues in the Software segment from licenses increased by (a) 3% for the three months ended January 31, 2011, (b) 29% for the three months ended April 30, 2011, and (c) 29% for the three months ended July 31, 2011; and (3) HP stated in Forms 10-Q filed with the SEC that net revenues in the Software segment from licenses increased by (a) 12% for the three months ended January 31, 2012, (b) 7% for the three months ended April 30, 2012, and (c) 2% for the three months ended July 31, 2012.  Defendants otherwise deny the allegations of paragraph 78.

79.     Defendants admit that (1) Ms. Lesjak participated in an earnings call on February 22, 2012; (2) according to a transcript of this February 22, 2012 call, Ms. Lesjak stated, among other things, that "first quarter operating profit for Software was $162 million, or 17.1% of revenue, unfavorably impacted by acquisition-related integration costs and accounting adjustments, as well as a lower mix of license revenue in the quarter"; (3) HP's Form 10-Q for the three months

ended January 31, 2012 stated, among other things, that "Software gross margin decreased due primarily to a lower mix of license revenue and higher acquisition-related deferred revenue write-downs, the effect of which was partially offset by rate increases in services"; (4) HP's Form 10-Q for the three months ended April 30, 2012 contains the text quoted in paragraph 79; and (5) HP's Form 10-Q for the three months ended July 31, 2012 contains the text quoted in paragraph 79. Defendants otherwise deny the allegations of paragraph 79 and specifically deny that the text quoted in paragraph 79 fairly and completely summarizes the content of the referenced documents.

80. Defendants admit that (1) HP terminated the employment of Lynch on May 23, 2012, (2) later that same day, Ms. Whitman participated in an earnings call, transcripts of which are publicly available; (3) a senior member of Autonomy's leadership team came forward on May 25, 2012 and raised questions to HP general counsel John Schultz about business practices at Autonomy prior to its acquisition by HP; (4) Mr. Schultz reported this to Ms. Whitman thereafter; and (5) HP subsequently engaged PwC to conduct a forensic review of Autonomy's historical financial results. Defendants otherwise deny the allegations of paragraph 80 and specifically deny that the text quoted in paragraph 80 fairly and completely summarizes the content of the referenced documents.

81. Defendants admit that on May 29, 2012, CRN issued an article that contained the text quoted in paragraph 81 attributed to the CRN article. Defendants further admit that *AllThingsD* published an article purporting to summarize an interview with Meg Whitman on June 5, 2012 and that this article contained the text quoted in paragraph 81 attributed to the *AllThingsD* article. Defendants otherwise deny the allegations of paragraph 81 and specifically deny that the text quoted in paragraph 81 fairly and completely summarizes the content of the referenced documents.

82. Defendants admit that (1) Ms. Whitman participated in an earnings call on August 22, 2012; (2) a transcript of that call contains the text quoted in paragraph 82 attributed to the August 22, 2012 call; (3) during the same call, HP warned that it could record a goodwill impairment in the Software segment; and (4) following the earnings call, Jefferies issued a report that contained the text quoted in paragraph 82 attributed to the Jefferies report. Defendants

otherwise deny the allegations of paragraph 82 and specifically deny that the text quoted in paragraph 82 fairly and completely summarizes the content of the referenced documents.

83. Defendants admit that on October 24, 2012, the *Dow Jones News Service* issued the article cited in paragraph 83 and that this article contained the text quoted in paragraph 83. Defendants otherwise deny the allegations of paragraph 83 and specifically deny that the text quoted in paragraph 83 fairly and completely summarizes the content of the referenced documents.

84. Defendants admit that (1) Ms. Whitman participated in an earnings call on November 20, 2012; and (2) according to a transcript of that call, Ms. Whitman stated, among other things, that "[W]e announced today an $8.8 billion noncash impairment charge related to Autonomy. Let me spend a moment giving you some detail about this situation. The majority of this impairment charge is linked to serious accounting improprieties, disclosure failures, and outright misrepresentations that occurred prior to HP's acquisition of Autonomy and the associated impact on the expected financial performance of the business over the long term. The balance of the impairment charge is linked to the recent trading value of HP stock. These improprieties were discovered through an internal investigation after a senior member of Autonomy's leadership team came forward following the departure of Mike Lynch on May 23. Based on this information, HP initiated an intense internal investigation into the allegations, including a third-party forensic review of Autonomy's historical financial results. HP has contacted the SEC's enforcement division and the UK's Serious Fraud Office. We have requested that both agencies open criminal and civil investigations into this matter. In addition, HP intends to seek redress against various parties in the appropriate civil courts to recoup what we can for our shareholders." Defendants otherwise deny the allegations of paragraph 84 and specifically deny that the text quoted in paragraph 84 fairly and completely summarizes the content of the referenced documents.

