1    KESSLER TOPAZ MELTZER
      & CHECK, LLP
2    ELI R. GREENSTEIN (Bar No. 217945)
     STACEY M. KAPLAN (Bar No. 241989)
3    PAUL A. BREUCOP (Bar No. 278807)
     RUPA NATH COOK (Bar No. 296130)
4    One Sansome Street, Suite 1850
     San Francisco, CA 94104
5    Telephone: (415) 400-3000
     Facsimile:  (415) 400-3001
6    egreenstein@ktmc.com
     skaplan@ktmc.com
7    pbreucop@ktmc.com
     rcook@ktmc.com

8    -and-

9    DAVID KESSLER (*pro hac vice*)
     DARREN J. CHECK (*pro hac vice*)
10   ANDREW L. ZIVITZ (*pro hac vice*)
     280 King of Prussia Road
11   Radnor, PA  19087
     Telephone: (610) 667-7706
12   Facsimile:  (610) 667-7056
     dkessler@ktmc.com
13   dcheck@ktmc.com
     azivitz@ktmc.com

14

15   *Counsel for Lead Plaintiff PGGM Vermogensbeheer B.V.*
     *and Lead Counsel for the Proposed Settlement Class*

16

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20   IN RE HP SECURITIES LITIGATION,          MASTER FILE NO. 3:12-CV-05980-CRB

21                                            **CLASS ACTION**

22   This Document Relates To: All Actions    **LEAD PLAINTIFF'S NOTICE OF
                                              MOTION AND MOTION FOR FINAL
23                                            APPROVAL OF CLASS ACTION
                                              SETTLEMENT AND PLAN OF
24                                            ALLOCATION; AND MEMORANDUM
                                              OF POINTS AND AUTHORITIES IN
25                                            SUPPORT THEREOF**

26                                            Date:        November 13, 2015
                                              Time:        10:00 a.m.
27                                            Judge:       Hon. Charles R. Breyer
                                              Courtroom:   6, 17th Floor

28

---

Motion for Final Approval of Class Action Settlement          Master File No. 3:12-cv-05980-CRB

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 13, 2015, at 10:00 a.m. in Courtroom 6 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Charles R. Breyer, United States Senior District Judge, Court-appointed Lead Plaintiff PGGM Vermogensbeheer B.V. ("PGGM" or "Lead Plaintiff") will and hereby does move the Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), granting: (i) final approval of the proposed settlement in the above-captioned action, on the terms set forth in the Stipulation of Settlement and Release dated as of June 8, 2015 and filed previously with the Court (ECF No. 258) (the "Stipulation")[1]; (ii) final certification of the Settlement Class that was preliminarily certified in the Court's July 20, 2015 Order granting preliminary approval of the Settlement (ECF No. 265) (the "Preliminary Approval Order"); and (iii) final approval of the proposed plan for allocating the net settlement proceeds to eligible Settlement Class Members (the "Plan of Allocation" or "Plan").

This motion is based upon: (i) this Notice of Motion and Motion, and the Memorandum of Points and Authorities set forth below; (ii) the accompanying Declaration of Eli R. Greenstein in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Greenstein Declaration" or "Greenstein Decl."), and the exhibits thereto; (iii) the Affidavit of Jose C. Fraga on behalf of Court-appointed Claims Administrator, Garden City Group, LLC ("GCG"), attached as Exhibit A to the Greenstein Declaration ("Fraga Aff."), and the exhibits thereto; (iv) the Declaration of Marcel Jeucken submitted on behalf of PGGM, attached as Exhibit B to the Greenstein Declaration ("Jeucken Decl."), and the exhibits thereto; (v) the Declaration of David Kessler on behalf of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), attached as Exhibit C to the Greenstein Declaration (the "Kessler Declaration" or "Kessler Decl."), and the exhibits

---

[1]    All capitalized terms that are not defined herein are defined in the Stipulation.

thereto; (vi) the Stipulation; (vii) the pleadings and records on file in this Action; and (ix) other such matters and argument as the Court may consider at the hearing of this motion.[2]

---

[2]      This motion is currently unopposed.  The deadline for filing any objections to the Settlement or Plan of Allocation, or submitting a request for exclusion from the Settlement Class, expires on October 14, 2015.  Lead Plaintiff will address any objections or requests for exclusion received after the date of this motion in its reply submission to be filed on or before November 3, 2015.  A list of those Persons seeking exclusion from the Settlement Class will be included in Exhibit 1 to the [Proposed] Final Judgment and Order Approving Settlement that, along with a proposed order approving the Plan of Allocation, will be submitted to the Court with Lead Plaintiff's reply.  Lead Counsel is also submitting a separate Notice of Motion, Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and Memorandum of Points and Authorities in Support Thereof concurrently herewith.

1

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................ viii

SUMMARY OF ARGUMENT .................................................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    HISTORY OF THE ACTION .................................................................... 2

III.   THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23 ........ 3

       A.    Legal Standards for Judicial Approval of Class Action Settlements ............. 3

       B.    The Settlement Is Fair, Reasonable, and Adequate ........................................ 4

             1.    The Settlement Provides a Favorable Recovery for the Settlement
                   Class ................................................................................................. 5

             2.    The Strength of Lead Plaintiff's Case ............................................. 6

             3.    The Risk, Expense, Complexity and Likely Duration of the
                   Litigation ......................................................................................... 8

             4.    The Risk of Maintaining Class Action Status Throughout the
                   Trial ............................................................................................... 10

             5.    The Extent of Discovery Obtained and the Stage of the
                   Proceedings ................................................................................... 10

             6.    Experienced Counsel Supports Settlement .................................... 12

             7.    The Absence of Collusion Supports Settlement ............................ 12

             8.    Reaction of the Settlement Class to the Proposed Settlement to
                   Date ............................................................................................... 13

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE .. 14

V.     CONCLUSION .................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................8

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ................................................................ ix, x, 6

*Browne v. Am. Honda Motor Co.*,
   2010 U.S. Dist. LEXIS 145475 (C.D. Cal. 2010) ....................................................9

*Cal. v. eBay, Inc.*,
   2015 U.S. Dist. LEXIS 118060 (N.D. Cal. 2015) ........................................ xi, 12, 13

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................ viii, 3

*Create-A-Card, Inc. v. INTUIT, Inc.*,
   2009 U.S. Dist. LEXIS 93989 (N.D. Cal. 2009) .....................................................4

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................8

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 U.S. Dist. LEXIS 123546 (C.D. Cal. 2008) ....................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................5, 12

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .................................................................................6

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 U.S. Dist. LEXIS 151498 (D. Nev. 2012) ...................................................9, 13

*In re Apollo Grp., Inc. Sec. Litig.*,
   2010 U.S. App. LEXIS 14478 (9th Cir. 2010) ........................................................6

*In re Bear Stearns Cos., Inc. Sec. Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................13

