# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MAGMA DESIGN AUTOMATION, INC. SECURITIES LITIGATION | No. C 05-02394 CRB<br>**ORDER OF FINAL APPROVAL** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

This matter comes before the Court for final approval of the parties' stipulated settlement agreement and an application for attorneys' fees and costs. A final fairness hearing was held on December 5, 2008, and the Court requested a supplemental declaration from Plaintiffs, which was submitted on March 20, 2009. After considering the arguments made in the pleadings and at oral argument, the Court hereby GRANTS final approval of the settlement. The Court GRANTS the reimbursement of $945,345.69 in costs and GRANTS reimbursement of Lead Plaintiff Frank Weiler in the amount of $32,600. After subtracting those costs from the gross settlement fund, the Court GRANTS Plaintiffs' Counsel twenty percent of the remaining net settlement fund in attorneys' fees.

///

///

## BACKGROUND

Defendant Magma Design Automation, Inc. ("Magma") is a technology company that produces software used in the process of designing integrated circuits. Defendant Rajeev Madhavan served as Magma's CEO. Founded in 1997, Magma went public in November 2001. Plaintiffs allege that Defendants defrauded investors by issuing a series of materially false and misleading public statements which concealed Magma's misappropriation of its core technology from its chief competitor, Synopsys. The alleged misleading statements include earnings reports and risk disclosures issued throughout the Class Period, as well as statements in response to a suit filed by Synopsys against Magma in September 2004. Plaintiffs further allege that Madhavan engaged in insider trading throughout the Class Period: from October 23, 2002, the date of the first earnings announcement after the first relevant patent at issue was approved, through April 12, 2005, the day before Magma publicized a declaration by its chief scientist, van Ginneken, stating that material elements of the inventions he created at Synopsys provided the technical foundation for the Magma patents. On April 13, 2005, the press reported the contents of this declaration, causing Magma's stock to fall by forty percent.

This lawsuit was filed on June 13, 2005. On August 18th, 2006, the Court granted a motion to dismiss as to several defendants but denied it as to the current Defendants. On August 16, 2007, the Court certified the Class. The parties then filed cross-motions for summary judgment. The case was settled "minutes before the Court took the bench" to rule on those motions, with the mediation assistance of Judge Edward A. Infante.

The Plaintiff Class originally sought damages of approximately $60.8 million. Under the terms of the Settlement, Defendants have agreed to pay $13.5 million in cash for the benefit of the Class. The Plan of Allocation provides for a pro rata distribution of the Net Settlement Fund. On July 7, 2008, the Court issued a preliminary approval of the Settlement.. Over 22,000 Notices were sent to members of the Class, and Summary Notices were published in a national newspaper and over a national newswire. No objections have been filed. The final fairness hearing was held on December 5, 2008.

2

**DISCUSSION**

I. <u>Approval of the Settlement and Plan of Allocation</u>

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." In order to approve a final settlement in a class action, the Court must find that the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In making such a determination the Court may consider, inter alia, the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. <u>See Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982). The Court has discretion in evaluating a proposed settlement, but its "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." <u>Id.</u>

The fair, reasonable, and adequate standard is met here. The Settlement was negotiated after the matter had proceeded through significant discovery and motions practice. Over two million pages of documents have been produced and numerous depositions have taken place. Counsel therefore had sufficient information to make an informed decision regarding the merits of the Settlement at this stage in the litigation.

The Settlement is also appropriate given the inherent difficulty of establishing liability and damages in securities litigation. The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair. <u>See In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000). Plaintiffs' claim has survived a motion to dismiss on issues of scienter and causation, but success is not guaranteed if this matter were to proceed to jury trial. In particular, there could be

3

reasonable disagreement regarding what portion of losses incurred by Class Members was attributable to Defendants' conduct in relation to general market conditions. Although the Class potentially could have achieved a greater recovery, the Class is acting within its reasoned judgment in opting to settle the matter now.