85. Defendants admit that (1) on November 20, 2012, HP issued a statement regarding the Autonomy impairment charge; and (2) HP stated, among other things, that (a) "Th[ere] appears to have been a willful effort on behalf of certain former Autonomy employees to inflate the underlying financial metrics of the company in order to mislead investors and potential buyers"; (b)

this apparent "willful effort to mislead investors and potential buyers … severely impacted HP management's ability to fairly value Autonomy at the time of the deal"; and (c) "HP now believes that Autonomy was substantially overvalued at the time of its acquisition due to the misstatement of Autonomy's financial performance, including its revenue, core growth rate and gross margins, and the misrepresentation of its business mix." Defendants otherwise deny the allegations of paragraph 85 and specifically deny that the text quoted in paragraph 85 fairly and completely summarizes the content of the referenced documents.

86.     Defendants admit that (1) Ms. Whitman participated in an earnings call on November 20, 2012; and (2) a transcript of that call contains the text quoted in paragraph 86. Defendants otherwise deny the allegations of paragraph 86 and specifically deny that the text quoted in paragraph 86 fairly and completely summarizes the content of the referenced documents.

87.     Defendants admit that (1) Schultz, HP's general counsel, spoke to news reporters on November 20, 2012; (2) according to news articles, Schultz told reporters that HP's internal investigation had discovered that more than $200 million of Autonomy's revenue had been improperly recorded over a two-year period starting in 2009; and (3) those news articles contained the quoted text in paragraph 87. Defendants otherwise deny the allegations of paragraph 87 and specifically deny that the text quoted in paragraph 87 fairly and completely summarizes the content of the referenced documents.

88.     Defendants admit that (1) HP has provided information to the SEC and the DOJ in connection with their investigations of accounting and other improprieties at Autonomy prior to its acquisition by HP; and (2) investigations by both of those agencies, as well as by the U.K. Serious Fraud Office, are ongoing. Defendants otherwise deny the allegations of paragraph 88; deny that the text quoted in paragraph 88 fairly and completely summarizes the content of the referenced documents; and specifically deny that Whistleblower No. 4 came forward on May 23, 2012.

89.     Defendants admit that (1) Ms. Whitman participated in an interview with *CNBC News* on November 20, 2012; (2) a rough transcript of that interview contains the text quoted in paragraph 89 attributed to Ms. Whitman; and (3) *Forbes* issued an article on November 20, 2012

that contained the text quoted in paragraph 89 attributed to the *Forbes* article. Defendants otherwise deny the allegations of paragraph 89 and specifically deny that the text quoted in paragraph 89 fairly and completely summarizes the content of the referenced documents.

90. Defendants deny the allegations of paragraph 90.

91. Defendants admit that (1) on November 22, 2012, Reuters published the article cited in paragraph 91 ; and (2) the article contained the text quoted in paragraph 91. Defendants otherwise deny the allegations of paragraph 91 and specifically deny that the text quoted in paragraph 91 fairly and completely summarizes the content of the referenced documents.

92. Defendants admit that (1) on November 26, 2012, the *Wall Street Journal* published the article cited in paragraph 92; and (2) this article contained the text quoted in paragraph 92 attributed to the *Wall Street Journal* article. Defendants further admit that, in November 2012, *Fortune* published the article cited in paragraph 92 and this article contained the text quoted in paragraph 92 attributed to the *Fortune* article. Defendants otherwise deny the allegations of paragraph 92 and specifically deny that the text quoted in paragraph 92 fairly and completely summarizes the content of the referenced documents.

93. No response is required to the allegations of paragraph 93 in view of the Dismissal Order.

94. No response is required to the allegations of paragraph 94 in view of the Dismissal Order.

95. No response is required to the allegations of paragraph 95 in view of the Dismissal Order.

96. Defendants admit that on December 3, 2012, the *San Jose Mercury News* published the article cited in paragraph 96. Defendants otherwise deny the allegations of paragraph 96 and specifically deny that (1) paragraph 96 accurately quoted from the *Mercury News* article and (2) the text in paragraph 96 fairly and completely summarizes the content of the referenced documents.

97.     No response is required to the allegations of paragraph 97 in view of the Dismissal Order.

98.     No response is required to the allegations of paragraph 98 in view of the Dismissal Order.

99.     No response is required to the allegations of paragraph 99 in view of the Dismissal Order.

100.     Defendants admit that (1) Lynch made approximately $800 million when HP acquired Autonomy; (2) the website AutonomyAccounts.org issued the document dated November 27, 2012 cited in paragraph 100; and (3) this document contained the text quoted in paragraph 100. Defendants otherwise deny the allegations of paragraph 100 and specifically deny that anything that Michael Lynch has published on his website is truthful.

101.     Defendants admit that a December 14, 2012 *Bloomberg* article contained the text quoted in paragraph 101.  Defendants otherwise deny the allegations of paragraph 101 and specifically deny that the text quoted in paragraph 101 fairly and completely summarizes the content of the referenced document.

102.     Defendants admit that (1) the website AutonomyAccounts.org issued the document dated March 30, 2013 cited in paragraph 102; and (2) this document contained the text quoted in paragraph 102.  Defendants otherwise deny the allegations of paragraph 102 and specifically deny that anything that Michael Lynch has published on his website is truthful.

103.     Defendants deny the allegations of paragraph 103.

104.     The allegations in paragraph 104 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants admit that plaintiff purports to assert claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5; and otherwise deny the allegations of paragraph 104.