*In re Brocade Sec. Litig.*,
   3:05-cv-02042-CRB (N.D. Cal. 2009) ...................................................................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................6

*In re Charles Schwab Corp. Sec. Litig.*,
    2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011) ...........................................................9

*In re Connetics Sec. Litig.*,
    3:07-cv-02940-SI (N.D. Cal. 2009) ...........................................................................12

*In re Ecotality, Inc. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 114804 (N.D. Cal. 2015) .............................................. ix, 4, 5

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) .........................................................14

*In re High-Tech Emp. Antitrust Litig.*,
    2015 U.S. Dist. LEXIS 118051 (N.D. Cal. 2015) ....................................... xii, 13, 14

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................7, 11, 12

*In re Magma Design Automation, Inc. Sec. Litig.*,
    3:05-cv-02394-CRB, slip op. (N.D. Cal. Mar. 27, 2009) ...........................................8

*In re Marvell Tech. Grp. Ltd. Sec. Litig.*,
    5:06-cv-6286-RMW (N.D. Cal. 2009) .........................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................ passim

*In re OmniVision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................x, 5, 10, 15

*In re Pfizer Sec. Litig.*,
    2014 U.S. Dist. LEXIS 92951 (S.D.N.Y. 2014) ..........................................................6

*In re Portal Software, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) ....................................................8, 13

*In re Rambus Inc. Derivative Litig.*,
    2009 U.S. Dist. LEXIS 131845 (N.D. Cal. 2009) .....................................................10

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .....................................................................................3

*In re Wells Fargo Mortg. Backed Certificates Litig.*,
    5:09-cv-01376-LHK (N.D. Cal. 2011) ........................................................................12

*In re Yahoo! Inc. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 113036 (N.D. Cal. 2012) .......................................................7

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).................................................................x, 8, 10, 12

*Nobles v MBNA Corp.*,
  2009 U.S. Dist. LEXIS 59435 (N.D. Cal. 2009) .................................................................. passim

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................ passim

*Ramirez v. Ghilotti Bros. Inc.*,
  2014 U.S. Dist. LEXIS 56038 (N.D. Cal. 2014) ........................................................... xi, 3, 12

*Satchell v. Fed. Express Corp.*,
  2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007) ................................................................ xi, 12

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................................................ ix, 5, 6, 8

*Vincent v. Reser*,
  2013 U.S. Dist. LEXIS 22341 (N.D. Cal. 2013) ............................................................... xi, 12


STATUTES

Securities Exchange Act of 1934,
  Section 10(b) .......................................................................................................................... 3
  Section 20(a) .......................................................................................................................... 3


RULES

17 C.F.R. §240.10b-5 .............................................................................................................. 3

Fed. R. Civ. P. 23,
  Subsection (a) ......................................................................................................................... 1
  Subsection (b) ......................................................................................................................... 1
  Subsection (c) .................................................................................................................... x, 10
  Subsection (e) ............................................................................................................... ii, 3, 4


OTHER AUTHORITY

Laarni T. Bulan et al., *Securities Class Action Settlements: 2014 Review and
  Analysis* (Cornerstone Research 2015) ............................................................................... ix

1

**STATEMENT OF ISSUES TO BE DECIDED**

2       1.    Whether the proposed $100 million Settlement is fair, reasonable, and adequate.

3       2.    Whether the Settlement Class should be finally certified for purposes of effectuating

4 the Settlement.

5       3.    Whether the proposed Plan of Allocation is fair, reasonable, and adequate.

6

**SUMMARY OF ARGUMENT**

7       Pursuant to the terms of the Stipulation, Lead Plaintiff has obtained a recovery of $100

8 million in cash for the Settlement Class in exchange for the dismissal of all claims brought in the

9 Action and a full release of claims against the Released Parties.  This Settlement is an excellent

10 result for the Settlement Class and falls squarely within the Ninth Circuit's standard for settlement

11 approval, which requires a proposed settlement to be "fundamentally fair, adequate and

12 reasonable." *See Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688

13 F.2d 615, 625 (9th Cir. 1982); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

14       In assessing whether approval is warranted, courts in the Ninth Circuit consider the

15 following factors, among others: (1) the amount offered in settlement; (2) the strength of the

16 plaintiff's case; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the

17 risk of maintaining class action status throughout the trial; (5) the extent of discovery completed

18 and the stage of the proceedings; (6) the experience and views of counsel; (7) the absence of fraud

19 or collusion; and (8) the reaction of the class members to the proposed settlement.  *See In re Mego*

20 *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  As more fully discussed below and in the

21 accompanying Greenstein Declaration, these factors favor the Court's final approval of the

22 Settlement.

23       *First*, the amount obtained for the Settlement Class—representing over 26% of the likely

24 recoverable damages in this Action, as estimated by Lead Plaintiff's damages expert—far exceeds

25 the median settlement amount recovered in securities cases, which was only 2.2% in 2014 and did

26

27

28

1   not exceed 3.1% in the last decade.[3]  Notably, the Settlement, if approved, will rank among the top

2   15 securities class action recoveries in the history of this District.

3       *Second*, with respect to the strength of the case, while Lead Plaintiff believes its claims are

4   meritorious, the Settlement Class would face serious risks if litigation continued.  *See*

5   *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) ("One important

6   consideration is the strength of the plaintiff's case on the merits balanced against the amount

7   offered in the settlement.").  For example, the Settling Defendants have consistently maintained that

8   they were victims of fraud by Autonomy, and that numerous third-party auditors, accounting firms

9   and due diligence consultants failed to discover Autonomy's accounting improprieties prior to and

10   during the Settlement Class Period.  They also argued that a "Demand Review Committee" and

11   outside law firms conducted a thorough investigation of the Autonomy issues and found no

12   wrongdoing on the part of HP or Whitman.  Based on these defenses and others, the Settling

13   Defendants have aggressively challenged every element of Lead Plaintiff's claims, including

14   scienter, falsity, loss causation and damages.  Moreover, following the Court's Order on

15   Defendants' eight motions to dismiss, only two Defendants and three allegedly misleading

16   statements and/or omissions remained in the case.  Thus, to the extent the Court and/or a jury found

17   the Settling Defendants' defenses to be more credible at summary judgment or trial, Lead Plaintiff

18   risked losing the entire case.

19       *Third*, the risk, expense, complexity, and likely duration of further litigation strongly

20   support final approval of the Settlement.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

21   1376 (9th Cir. 1993); *Nobles v MBNA Corp.*, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. 2009)

22   (Breyer, J.) (finding proposed settlement proper "given the inherent difficulty of prevailing in class

23   action litigation").  Notwithstanding the risks described above, further litigation of this Action

24   would undoubtedly be costly to both sides, and years could pass before the Settlement Class would

25

26      [3]     *See* Laarni T. Bulan et al., *Securities Class Action Settlements: 2014 Review and Analysis*

27   (Cornerstone Research 2015), at 8-9; *see also In re Ecotality, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 114804, at *8-9 (N.D. Cal. 2015) (finding a "settlement of at least 10% of the expected recovery" reasonable).