The amount agreed to by the parties is within the range of reasonableness. A settlement may be approved even when it amounts to only a small percentage of the recovery sought. See, e.g., In re Mego Fin. Corp., 213 F.3d at 459 (one-sixth of original request). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Officers for Justice, 688 F.2d at 628. The Plaintiff Class originally sought approximately $60.8 million, but has agreed to settle for $13.5 million. The Settlement amount is about twenty-two percent of the original request. There is no reason to find that the Settlement amount agreed upon here is unreasonable so as to trump the parties' agreement.

The Settlement Agreement resulted from arm's-length negotiations between experienced counsel. The recommendation of Plaintiff's counsel following extensive negotiations is entitled to great weight. See 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:47, at 145-46 (4th ed. 2002). This action has been litigated by competent counsel on both sides. Milberg LLP, representing the Plaintiff Class, is well known for its experience in class action litigation. Defendants are similarly well-represented by O'Melveny & Myers LLP. The Settlement came about only after both sides placed significant resources into negotiations and preliminary motions. The parties also engaged in extensive mediation.

It is worth noting that no objectors have come forward to challenge the Settlement. In accordance with the Court's preliminary order, the claims administrator has mailed over 22,000 Notices and Proof of Claim forms to potential Class Members. Notice was also published in the *Investor's Business Daily* and transmitted over the *Business Wire*. The lack of opposition further suggests that the Settlement as a fair, reasonable, and adequate resolution of this matter. The Settlement is hereby APPROVED.

4

The Court will also approve the Plan of Allocation. Assessment of a plan of allocation is governed by the same standard of review applicable to the settlement as a whole; the plan must be fair, reasonable, and adequate. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284-85 (9th Cir. 1992).

The Plan of Allocation was devised by Plaintiff's Lead Counsel based on its damages expert's report. The proposed Plan attempts to return Class Members to the position they held before the fraudulent acts by compensating them for the difference between the purchase price they paid for Magma securities and their trading prices following the corrective disclosure. This method of distribution has been expressly approved by the Ninth Circuit. See In re Mego Fin. Corp., 213 F.3d at 460. Furthermore, the Plan of Allocation is consistent with the methods of calculating damages under the Private Securities Litigation Reform Act ("PSLRA") because it takes account of the partial rebound in the price of Magma stock following the end of the Class Period. Accordingly, the Plan of Allocation is hereby APPROVED.

## II. Application for Attorneys' Fees and Reimbursement of Expenses

Plaintiffs seek (1) reimbursement of $945,345.69 in expenses; (2) reimbursement of the Lead Plaintiff in the amount of $32,600 for his costs and expenses relating to his representation of the Class; and (3) an award of attorneys' fees of thirty percent of the Settlement Fund

### A. Reimbursement of Costs

Plaintiffs' Counsel seeks reimbursement of $945,345.69 in expenses. These expenses include (1) printing; (2) postage and notice costs; (3) messengers and express services; (4) filing and witness fees; (5) legal research; (6) experts and consultants; (7) transportation costs; and (8) fascimile charges. The Court finds these expenses are reasonable and the type typically billed by attorneys in the marketplace, see Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994), and therefore shall be reimbursed out of the common fund. Counsel's request for reimbursement of costs is hereby APPROVED.

5

B. <u>Lead Plaintiff's Expenses</u>

Lead Plaintiff Frank Weiler seeks $32,600 in reimbursement for his reasonable costs and expenses relating to his representation of the Class. Such recovery is permitted by § 21D(a)(4) of the PSLRA, 15 U.S.C. § 78u-4(a)(4). Weiler has submitted a declaration detailing his lost wages and hours spent in this matter. Weiler attended Court hearings, participated in his deposition, reviewed pleadings, and committed his schedule to attend the scheduled trial. Accordingly, the request for reimbursement for the Lead Plaintiff's expenses is APPROVED.