105.     Defendants admit that venue is proper in this District.

106.   The allegations in paragraph 106 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 106.

107.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations of paragraph 107, and, on that basis, deny those allegations.

108.   Defendants admit the allegations in the first three sentences of paragraph 108. Defendants further admit that HP's stock trades on NASDAQ.  The remaining allegations in paragraph 108 constitute conclusions of law as to which no response is required.

109.   No response is required to the allegations of paragraph 109 in view of the Dismissal Order.

110.   Defendants (1) admit that Ms. Whitman is, and has been since September 22, 2011, HP's President, CEO, and Director, that Ms. Whitman became HP's President and CEO immediately after Mr. Apotheker's termination was officially announced on September 22, 2011, and that Ms. Whitman served as a member of HP's Board since January 2011; (2) admit that Ms. Whitman served as a part-time strategic advisor to Kleiner Perkins Caufield & Byers, a private equity firm, between March 2011 and September 2011; and (3) otherwise deny the allegations of paragraph 110.

111.   Defendants admit that (1) Ms. Whitman signed HP's 2012 annual report on Form 10-K; (2) Ms. Whitman participated on the following earnings conference calls:  (i) May 23, 2012 conference call, (ii) August 22, 2012 conference call, and (iii) November 20, 2012 conference call; and (3) Ms. Whitman also participated at an October 3, 2012 analyst meeting.  Defendants otherwise deny the allegations of paragraph 111.

112.   No response is required to the allegations of paragraph 112 in view of the Dismissal Order.

113.   No response is required to the allegations of paragraph 113 in view of the Dismissal Order.

114.     No response is required to the allegations of paragraph 114 in view of the Dismissal Order.

115.     No response is required to the allegations of paragraph 115 in view of the Dismissal Order.

116.     No response is required to the allegations of paragraph 116 in view of the Dismissal Order.

117.     No response is required to the allegations of paragraph 117 in view of the Dismissal Order.

118.     No response is required to paragraph 118.

119.     No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 119 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 119 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 119.

120.     No response is required to the pre-May 23, 2012 and the allegations with respect to all of the Insider Defendants allegations of paragraph 120 in view of the Dismissal Order. To the extent a response is required, defendants state that the allegations in paragraph 120 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 120.

121.     No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 121 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 121 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 121.

122.     No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 122 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 122

constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 122.

123.    No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 123 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 123 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 123.

124.    No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 124 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 124 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 124.

125.    No response is required to the pre-May 23, 2012 allegations and the allegations with respect to all of the Insider Defendants of paragraph 119 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in the first and second sentences of paragraph 125 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants deny the allegations of paragraph 125.  Defendants incorporate their answers to § II, *supra*, by reference.

126.    The allegations in paragraph 126 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants respectfully refer the Court to the referenced documents, statutes, and regulations for their content; and otherwise deny the allegations of paragraph 126.

127.    Defendants deny the allegations of paragraph 127.

128.    No response is required to the pre-May 23, 2012 allegations of paragraph 128 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 128 constitute conclusions of law as to which no response is required;

respectfully refer the Court to the referenced accounting literature for its content; and otherwise deny the allegations of paragraph 128.

129.     Defendants respectfully refer the Court to the referenced accounting literature for its content and otherwise deny the allegations of paragraph 129.

130.     Defendants respectfully refer the Court to the referenced accounting literature for its content and otherwise deny the allegations of paragraph 130.

131.     Defendants respectfully refer the Court to the referenced accounting literature for its content and otherwise deny the allegations of paragraph 131.

132.     No response is required to the pre-May 23, 2012 allegations of paragraph 132 in view of the Dismissal Order.  To the extent a response is required, defendants state that the allegations in paragraph 132 constitute conclusions of law as to which no response is required.

133.     No response is required to the pre-May 23, 2012 allegations of paragraph 133 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to the referenced accounting literature for its content and otherwise deny the allegations of paragraph 133.

134.     Defendants deny the allegations of paragraph 134.

135.     Defendants deny the allegations of paragraph 135.

136.     No response is required to the allegations of paragraph 136 in view of the Dismissal Order.  In addition, the allegations in paragraph 136 constitute conclusions of law as to which no response is required.  To the extent a response is required, defendants respectfully refer the Court to the referenced accounting literature for its content and otherwise deny the allegations of paragraph 136.

137.     Defendants deny the allegations of paragraph 137.

138.     No response is required to the pre-May 23, 2012 allegations of paragraph 138 in view of the Dismissal Order.  To the extent a response is required, defendants deny the allegations of paragraph 138.

139.    No response is required to the pre-May 23, 2012 allegations of paragraph 139 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to HP's November 20, 2012 statements concerning Autonomy and otherwise deny the allegations of paragraph 139.

140.    Defendants deny the allegations of paragraph 140.

141.    Defendants deny the allegations of paragraph 141.

142.    No response is required to the allegations of paragraph 142 in view of the Dismissal Order.

143.    No response is required to the allegations of paragraph 143 in view of the Dismissal Order.

144.    No response is required to the pre-May 23, 2012 allegations of paragraph 144 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to the referenced document for its content and otherwise deny the allegations of paragraph 144.