28

1    receive a recovery, if any.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

2    526 (C.D. Cal. 2004) (concluding that "unless the settlement is clearly inadequate, its acceptance

3    and approval are preferable to lengthy and expensive litigation with uncertain results."); 

4    *Bellinghausen*, 306 F.R.D. at 255 ("In light of the risks and costs of continued litigation, the

5    immediate rewards to class members are preferable.").

6         *Fourth*, at the time the Settlement was reached, Lead Plaintiff's motion for class

7    certification was *sub judice*.  An order denying class certification effectively would have prevented

8    any recovery for the vast majority of Settlement Class Members.  *See In re OmniVision Techs., Inc.*,

9    559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (noting that, if class certification is denied, "the

10   unrepresented potential plaintiffs would likely lose their chance at recovery entirely").  In contrast,

11   the certainty of a class settlement provides "much less risk of anyone who may have actually been

12   injured going away empty-handed."  *Id*. at 1042.  Even if the Court granted Lead Plaintiff's motion

13   for class certification, moreover, there is no guarantee that certification would survive through trial.

14   *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or

15   amended before final judgment.").

16        *Fifth*, after more than two years of intensive litigation, Lead Plaintiff and Lead Counsel had

17   a firm understanding of both the strengths and weaknesses of Lead Plaintiff's case.  Indeed, the

18   parties reached the Settlement only after Lead Plaintiff had, *inter alia*, researched and briefed

19   Defendants' eight motions to dismiss; consulted extensively with experts; developed a detailed

20   record through contested fact discovery, including preparation of four critical discovery motions

21   and the review and analysis of over 80,000 pages of documents produced by the Settling

22   Defendants and various third parties; briefed and argued class certification; and engaged in over a

23   year of arm's-length negotiations overseen by the Honorable Layn R. Phillips (Ret.).  *See*

24   *DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-

25   length negotiation is presumed fair."); *Mego*, 213 F.3d at 459 (finding settlement proper where the

26   plaintiffs had sufficient information to make an informed decision thereon).  Thus, the extent of

27   discovery and the stage of the proceedings weigh in favor of the Settlement.

28

1    *Sixth*, the Settlement is the product of informed and extensive arm's-length negotiations

2    between skilled, knowledgeable, and experienced counsel on both sides, who have devoted

3    significant efforts to prosecuting the Action and reaching a well-considered resolution.  This Court

4    has held that in such circumstances counsel's recommendations are entitled to "great weight,"

5    *Nobles*, 2009 U.S. Dist. LEXIS 59435, at *6, and the proposed settlement should be given "a

6    presumption of fairness."  *Ramirez v. Ghilotti Bros Inc.*, 2014 U.S. Dist. LEXIS 56038, at *3 (N.D.

7    Cal. 2014) (Breyer, J.) (finding a proposed settlement presumptively fair where "class counsel is

8    experienced and supports the settlement, and the agreement was reached after arm's length

9    negotiations"); *Cal. v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 118060, at *15 (N.D. Cal. 2015) ("Parties

10   represented by competent counsel are better positioned than courts to produce a settlement that

11   fairly reflects each party's expected outcome in litigation.").

12   *Seventh*, this Settlement is free of fraud or collusion.  The parties' settlement negotiations

13   were hard-fought, spanned the course of over one year—including two formal, in-person mediation

14   sessions and the submission of detailed mediation briefing—and were completed under the

15   guidance of a highly-respected and experienced mediator and former federal judge.  *See Vincent v.*

16   *Reser*, 2013 U.S. Dist. LEXIS 22341, at *12 (N.D. Cal. 2013) (Breyer, J.) (Two days of mediation

17   and subsequent negotiations with an experienced mediator "strongly suggest that the settlement

18   agreement was reached through arm's length negotiations."); *Officers for Justice*, 688 F.2d at 627

19   (finding that "long and careful negotiations" between the parties indicate an absence of collusion);

20   *see also Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007)

21   (same).  Nor are any of the Ninth Circuit's three indicia of collusion present here.  *See Vincent*,

22   2013 U.S. Dist. LEXIS 22341, at *11 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

23   935, 946 (9th Cir. 2011)).  In particular, Lead Counsel will request fees well below the Ninth

24   Circuit's 25% benchmark, there is no clear sailing agreement, and any fees not awarded will be

25   added to the class fund, rather than reverting to the Settling Defendants.

26   *Finally*, to date, there have been no objections to any aspect of the Settlement which lends

27   further support to the reasonableness and fairness of the Settlement.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiff also respectfully submits that the proposed Plan of Allocation is a fair and reasonable method for equitably allocating the proceeds of the Net Settlement Fund to eligible Settlement Class Members and should be approved by the Court.  *See Class Plaintiffs*, 955 F.2d at 1284-85 (holding that the standard for approval of a proposed plan of allocation is the same as the standard for approving the settlement as a whole—the plan must be fair, reasonable, and adequate); *see also In re High-Tech Emp. Antitrust Litig*., 2015 U.S. Dist. LEXIS 118051, at *29 (N.D. Cal. 2015) (same).

In sum, as set forth in further detail below, Lead Plaintiff—a large, sophisticated institutional investor—and Lead Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate, and provides a substantial result for the Settlement Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this Settlement, certify the Settlement Class for purposes of Settlement, and deem the Plan of Allocation a fair and reasonable method for allocating the Net Settlement Fund to the Settlement Class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

After nearly three years of intensive, hard-fought litigation, Lead Plaintiff respectfully requests final approval of the $100 million Settlement now before the Court.  This Settlement is an outstanding result for the Settlement Class—representing over 26% of the Settlement Class's likely recoverable damages in this case as estimated by Lead Plaintiff's damages expert.   Greenstein Decl., ¶77.  The Settlement also provides the *only* financial recovery to date for HP's investors arising from the Autonomy allegations, as neither the SEC nor any other private litigant has recovered compensation on behalf of the proposed Settlement Class.  *Id*.  Moreover, if approved, this Settlement will rank among the top 15 securities fraud recoveries in the history of this District. *Id*. ¶7.  Notably, during the July 17, 2015 preliminary approval hearing, this Court recognized the quality of the Settlement based on the preliminary record:

> I would say that it seems extremely good. And I want to thank the parties for obviously treating it seriously; working through the issues. Everything about it has the appearance of being measured, and appropriate.
>
>              * * *
>
> So, while this is preliminary approval, and I know that I'm not really commenting on the merits, I am commenting on the merits. I thought you really did a great job. And I want to thank the parties for doing that.