C. <u>Attorneys' Fees</u>

To the certain behest of Plaintiffs' Counsel, the appropriate award of attorneys' fees is the issue where the Court deviates from Counsel's proposal. Counsel seeks thirty percent of the Settlement in attorneys' fees, but the Court determines that twenty percent is an appropriate award.

Under Ninth Circuit law, reasonable attorneys' fees may be based upon a percentage of the fund recovered for the class. See <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002). The "bench mark" recovery for attorneys' fees is twenty-five percent. <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (1989). "That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." <u>Id.</u> "Ordinarily, however, such fee awards range from twenty percent to thirty percent of the fund created." <u>Id.</u>

The Ninth Circuit has set forth five factors as pertinent to evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. See <u>Vizcaino</u>, 290 F.3d at 1048-50. After looking at these factors, the Court determines that an award of twenty percent of the net settlement fund is appropriate.

Counsel contends it "achieved a significant recovery" for the Class, and therefore is entitled to a higher fee award. The Court agrees that recovery was adequate, but not so

6

extraordinary as to warrant a thirty percent fee award. Plaintiffs' Counsel recovered $13.5 million for the Class in a suit that originally sought $60.8 million. This recovery amounts to twenty-two percent of the initial damages request. In a supplemental declaration requested by the Court, the Claims Administrator represented that a preliminary review of the submitted claims suggested that claimants would be compensated for approximately fifteen percent of their losses. The Settlement is a "good result" so as to justify approval, but it is not so outstanding as to warrant higher fees.

The same is true of Counsel's reliance on the "risks of litigation" as a basis for its request. Counsel points to the difficulties of sustaining suits under the PSLRA, which made it more difficult for investors to bring securities class actions. Of course, all securities class action litigation entails serious risks. However, there is nothing about this suit in particular that was unusually uncertain so as to justify greater fees. Indeed, Plaintiffs survived an initial motion to dismiss on the issues of scienter and loss causation, and successfully certified the class. The Class' prospects were bright. The Court will not second-guess Plaintiffs' decision to settle at this point, but there was nothing so risky about this case that warrants a higher fee award.

Counsel further points to its extensive experience and skill as a reason to award it higher fees. Counsel suggests "[s]uch quality, efficiency and dedication by Plaintiffs' Lead Counsel should be rewarded." The Court does not doubt Counsel's extraordinary skill. The Court also appreciates the risks involved in taking on securities cases on a contingency basis. The Court is not convinced, however, that Counsel's reputation in the class action world justifies its fee request. An award of twenty percent in fees will adequately reward Counsel for its efforts.

Finally, Plaintiffs' Counsel cites to a litany of cases where courts have awarded higher fees. The Court recognizes that it has the discretion to award greater recovery to Counsel, if the circumstances so warrant. Of course, there are also many cases where courts have properly decided that a fee award of twenty percent is appropriate. See, e.g., Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("The twenty percent figure is well

7

within the range of reasonable fees in common fund cases."); Schwartz v. Citibank, 50 Fed. Appx. 832, 836 (9th Cir. 2002) (upholding award of twenty percent); Jones v. Dominion Res. Servs., Inc., __ F. Supp. 2d __, 2009 WL 585782, *9 (S.D.W.Va. Mar. 6, 2009) (awarding twenty percent); In re KeySpan Corp. Sec. Litig., 2005 WL 3093399, *1 (E.D.N.Y. Sept. 30, 2005) (same).

Under the circumstances of this case, the Court holds a fee award of twenty percent is appropriate. As is always the Court's practice, attorneys' fees are to be calculated from the net settlement fund, after reimbursement of the other approved costs have already been subtracted from the gross settlement fund.

## CONCLUSION

Based on the foregoing, the Court Hereby GRANTS final approval of the Settlement, GRANTS reimbursement of expenses in the amount of $945,345.69, GRANTS reimbursement of the Lead Plaintiff in the amount of $32,600, and GRANTS approval of twenty percent of the net settlement fund for attorneys' fees.

**IT IS SO ORDERED.**

Dated: March 27, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2005\2394\Order Final Approval Fees.wpd      8