145.    No response is required to the allegations of paragraph 145 in view of the Dismissal Order.

146.    No response is required to the allegations of paragraph 146 in view of the Dismissal Order.

147.    No response is required to the allegations of paragraph 147 in view of the Dismissal Order; to the extent a response is required, defendants respectfully refer the Court to the referenced document for its content and to publicly available financial information about Autonomy; and otherwise deny the allegations of paragraph 147.

148.    No response is required to the allegations of paragraph 148 in view of the Dismissal Order.

149.    No response is required to the allegations of paragraph 149 in view of the Dismissal Order.

150.    No response is required to the allegations of paragraph 150 in view of the Dismissal Order.

151.    No response is required to the allegations of paragraph 151 in view of the Dismissal Order.

152.    Defendants deny the allegations of paragraph 152.

153.    No response is required to the pre-May 23, 2012 allegations of paragraph 153 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to the referenced documents for their content and otherwise deny the allegations of paragraph 153.

154.    Defendants respectfully refer the Court to the referenced document for its content and otherwise deny the allegations of paragraph 154.

155.    Defendants deny the allegations of paragraph 155.

156.    Defendants respectfully refer the Court to the referenced document for its content and otherwise deny the allegations of paragraph 156.

157.    Defendants deny the allegations of paragraph 157.

158.    Defendants deny the allegations of paragraph 158.

159.    Defendants deny the allegations of paragraph 159.

160.    Defendants deny the allegations of paragraph 160.

161.    Defendants admit that (1) on November 20, 2012, HP issued a statement regarding the Autonomy impairment charge; and (2) this statement contained the text quoted in paragraph 161.  Defendants otherwise deny the allegations of paragraph 161 and specifically deny that the text quoted in paragraph 161 fairly and completely summarizes the content of the referenced documents.

162.    Defendants deny the allegations of paragraph 162.

163.    No response is required to the allegations of paragraph 163 in view of the Dismissal Order.

164.     No response is required to the allegations of paragraph 164 in view of the Dismissal Order.

165.     No response is required to the allegations of paragraph 165 in view of the Dismissal Order.

166.     Defendants respectfully refer the Court to HP's press release dated November 20, 2012 for its content and otherwise deny the allegations of paragraph 166.

167.     No response is required to the pre-May 23, 2012 allegations of paragraph 167 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to the referenced documents and the transcript of the referenced November 20, 2012 conference call for their content and otherwise deny the allegations of paragraph 167.

168.     No response is required to the allegations of paragraph 168 in view of the Dismissal Order.

169.     No response is required to the allegations of paragraph 169 in view of the Dismissal Order.

170.     No response is required to the allegations of paragraph 170 in view of the Dismissal Order.

171.     No response is required to the allegations of paragraph 171 in view of the Dismissal Order.

172.     No response is required to the pre-May 23, 2012 allegations of paragraph 172 in view of the Dismissal Order.  To the extent a response is required, defendants respectfully refer the Court to the transcript of the referenced conference call and otherwise deny the allegations of paragraph 172.

173.     No response is required to the allegations of paragraph 173 in view of the Dismissal Order.

174.     No response is required to the allegations of paragraph 174 in view of the Dismissal Order.

175. No response is required to the allegations of paragraph 175 in view of the Dismissal Order.

176. No response is required to the allegations of paragraph 176 in view of the Dismissal Order.

177. No response is required to the allegations of paragraph 177 in view of the Dismissal Order.

178. No response is required to the allegations of paragraph 178 in view of the Dismissal Order.

179. No response is required to the allegations of paragraph 179 in view of the Dismissal Order.

180. No response is required to the allegations of paragraph 180 in view of the Dismissal Order.

181. No response is required to the allegations of paragraph 181 in view of the Dismissal Order.

182. No response is required to the allegations of paragraph 182 in view of the Dismissal Order.

183. No response is required to the allegations of paragraph 183 in view of the Dismissal Order.

184. No response is required to the allegations of paragraph 184 in view of the Dismissal Order.

185. No response is required to the allegations of paragraph 185 in view of the Dismissal Order.

186. No response is required to the allegations of paragraph 186 in view of the Dismissal Order.

187. No response is required to the allegations of paragraph 187 in view of the Dismissal Order. To the extent a response is required, defendants respectfully refer the Court to the referenced documents for their content and otherwise deny the allegations of paragraph 187.

188. No response is required to the allegations of paragraph 188 in view of the Dismissal Order.

189. No response is required to the allegations of paragraph 189 in view of the Dismissal Order.

190. Defendants admit that (1) HP filed a Form 8-K on May 23, 2012 in which HP released financial results for the three months ended April 30, 2012; (2) the Form 8-K included a balance sheet that stated, among other things, that HP's "goodwill and purchased intangible assets" were approximately $54.7 billion as of April 30, 2012 on an unaudited basis; and (3) on May 23, 2012, HP held an earnings call. Defendants otherwise deny the allegations of paragraph 190, and specifically deny that Whistleblower No. 4 came forward on or before May 23, 2012.