ECF No. 264 at 2:22-3:4.[1]

As described herein and in the accompanying Greenstein Declaration, Lead Plaintiff, through Lead Counsel, vigorously litigated this Action from the outset and performed a substantial investigation into the Settlement Class's claims; comprehensively researched and opposed

---

[1]     On July 20, 2015, the Court preliminarily certified for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3), the proposed Settlement Class (*i.e.*, all persons who purchased or otherwise acquired HP's publicly traded common stock between August 19, 2011 and November 20, 2012, inclusive).  ECF No. 265.  Excluded from the Settlement Class are all Released Parties and any persons or entities who submit a timely request for exclusion in accordance with the requirements set forth in the Notice.  Nothing has changed to alter the propriety of the Court's certification pursuant to the Preliminary Approval Order and, for all the reasons stated in Lead Plaintiff's Notice of Motion, Unopposed Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof (ECF No. 257), incorporated herein by reference, Lead Plaintiff now requests that the Court grant final certification of the Settlement Class for purposes of carrying out the Settlement.

1    Defendants' eight motions to dismiss; engaged in detailed and disputed fact discovery; consulted

2    with multiple experts; extensively briefed and argued the motion for class certification; and

3    participated in formal mediation before successfully negotiating the Settlement.  *See* Greenstein

4    Decl., §III.  At every stage of the Action, Defendants aggressively defended the case.  *See id.*  Had

5    the Settlement not been reached, Lead Plaintiff would have faced considerable hurdles in proving

6    its case, particularly in overcoming the Settling Defendants' defenses to scienter, falsity, loss

7    causation, and establishing the Settlement Class's full amount of damages at trial.  *Id.* ¶¶76-87, 115.

8           Pursuant to the Court's Preliminary Approval Order, 680,679 copies of the Notice have been

9    mailed to potential Settlement Class Members and nominees.  *Id.* ¶75, 90; Fraga Aff., ¶11.  To date,

10   there have been no objections to the Settlement or Plan of Allocation and only twelve requests for

11   exclusion from the Settlement Class.  Greenstein Decl., ¶92; Fraga Aff., ¶15.[2]  In addition, the

12   Settlement is fully supported by Lead Plaintiff, PGGM, a large, sophisticated investor who was

13   actively involved in the prosecution and resolution of this Action—precisely the result intended by

14   Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").

15   Greenstein Decl., ¶15, 76; Jeucken Decl., ¶¶1, 5-7.

16          Lead Plaintiff and Lead Counsel recognize the risk and expense of continued litigation and

17   believe that the Settlement represents an outstanding result for the Settlement Class.  Greenstein

18   Decl., ¶76-87; Jeucken Decl., ¶12.  In addition, the Plan of Allocation is a fair and reasonable

19   method for allocating the Net Settlement Fund to the Settlement Class.  Greenstein Decl., ¶13, 100.

20   Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this

21   Settlement and Plan of Allocation.

22   **II.    HISTORY OF THE ACTION**

23          This Action involves allegedly misleading statements and omissions of material facts arising

24   from HP's $11 billion acquisition of U.K.-based Autonomy Corporation plc ("Autonomy").

25   Greenstein Decl., ¶¶18-19.   Following adverse news related to the Autonomy deal (*e.g.*, that the

26   _____

27   [2]      Lead Plaintiff will address any objections and additional exclusion requests received after
     the date of this submission in its reply brief to be filed on or before November 3, 2015—which is
     after the deadline for objections and requests for exclusion.

28

1   acquisition price was written down in substantial part due to purported accounting fraud), the price

2   of HP's common stock fell, causing members of the Settlement Class to suffer damages.  *Id.* ¶20.

3   Lead Plaintiff then brought claims against Defendants on behalf of purchasers of HP's common

4   stock between August 19, 2011 and November 20, 2012, for alleged violations of Sections 10(b)

5   and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.  *Id.* ¶17.

6       The factual and procedural background of this case is well known to the Court.  For a more

7   detailed history of the litigation, Lead Plaintiff respectfully refers the Court to the pleadings on file,

8   the detailed record in the Action, and the Greenstein Declaration.[3]

9   **III.    THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23**

10      **A.    Legal Standards for Judicial Approval of Class Action Settlements**

11      A class action settlement should be approved if it is "fair, reasonable, and adequate."  Fed.

12  R. Civ. P. 23(e)(2).  The authority to grant such approval lies within the sound discretion of the

13  reviewing court.  *See Class Plaintiffs*, 955 F.2d at 1276.  In exercising its discretion, however, the

14  reviewing court must be mindful of the "strong judicial policy that favors settlements."  *Id.*  In

15  particular, it is well-established in the Ninth Circuit that "voluntary conciliation and settlement are

16  the preferred means of dispute resolution."  *Officers for Justice*, 688 F.2d at 625; *In re Syncor*

17  *ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

18      The court's role in reviewing a proposed settlement is essentially twofold—it must

19  determine whether the settlement is: (i) fair, reasonable, and adequate; and (ii) untainted by fraud or

20  collusion. *See Officers for Justice*, 688 F.2d at 625; *Ramirez*, 2014 U.S. Dist. LEXIS 56038, at *2.

21  A court's "intrusion upon what is otherwise a private consensual agreement negotiated between the

22  parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

23  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

24  parties." *Nobles*, 2009 U.S. Dist. LEXIS 59435, at *4.

25

26  [3]    The Greenstein Declaration also details, *inter alia*, the efforts undertaken by Lead Plaintiff
    and Lead Counsel on behalf of the Settlement Class; the value of the Settlement to the Settlement
27  Class, as compared to the risks and uncertainties of continued litigation; and the terms of the Plan of
    Allocation.

28

Recognizing that a proposed settlement represents a consensual agreement by the negotiating parties, the reviewing court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625; *see also Ecotality*, 2015 U.S. Dist. LEXIS 114804, at *7 ("The Court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact."). The ultimate question is whether, after reviewing the proposed settlement "as a whole," it is "fundamentally fair within the meaning of Rule 23(e)—not "whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Here, the proposed $100 million Settlement is an exceptional result by any measure. It is the product of vigorously-contested litigation and protracted arm's-length negotiations by experienced counsel with a firm understanding of both the strengths and weaknesses of the case, and takes into consideration the significant risks specific to this Action. Greenstein Decl., ¶¶67-68, 76-77, 106. It is the considered judgment of Lead Plaintiff and its counsel that the Settlement and Plan of Allocation represent a fair, reasonable, and adequate resolution of the litigation for the Settlement Class, and warrant this Court's final approval. *Id*. ¶16.