191. Defendants admit that (1) on May 23, 2012, HP held an earnings call in which Ms. Whitman and Ms. Lesjak participated; (2) a transcript of that call contains the text quoted in paragraph 191 that was attributed to Ms. Lesjak; and (3) a transcript of that call contains the text quoted in paragraph 191 that was attributed to Ms. Whitman. Defendants otherwise deny the allegations of paragraph 191 and specifically deny that the text quoted in paragraph 191 fairly and completely summarizes the content of the referenced documents.

192. Defendants admit that BMO Capital Markets and RBC Capital Markets issued reports containing the text quoted in paragraph 192. Defendants otherwise deny the allegations of paragraph 192 and specifically deny that the text quoted in paragraph 192 fairly and completely summarizes the content of the referenced documents.

193. Defendants deny the allegations of paragraph 193.

194. Defendants admit that *AllThingsD* published an article purporting to summarize an interview with Meg Whitman on June 5, 2012 that contained the text quoted in paragraph 194. Defendants otherwise deny the allegations of paragraph 194 and specifically deny that the text quoted in paragraph 194 fairly and completely summarizes the content of the referenced documents.

195. Defendants deny the allegations of paragraph 195.

196.     Defendants (1) admit that HP filed on June 8, 2012 with the SEC its quarterly report for the three months ended April 30, 2012 on a Form 10-Q; (2) admit that this Form 10-Q stated, among other things, that HP had a balance of goodwill as of April 30, 2012 worth approximately $44.938 billion, of which approximately $14.775 billion was allocated to the Software segment; (3) admit that this Form 10-Q stated, among other things, that HP had total purchased intangible assets worth approximately $9.8 billion on a net basis as of April 30, 2012; and (4) otherwise deny the allegations of paragraph 196.

197.     Defendants admit that HP filed on June 8, 2012 with the SEC its quarterly report for the three months ended April 30, 2012 on a Form 10-Q, which stated, among other things (1) that, for the three months ended April 30, 2012, earnings from operations for the Software segment was approximately 17.7% of net revenue; (2) that, for the six months ended April 30, 2012, earnings from operations for the Software segment was approximately 17.4% of net revenue; and (3) this Form 10-Q contained the text quoted in paragraph 197.   Defendants otherwise deny the allegations of paragraph 197 and specifically deny that the text quoted in paragraph 197 fairly and completely summarizes the content of the referenced documents.

198.     Defendants deny the allegations of paragraph 198.

199.     Defendants admit that (1) HP filed on August 22, 2012 with the SEC a press release announcing its financial results for the three months ended July 31, 2012 on a Form 8-K; (2) this Form 8-K included a balance sheet that stated, among other things, that HP's "goodwill and purchased intangible assets" were approximately $44.771 billion as of July 31, 2012 on an unaudited basis; and (3) on August 22, 2012, HP held an earnings call.  Defendants otherwise deny the allegations of paragraph 199.

200.     Defendants admit that HP's Form 8-K filed on August 22, 2012 contained the text quoted in the first sentence of paragraph 200.  Defendants further admit that Ms. Whitman and Ms. Lesjak participated in an earnings call on August 22, 2012 and that (1) a transcript of that call contained the text quoted in paragraph 200 attributed to Ms. Whitman and (2) a transcript of that call contained the text quoted in paragraph 200 attributed to Ms. Lesjak.  Defendants otherwise deny the

allegations of paragraph 200 and specifically deny that the text quoted in paragraph 200 fairly and completely summarizes the content of the referenced documents.

201.    Defendants admit that Ms. Lesjak participated in an earnings call on August 22, 2012 and that a transcript of that call contains the text quoted in paragraph 201. Defendants otherwise deny the allegations of paragraph 201 and specifically deny that the text quoted in paragraph 201 fairly and completely summarizes the content of the referenced document.

202.    Defendants admit that Ms. Lesjak participated in an earnings call on August 22, 2012 and that a transcript of that call contains the text quoted in paragraph 202 attributed to Ms. Lesjak. Defendants further admit that BMO Capital Markets issued an analyst report on August 23, 2012 that contained the text quoted in paragraph 202 attributed to the BMO Capital Markets report. Defendants further admit that Jefferies issued an analyst report on August 23, 2012 that contained the text quoted in paragraph 202 attributed to the Jefferies report. Defendants otherwise deny the allegations of paragraph 202 and specifically deny that the text quoted in paragraph 202 fairly and completely summarizes the content of the referenced documents.

203.    Defendants admit that (1) on August 23, 2012 Morningstar issued a report that contained the text quoted in paragraph 203 attributed to the Morningstar report; and (2) on August 24, 2012, Indigo Equity Research issued a report that contained the text quoted in paragraph 203 attributed to the Indigo Equity Research report. Defendants otherwise deny the allegations of paragraph 203 and specifically deny that the text quoted in paragraph 203 fairly and completely summarizes the content of the referenced documents.