## B.   The Settlement Is Fair, Reasonable, and Adequate

A proposed settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Create-A-Card, Inc. v. INTUIT, Inc*., 2009 U.S. Dist. LEXIS 93989, at *7 (N.D. Cal. 2009). To that end, the Ninth Circuit has identified eight factors for assessing whether a proposed settlement is proper: (1) the amount offered in settlement; (2) the strength of the plaintiff's case; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the risk of maintaining a class action status throughout the trial; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the absence of fraud or collusion; and (8) the reaction of the class members to the proposed settlement. *See Mego*, 213 F.3d at 458-59. This list of factors is

1    neither exhaustive nor in any specific order of significance.  *See Officers for Justice*, 688 F.2d at

2    625; *Torrisi*, 8 F.3d at 1375-76.  In fact, the "relative degree of importance to be attached to any

3    particular factor will depend upon and be dictated by the nature of the claims advanced, the types of

4    relief sought, and the unique facts and circumstances presented by each individual case." *Officers

5    for Justice*, 688 F.2d at 625.  As demonstrated herein and in the Greenstein Declaration, the

6    Settlement readily satisfies each of these factors.

7            **1.      The Settlement Provides a Favorable Recovery for the Settlement Class**

8            The determination of a "reasonable" settlement is not susceptible to a mathematical formula

9    yielding a particularized sum; indeed, a settlement is acceptable even if it amounts to only a fraction

10   of the potential recovery that might be available at trial.  *Mego*, 213 F.3d at 458.  As "[s]ettlement is

11   the offspring of compromise[,] the question we address is not whether the final product could be

12   prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon* v.

13   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  "Naturally, the agreement reached normally

14   embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each

15   give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*,

16   688 F.2d at 624.

17          Here, the Settlement Class will receive $100 million less Court-awarded attorneys' fees and

18   expenses.  The recovery provides an immediate and tangible benefit to the Settlement Class and

19   eliminates the significant risk that the Settlement Class could recover less, or even nothing at all, if

20   the Action continued.  Greenstein Decl., ¶68.  Moreover, the Settlement represents approximately

21   26.5% of the likely recoverable damages in this Action, as estimated by Lead Plaintiff's damages

22   expert[4]—an eminently fair and adequate amount.  *Id*. ¶77.[5]  As noted above, this recovery vastly

---

[4]      Lead Plaintiff's damages expert has calculated the likely recoverable damages of the
Settlement Class to be approximately $390 million. *Id*. ¶77.

[5]      *See, e.g.*, *Ecotality*, 2015 U.S. Dist. LEXIS 114804, at *8-9 (finding a "settlement of at least
10% of the expected recovery" reasonable); *OmniVision*, 559 F. Supp. 2d at 1042 (approving a
settlement representing 6% of potential damages); *Mego*, 213 F.3d at 459 (deeming a settlement
amount of roughly one-sixth of the potential recovery "fair and adequate").

1    exceeds the median securities class action settlement as a percentage of estimated damages, which

2    was only 2.2% in 2014.  *See* Bulan, *supra* note 4, at 8-9.

3           Had this Action proceeded, there was a real possibility that a recovery in an amount greater

4    than the Settlement Amount would not be achieved.  Greenstein Decl., ¶¶68, 76-77, 87, 115.  For

5    instance, the Settling Defendants would likely have argued that the Settlement Class's losses were

6    caused in whole or large part by factors other than the alleged misleading statements and omissions

7    (*i.e.*, purportedly "confounding information" released on the same day as the two corrective

8    disclosures), and that the Settlement Class was entitled to substantially less than the recoverable

9    damages estimated by Lead Plaintiff's damages expert.  *Id*. ¶¶82-85.  These issues of loss causation

10   and damages would have inevitably come down to a "'battle of experts' . . . with no guarantee

11   whom the jury would believe."  *In re Cendant Corp. Litig*., 264 F.3d 201, 239 (3d Cir. 2001); *id*.

12   ¶86. In fact, during the class certification phase, the Settling Defendants used expert testimony to

13   argue that complex issues involving disaggregation and confounding information precluded Lead

14   Plaintiff from reliably establishing damages at all.  Greenstein Decl., ¶57.

15                  **2.      The Strength of Lead Plaintiff's Case**

16          Courts evaluating proposed class action settlements consider the strength of the plaintiffs'

17   case and the risks of further litigation.  *See, e.g.*, *Torrisi*, 8 F.3d at 1376; *Bellinghausen*, 306 F.R.D.

18   at 254.  While Lead Plaintiff and Lead Counsel believe that they could ultimately prevail against the

19   Settling Defendants, they recognize that numerous risks and uncertainties accompany further

20   litigation of the Settlement Class's claims.[6]  Lead Plaintiff and Lead Counsel also recognize that

21   plaintiffs have prosecuted many securities class actions believing their cases to be meritorious, only

22   to lose on summary judgment, at trial or on appeal.  *See Nobles*, 2009 U.S. Dist. LEXIS 59435, at

23   *5 (noting that, although "Plaintiff's claim has survived a motion to dismiss, [] success is not

24   guaranteed if this matter were to proceed to jury trial.").[7]

25   ────────────────────────
     [6]      *See* Greenstein Decl., ¶¶76-87, 114-119 (detailing the risks of continued litigation).

26   [7]      *See, e.g.*, *In re Pfizer Sec. Litig.*, 2014 U.S. Dist. LEXIS 92951 (S.D.N.Y. 2014) (dismissing
     ten-year-old litigation based on a *Daubert* ruling just before trial); *Hubbard v. BankAtlantic*
27   *Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012) (overturning jury verdict and award in favor of
     plaintiff on the basis of loss causation); *In re Apollo Grp*., *Inc*. *Sec. Litig*., 2010 U.S. App. LEXIS

28

Indeed, if the Action continued, Lead Plaintiff would have faced significant challenges in proving the elements of its claims.  With respect to scienter, for example, Defendants have repeatedly argued that they were victims of fraud by Autonomy and its executives, and that Autonomy went to great lengths to conceal its improper accounting practices from HP personnel. Greenstein Decl., ¶78.  Thus, proving that the Settling Defendants either knew or were reckless in not knowing the facts that rendered their representations and omissions allegedly false and misleading would not be an easy task.  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").  Furthermore, Defendants have repeatedly asserted that the whistleblower who purportedly revealed Autonomy's accounting improprieties to HP came forward after Defendants' first actionable statement on May 23, 2012, allegedly undermining scienter for that representation.  *Id.* ¶79.  Defendants have also maintained that numerous independent accounting, consulting and audit firms reviewed and blessed Autonomy's financial results prior to and during the Settlement Class Period, thus undermining the inference that Autonomy's accounting improprieties were either known or easily detected by Defendants and HP personnel.  *Id.* ¶78.  Moreover, relying on *In re Yahoo! Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 113036 (N.D. Cal. 2012) (Breyer, J.)—a decision recently affirmed by the Ninth Circuit—Defendants contended that they were entitled to investigate and determine the reliability or extent of Autonomy's alleged misconduct for a reasonable amount of time before disclosing it to shareholders, rendering two of the three remaining statements arguably inactionable on the basis of scienter, materiality and falsity.  Greenstein Decl., ¶80.