204.    Defendants admit that HP filed on September 10, 2012 with the SEC its quarterly report for the three months ended July 31, 2012 on a Form 10-Q, which stated, among other things, (1) that the carrying amount of goodwill for the nine months ended July 31, 2012 was $36.805 billion, of which $14.6 billion was allocated to the Software segment; (2) that the net value of purchased intangible assets as of July 31, 2012 was approximately $7.966 billion; and (3) this Form 10-Q contained the text quoted in paragraph 204. Defendants otherwise deny the allegations

of paragraph 204 and specifically deny that the text quoted in paragraph 204 fairly and completely summarizes the content of the referenced document.

205. Defendants admit that HP filed on September 10, 2012 with the SEC its quarterly report for the three months ended July 31, 2012 on a Form 10-Q, which stated, among other things, (1) that, for the three months ended July 31, 2012, earnings from operations for the Software segment was approximately 18% of net revenue; (2) that, for the nine months ended July 31, 2012, earnings from operations for the Software segment was approximately 17.6% of net revenue; and (3) this Form 10-Q contained the text quoted in paragraph 205. Defendants otherwise deny the allegations of paragraph 205 and specifically deny that the text quoted in paragraph 205 fairly and completely summarizes the content of the referenced document.

206. Defendants admit that HP filed on September 10, 2012 with the SEC its quarterly report for the three months ended July 31, 2012 on a Form 10-Q, and that this Form 10-Q contained the text quoted in paragraph 206. Defendants otherwise deny the allegations of paragraph 206 and specifically deny that the text quoted in paragraph 206 fairly and completely summarizes the content of the referenced document.

207. Defendants admit (1) that HP held a securities analyst meeting on October 3, 2012 and that HP's Executive Vice President of Software George Kadifa attended; and (2) that a transcript of that meeting contains the text quoted in paragraph 207. Defendants otherwise deny the allegations of paragraph 207 and specifically deny that the text quoted in paragraph 207 fairly and completely summarizes the content of the referenced document.

208. Defendants admit that Jefferies issued a report on October 4, 2012 that contained the text quoted in paragraph 208 attributed to the Jefferies report. Defendants further admit that J.P. Morgan issued a report on October 4, 2012 that contained the text quoted in paragraph 208 attributed to the J.P. Morgan report. Defendants otherwise deny the allegations of paragraph 208 and specifically deny that the text quoted in paragraph 208 fairly and completely summarizes the content of the referenced documents.

209. Defendants admit that on October 10, 2010 Deutsche Bank issued an analyst report that contained the text quoted in paragraph 209. Defendants otherwise deny the allegations of paragraph 209 and specifically deny that the text quoted in paragraph 209 fairly and completely summarizes the content of the referenced document.

210. Defendants deny the allegations of paragraph 210.

211. Defendants deny the allegations of paragraph 211.

212. Defendants deny the allegations of paragraph 212.

213. Defendants deny the allegations of paragraph 213.

214. Defendants admit that on August 22, 2012, *TheStreet.com* published an article that contained the text quoted in paragraph 214 attributed to the *TheStreet.com* article. Defendants further admit that Jefferies issued an analyst report on August 23, 2012 that contained the text quoted in paragraph 214 attributed to the Jefferies report. Defendants otherwise deny the allegations in paragraph 214 and specifically deny that the text quoted in paragraph 214 fairly and completely summarizes the content of the referenced document.

215. Defendants admit that on August 23, 2012, *TheStreet.com* published an article that contained the text quoted in paragraph 215. Defendants otherwise deny the allegations in paragraph 215 and specifically deny that the text quoted in paragraph 215 fairly and completely summarizes the content of the referenced document.

216. Defendants deny the allegations in paragraph 216.

217. Defendants admit that (1) on November 20, 2012, HP issued a press release concerning its fourth-quarter and full-year financial results; (2) this release contained the text quoted in paragraph 217 attributed to the November 20, 2012 release. Defendants further admit that Ms. Lesjak participated in an earnings call on November 20, 2012 and that a transcript of that call contains the text quoted in paragraph 217 attributed to Ms. Lesjak. Defendants otherwise deny the allegations in paragraph 217 and specifically deny that the text quoted in paragraph 217 fairly and completely summarizes the content of the referenced document.

218. Defendants deny the allegations in paragraph 218.

219.     Defendants admit that *AllThingsD* issued an article on January 14, 2013 that contained the text quoted in paragraph 219. Defendants otherwise deny the allegations in paragraph 219 and specifically deny that the text quoted in paragraph 219 fairly and completely summarizes the content of the referenced document.

220.     Defendants admit that (1) HP issued a Form 10-K on March 20, 2013 for the fiscal year ending October 31, 2012; and (2) that Form 10-K contained the text quoted in paragraph 220. Defendants otherwise deny the allegations in paragraph 220 and specifically deny that the text quoted in paragraph 220 fairly and completely summarizes the content of the referenced document.

221.     Defendants admit that on April 19, 2013, the *New York Times* published a story that contained the text quoted in paragraph 221. Defendants otherwise deny the allegations in paragraph 221 and specifically deny that the text quoted in paragraph 221 fairly and completely summarizes the content of the referenced document.

222.     Defendants respectfully refer the Court to the referenced document for its content and otherwise deny the allegations in paragraph 222.