The elements of loss causation and damages also presented significant risks for Lead Plaintiff.  *See id.* ¶¶82-87.  As discussed above, Lead Plaintiff faced the very real possibility that either the Court or a jury would find its losses were caused in whole or large part by factors other than the alleged misleading statements and omissions.  *Id.* ¶¶82-85.  Lead Plaintiff also faced risks associated with issues of "disaggregation" (*i.e.*, the jury would not be able to untangle losses

---

14478 (9th Cir. 2010) (granting judgment to defendants and nullifying a unanimous jury verdict for plaintiffs following a two-month trial).

1    attributable to the alleged misrepresentations and omissions from those tied to other non-fraud

2    factors, if any) and proportional fault (*i.e.*, the Settling Defendants would attempt to shift blame to

3    third parties, including legacy Autonomy management and Autonomy's auditor).  *Id.*

4           Had the Action proceeded, it is clear that there existed substantial risks and uncertainties

5    concerning liability and damages.  Instead, by this Settlement, the Settlement Class will receive a

6    significant recovery without undertaking these risks.

7                    **3.      The Risk, Expense, Complexity and Likely Duration of the Litigation**

8           Courts consistently recognize that the risk, expense, complexity, and possible duration of the

9    litigation are key factors in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi*, 8 F.3d

10   at 1375-76 (finding that "the inherent risks of litigation . . . and the cost, complexity and time of

11   fully litigating the case" rendered the settlement fair).  Thus, a court "shall consider the vagaries of

12   litigation and compare the significance of immediate recovery by way of the compromise to the

13   mere possibility of relief in the future, after protracted and expensive litigation."  *DIRECTV*, 221

14   F.R.D. at 526.

15          It is well known that class action litigation is inherently complex. *See Nobles*, 2009 U.S.

16   Dist. LEXIS 59435, at *5 (finding a proposed settlement proper "given the inherent difficulty of

17   prevailing in class action litigation").  Certainly, this securities class action, prosecuted under the

18   more restrictive provisions of the PSLRA and involving complex issues such as goodwill and

19   software revenue recognition, is no exception.  *See* Greenstein Decl., ¶114-115.[8]  Moreover, as set

20   forth above and in the Greenstein Declaration, Lead Plaintiff faced severe risks to continued

21   litigation, including successfully establishing falsity, scienter, loss causation and damages.  *Id.*

22   ¶¶78-87, 115; *see In re Magma Design Automation, Inc. Sec. Litig.*, Case No. 3:05-cv-02394-CRB,

23

---

24   [8]      As retired Supreme Court Justice Sandra Day O'Connor aptly recognized, "[t]o be
     successful, a securities class-action plaintiff must thread the eye of a needle made smaller and
25   smaller over the years by judicial decree and congressional action." *Alaska Elec*. *Pension Fund v*.
     *Flowserve Corp*., 572 F.3d 221, 235 (5th Cir. 2009).  Similarly, retired Chief Judge Walker noted
26   that the "heightened pleading requirement of the PSLRA and the application of *Dura Pharms*., *Inc*.
     *v*. *Broudo*, 544 U.S. 336 [(2005)], . . . which poses significant risks to plaintiffs' ability to survive . .
27   . summary judgment and prevailing at trial," suggests that settlement is often prudent.  *In re Portal
     Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. 2007).

28

---

1   slip op. at 3-4 (N.D. Cal. Mar. 27, 2009) (Ex. 1 hereto) (recognizing the "inherent difficulty of

2   establishing liability and damages in securities litigation").[9]   Lead Plaintiff also faced the risks

3   inherent in taking a case to trial, where it is impossible to predict how a trier of fact will construe

4   conflicting evidence and testimony.  *See Fernandez v. Victoria Secret Stores, LLC*, 2008 U.S. Dist.

5   LEXIS 123546, at *18-19 (C.D. Cal. 2008) ("Because both parties faced extended, expensive future

6   litigation, and because both faced the very real possibility that they would not prevail, this factor

7   supports approval of the settlement.").

8           Judging from the vigorous motion practice, the volume of documents produced in the initial

9   stages of this Action and the disputes among the parties regarding the scope of discovery, resolving

10  this case through continued litigation would have undoubtedly been a long and expensive endeavor.

11  *See id*. ¶106, 119.  Notably, despite litigating this case reasonably and efficiently, Lead Counsel has

12  incurred expenses of over $860,000 to date.   *Id*. ¶116; Kessler Decl. ¶8.   Thus, the cost of

13  completing merits discovery, expert discovery, summary judgment briefing, *Daubert* motion

14  practice, preparation for trial, completing trial and the inevitable post-trial appeals, would be

15  exorbitant.  *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc*., 2012 U.S. Dist. LEXIS

16  151498, at *7 (D. Nev. 2012) ("The action was filed in 2009 and, but for the settlement, would

17  require additional discovery, court intervention to resolve discovery disputes, extensive briefings,

18  and possibly a protracted, expensive and lengthy trial in order to reach resolution.").

19          Moreover, this Action, if taken to trial, would have expended substantial party and judicial

20  resources.  *See Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *36-38 (C.D.

21  Cal. 2010) ("Had the parties aggressively litigated class certification and tried the case, it could

22  have consumed substantial party and court resources. There is a 'strong judicial policy that favors

23  settlements, particularly where complex class action litigation is concerned.'").  As a result, and

24  given the post-trial appeals that would likely follow, years could pass before the Settlement Class

25

26  _____
    [9]       *See also In re Charles Schwab Corp. Sec. Litig*., 2011 U.S. Dist. LEXIS 44547, at *19 (N.D.
27  Cal. 2011) ("[P]rosecuting these claims through trial and subsequent appeals would have involved
    significant risk, expense, and delay to any potential recovery . . . risks included proving loss
28  causation and the falsity of the representations at issue.").

would receive a recovery, even if successful at trial.  Under these circumstances, it is "proper to take the bird in hand instead of a prospective flock in the bush."  *DIRECTV*, 221 F.R.D. at 526.

### 4.      The Risk of Maintaining Class Action Status Throughout the Trial

A pending class certification motion may justify approval of a final settlement where, as here, the motion "may be outcome-determinative in itself[.]"  *OmniVision*, 559 F. Supp. 2d at 1041.  When the Settlement was reached, Lead Plaintiff's class certification motion—which the Settling Defendants vigorously opposed—was pending before the Court.  Greenstein Decl., ¶¶55-61.  The Settlement avoids any uncertainty with respect to certification and, thus, supports approval of the Settlement.  *See OmniVision*, 559 F. Supp. 2d at 1041-42 ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely . . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed.").[10]

### 5.      The Extent of Discovery Obtained and the Stage of the Proceedings

The stage of proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is another factor that courts consider in determining the adequacy of a settlement.  *See, e.g.*, *Mego*, 213 F.3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 U.S. Dist. LEXIS 131845, at *8 (N.D. Cal. 2009).   Specifically, a settlement following sufficient discovery and investigation, and genuine arm's-length negotiations is presumed fair.  *See DIRECTV*, 221 F.R.D. at 527 ("The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case.").  Given the significant discovery conducted and the stage of the litigation, Lead Counsel and Lead Plaintiff were both sufficiently familiar with the strengths and weaknesses of the case to make informed decisions regarding settlement.