223.     Defendants deny the allegations of paragraph 223.

224.     Defendants deny the allegations of paragraph 224.

225.     Defendants deny the allegations of paragraph 225.

226.     Defendants deny the allegations of paragraph 226.

227.     Defendants admit that Lead Plaintiff purports to bring this action as a class action and otherwise deny the allegations of paragraph 227.

228.     Defendants deny the allegations of paragraph 228, except to admit that HP has over 1.9 billion shares of common stock outstanding owned by thousands of persons.

229.     Defendants deny the allegations of paragraph 229.

230.     Defendants deny the allegations of paragraph 230.

231.     The allegations in paragraph 231 constitute conclusions of law as to which no response is required; to the extent a response is required, defendants lack knowledge or information

sufficient to form a belief as to the truth of the factual allegations of paragraph 231, and, on that

basis, deny those allegations.

232.    Defendants deny the allegations of paragraph 232.

233.    Defendants incorporate their answers to ¶¶ 1-222 by reference.

234.    Defendants deny the allegations of paragraph 234.

235.    Defendants deny the allegations of paragraph 235.

236.    Defendants deny the allegations of paragraph 236.

237.    Defendants deny the allegations of paragraph 237.

238.    Defendants deny the allegations of paragraph 238.

239.    Defendants incorporate their answers to ¶¶ 1-238 by reference.

240.    Defendants deny the allegations of paragraph 240.

241.    Defendants deny the allegations of paragraph 241.

**DEFENSES**

Defendants assert the following defenses without assuming the burden of proof or any other burden if such burden would otherwise be on plaintiff:

**FIRST DEFENSE**

By its Order dated November 26, 2013, the Court dismissed (a) all claims against Defendants Ms. Lesjak and Messrs. Apotheker, Lane, Lynch, Murrin, and Robison, and (b) all claims against Defendants Ms. Whitman and HP, with the exception of those claims related to Ms. Whitman's statements on May 23, 2012 and June 5, 2012, and to the SEC Form 10-Q filed by HP on September 10, 2012.

**SECOND DEFENSE**

The Complaint fails to allege facts sufficient to state any claim upon which relief may be granted.

**THIRD DEFENSE**

The Complaint fails to allege fraud with the requisite particularity.

**FOURTH DEFENSE**

Plaintiff and any putative class members are not entitled to any recovery because the alleged statements at issue were not materially false or misleading.

**FIFTH DEFENSE**

Plaintiff and any putative class members are not entitled to any recovery because the allegedly false or misleading statements at issue were not material to the investment decisions of a reasonable investor.

**SIXTH DEFENSE**

Plaintiff and any putative class members are not entitled to any recovery because defendants neither owed nor breached any duty to plaintiff or the putative class members to disclose information allegedly omitted from the statements at issue herein.

### SEVENTH DEFENSE

Plaintiff and any putative class members are not entitled to any recovery because defendants acted at all times in good faith and neither knew nor were reckless in not knowing that any alleged statement or omission was false or misleading.

### EIGHTH DEFENSE

Plaintiff and any putative class members are not entitled to any recovery because defendants exercised reasonable care; defendants had, after reasonable and diligent investigation, reasonable grounds to believe and did believe that the statements at issue herein were true and that they omitted no material fact necessary to make those statements not misleading.

### NINTH DEFENSE

Plaintiff and any putative class members are not entitled to any recovery from defendants because plaintiff and any putative class members did not reasonably rely on any allegedly false or misleading statement of material fact when they purchased shares of HP, and the "fraud-on-the-market" presumption of reliance is unavailable in this action.

### TENTH DEFENSE

Plaintiff and any putative class members are not entitled to any recovery from defendants because plaintiff and any putative class members purchased shares of HP with actual or constructive knowledge of the risks involved, and therefore assumed the risk that the value of their shares would decline if those risks materialized.

### ELEVENTH DEFENSE

If and to the extent the statements at issue herein are found to have been false or misleading (which defendants deny), the actual facts alleged to have been misstated or omitted were in fact known to or entered the securities market through credible sources.

### TWELFTH DEFENSE

Plaintiff and any putative class members are not entitled to any recovery because the substance of the allegedly material information that was allegedly misstated or omitted was in fact publicly available and/or widely known to the market and the investing community.

## THIRTEENTH DEFENSE

If and to the extent the statements at issue herein are found to have been false or misleading (which defendants deny), plaintiff and any putative class members either knew or should have known about the matters alleged in the Complaint, and their own negligence, actions, omissions, or other fault proximately contributed to the injuries allegedly suffered by plaintiff and any putative class members from the purchase or sale of shares of HP, and bars any recovery to the extent thereof.

## FOURTEENTH DEFENSE

Plaintiff's claims against defendants are barred in whole or in part because of the lack of loss causation. Any damages or injuries allegedly suffered by plaintiff or any putative class members were not legally caused by any act or omission by defendants.

## FIFTEENTH DEFENSE

Any damages or injuries suffered by plaintiff or any putative class members are the proximate result, either in whole or in part, of actions or omissions of persons or entities other than defendants. Plaintiff's claims are barred in whole or in part because of the contribution of or the comparative fault and contributory negligence of plaintiff or other entities or persons over which defendants had no control.