---

[10]      This factor would support Settlement even if the Court granted Lead Plaintiff's motion for class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time.  Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also OmniVision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As detailed in Section III of the Greenstein Declaration, the parties have been actively litigating this case since November 2012, during which time Lead Counsel has, among other things: (i) reviewed voluminous publicly available information regarding HP; (ii) conducted (through its investigators or agents) detailed investigative interviews of over 15 former HP and Autonomy employees and relevant witnesses; (iii) developed and filed a comprehensive amended complaint; (iv) conducted extensive research of the claims in this Action and the potential defenses thereto; (v) opposed eight motions to dismiss; (vi) consulted with multiple experts; (vii) researched and filed extensive class certification briefing, and expert market efficiency and damages analysis; (viii) responded to substantial discovery requests propounded by the Settling Defendants; (ix) deposed the Settling Defendants' economics expert and defended the depositions of Lead Plaintiff and its damages expert; (x) conducted significant discovery, including issuing substantial party and non-party discovery requests, engaging in numerous comprehensive meet-and-confer sessions with the Settling Defendants and the subpoenaed non-parties, and reviewing and analyzing approximately 80,000 pages of documents produced by the Settling Defendants and various non-party witnesses; and (xi) researched and briefed four separate discovery motions which were due to be filed had the Settlement not been reached.  In addition, prior to reaching a resolution of this Action, the parties had engaged in settlement negotiations spanning the course of one year, including two formal mediation sessions with Judge Phillips.  *Id*. ¶¶69-73.

In sum, the knowledge and insight gained by Lead Plaintiff and Lead Counsel following nearly three years of hard-fought litigation and year-long settlement negotiations confirm the reasonableness of the Settlement.  Indeed, Lead Plaintiff and Lead Counsel were well-apprised of the strengths and weaknesses of the Settlement Class's claims, the Settling Defendants' defenses, and the likelihood of obtaining a larger recovery from the Settling Defendants had the Action continued towards trial.  *See Immune Response*, 497 F. Supp. 2d at 1171 (finding even informal discovery and investigation sufficient for the parties to have a "clear view" of their case).[11]

---

[11]     *See also Mego*, 213 F.3d at 459 (approving settlement where counsel "conducted significant investigation, discovery and research, [] presented the court with documentation supporting those services [and] . . . worked with damages and accounting experts throughout the litigation").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.    Experienced Counsel Supports Settlement

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *DIRECTV*, 221 F.R.D. at 528; *see also Nobles*, 2009 U.S. Dist. LEXIS 59435, at *6 (same).  As this Court has held, "[w]hen class counsel is experienced and supports the settlement, and the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement."  *Ramirez*, 2014 U.S. Dist. LEXIS 56038, at *3.  This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *eBay*, 2015 U.S. Dist. LEXIS 118060, at *15.

Lead Counsel has extensive experience prosecuting complex securities class actions, is intimately familiar with the facts of this Action and believes that the Settlement is fair, reasonable, and in the best interests of the Settlement Class.   *See* Greenstein Decl., ¶¶16, 76, 112.[12]  Furthermore, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight."  *Immune Response*, 497 F. Supp. 2d at 1174; *see id.* ¶112-113.

### 7.    The Absence of Collusion Supports Settlement

The record shows that the Settlement is not a product of collusion.  Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell*, 2007 U.S. Dist. LEXIS 99066, at *17; *Vincent*, 2013 U.S. Dist. LEXIS 22341, at *12 (same).[13]  Here, the parties' settlement negotiations were vigorously-contested, with the guidance of an experienced neutral, and the direct participation of Lead Plaintiff.  *See* Greenstein Decl., ¶69-73.

---

[12]    Notably, Lead Counsel has litigated and recovered hundreds of millions of dollars in this District alone. *See, e.g.*, *In re Wells Fargo Mortg. Backed Certificates Litig.*, 5:09-cv-01376-LHK (N.D. Cal. 2011) ($125 million); *In re Connetics Sec. Litig.*, 3:07-cv-02940-SI (N.D. Cal. 2009) ($12.75 million); *In re Brocade Sec. Litig.*, 3:05-cv-02042-CRB (N.D. Cal. 2009) ($160 million); *In re Marvell Tech. Grp. Ltd. Sec. Litig.*, 5:06-cv-6286-RMW (N.D. Cal. 2009) ($72 million). *See also* the firm resume of Kessler Topaz attached as Exhibit C to the Kessler Declaration.

[13]    *See also Officers for Justice*, 688 F.2d at 627 (finding no collusion where the case had been aggressively litigated for several years, "the settlement proposal . . . was not hastily arrived at and . . . . [t]he consent decree resulted only after long and careful negotiations"); *Hanlon*, 150 F.3d at 1027 (Proposed settlement was not collusive where there was "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of

In particular, this Settlement was reached through the substantial assistance of a well-respected former federal judge, the Honorable Layn R. Phillips (Ret.). *Id.*[14] The parties engaged in two formal, in-person mediation sessions with Judge Phillips, and submitted comprehensive mediation briefs, reply papers and updated supplemental briefs. *Id.* At all times during the negotiations and drafting of the settlement papers, Lead Counsel zealously advocated for the best interests of the Settlement Class while counsel for the Settling Defendants fervently advanced their position. *See id.* But for the Settlement, Lead Counsel was prepared to continue prosecuting the Action to trial. *Id.* ¶5. In sum, as "[t]he arms-length, contentious negotiations that culminated in the settlement agreement indicate that the settlement was reached in a procedurally sound manner," there is "nothing in the record indicating any collusion or bad faith by the parties." *Portal*, 2007 U.S. Dist. LEXIS 88886, at *12.[15]

### 8.   Reaction of the Settlement Class to the Proposed Settlement to Date

As of September 28, 2015, 680,679 copies of the Notice and Proof of Claim Form (together, the "Claim Packets") have been mailed to potential Settlement Class Members and nominees. Greenstein Decl., ¶¶75, 90; Fraga Aff., ¶11.[16] Pursuant to the Preliminary Approval Order and as set forth in the Notice, the deadline for Settlement Class Members to object to any aspect of the

---

plaintiffs' claims."); *eBay*, 2015 U.S. Dist. LEXIS 118060, at *26 (same).

[14]   *See, e.g.*, *Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *8 (Settlement was fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips."); *High-Tech*, 2015 U.S. Dist. LEXIS 26635, at *7 (finding Judge Phillips to be "an experienced mediator"); *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").