## SIXTEENTH DEFENSE

Plaintiff and any putative class members, at all relevant times, had a duty to take reasonable action to minimize any damages allegedly sustained as a result of the purported facts alleged in the Complaint. Defendants are informed and believe, and on that basis assert, that plaintiff and any putative class members failed to comply with that duty and are therefore barred from recovering any damages that might reasonably have been avoided.

## SEVENTEENTH DEFENSE

The putative class alleged in the Complaint cannot be certified under Rule 23 of the Federal Rules of Civil Procedure.

## EIGHTEENTH DEFENSE

Plaintiff's claims predicated on statements of opinion or belief fail because these statements were not objectively false when made and because these statements did not misrepresent the speaker's subjective opinion or belief.

## NINETEENTH DEFENSE

The alleged misstatements and omissions on which plaintiff base its claims were immaterial in light of the total mix of information available to plaintiff and putative class members.

## TWENTIETH DEFENSE

Plaintiff's and putative class members' claims are barred in whole or in part to the extent that their damages, if any, are speculative, and/or to the extent that it is impossible to ascertain their alleged damages.

## TWENTY-FIRST DEFENSE

Defendants are not liable to plaintiff or any putative class members because any alleged misstatements by defendants contained sufficient cautionary language and risk disclosure.

## TWENTY-SECOND DEFENSE

Defendants are not liable to plaintiff or any putative class members to the extent that the alleged misstatements and omissions were not made in connection with the purchase or sale of any securities by plaintiff or putative class members.

## TWENTY-THIRD DEFENSE

Plaintiff's and putative class members' damages, if any, are due to the acts or omissions of persons or entities other than defendants; however, in the event that a finding is made that liability exists on the part of defendants, defendants' liability, if any, should be reduced, at least, by an amount proportionate to the amount by which the comparative fault, or other acts or omissions, of such other persons or entities contributed to the alleged damages upon which plaintiff or any putative class members seek recovery.

## TWENTY-FOURTH DEFENSE

Defendants did not make any misrepresentations and/or omissions of material fact upon which plaintiff relied; did not employ any device, scheme, or artifice to defraud; and did not engage in any act, practice, or course of business that operated or would operate as fraud or deceit on any person.

## TWENTY-FIFTH DEFENSE

Defendants did not know, and in the exercise of reasonable care could not have known, of any untruth or material omission that may be proved by plaintiff or any putative class members.

## TWENTY-SIXTH DEFENSE

Defendants are not liable under §§ 10(b) and 20(a) of the Exchange Act because they did not act with the requisite mental state or scienter.

## TWENTY-SEVENTH DEFENSE

Any recovery for damages allegedly incurred by plaintiff and any putative class members is subject to offset in the amount of any benefits received by plaintiff and any putative class members through their investments.

## TWENTY-EIGHTH DEFENSE

Plaintiff's and putative class members' claims are barred in whole or in part because any allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other challenged statements, with respect to which the liability of defendants is asserted, contained sufficient cautionary language or risk disclosures to protect defendants against claims of securities fraud, and are therefore rendered nonactionable by the "bespeaks caution" doctrine.

## TWENTY-NINTH DEFENSE

Plaintiff's and putative class members' claims are barred in whole or in part by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, codified as 15 U.S.C. § 78u-5(c).

### THIRTIETH DEFENSE

Plaintiff and any putative class members are not entitled to attorneys' fees, or expert fees, as a matter of law.

### THIRTY-FIRST DEFENSE

Defendants reserve the right to raise any additional defenses, cross-claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, as may be appropriate at a later time.

### PRAYER FOR RELIEF

Based upon the foregoing, defendants pray that this Court deny any relief or request for judgment on behalf of plaintiff or any putative class members, and dismiss this action against defendants in its entirety, with prejudice and without further leave to amend. Defendants also pray for such other and further relief as may be appropriate or that the Court deems just and proper.

WACHTELL, LIPTON, ROSEN & KATZ

By: _____     Dated:   June 5, 2014
     Marc Wolinsky
     George T. Conway III
     Vincent G. Levy
     David Zhou
     51 West 52nd Street
     New York, NY  10019
     Telephone:  (212) 403-1000
     Facsimile:  (212) 403-2000

     FARELLA BRAUN & MARTEL, LLP
     Neil A. Goteiner
     Thomas B. Mayhew
     235 Montgomery Street
     San Francisco, CA  94104
     Telephone:  (415) 954-4400
     Facsimile:  (415) 954-4480

*Attorneys for Defendant Hewlett-Packard Company*

COOLEY LLP

By:     /s/  John C. Dwyer               Dated:   June 5, 2014
     Stephen C. Neal
     John C. Dwyer
     Jeffrey M. Kaban
     Adam C. Trigg
     Five Palo Alto Square
     3000 El Camino Real
     Palo Alto, CA  94306
     Telephone:  (650) 843-5000
     Facsimile:  (650) 849-7400

*Attorneys for Defendant Margaret C. Whitman*

## ECF ATTESTATION

I, Marc Wolinsky, am the ECF User whose ID and Password are being used to file this Answer.

In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto have concurred in this filing.

Dated: June 5, 2014

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

Marc Wolinsky