[15]   Moreover, none of the three "signs of collusion" identified in *Bluetooth*, 654 F.3d at 947 are present here. First, Lead Counsel is not receiving a "disproportionate distribution of the settlement" nor will the "the class receive[] no monetary distribution." *Id.* Rather, the Settlement Class is receiving a Settlement that equals 26.5% of likely recoverable damages as estimated by Lead Plaintiff's damages expert, and Lead Counsel's requested attorneys' fees are well below the Ninth Circuit's 25% benchmark. Greenstein Decl., ¶¶77, 105. Second, the Stipulation does not contain a "clear sailing" provision, wherein a defendant agrees not to oppose a petition for a fee award. *Bluetooth*, 654 F.3d at 947; *Id.* ¶67. Third, unclaimed fees will not "revert to defendants rather than be added to the class fund." *Id.*

[16]   To date, 4,819 Claim Packets have been returned as undeliverable. Fraga Aff., ¶11. Of this amount, 855 Claim Packets were re-mailed to updated addresses. *Id.*

---

1   Settlement, or to request exclusion from the Settlement Class, is October 14, 2015.  Greenstein

2   Decl., ¶92; Fraga Aff., ¶15.  To date, there have been no objections, and only twelve requests for

3   exclusion from the Settlement Class.  *Id*.[17]  These facts further demonstrate that the Settlement is

4   fair and reasonable.

5   **IV.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

6          The Court has broad discretion in approving a plan of allocation.  *See In re Heritage Bond*

7   *Litig.*, 2005 U.S. Dist. LEXIS 13555, at *37 (C.D. Cal. 2005).  Such approval is governed by the

8   same standard applicable to settlement approvals: the proposed plan must be fair, reasonable, and

9   adequate.  *See High-Tech*, 2015 U.S. Dist. LEXIS 118051, at *29-30.  A plan of allocation that, for

10  instance, "reimburses class members based on the extent of their injuries is generally reasonable."

11  *Id.* at *29-30.  Significantly, "[a]n allocation formula need only have a reasonable, rational basis,

12  particularly if recommended by experienced and competent counsel."  *Heritage Bond*, 2005 U.S.

13  Dist. LEXIS 13555, at *38.  The Plan of Allocation here sufficiently meets these criteria.

14         The Plan, as fully set forth in Appendix A to the Notice, will govern the allocation of the

15  Settlement Fund to eligible Settlement Class Members ("Authorized Claimants") after deduction of

16  all  appropriate  taxes,  administrative  costs  and  Court-approved  attorneys'  fees  and  Litigation

17  Expenses (the "Net Settlement Fund").  Greenstein Decl., ¶93.  Each Authorized Claimant shall be

18  allocated a percentage of the Net Settlement Fund based upon the relationship that each authorized

19  claim bears to the total of all authorized claims as explained in the Plan.  *Id.* ¶¶95, 98.[18]  The Plan is

20  designed to achieve an equitable and rational distribution of the Net Settlement Fund among those

21  who suffered economic losses as a result of the alleged violations asserted in the Action.  *Id.* ¶93.

22  To date, there have been no objections to the Plan.  *Id.* ¶100.

23

24  ───────────────────────
    [17]      In GCG's experience, a large number of claims usually come in at or near the claim
25  submission deadline which, in this case, is October 31, 2015. Fraga Aff., ¶¶16-17.  As a result,
    GCG will provide the parties and the Court with claim filing information in their supplemental
26  affidavit to be submitted in connection with Lead Plaintiff's reply papers, to be filed with the Court
    on or before November 3, 2015.  *Id.* ¶17.
27  [18]      *See High-Tech,* 2015 U.S. Dist. LEXIS 118051, at *29-30 (finding plan of allocation
    "fundamentally fair" and reasonable where the allocation was *pro rata* across the class).
28

The Plan also reflects Lead Plaintiff's damages theory of the case based upon extensive investigation and discovery. Indeed, in developing the Plan, Lead Counsel worked closely with a well-regarded damages expert. *Id*. ¶94. To have a loss under the Plan, a claimant must have purchased or otherwise acquired HP common stock during the Settlement Class Period and held such stock through August 22, 2012 or November 20, 2012. *Id*. ¶¶95-96.[19] Under the Plan, a claimant's "Recognized Loss Amount" takes into account the PSLRA's statutory limitation on recoverable damages, and reflects discounts taken for the specific risks related to each of the two corrective disclosures as analyzed by Lead Plaintiff's expert. *Id*. In addition, because the Court's dismissal of all claims related to allegedly false and misleading statements made between August 19, 2011 and May 22, 2012 made it far less likely that Lead Plaintiff could prevail on those claims, Recognized Loss Amounts for purchases and acquisitions made during this time period are heavily discounted to reflect the increased litigation risks associated with those claims. *Id*. ¶97; *see OmniVision*, 559 F. Supp. 2d at 1045 (finding it reasonable to "allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits").

Lead Plaintiff and its counsel believe that the Plan provides a fair and reasonable method to allocate the settlement proceeds among Authorized Claimants. *Id*. ¶100. Accordingly, Lead Plaintiff respectfully submits that the Plan warrants the Court's approval.

## V.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and requests that this Court grant final approval of the Settlement and Plan of Allocation, and finally certify the Settlement Class as preliminarily certified in the Court's Preliminary Approval Order.

///

---

[19]     The Complaint alleges that after the close of trading on August 22, 2012, the price of HP common stock fell approximately 11.5% from a closing price of $19.47 on August 21, 2012, to a closing price of $17.23 on August 23, 2012. ECF No. 100, ¶¶214-16. It further alleges that following HP's announcement of the Autonomy write-down on November 20, 2012, the price of HP common stock declined from a close of $13.09 on November 19, 2012, to a close of $11.53 on November 20, 2012, representing a decline of nearly 11.92%. *Id*. ¶¶217-18.

1

DATED:  September 29, 2015

Respectfully submitted,

2

3

KESSLER TOPAZ
  MELTZER & CHECK, LLP

4

*/s/ Eli R. Greenstein*
ELI R. GREENSTEIN
STACEY M. KAPLAN
PAUL A. BREUCOP
RUPA NATH COOK
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile:  (415) 400-3001
egreenstein@ktmc.com
skaplan@ktmc.com
pbreucop@ktmc.com
rcook@ktmc.com

5

6

7

8

9

10

-and-

11

DAVID KESSLER
DARREN J. CHECK
ANDREW L. ZIVITZ
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile:  (610) 667-7056
dkessler@ktmc.com
dcheck@ktmc.com
azivitz@ktmc.com

12

13

14

15

16

17

*Counsel for Lead Plaintiff
PGGM Vermogensbeheer B.V
and Lead Counsel for the
Proposed Settlement Class.*

18

19

20

21

22

23

24

25

26

27

28